IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO., LTD.**, a Chinese corporation, and **FUTUREWEI TECHNOLOGIES, INC.**, a Texas corporation,<br><br>        Plaintiffs,<br>  v.<br><br>**YIREN RONNIE HUANG**, an individual, and **CNEX LABS, INC.**, a Delaware Corporation,<br><br>        Defendants. | **NO.**<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT

Plaintiffs Huawei Technologies Co., Ltd. ("Huawei") and Futurewei Technologies, Inc. ("Futurewei") file this Original Complaint against Yiren Ronnie Huang ("Huang") and CNEX Labs, Inc. ("CNEX"), and allege as follows:

### INTRODUCTION

1.	This lawsuit arises out of Defendant Huang's breach of duties both while an employee of Futurewei and at his new company CNEX. Specifically, this is a lawsuit to end an illegal pattern of racketeering by Huang and CNEX and to seek relief from the ongoing and immediate violation of Huang's Employment, Confidentiality, Proprietary Information and Inventions Agreement with Futurewei.

2.	In the course of their scheme to take business opportunities from Futurewei and Huawei, Defendants misappropriated Plaintiffs' trade secrets, stole Plaintiffs' intellectual property, and conspired with several of Plaintiffs' employees who later left to work at CNEX to unlawfully obtain Plaintiffs' protected confidential, proprietary and trade secret information, illegally transmit it through the use of Plaintiffs' protected computers, and use the information

for their own benefit.  This ongoing scheme of unlawful activity resulted in financial losses to Plaintiffs, and deprived them of the value of their trade secrets and other protected business information, resulting in great harm to Plaintiffs.

3.     Based on Huang and CNEX's illegal conduct, Plaintiffs bring causes of action for declaratory relief, breaches of contract, misappropriation of trade secrets, computer fraud, racketeering, tortious interference with current and prospective business relations, conversion, breach of fiduciary duty, unjust enrichment, unfair competition, and conspiracy.

4.     Futurewei hired Huang in January 2011 to research various technologies, including architecture design and product development about Solid State Disk ("SSD") technology and Advanced Computing Network ("ACN") technology, and also to monitor industry standards and industry trends in related areas. As part of his job responsibilities, Huang worked closely with employees of Plaintiffs on researching and developing PCIE SSD architecture, ACN architecture and chip design, and related products, and implementing new technologies, including extensive work on the  implementation of Non-Volatile Memory Express ("NVMe") standard and Interlaken Standard.

5.     By nature of his job responsibilities, Huang had direct access to Plaintiffs' confidential, proprietary, and trade secret information.  This included highly sensitive information about Plaintiffs' research, development, products and market analysis.  Specifically, this information included highly valuable confidential, proprietary, and trade secret information regarding Plaintiffs' implementation of SSD technology, Advanced Computing Network technology, and NVMe related technology.  Huang accessed this information on a regular basis and used it to strategically develop Plaintiffs' products, patents or other intellectual property, and also market and technology analysis.  Any misuse of this information would result in immediate and irreparable harm to Plaintiffs, including placing Plaintiffs at a competitive disadvantage.

6.     As part of his employment with Futurewei, Huang signed an Employment, Confidentiality, Proprietary Information and Inventions Agreement (the "Agreement") to protect Plaintiffs' intellectual property during and after his employment with Futurewei.  Under the

terms of the Agreement, Huang assigned to Futurewei, *inter alia*, any invention or idea that he conceived of that related to his work at Futurewei. The Agreement further required Huang for one year following termination of his employment to provide Futurewei with a complete copy of each patent application filed by Huang or that named Huang as an inventor or co-inventor. Huang failed to do this.

7.     Also under the terms of the Agreement, Huang agreed to hold in strictest confidence and to not disclose any of the company's confidential, proprietary and trade secret information unless authorized to do so in writing. Huang further recognized that all confidential, proprietary, and trade secret information he had access to at Futurewei belonged to Futurewei or protected third parties and that Futurewei was the sole owner of all patent rights, copyrights, trade secret rights, and all other rights throughout the world in connection therewith.

8.     Huang voluntarily terminated his employment with Futurewei effective May 31, 2013. On information and belief, on June 3, three days after leaving Futurewei, Huang established CNEX Labs, Inc. in Delaware[1] together with Alan Armstrong and Joe DeFranco[2]. On June 26, 2013, less than a month after leaving Futurewei, Huang filed the first of several patent applications that were based on or related to the work he performed while employed at Futurewei. On information and belief, Huang used information he obtained through his employment at Futurewei along with Futurewei's resources and technology in drafting these patent applications. This includes Plaintiffs' confidential, proprietary, and trade secret information that Huang agreed to protect and hold in the strictest of confidence.

9.     Plaintiffs discovered some of Huang's illegal conduct only after the United States Patent and Trademark Office ("USPTO") published one of Huang's patent applications that was based on or related to his work at Futurewei. Upon information and belief, Huang illegally transferred to himself using Plaintiffs' computer systems confidential, proprietary, and trade

---

[1] https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx
[2] https://www.cnexlabs.com/

secret information by email or other electronic means, and did so to facilitate use of this information in CNEX's business to compete with Plaintiffs.

10.    Since Huang's departure from Futurewei and founding of CNEX, other of Plaintiffs' employees have departed and gone to work for CNEX.  Upon information and belief, these employees were unlawfully solicited by Huang, in violation of Huang's non-solicitation covenant with Futurewei.  Moreover, at least one of these employees was caught downloading thousands of documents from Plaintiffs' information systems (including hundreds of confidential documents) prior to his departure from working for Plaintiffs and subsequently joining CNEX.

11.    The actions of Huang, CNEX, and the departed employees demonstrate a conspiracy and scheme of illegal conduct to deprive Plaintiffs of their intellectual property, including their confidential, proprietary, and trade secret information, and to illegally use such information against Plaintiffs to unlawfully compete in the SSD, storage, server, cloud data center and cloud computing marketplace.  By so doing, Huang and CNEX have falsely represented and continue to falsely represent in Texas, and in interstate commerce, that they are the source and rightful owner of the technology and fruits of the technology rather than to its rightful source and owner, Futurewei.

12.    Plaintiffs thus bring this lawsuit seeking a declaration that the patent applications, issued patents, and associated inventions by Huang belong to Futurewei, as well as damages and injunctive relief for Defendants' breach of contract, conversion, theft of trade secrets under the laws of the United States and the State of Texas, computer fraud, racketeering, breach of fiduciary duty, tortious interference, unjust enrichment, and conspiracy.

## THE PARTIES

13.    Plaintiff Futurewei is a Texas corporation, with its principal place of business at 5340 Legacy Drive, Suite 175, Plano, TX 75024.

14.    Plaintiff Huawei is a Chinese corporation, with its principal place of business at Huawei Industrial Base, Bantian, Longgang District, Shenzhen, Guangdong, P.R. China 518129.

15.     On information and belief, Defendant Huang is an individual who resides in San Jose, California and has a business address at 2880 Stevens Creek Blvd., Suite 108, San Jose, CA 95128.

16.     On information and belief, Defendant CNEX is a Delaware corporation, with its principal place of business at 2880 Stevens Creek Blvd., Suite 108, San Jose, CA 95128.

<u>**JURISDICTION**</u>

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is complete diversity of citizenship. This Court also has subject matter jurisdiction over Futurewei's claim for declaratory judgment under 28 U.S.C. §§ 2201 and 2202, because an actual controversy exists regarding the ownership of certain intellectual property.

18.     This Court also has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331, and over the state law claims pursuant to ancillary, pendent and supplemental jurisdiction, including under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Huang because, among other things, Huang contractually agreed to personal jurisdiction in Collin County, Texas. The Agreement contains both venue and choice of law provisions requiring that Texas law apply and that any lawsuit be filed in Collin County, Texas.

20.     Huang has also committed tortious and illegal behavior, as outlined below, that occurred in Collin County, Texas, and/or were specifically and purposefully aimed at harming Futurewei in Collin County, Texas, thus subjecting himself to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Texas Civil Practices & Remedies Code § 17.042.

21.     This Court has personal jurisdiction over CNEX because, among other things, CNEX intentionally and tortiously interfered with a contract having a personal jurisdiction provision limited to Collin County, Texas, thus subjecting itself to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Texas Civil Practices &

Remedies. Code § 17.042.  CNEX has also committed tortious and illegal behavior, as outlined below, that occurred in Collin County, Texas, and/or were specifically and purposefully aimed at harming Futurewei in Collin County, Texas.

22.    Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (b) because:  (1) a substantial part of the events giving rise to the claims occurred in the Eastern District of Texas; (2) Huang contractually agreed to venue in Collin County, Texas; and (3) Huang and CNEX are otherwise subject to personal jurisdiction in this venue.

## FACTUAL BACKGROUND

### A.    Huawei and Futurewei

23.    Huawei is a multinational networking and telecommunications equipment and services company headquartered in Shenzhen, Guangdong, China. Huawei develops, manufactures, and sells a diverse range of products that promote interconnectivity, including cellular mobile infrastructure equipment (e.g. base stations), routers, switches, security, and data and cloud storage devices.

24.    Futurewei was formed on January 30, 2001 with restarted address at 5340 Legacy Drive, Suite 175, Plano, TX, 75024.  Futurewei is a subsidiary of Huawei whose business includes developing next generation products for the United States and global marketplace.

25.    Since 2001, Futurewei has grown to over 1,250 employees located in multiple offices throughout the United States, including in Plano, Texas.

26.    Since its formation, Futurewei has helped Huawei become one of the leading technology companies in the United States and the world.

27.    To maintain its growth and industry reputation, Futurewei invests a significant amount of time and resources in research and development to further the invention of new technologies.

### B.    SSD, NVMe and ACN

28.    As used herein, SSD, also known as solid-state drive, is a solid-state storage device that uses integrated circuit assemblies as memory to store data persistently. Compared

with traditional electromechanical magnetic disks, SSDs have no moving mechanical components, run silently, and have stronger resistance to physical shock but lower access time and latency.

29.     As used herein, NVMe stands for non-volatile memory express, a logical interface specification for accessing non-volatile storage media. By its design, NVMe allows host hardware and software to fully exploit the levels of parallelism possible in modern SSDs. As a result, NVMe reduces I/O overhead and brings various performance improvements in comparison to previous logical-device interfaces, including multiple, long command queues, and reduced latency.

30.     As used herein, Advanced Computing Network (ACN) is a proprietary technology developed by Huawei as part of a solution for convergence of server I/O virtualization, CPU virtualization (virtual switch) and multi-switch network convergence to flat network fabric system. With ACN technology, Huawei is able to deliver high performance, low latency, reliable, scalable, and low cost solutions or products, including but not limited to, those in the field of SSD storage, servers, cloud computing, and network function virtualization. . One of the alleged innovations of the Plaintiffs is to employ Ethernet to transmit NVMe commands, also known as NVMe over Ethernet.

C.     **Futurewei hires Huang to join its storage team**

31.     In late 2010, Futurewei began negotiations with Huang to join its team and assist it in developing storage related technology, including to assist it with the development and implementation of ACN, NVMe, and SSD technology.

32.     In December 2010, Futurewei extended an offer to Huang to join it as a Principal Engineer for its SSD storage group.  Huang subsequently accepted the offer and joined Futurewei on January 3, 2011.  As part of his role at Futurewei, Huang was responsible for overseeing other engineers in the SSD storage group at Futurewei and developing SSD-related technology and NVMe related technology. During Huang's employment, Huang was also a key

member for several important and confidential R&D projects of Huawei, such as ACN related projects and SSD controller chip projects.

**D.     As part of his employment with Futurewei, Huang receives access to Plaintiffs' confidential, proprietary, and trade secret information**

33.     As a Principal Engineer and leading architect for its SSD storage group with Futurewei, Huang directly participated in and assisted in developing Plaintiffs' ACN, SSD, and NVMe related technology, and in developing information necessary for Plaintiffs to conduct their business in a competitive market place.  Huang maintained regular and ongoing access to Futurewei's and Huawei's confidential, proprietary, and trade secret information, which included, but was not limited to, Plaintiffs' research and development of their ACN, SSD, and NVMe related technology.  This information included, for example, information regarding two key technologies developed by Plaintiffs:

i.     The system architecture, hardware system, software system, high level and low level design, source code, specification, proof of concept, prototype, test plans, test results, and other forms of confidential technical information and know-how of Plaintiffs' ACN technologies.  Huang was appointed Leader of the Technology Charter Development Team and he was responsible for overall quality and progress management of charter development of Plaintiffs' ACN related projects. These projects resulted in key technological advances in architectural features including, but not limited to, design of the host, SSD, and array controllers. Systems including local NVMe devices offer higher performance and lower power than alternatives, but have suffered from architectural limitations which limit deployments in large scale data warehousing networks and similar applications.  Advances in solid state controllers are needed to leverage the benefits of NVMe in standardized high-performance SSD operation and Ethernet/Fabric in scalability and low latency in order to address the storage

requirements of commercial data warehouses, network function virtualization, and other scalable, high-performance and reliable servers farms. Huawei's ACN allows for large scale deployment of fast, low latency, storage and computing systems and thus offers an ideal solution to meet these requirements; and

ii. The system architecture, hardware system, software system, high level and low level design, source code, specification, proof of concept, prototype, test plans, test results, and other forms of confidential technical information and know-how of Plaintiffs' solid state drive controller technologies. This included, but was not limited to, Plaintiffs' solid state controller project, including but not limited to solid state drive controller chips (collectively "SSD Controllers"). Huang had accessed the design documents of the Plaintiffs' SSD Controllers and actively participated in the development of Plaintiffs SSD controllers during his employment. These projects resulted in an application-specific integrated circuit (ASIC) controller based on Huawei's SSD flash translation layer (FTL) algorithm and low-density parity-check error correcting algorithm, supporting the NVMe specification and featuring high performance and low power consumption.

(collectively "confidential, proprietary, and trade secret information").

34. Plaintiffs derive independent economic value from their confidential, proprietary, and trade secret information not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

35. Plaintiffs' confidential, proprietary, and trade secret information is the subject of efforts that are reasonable under the circumstances to maintain the secrecy of such information. The confidential, proprietary, and trade secret information is generally not distributed to any other party external to Plaintiffs. Furthermore, Plaintiffs do not release this information to the general public, nor could it be properly acquired or duplicated by others without Plaintiffs' permission. No one else can generate this information without knowledge of Plaintiffs' confidential operations. The information is specific to Plaintiffs, which makes it nearly

impossible to duplicate without detailed information from the confidential books and records of Plaintiffs.

36.     Plaintiffs have devoted significant resources to developing and compiling its confidential, proprietary, and trade secret information.  The development of Plaintiffs' confidential, proprietary, and trade secret information represents the combined efforts of senior level employees in a variety of departments.

37.     Extensive internal measures were and are in place to safeguard Plaintiffs' confidential, proprietary, and trade secret information.  Plaintiffs control the dissemination of such information even within the confines of the companies.  Employees working with this information are subject to rules, policies, and procedures which prohibit the improper disclosure of this information.  Plaintiffs' employees further agree as part of their employment agreements not to disclose Plaintiffs' confidential, proprietary, and trade secret information outside the companies or to those individuals within Plaintiffs who do not require such information to perform their job functions.  Plaintiffs specifically rely on these internal measures and agreements with its employees to protect its confidential, proprietary, and trade secret information.

38.     In general, access to Plaintiffs' confidential, proprietary, and trade secret information was and is available only to those persons whose job functions directly relate to compiling, evaluating, and implementing the information, and the information is shared on a "need to know" basis to protect the confidentiality of the information.  This information is further stored in hard copy form and/or electronically in locations that are only accessible by authorized personnel.  This information is also protected by appropriate computer security controls and information management policies.  Plaintiffs' employees have specific passwords and user identifications that allow limited access to Plaintiffs' computer system applications, with such limitations established in relation to the employees' identified tasks.

39.     Disclosure of Plaintiffs' confidential, proprietary, and trade secret information would be extremely valuable to Plaintiffs' competitors, and in particular to CNEX and its

customers.  Disclosure of Plaintiffs' confidential, proprietary, and trade secret information would undermine Plaintiffs' position in the marketplace.  For example, disclosure would allow Plaintiffs' competitors such as CNEX and its customers to duplicate or take a free riding of Plaintiffs' technologies, proven business processes to more effectively compete against Plaintiffs in various ways including developing competitive products with lower costs, gaining customer business and market share.

40.    Allowing Plaintiffs' competitors such as CNEX and its customers to obtain Plaintiffs' confidential, proprietary, and trade secret information without expenditure of time, effort, and resources similar to Plaintiffs' expenditures would cause Plaintiffs substantial competitive injury.  Thus, if Plaintiffs' confidential, proprietary, and trade secret information was disclosed, competitors such as CNEX and its customers would have an unfair inside look at the inner workings of Plaintiffs and how they compete in the market for SSD and ACN technology. Competitors such as CNEX and its customers would be able to duplicate or attempt to improve upon Plaintiffs' products and services, as well as their internal business strategies and methodologies, and then could engineer competitive products, services, and strategies that would directly compete with Plaintiffs based on this unlawfully obtained competitive disadvantage.

41.    The value of Plaintiffs' confidential, proprietary, and trade secret information is considerable and its disclosure would cause Plaintiffs substantial competitive injury beyond any monetary amount and would be irreparable.  If Plaintiffs' confidential, proprietary, and trade secret information were released, Plaintiffs would suffer an extreme competitive disadvantage.

42.    Plaintiffs specifically entrusted Huang with their confidential, proprietary, and trade secret information regarding its ACN and SSD technology.  It appears that Huang has now taken that confidential, proprietary, and trade secret information, along with the specialized training and the skills he developed at Plaintiffs, and is now using them to develop and sell high-level products including NVMe PCIe SSD Controllers such as Westlake Plus[3] and CNEX –

---

[3] https://www.cnexlabs.com/tag/westlake-plus/

**COMPLAINT**

Diamond V2.0[4] on behalf of his new employer, CNEX. This use and disclosure is ongoing and continuing, as this information serves as part of the basis for some of Plaintiffs' products, and also patented designs of its ACN and SSD technology.

**E.** **Huang signed a binding Employment, Confidentiality, Proprietary, Information and Inventions Agreement**

43. Upon joining Futurewei, Huang signed several documents, including the Agreement. The Agreement protects Futurewei's intellectual property and protects Futurewei's rights in view of Huang's access to such confidential intellectual property as an employee at Futurewei. Specifically, in exchange for receiving Futurewei's confidential, proprietary, and trade secret information, among other obligations, Huang agreed that he would hold in strictest confidence would not disclose, discuss, transmit, use, lecture upon or publish any of the Company's Confidential Information, except as such disclosure, discussion, transmission, use, or publication would be required and authorized in connection with his work for Futurewei, or unless the President or the Board of Directors expressly authorized such in writing. The term "Confidential Information" was defined in the Agreement as:

> trade secrets, confidential knowledge, data or any other proprietary information of the Company[5] and any of its subsidiaries or affiliated companies, if any. By way of illustration but not limitation, "Confidential Information" includes (a) inventions, trade secrets, ideas, processes, formulas, data, lists, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques relating to the business or proposed business of the Company and that were learned or discovered by me during the term of my employment with the Company, (hereinafter, included Confidential Information is collectively referred to as "Inventions"); (b) information regarding plans for research, development, new products and services, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers, customer lists and customers that were learned or discovered by me during the term of my employment with the Company; and (c) information regarding the identity, contact information, skills and compensation of other employees of the Company.

---

[4] http://www.tomshardware.com/news/cnex-labs-3d-xpoint-controller,32463.html
[5] The "Company" in the Agreement is Futurewei.

44.     Regarding the ownership and/or assignment of Futurewei's intellectual property, in exchange for receiving Futurewei's confidential, proprietary, and trade secret information, among other obligations, Huang agreed:

(a)     **Definition**. The term "Subject Ideas or Inventions" includes any and all ideas, processes, trademarks, service marks, inventions, designs, technologies, computer hardware or software, original . works of authorship, formulas, discoveries, patents, copyrights, copyrightable works, products, marketing, and business ideas, and all improvements, know-how, date, rights, and claims related to the foregoing that, whether or not patentable, are conceived, developed or created which: (1) relate to the Company's current or contemplated business or activities; (2) relate to the Company's actual or demonstrably anticipated research or developments; (3) result from any work performed by me for the Company; (4) involve the use of the Company's equipment, supplies, facilities or trade secrets; (5) result from or are suggested by any work done by the Huawei Employment, Confidentiality, Proprietary Information and Inventions Agreement Company or at the Company's request, or any projects specifically assigned to me; or (6) result from my access to any of the Company's memoranda, notes, records, drawings. sketches, models, maps, customer lists, research results, data, formulae, specifications, inventions, processes, equipment or other materials (collectively, Company Materials-).

(b)     **Company Ownership**. All right, title, and interest in and to all Subject Ideas and Inventions, including but not limited to all registrable and patent rights which may subsist therein, shall be held and owned solely by the Company, and where applicable, all Subject Ideas and Inventions shall be considered works made for hire. I shall mark all Subject Ideas and Inventions with the Company's copyright or other proprietary notice as directed by the Company and shall take all actions deemed necessary by the Company to project the Company's rights therein. In the event that the Subject Ideas and Inventions shall be deemed no to constitute works made for hire, or in the event that I should otherwise, by operation of law, be deemed to retain any rights (whether moral rights or otherwise) to any Subject Ideas and Inventions, I agree to assign to the Company, without further consideration, my entire right, title and interest in and to each and every such Subject Idea and Invention.

. . .

(d)     **Determination of Subject Ideas and Inventions**. I further agree that all information and records pertaining to any idea, process, service mark, invention, technology, computer hardware or software, original work of authorship, design formula, discovery, patent, copyright, product, and all improvements, know-how, rights, and claims related to the foregoing ("Intellectual Property"), that I do not believe to be a Subject Idea or Invention, but that is conceived, developed, or reduced to practice by the Company (alone by me or with others) during the period

of my employment and for one (1) year after the termination of such employment, shall be disclosed promptly by me to the Company (such disclosure to be received in confidence). The Company shall examine such information to determine if in fact the Intellectual Property is a Subject Idea or Invention subject to this Agreement.

45.     Per the Agreement, Huang also agreed that "During the first one (1) year after termination of my employment with the Company, I will provide the Company with a complete copy of each patent application filed by me or that names me as an inventor or co-inventor."

46.     Finally, in exchange for receiving Futurewei's confidential, proprietary, and trade secret information, among other obligations, Huang agreed to a one-year post-termination non-solicitation covenant regarding Futurewei's employees, as part of his Agreement:

**6.     Other Activities; Non-Competition; Non-Solicitation**

. . .

During the term of my employment and for a period of one (1) year after my employment with Company, I will not directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit, assist or in any way encourage any current employee or consultant of the Company or any subsidiary of the Company to terminate his or her employment relationship or consulting relationship with the Company or subsidiary.

**F.     Huang leaves Futurewei and founds CNEX, unlawfully solicits Plaintiffs' employees, and conspires to misappropriate Plaintiffs' confidential, proprietary, and trade secret information.**

47.     On May 31, 2013, Huang ceased his employment with Futurewei.

48.     On information and belief, on June 3, 2013, Huang, with the assistance of others, incorporated CNEX as a Delaware corporation.

49.     On information and belief, for a significant period of time prior to June 3, 2013, Huang informally operated CNEX as its founder, promoter, agent, and officer and continued in this same role following its formal incorporation.

50.     On information and belief, CNEX styles itself as a cutting-edge startup focusing on improving SSD technology and NVMe related technology.

51.     On information and belief, CNEX was founded by Huang to compete directly with Futurewei in the SSD and NVMe fields of technology.

52.     Since Huang has departed from Futurewei, other employees of Futurewei have followed.  Upon information and belief, Huang has solicited these employees to leave Futurewei during the period of his non-solicitation covenant, in express violation of this Agreement.

53.     Huang and CNEX also established branches in Hangzhou China and Shanghai China[6], including a subsidiary with Huang as the legal representative - Hangzhou A'mu Technology Co., Ltd.[7]  Upon information and belief, Huang and CNEX also solicited at least 16 employees of Huawei, with previous working experiences relating to system design, hardware design, software design, and product and validation about SSD controllers, to join its branches in China. Among those ex-Huawei employees, many had worked with Huang during his employment with Futurewei and had access to Huawei's confidential, proprietary, and trade secret information.

54.     On information and belief, Huang and CNEX have further conspired with these employees to misappropriate Plaintiffs' confidential, proprietary, and trade secret information. At least one of Futurewei's employees, a chief engineer who had worked with Huang before his departure, was caught downloading thousands of Plaintiffs' documents to his personal computer without permission.  This included hundreds of documents containing confidential, proprietary, and trade secret information.

---

[6] https://www.cnexlabs.com/
[7] Company information can be found from National Enterprise Credit Informastion Publicity System in China, with link below:
http://www.gsxt.gov.cn/%7Bg8sBAWLzh0nIY_tj1-OSlEtVSiflPZ6AzrKk2UCZLpHezb2a-H7o61Ikc28qmuOlnpZuLH-yYKwtmbPuHwloM4RWDLx8agUyi33adi9RPbgYOjeCRjDjWvo9Pk0k-wuedcmOgKOhSTnkG3NKeDu0g7JX_xofmqOGkGaOEzjyNbA-1514371643754%7D
Hangzhou Amu Technology Co. is informal translation of the subsidiary's name in Chinese.

**G. Huang files multiple patent applications using Plaintiffs' trade secrets and assigns them all to CNEX.**

55.    On June 26, 2013, less than a month after he departed Futurewei, Huang filed the first of at least eighteen patent applications that relate to work and research that Huang performed while employed at Futurewei.

56.    On information and belief, Huang used information he obtained through his employment at Futurewei in drafting these patent applications, going so far as to send proprietary documents to his personal email account immediately prior to his departure from Futurewei.

57.    Plaintiffs have identified the following patent applications to date that were filed by Huang after leaving Futurewei (collectively, the "Patent Applications"). Each of the Patent Applications, on information and belief, constitute a Subject Idea or Invention under the terms of the Agreement and, thus, should have been disclosed by Huang to allow Futurewei to determine the source of the technology and its ownership.

| Publication Number | Priority Date | File Date | Publication Date | Application Number | Assignee |
|---|---|---|---|---|---|
| CN105556930 | 6/26/2013 | 6/19/2014 | 5/4/2016 | CN2014842920 | Cnex Labs Inc. |
| TW201524170 | 6/26/2013 | 6/26/2014 | 6/16/2015 | TW20140122146 | Cnex Labs, Inc. |
| TWI571087 | 6/26/2013 | 6/26/2014 | 2/11/2017 | TW20140122146 | Cnex Labs, Inc. |
| US20150006663 | 6/26/2013 | 2/26/2014 | 1/1/2015 | US14/191335 | Cnex Labs, Inc. |
| US20150378605 | 6/26/2013 | 9/2/2015 | 12/31/2015 | US14/843884 | Cnex Labs, Inc. |
| US20150378606 | 6/26/2013 | 9/2/2015 | 12/31/2015 | US14/843891 | Cnex Labs, Inc. |
| US20150378640 | 6/26/2013 | 9/2/2015 | 12/31/2015 | US14/843892 | Cnex Labs, Inc. |
| US20160085718 | 6/26/2013 | 11/30/2015 | 3/24/2016 | US14/954691 | Cnex Labs, Inc. |
| US20160357698 | 6/26/2013 | 8/19/2016 | 12/8/2016 | US15/242299 | Cnex Labs, Inc. |
| US9430412 | 6/26/2013 | 2/26/2014 | 8/30/2016 | US14/191335 | Cnex Labs, Inc. |
| US9785355 | 6/26/2013 | 9/2/2015 | 10/10/2017 | US14/843884 | Cnex Labs, Inc. |

| Publication Number | Priority Date | File Date | Publication Date | Application Number | Assignee |
|---|---|---|---|---|---|
| US9785356 | 6/26/2013 | 9/2/2015 | 10/10/2017 | US14/843891 | Cnex Labs, Inc. |
| WO2014209764 | 6/26/2013 | 6/19/2014 | 12/31/2014 | WO2014US43279 | Cnex Labs, Inc. |
| US20150019797 | 7/14/2013 | 6/25/2014 | 1/15/2015 | US14/315172 | Cnexlabs, Inc. |
| US20150019798 | 7/15/2013 | 7/11/2014 | 1/15/2015 | US14/329578 | Cnexlabs, Inc. |
| US9785545 | 7/15/2013 | 7/11/2014 | 10/10/2017 | US14/329578 | Cnexlabs, Inc. |
| US20150032956 | 7/29/2013 | 7/25/2014 | 1/29/2015 | US14/341260 | Cnexlabs, Inc. |
| US20150036432 | 8/5/2013 | 8/4/2014 | 2/5/2015 | US14/451176 | Cnexlabs, Inc. |
| US9275740 | 8/5/2013 | 8/4/2014 | 3/1/2016 | US14/451176 | Cnexlabs, Inc. |
| US20150058539 | 8/22/2013 | 8/22/2014 | 2/26/2015 | US14/466858 | Cnexlabs, Inc. |
| US9292434 | 8/22/2013 | 8/22/2014 | 3/22/2016 | US14/466858 | Cnexlabs, Inc. |
| US20150248331 | 12/23/2013 | 7/11/2014 | 9/3/2015 | US14/328770 | Cnexlabs, Inc. |
| CN106104491 | 3/1/2014 | 2/26/2015 | 11/9/2016 | CN2015811315 | Cnexlabs Inc |
| TW201602775 | 3/1/2014 | 2/26/2015 | 1/16/2016 | TW20150106251 | Cnexlabs, Inc. |
| TWI570549 | 3/1/2014 | 2/26/2015 | 2/11/2017 | TW20150106251 | Cnexlabs, Inc. |
| WO2015134262 | 3/1/2014 | 2/26/2015 | 9/11/2015 | WO2015US17698 | Cnexlabs, Inc. |

58.     Huang did not disclose or assign the Patent Applications to Futurewei.  Instead, Huang hid the Patent Applications from Futurewei and assigned each of the Patent Applications to CNEX.

59.     Futurewei learned of the Patent Applications only after conducting its own patent research in April 2014, when it learned that the USPTO had published the first of these patents in January.  These Patent Applications demonstrate that Huang took Plaintiffs' confidential, proprietary, and trade secret information when he left Futurewei and founded CNEX. Ultimately, it would have been impossible for Huang and CNEX to develop the technology

described in the Patent Applications and the issued patents described above without Huang first misappropriating Plaintiffs' confidential, proprietary, and trade secret information.

60.     Following its discovery of these Patent Applications, Futurewei undertook additional investigations and discovered other patent applications filed by Huang, as well as Huang's illicit conduct as discussed in this Complaint.

61.     On information and belief, Huang and CNEX continue to use Plaintiffs' confidential, proprietary, and trade secret information to this day in their competition against Futurewei in the market for SSD technology and NVMe related technology.

**H.     Futurewei attempts to resolve these matters without court intervention.**

62.     On July 29, 2016, Futurewei sent Huang and CNEX a letter demanding that they honor the terms of Huang's contractual obligations and provide notice of all Subject Ideas or Inventions to Futurewei.  To date, Huang and CNEX have refused to do so.  The parties subsequently engaged in negotiations over the following months in an attempt to reach a resolution absent involvement from the Court.  These negotiations were unsuccessful.  This litigation followed.

<u>COUNTS</u>

**Count One – Declaratory Relief**

**(Against Huang and CNEX)**

63.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

64.     Under the terms of the Agreement, Huang assigned to Futurewei all Subject Ideas or Inventions, including all of Huang's ideas, processes, inventions, designs, technologies, computer hardware or software, original works of authorship, formulas, discoveries, patents, products, marketing, and business ideas, and all improvements, know-how, date, rights, and claims related to the foregoing that, whether or not patentable, are conceived, developed or created which:

i.     Relate to Futurewei's current or contemplated business or activities;

ii. Relate to Futurewei's actual or demonstrably anticipated research or developments;

iii. Result from any work performed by Huang for Futurewei;

iv. Involve the use of Futurewei's equipment, supplies, facilities or trade secrets;

v. Result from or are suggested by any work done by Futurewei or at Futurewei's request, or any projects specifically assigned to Huang; or

vi. Result from Huang's access to any of the Futurewei's memoranda, notes, records, drawings, sketches, models, maps, customer lists, research results, data, formulae, specifications, inventions, processes, equipment or other materials.

65. Despite this clear contractual requirement, Huang did not execute assignments for the Subject Ideas or Inventions discussed in this Complaint, including the Patent Applications, to Futurewei. Instead, he improperly purported to assign the Patent Applications to his company, CNEX.

66. Accordingly, a judiciable controversy has arisen as to whether the intellectual property discussed in this Complaint, including the Patent Applications, are a Subject Idea or Invention and thus must be, or by operation of the assignment provision in the Agreement have already been, assigned by Huang to Futurewei.

67. Moreover, as Huang has purported to assign the Patent Applications to CNEX, a further controversy has arisen as to whether such assignments are valid and enforceable.

68. Thus, Futurewei seeks a declaration from the Court that:

i. The Patent Applications are a Subject Idea or Invention under the terms of the Agreement;

ii. The assignments by Huang of the Patent Applications to CNEX are void; and

iii. All intellectual property derived from or related to the Patent Applications is the property of Futurewei.

**Count Two – Breach of Contract**

**Failing to Disclose and Assign Patents Containing Futurewei Technology**

**(Against Huang)**

69.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of Complaint.

70.     The Agreement was a valid, enforceable, and binding contract between Futurewei and Huang.

71.     Futurewei fully performed its obligations under the terms of the Agreement, including providing Huang with access to its confidential, proprietary, and trade secret information.

72.     Under the terms of the Agreement, in exchange for receiving Futurewei's confidential, proprietary, and trade secret information, among other obligations, Huang agreed that he would:

  i.    Maintain adequate records of all inventions he conceived while employed at Futurewei;

  ii.   Promptly disclose to Futurewei any idea or invention that Huang believed did not derive from his work at Futurewei;

  iii.  Provide Futurewei with notice of any patent application filed by Huang, or which listed Huang as an inventor, for one year after ceasing work for Futurewei;

  iv.   Assign any patent or invention that was based on a Subject Idea or Invention to Futurewei; and

  v.    Assist Futurewei in executing all documents necessary to obtain patents or other protections to protect Futurewei's intellectual property.

73.     Huang breached the Agreement by failing to honor his obligations, including at least failing to provide Futurewei with notice of any patent application filed by Huang for one year after his employment at Futurewei and, based on the incorporation of Plaintiffs' proprietary

information in such patent application(s), was required as a result to assign the Patent Applications to Futurewei, which he failed to do.

74.     As a result of Huang's breach of the Agreement, Futurewei has suffered damages in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

75.     Under the terms of the Agreement, in addition to monetary damages, Futurewei is entitled to all equitable relief necessary to remedy the above breaches by Huang, including specific performance and injunctive relief.

76.     Additionally, Futurewei is entitled to recover its attorneys' fees in being forced to bring this action under both the express terms of the Agreement and Texas Civil Practices & Remedies Code 38.001.

**Count Three - Breach of Contract**

**Disclosure of Confidential Information**

**(Against Huang)**

77.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

78.     The Agreement was a valid, enforceable, and binding contract between Futurewei and Huang.

79.     Futurewei fully performed its obligations under the terms of the Agreement, including providing Huang with access to its confidential, proprietary, and trade secret information.

80.     Under the terms of the Agreement, in exchange for receiving Futurewei's confidential, proprietary, and trade secret information, among other obligations, Huang agreed that he would hold in strictest confidence and would not disclose, transmit, lecture upon or publish any of Plaintiffs' confidential, proprietary and trade secret information except as permitted by the Agreement.

81.     Huang breached the Agreement by failing to honor his obligations, including at least

    i.    Providing Plaintiffs' confidential, proprietary and trade secret information to CNEX; and

    ii.   Using Plaintiffs' confidential, proprietary and trade secret information in drafting CNEX's patent applications.

82.     As a result of Huang's breach of the Agreement, Futurewei has suffered damages in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

83.     Under the terms of the Agreement, in addition to monetary damages, Futurewei is entitled to all equitable relief necessary to remedy the above breaches by Huang, including specific performance and injunctive relief.

84.     Additionally, Futurewei is entitled to recover its attorneys' fees in being forced to bring this action under both the express terms of the Agreement and Texas Civil Practices & Remedies Code 38.001.

## Count Four- Breach of Contract

## Solicitation of Futurewei Employees

## (Against Huang)

85.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

86.     The Agreement was a valid, enforceable, and binding contract between Futurewei and Huang.

87.     Futurewei fully performed its obligations under the terms of the Agreement, including providing Huang with access to its confidential, proprietary, and trade secret information.

88.     Under the terms of the Agreement, in exchange for receiving Futurewei's confidential, proprietary, and trade secret information, among other obligations, Huang agreed

that he would not solicit Futurewei employees during his employment and for a year after his departure.

89.     Huang breached the Agreement by failing to honor his obligations, including at least by soliciting, assisting and encouraging Futurewei employees to terminate his or her employment relationship or consulting relationship with Futurewei within one year of Huang's termination with Futurewei.

90.     As a result of Huang's breach of the Agreement, Futurewei has suffered damages in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

91.     Under the terms of the Agreement, in addition to monetary damages, Futurewei is entitled to all equitable relief necessary to remedy the above breaches by Huang, including specific performance and injunctive relief.

92.     Additionally, the terms of the Agreement provide that Futurewei is entitled to recover its attorneys' fees in being forced to bring this action under both the express terms of the Agreement and Texas Civil Practices & Remedies Code 38.001.

## Count Five - Misappropriation of Trade Secrets

## Defend Trade Secrets Act- 18 U.S.C. §§ 1832, 1836, et seq.

## (Against Huang and CNEX)

93.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

94.     As set forth more fully above, Plaintiffs' confidential, proprietary, and trade secret information includes, without limitation, Plaintiffs' ACN, SSD, and NVMe related technology, and all such similar information necessary for Plaintiffs to conduct their business in a competitive market place.

95.     Plaintiffs' trade secrets relate to products and services used in, or intended for use in, interstate commerce.

96.     Plaintiffs' trade secrets are of value to CNEX and its subsidiaries, who are competitors of Plaintiffs, as is clearly demonstrated by the extent to which Defendants engaged in the gathering, misappropriation, and transfer of such information to representatives of CNEX and its subsidiaries and their efforts to conceal these actions.

97.     Plaintiffs kept their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Plaintiffs.

98.     Plaintiffs' trade secrets revealed to CNEX and its subsidiaries are critical to the success of Plaintiffs' business and provide Plaintiffs with a distinct competitive advantage in the marketplace of SSD and NVMe related technology.

99.     Defendants were aware that Plaintiffs' trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

100.    Defendants knew that the information being obtained from Plaintiffs' computers and other sources was confidential and in the nature of trade secrets and, nevertheless, CNEX chose to receive and utilize it.

101.    As further set forth above, Defendants misappropriated Plaintiffs' trade secrets by acquiring them through unlawful means, and with intent to convert them, and/or disclosing and using them on behalf of Plaintiffs' competitors and in derogation of Plaintiffs' interest, and continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, *et seq.*

102.    Plaintiffs' trade secrets have been transferred to and maintained on CNEX computers and other electronic devices.

103.    Plaintiffs' trade secrets remain in the possession of CNEX, and upon information and belief, in the possession of the Huang as well.

104.    Defendants have combined Plaintiffs' trade secrets into various documents of CNEX, and therefore, Plaintiffs cannot uncover the full extent of Defendants' theft and

misappropriation of Plaintiffs' trade secrets without a forensic examination of CNEX computers and other electronic devices.

105.     Because Defendants continue to use Plaintiffs' confidential, proprietary, and trade secret information, along with electronic records and documents, Defendants' misappropriation of Plaintiffs' trade secrets is continuing and ongoing.

106.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

107.     In addition, Defendants' dissemination of Plaintiffs' confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Plaintiffs.

108.     The losses and harm to Plaintiffs are ongoing and cannot be remedied by damages alone.

109.     Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

110.     Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs.

**Count Six - Threatened Misappropriation of Trade Secrets**

**Defend Trade Secrets Act- 18 U.S.C. §§ 1832, 1836, et seq.**

**(Against Huang and CNEX)**

111.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of Complaint and all allegations in Count Five.

112.     As set forth more fully above, Plaintiffs' confidential, proprietary, and trade secret information includes, without limitation, Plaintiffs' ACN, SSD, and NVMe related technology, and all such similar information necessary for Plaintiffs to conduct their business in a competitive market place.

113.    Plaintiffs' trade secrets are of value to CNEX and its subsidiaries, who are competitors of Plaintiffs, as is clearly demonstrated by the extent to which Defendants engaged in the gathering, misappropriation, and transfer of such information to representatives of CNEX and its subsidiaries and their efforts to conceal these actions.

114.    Plaintiffs kept their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Plaintiffs.

115.    Plaintiffs' trade secrets revealed to CNEX and its subsidiaries are critical to the success of Plaintiffs' business and provide Plaintiffs with a distinct competitive advantage in the marketplace of SSD and NVMe related technology.

116.    Defendants were aware that Plaintiffs' trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

117.    Defendants knew that the information being obtained from Plaintiffs' computers and other sources was confidential and in the nature of trade secrets and, nevertheless, CNEX chose to receive and utilize it.

118.    As further set forth above, Defendants have threatened to misappropriate Plaintiffs' trade secrets through unlawful means, including but not limited to hiring multiple former employees of Plaintiffs who were all tasked with developing Plaintiffs' confidential information regarding its NVMe and SSD technologies. Defendants' en masse hiring of Plaintiffs' former employees who all worked on the same highly confidential projects is intended to result in those former employees disclosing Plaintiffs' trade secrets to Defendants.

119.    Upon information and belief, Defendants intend to further misappropriate and unlawfully use Plaintiffs' confidential trade secret information from Plaintiffs' former employees.

120.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are threatened with incalculable financial losses, imminent and permanent irreparable harm, loss of

the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

121.    The threatened losses and harm to Plaintiffs cannot be remedied by damages alone.

122.    Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

123.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs justifying an award of punitive or exemplary damages.

**Count Seven - Conspiracy to Misappropriate Trade Secrets**

**Defend Trade Secrets Act- 18 U.S.C. §§ 1832, 1836 et seq.**

**(Against Huang and CNEX)**

124.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of Complaint and all allegations in Counts Five and Six.

125.    On information and belief, Huang, CNEX, and others outside of CNEX (including Plaintiffs' employees who subsequently left to work at CNEX) conspired collectively to misappropriate Plaintiffs' trade secrets with the intent to convert them, and specifically those that are related to products for use in interstate or foreign commerce.

126.    To this end, on information and belief, Defendants entered into one or more agreements with others for the purpose of defrauding Plaintiffs and committing the conversion and misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, and its intellectual property.

127.    On information and belief, Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Plaintiffs.

128.    On information and belief, Huang, CNEX, and several of Plaintiffs' employees who subsequently left to work at CNEX had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

129.     Plaintiffs suffered injury as a proximate result of these wrongful acts.

130.     As such, Plaintiffs further request that Huang and CNEX be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

131.     Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

## Count Eight – Misappropriation of Trade Secrets under Common Law
### (Against Huang and CNEX)

132.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of Complaint.

133.     Plaintiffs are the owners of valid and enforceable trade secrets, including without limitation, Plaintiffs' ACN, SSD, and NVMe related technology, which is used in Plaintiffs' business and presents an opportunity to obtain an advantage over competitors who do not know or use it.

134.     All of Plaintiffs' trade secrets were confidential, proprietary, and highly valuable secrets.

135.     Plaintiffs' trade secrets, as discussed in this Complaint, were not generally known nor readily ascertainable.

136.     Plaintiffs took extensive precautions to maintain the secrecy of its trade secrets, as identified above.

137.     Plaintiffs also took reasonable precautions by specifically instructing Huang not to make unauthorized use of its proprietary and confidential information.

138.     Huang was well aware of his obligation to maintain the secrecy and confidentiality of Plaintiffs' trade secrets and to not allow unauthorized third parties to obtain access to Plaintiffs' trade secrets.

139. On information and belief, Huang was a founder, promoter, agent, and officer of CNEX; thus, his knowledge of the confidential and proprietary nature of Plaintiffs' trade secrets is imputed to CNEX.

140. Despite knowing that Huang had specifically agreed to not share Plaintiffs' trade secrets and knowing that the information Huang had improperly taken from Plaintiffs contained Plaintiffs' trade secrets, Defendants utilized and disclosed Plaintiffs' trade secrets for their own gain to develop competing technology, which they then sought to patent via the applications discussed in this Complaint.

141. Defendants have also used Plaintiffs' trade secrets to develop products that they plan to release for sale to the general public that will compete directly with the products being developed by Plaintiffs.

142. Defendants' conduct was undertaken with full knowledge of Plaintiffs' rights.

143. Defendants' misappropriation of Plaintiffs' trade secrets has caused and will continue to cause damage to Plaintiffs in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

144. In addition, Defendants' dissemination of Plaintiffs' confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Plaintiffs.

145. Defendants' conduct was malicious, deliberate, and willful, or in the alternative at least grossly negligent justifying an award of punitive or exemplary damages.

### Count Nine – Misappropriation of Trade Secrets under

### Texas Uniform Trade Secrets Act

### (Against Huang and CNEX)

146. Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

147. Plaintiffs' confidential, proprietary, and trade secret information includes, without limitation, Plaintiffs' ACN, SSD, and NVMe related technology.. Accordingly, Plaintiffs are the

owners of valid and enforceable trade secrets that meet the requirements under the Texas Uniform Trade Secrets Act.

148.     Defendants misappropriated  Plaintiffs' trade secrets on and after September 1, 2013 at least by filing some of the Patent Applications.  Defendants utilized and disclosed Plaintiffs' trade secrets for their own gain to develop competing technology, which they then sought to patent via the applications discussed in this Complaint.  Defendants have also used Plaintiffs' trade secrets to develop products that they plan to release for sale to the general public that will compete directly with the products being developed by Plaintiffs.

149.     Defendants' conduct in misappropriating Plaintiffs' trade secrets on and after September 1, 2013 was malicious, deliberate, and willful, or in the alternative at least grossly negligent justifying an award of punitive or exemplary damages and attorneys' fees.

150.     Defendants' misappropriation of Plaintiffs' trade secrets on and after September 1, 2013 has caused and will continue to cause damage to Plaintiffs in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

151.     In addition, Defendants' dissemination of Plaintiffs' confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Plaintiffs.

**Count Ten – Threatened Misappropriation of Trade Secrets under**

**Texas Uniform Trade Secrets Act**

**(Against Huang and CNEX)**

152.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint and Count Nine.

153.     As set forth more fully above, Plaintiffs' confidential and proprietary trade secrets include, without limitation, Plaintiffs' ACN, SSD, and NVMe-related technology.

154.     Plaintiffs' trade secrets are of value to CNEX and its subsidiaries, who are competitors of Plaintiffs, as is clearly demonstrated by the extent to which Defendants engaged

in the gathering, misappropriation, and transfer of such information to representatives of CNEX and its subsidiaries and their efforts to conceal these actions.

155.    Plaintiffs kept their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Plaintiffs.

156.    Plaintiffs' trade secrets revealed to CNEX and its subsidiaries are critical to the success of Plaintiffs' business and provide Plaintiffs with a distinct competitive advantage in the marketplace of SSD, and NVMe related technology.

157.    Defendants were aware that Plaintiffs' trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

158.    Defendants knew that the information being obtained from Plaintiffs' computers and other sources was confidential and in the nature of trade secrets and, nevertheless, CNEX chose to receive and utilize it.

159.    As further set forth above, Defendants have threatened to misappropriate Plaintiffs' trade secrets through unlawful means, including but not limited to hiring multiple former employees of Plaintiffs who were all tasked with developing Plaintiffs' confidential information regarding its NVMe and SSD technologies. Defendants' en masse hiring of Plaintiffs' former employees who all worked on the same highly confidential projects is intended to result in those former employees disclosing Plaintiffs' trade secrets to Defendants.

160.    Upon information and belief, Defendants intend to further misappropriate and unlawfully use Plaintiffs' confidential trade secret information from Plaintiffs' former employees.

161.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are threatened with incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

162.    The threatened losses and harm to Plaintiffs cannot be remedied by damages alone.

163.    Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

164.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs justifying an award of punitive or exemplary damages.

### Count Eleven - Conspiracy to Misappropriate Trade Secrets

### Texas Uniform Trade Secrets Act

### (Against Huang and CNEX)

165.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint and Counts Nine and Ten.

166.     On information and belief, Huang, CNEX, and others (including Plaintiffs' employees who subsequently left to work at CNEX) conspired collectively to misappropriate Plaintiffs' trade secrets with the intent to convert them.

167.    To this end, on information and belief, Defendants entered into one or more agreements with others for the purpose of defrauding Plaintiffs and committing the conversion and misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, and its intellectual property.

168.    On information and belief, Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Plaintiffs.

169.    On information and belief, Huang, CNEX, and several of Plaintiffs' employees who subsequently left to work at CNEX had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

170.    Plaintiffs suffered injury as a proximate result of these wrongful acts.

171.    As such, Plaintiffs further request that Huang and CNEX be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

172.    Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

**Count Twelve – Tortious Interference with Contractual Relations**

**(Against CNEX)**

173.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

174.    The Agreement was a valid, enforceable, and binding contract between Futurewei and Huang.

175.    CNEX had knowledge of the Agreement and Huang's obligations under the Agreement, at least through Huang, one of CNEX's co-founders and Board members.

176.    On information and belief, CNEX intentionally sought information and elicited actions from Huang in ways that it knew would cause Huang to violate the terms of the Agreement.

177.    As a result of CNEX's intentional interference with Huang's contractual relationship with Futurewei and in causing Huang to breach the Agreement, Futurewei has suffered damages in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

**Count Thirteen - Tortious Interference with Prospective Business Relations**

**(Against CNEX)**

178.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

179.    Until the events giving rise to this action, Plaintiffs had reasonable prospective economic advantages with its customers and/or prospective customers. Plaintiffs reasonably

expected that these economic advantages would continue and would not be unjustifiably disrupted.

180.    Defendants were aware of these reasonable prospective economic advantages by virtue of Huang's employment with Futurewei, as well as other former Futurewei employees.

181.    Because Defendants are competitors of Plaintiffs, they were and remain aware of these reasonable prospective economic advantages.

182.    Notwithstanding knowledge of the existence of these reasonable prospective economic advantages, Defendants intentionally and unjustifiably interfered with Plaintiffs' reasonable prospective economic advantages with its existing and/or prospective customers by instructing, directing, and allowing Huang to violate their employment agreements and misappropriate confidential, proprietary, and/or trade secret information in order to move business to Defendants.

183.    As a result of Defendants' tortious interference with Plaintiffs' reasonable prospective economic advantages with its customers and/or prospective customers, Plaintiffs have been damaged in an amount well in excess of $75,000.

184.    In addition, Defendants' dissemination of Plaintiffs' confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Plaintiffs.

185.    Plaintiffs have been irreparably injured and continue to face irreparable injury. Plaintiffs are threatened with losing the value of its confidential and proprietary information and certain reasonable prospective economic advantages, along with income and goodwill, for which a remedy at law is inadequate.

### Count Fourteen - Conspiracy to Commit Computer Fraud and Abuse Act ("CFAA")

### 18 U.S.C. §§ 1030, et seq.

### (Against Huang and CNEX)

186.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

187. Plaintiffs' computers are protected computers for purposes of the CFAA, because they are used in or affect interstate or foreign commerce.

188. In violation of the CFAA, Huang conspired with others, including but not limited to those who were employed at Plaintiffs, and acting in concert with CNEX, to knowingly and with intent to defraud exceed their authorized access to Plaintiffs' protected computers by transferring information from Plaintiffs' protected computers to CNEX computers.

189. By intentionally conspiring with Plaintiffs' employees to access Plaintiffs' protected computers without authorization and/or exceeding the scope of their authorized access and obtaining information from Plaintiffs' protected computers directly and indirectly, Defendants violated the CFAA.

190. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs have suffered damages in excess of $5,000.00 for each year in which the conduct has occurred.

191. However, as a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs have also suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, and other continuing harm. The losses and harm to Plaintiffs are ongoing and cannot be remedied by damages alone.

## Count Fifteen- RICO 18 U.S.C. § 1962(c)

### (Against Huang and CNEX)

192. Plaintiffs incorporate by reference all preceding allegations of this Complaint.

193. As set forth above, Defendants were involved in a scheme to defraud Plaintiffs by committing a series of unlawful acts which constitute predicate racketeering acts under 18 U.S.C. § 1962(c) over a prolonged period of time – in excess of two years – and multiple nefarious bad acts in several short spans during that same prolonged and more than two-year timeframe.

194. During this lengthy scheme to defraud Plaintiffs, Defendants committed predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), on multiple occasions and in

violation of various federal statutes, including the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, et seq., and the federal Wire Fraud statutes, 18 U.S.C. § 1343.

195. For more than four years and in a plan which is ongoing, Defendants worked in concert with one another, committing numerous and repeated violations of the above federal statutes to harm Plaintiffs economically.

196. At various points in time, Defendants misappropriated confidential, proprietary, and trade secret information of Plaintiffs through unlawful means, in violation of the DTSA.

197. Specifically, Defendants took and/or conspired with third parties to take confidential, proprietary, and trade secret information by downloading, stealing, copying without access, and sending it by electronic media – all in violation of the DTSA.

198. As part of this scheme, Huang and CNEX used an association-in-fact to accomplish their illegal goals and stole or utilized Plaintiffs' computers and computerized protected business information, trade secrets, as well as hard copies of confidential drawings and other documents, and provided them to CNEX.

199. In perpetrating this scheme, Defendants used the Internet and mails to accomplish many of their goals in several states.

200. Specifically, in violation of the federal Wire Fraud statutes, Huang conspired with others to email or upload onto a Cloud-based platform Plaintiffs' confidential, proprietary, and trade secret information.

201. In turn, this information was sent and/or used by Defendants for their advantage and to the disadvantage of Plaintiffs.

202. Defendants used the mails and wires to transfer and download Plaintiffs' confidential, proprietary, and trade secret information to usurp Plaintiffs' business opportunities, existing and prospective contracts, and otherwise harm Plaintiffs.

203. These transmissions were intentionally concealed from Plaintiffs in order to defraud Plaintiffs and to successfully deprive it of its proprietary information and harm it economically.

204.    Further, Defendants schemed to hire away numerous employees of Plaintiffs in an effort to compete against them.

205.    During this time, these same Defendants communicated with one another by electronic means and across state lines not only to recruit Plaintiffs employees, but also to take proprietary information from Plaintiffs' computers and Plaintiffs' information system.

206.    These acts were also perpetrated through the use of the wires, in violation of federal Wire Fraud statutes.

207.    CNEX provided an enterprise through which Defendants carried out their fraudulent activities, as described above.

208.    Each of the predicate acts perpetrated by these same Defendants in furtherance of the scheme to defraud Plaintiffs was performed by these same Defendants while participating in the conduct of the affairs of an enterprise in violation of 18 U.S.C. § 1962(c) – whether that enterprise be CNEX, or an association-in-fact comprised of Huang and other employees of Futurewei who departed Futurewei as a result of the unlawful solicitation of Huang.

209.    As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Plaintiffs have been injured in their business and property, including, but not limited to, trade secrets, drawings, intellectual property, protected business information, and equipment.

### Count Sixteen - RICO Conspiracy - 18 U.S.C. § 1962(d)

### (Against Huang and CNEX)

210.    Plaintiffs incorporate by reference all allegations in this Complaint.

211.    Defendants knowingly agreed to facilitate a scheme, a conspiracy, to defraud Plaintiffs through a pattern of interstate racketeering activity, which included the operation and/or management of a RICO enterprise.

212.    As set forth above, Defendants were involved in a scheme to defraud Plaintiffs by committing a series of unlawful acts which constitute predicate racketeering acts under 18 U.S.C. § 1962(c) over a prolonged period of time – in excess of four years – and multiple

nefarious bad acts in several short spans during that same prolonged and more than two-year timeframe.

213.    During this lengthy scheme to defraud Plaintiffs, Defendants committed predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), on multiple occasions and in violation of various federal statutes, including the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, et seq., and the federal Wire Fraud statutes, 18 U.S.C. § 1343.

214.    For over four years and in a plan which is ongoing, Defendants worked in concert with one another, committing numerous and repeated violations of the above federal statutes to harm Plaintiffs economically.

215.    At various points in time, Defendants misappropriated trade secrets of Plaintiffs through unlawful means, in violation of the DTSA.

216.    In perpetrating this scheme, Defendants used the Internet to accomplish many of their goals.

217.    Specifically, in violation of the federal Wire Fraud statutes, Defendants e-mailed or uploaded onto a Cloud-based platform countless Plaintiffs proprietary data.

218.    In turn, this information was sent and/or used by Defendants for their advantage and to the disadvantage of Plaintiffs.

219.    Defendants used the wires to transfer and download Plaintiffs' confidential, proprietary, and trade secret information to usurp Plaintiffs' business opportunities, existing and prospective contracts, and otherwise harm Plaintiffs.

220.    Further, Defendants schemed to hire away numerous employees of Plaintiffs in an effort to compete against them.

221.    During this time, these same Defendants communicated with one another by electronic means and across state lines not only to recruit Plaintiffs' employees, but also to take proprietary information from Plaintiffs' computers and Plaintiffs' information system.

222.    Each of the predicate acts perpetrated by these same Defendants in furtherance of the scheme to defraud Plaintiffs was performed by these same Defendants while participating in

the conduct of the affairs of an enterprise – whether that enterprise be CNEX or an association-in-fact comprised of Defendants – through a pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(c).

223.     As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Plaintiffs have been injured in their business and property, including, but not limited to, trade secrets, drawings, intellectual property, protected business information, and equipment.

## Count Seventeen – Conversion

## (Against Huang and CNEX)

224.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

225.     As discussed above, under the Agreement, Huang contractually assigned all Subject Ideas or Inventions containing Futurewei technology to Futurewei.

226.     Thus, Futurewei has a contractual right to ownership of the Patent Applications because they contain Futurewei technology as well as any products or inventions created by Huang or CNEX related to Futurewei's intellectual property.

227.     Huang and CNEX have wrongly taken and converted Plaintiffs' intellectual property for their own personal benefit despite Plaintiffs' demands that Defendants return this intellectual property.

228.     As a result of Defendants' conversion of Plaintiffs' property, Plaintiffs have suffered damages in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

229.     Defendants' conversion of Plaintiffs' property was done with fraud, malice, or gross negligence justifying an award of exemplary damages.

**Count Eighteen – Breach of Fiduciary Duty**

**(Against Huang)**

230.     Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

231.     Huang was employed by Futurewei as a Principal Engineer from January 2011 through May 2013.

232.     Through his employment relationship with Futurewei, Huang assumed a fiduciary duty to Futurewei.

233.     Due to this duty, Futurewei trusted Huang to use the information, training, and tools it provided him to assist the company in developing new technologies and products which are the subject matter of various patent applications.

234.     However, Huang took this knowledge and training and betrayed Futurewei's trust by, on information and belief, working as CNEX's founder, promoter, agent, and officer while still employed by Futurewei and used information related to patent applications filed while employed at Futurewei at CNEX.

235.     On information and belief, three days after leaving Futurewei, Huang incorporated CNEX and has since used CNEX to compete directly with Futurewei using the knowledge and training Futurewei provided Huang.

236.     Accordingly, Huang's conduct constitutes a breach of at least the following fiduciary duties:  duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair, honest dealing, and duty of full disclosure.

237.     As a result of Huang's breach of his fiduciary duties, Futurewei has suffered damages in an amount to be determined at trial, including but not limited to the value of the Patent Applications, which exceeds $75,000.

## Count Nineteen - Unjust Enrichment

## (Against Huang and CNEX)

238.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

239.    Defendants sought to be enriched and were enriched by their unlawful misappropriation of Plaintiffs' trade secrets and other confidential, proprietary, and trade secret information.

240.    In using Plaintiffs' confidential, proprietary, and trade secret information, Defendants were unjustly enriched by obtaining business and investment that they could not have obtained otherwise.

241.    Defendants improperly utilized such information for their own enrichment and to the detriment and harm of Plaintiffs, in derogation of their rights.

242.    Defendants are obligated to disgorge the benefits derived from their unlawful conduct, and to compensate Plaintiffs in the amount of all wrongfully obtained business, profits, and benefits.

243.    Further, it would be unequitable, unfair, and unconscionable for the Defendants to be allowed to continue to benefit from their unlawful conduct without paying appropriate compensation to Plaintiffs.

244.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of their proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

245.    Plaintiffs have no adequate remedy at law to compensate for the losses they have incurred and continue to incur as a result of Defendants' unlawful conduct.

## Count Twenty – Common Law Civil Conspiracy

## (Against Huang and CNEX)

246.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

247.    On information and belief, Huang, CNEX, and others (including Plaintiffs' employees who subsequently left to work at CNEX) conspired collectively to accomplish the unlawful purposes and torts discussed in this Complaint.

248.    To this end, on information and belief, Defendants entered into one or more agreements for the purpose of defrauding Plaintiffs and committing the conversion and misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, and its intellectual property.

249.    On information and belief, Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Plaintiffs.

250.    On information and belief, Huang, CNEX, and several of Plaintiffs' employees who subsequently left to work at CNEX had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

251.    Plaintiffs suffered injury as a proximate result of these wrongful acts.

252.    As such, Plaintiffs further request that Defendants be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

253.    Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

## Count Twenty-One - Corporate Raiding

## (Against Huang and CNEX)

254.    Plaintiffs incorporate by reference the allegations in paragraphs 13-62 of this Complaint.

255.     Defendants organized a scheme to raid Plaintiffs' employees as a means to improperly and illegally acquire Plaintiffs' workforce, its customers, its goodwill, and its confidential, proprietary, and trade secret information, in order to harm Plaintiffs in the marketplace so that Defendants could unfairly compete against Plaintiffs.

256.     Defendants' scheme, including solicitation of Plaintiffs' employees, was undertaken with unlawful and improper purpose.

257.     Defendants' scheme, including solicitation of Plaintiffs' employees, occurred through unlawful and improper means.

258.     Until Defendants carried out their scheme, Plaintiffs maintained valid relationships, or the expectancy of relationships, with its customers and employees and maintained the intellectual capital contained within its work force through training and experience. Plaintiffs reasonably expected that these relationships, its work force and its intellectual capital would continue and would not be unjustifiably disrupted.  Plaintiffs have been damaged in an amount well in excess of $75,000.

259.     Plaintiffs have been irreparably injured and it continues to face irreparable injury. Plaintiffs are threatened with losing the value of their confidential, proprietary, and trade secret information and certain customer relationships, along with income and goodwill, for which a remedy at law is inadequate.

**Count Twenty-Two - Unfair Competition Under Lanham Act and**

**Texas Common and Statutory Law**

**(Against Huang and CNEX)**

260.     Plaintiffs incorporate by reference all preceding allegations in this Complaint.

261.     The acts and omissions of Defendants described above constitute unfair competition in violation of 15 U.S.C. § 1125(a ) and Texas common and statutory law.

262.     Defendants have used in commerce words, false designation of origin, and/or false or misleading representation of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants to the origin, sponsorship,

or approval of the technology the subject of this lawsuit, the fruits thereof, and the commercial activities associated therewith.

263.     Plaintiffs have been damaged as a proximate result of the acts and omissions of unfair competition committed by Defendants.

264.     Defendants' conduct has been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

265.     Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and unless enjoined by this Court, will continue to damage Plaintiffs and to deceive the public. Plaintiffs have no adequate remedy at law with respect to Defendants acts of unfair competition.

## DISCOVERY RULE

266.     To the extent Defendant raises the affirmative defense of limitations, Plaintiffs' claims are subject to the discovery rule because the nature of the injury was inherently undiscoverable and the evidence of the injury was objectively verifiable.

## FRAUDULENT CONCEALMENT

267.     To the extent Defendant raises the affirmative defense of limitations, fraudulent concealment applies to defer the accrual period of Plaintiffs' claims because, as reflected in the allegations set forth above, (1) Defendants had actual knowledge of the wrong, (2) Defendants concealed the wrong by making a misrepresentation or by remaining silent when it had a duty to speak, (3) Defendants had a fixed purpose to conceal the wrong, and (4) Plaintiffs reasonably relied on the misrepresentation or silence.

## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

268.     CNEX is vicariously liable for all of Huang's tortious acts after Huang began employment with CNEX because these acts were performed while in the employment of CNEX and were within the scope of that employment or within the authority delegated to the employee.

## JOINT AND SEVERAL LIABILITY

269.     At all relevant times, Defendants CNEX and Huang were jointly engaged in the commission of the aforementioned tortious and unlawful actions. CNEX and Huang each acted

intentionally and their actions caused a single, indivisible injury to Plaintiffs. Accordingly, Defendants CNEX and Huang are jointly and severally liable for all of Plaintiffs' damages as plead herein.

## JURY DEMAND

261.    Plaintiffs hereby request a trial by jury on all issues so triable by right.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief as discussed in this Complaint:

a)    A declaration that the Patent Applications and associated inventions constitute a Subject Idea or Invention containing Futurewei technology under the Agreement and were thus assigned to Futurewei under the terms of the Agreement and any assignment by Huang to CNEX is void;

b)    A declaration that Plaintiffs own all legal title to the Patents and Patent Applications in dispute;

c)    A declaration that Plaintiffs own all equitable title to the Patents and Patent Applications in dispute;

d)    Actual Damages in excess of the jurisdictional requirements of this court, royalties, the disgorgement of any royalties received on the Patent Applications, unjust enrichment, and any other damages;

e)    a reasonable royalty for Defendants' unauthorized disclosure and/or use of Plaintiffs' trade secrets;

f)    Injunctive and other equitable relief, including an assignment of the Patent Applications and associated intellectual property discussed in this Complaint to Futurewei, and an order for CNEX to immediately discontinue importing, making, using, offering for sale, or selling any product or service embodying the Patent Applications;

g) Preliminary and permanent injunctive relief, and specifically an Order directing Defendants to refrain from using and/or disclosing Plaintiffs' confidential, proprietary, and trade secret information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential, proprietary, and trade secret information, and such other and further relief as this Court deems just;

h) Any multiple of damages permitted by statute;

i) All actual, economic, incidental, and "head-start" damages incurred by Plaintiffs as a result of Defendants' misappropriation of trade secrets and other tortious behavior;

j) Punitive, exemplary and statutory damages in excess of the jurisdictional requirements of this court;

k) Prejudgment and post-judgment interest;

l) Attorneys' fees and costs pursuant to the terms of the Agreement;

m) Attorneys' fees and costs pursuant to Texas Civil Practices and Remedies Code 38.001;

n) Attorneys' fees and costs pursuant to Texas Civil Practices and Remedies Code 134A;

o) Attorneys' fees and costs;

p) Preliminary and permanent injunctive relief preventing Defendants from continuing to use in commerce words, false designation of origin, and/or false or misleading representation of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Huang and CNEX to the origin, sponsorship, or approval of the technology the subject of this lawsuit, the fruits thereof, and the commercial activities associated therewith;

q) All available damages and remedies allowed under 15 U.S.C. 1117 including exceptional case damages; and

r)  All available damages and remedies allowed under the common and statutory laws of the State of Texas for Defendants acts and omissions of unfair competition.

Plaintiffs further request all additional relief to which they may be legally and/or equitably entitled.

Dated:  December 28, 2017        Respectfully Submitted,

By:   */s/  Clyde M. Siebman*

Respectfully submitted,

**SIEBMAN, BURG, PHILLIPS &
SMITH, LLP**

**Clyde M. Siebman**
Texas Bar No. 18341600
**Elizabeth S. Forrest**
Texas Bar No. 24086207
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090
(903) 870-0070 (office)
(903) 819-3076 (cell)
clydesiebman@siebman.com

**SEYFARTH SHAW LLP**

**Michael D. Wexler** (*Motion to Appear Pro Hac Vice Forthcoming*)
Illinois State Bar No. 6207847
**Andrew S. Boutros** (*Motion to Appear Pro Hac Vice Forthcoming*)
Illinois Bar Number: 6322276
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606

**Jesse M. Coleman**
E.D. Tex. Bar. No. 24072044
Texas Bar No. 240702044
700 Milam Street, Suite 1400
Houston, Texas  77002-2812
Telephone:  (713) 225-2300
Telecopier:  (713) 225-2340
jmcoleman@seyfarth.com

***Counsel for Huawei Technologies Co., Ltd.
and Futurewei Technologies, Inc*.**