IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO., LTD.**, a Chinese corporation, and **FUTUREWEI TECHNOLOGIES, INC.**, a Texas corporation, | **NO. 4:17-CV-893-ALM** |
| Plaintiffs, v. | Jury Trial Demanded |
| **YIREN RONNIE HUANG**, an individual, and **CNEX LABS, INC.**, a Delaware corporation, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 6

I.     Venue is proper in the Eastern District of Texas. ................................................ 6

      A.     Venue is proper in the Eastern District of Texas pursuant to 28 USC § 1391(b)(2). ............................................................................................................ 7

      B.     Venue is proper in the Eastern District of Texas because of the forum-selection clause in the Agreement. ................................................................. 10

      C.     Venue is proper over CNEX as a closely-related party. ...................................... 13

II.    Counts 5-22 of Plaintiffs' Complaint properly state claims. ............................... 14

      A.     None of Plaintiffs' claims are barred by any statute of limitations. ..................... 15

            1.     Plaintiffs' claims for common law civil conspiracy (Count 20), Conspiracy to Commit Misappropriation of Trade Secrets (Counts 7, 11), and Conspiracy to Violate the CFAA (Count 14) are not time-barred by either Texas or federal law. ............................................................................... 17

            2.     Plaintiffs' claims for Conversion (count 17), Unjust Enrichment (Count 19), and Unfair Competition (Count 22) are not time-barred. .................. 17

            3.     Plaintiffs' claims for tortious interference with contractual relations and prospective business relations (Counts 12-13) are not time-barred. ......... 18

            4.     Plaintiffs' Misappropriation and Threatened Misappropriation of Trade Secrets Claims (Counts 5-6, 8-10) were filed well within the applicable three year statutes of limitation. .............................................................. 18

            5.     The discovery rule and Defendants' fraudulent concealment are both proper bases for tolling the statutes of limitation. ...................................... 19

      B.     Plaintiffs' claim for Corporate Raiding (Count 21) is valid under Texas law. ..... 20

      C.     Plaintiffs' Common Law Civil Conspiracy (Count 20) and RICO claims (Counts 15-16) are pleaded with the requisite particularity. ............................................. 21

      D.     Plaintiffs' Complaint states a claim for intentional interference with prospective business relations (Count 13). ............................................................................. 22

      E.     Plaintiffs' claims for Conversion (Count 17) state a cause of action. .................. 24

III.   Plaintiffs request leave to replead any claims THIS COURT DEEMS INADEQUATELY PLEADED. .............................................................................................................. 25

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeroquip Corp. v. Chunn*,
   526 F. Supp. 1259 (M.D. Ala. 1981) ....................................................................20

*Alternative Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*,
   No. CIV.SA05CA0172-XR, 2005 WL 1862631 (W.D. Tex. July 8, 2005)...........................13

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009)............................................................................14

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   134 S. Ct. 568 (2013)...................................................................1, 10, 12

*Baker v. LeBoef, Lamb, Leiby, & Macrae*,
   105 F.3d 1102 (6th Cir. 1997) ...................................................................13

*Baker v. Putnal*,
   75 F.3d 190 (5th Cir. 1996) ....................................................................14

*Becker v. DPC Acquisition Corp.*,
   No. 00 CIV 1035 WK, 2001 WL 246385 (S.D.N.Y. Mar.13, 2001).........................................7

*Camp v. Patterson*.................................................................................24

*City of New Orleans v. Mun. Admin. Servs., Inc.*,
   376 F.3d 501 (5th Cir. 2004) ....................................................................12

*Conn Credit I, LP v. TF LoanCo III, LLC*,
   No. 1:14-CV-00429, 2015 WL 13036678 (E.D. Tex. Mar. 11, 2015) ...............................8, 12

*D.B. Inc. v. Nat'l Admin. Sols. Corp.*,
   No. 3-03-CV-2189-R, 2004 WL 865842 (N.D. Tex. Apr. 21, 2004)....................................13

*Emelike v. L–3 Commc'ns Corp.*,
   No. 3:12–CV–2470, 2013 WL 1890289 (N.D.Tex. May 7, 2013)..........................................7

*Hernandez v. Frazier*,
   No. CV SA-ll-CV-9-DAE, 2014 WL 1390887 (W.D. Tex. Apr. 9, 2014)............................16

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206 (7th Cir. 1993) ....................................................................13

*JetPay Merch. Servs., LLC v. Chartis Specialty Ins. Co.*,
    No. 3:13-CV-0401-M, 2013 WL 3387517 (N.D. Tex. July 8, 2013)......................................6

*Johns-Manville Corp. v. Guardian Indus. Corp.*,
    586 F. Supp. 1034 (E.D. Mich. 1983), amended, No. CIV.A. 81-70248, 1984
    WL 63627 (E.D. Mich. Apr. 3, 1984), and aff'd, 770 F.2d 178 (Fed. Cir. 1985)...................20

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ...............................................................................................24

*Manetti–Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) ................................................................................................13

*McCaskey v. Cont'l Airlines, Inc.*,
    133 F. Supp. 2d 514 (S.D. Tex. 2001) ...................................................................................6

*Morgan v. Hubert*,
    335 Fed.Appx. 466 (5th Cir. 2009)........................................................................................14

*O'Grady v. Twentieth Century Fox Film Corp.*,
    No. 5:02 CV 173, 2003 WL 24174616 (E.D. Tex. Dec. 19, 2003) ........................................20

*Principal Tech. Eng'g, Inc. v. SMI Cos.*,
    No. 4:09-CV-316, 2009 WL 4730609 (E.D. Tex. Dec. 8, 2009) .............................................7

*Prosperity Bank v. Balboa Music Festival, LLC*,
    No. 4:13-cv-00288, 2014 WL 1023935 (S.D. Tex. Mar. 13, 2014) .................................10, 11

*Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*,
    No. 4:15CV307, 2018 WL 446320 (E.D. Tex. Jan. 17, 2018) ..........................................16, 19

*Red Barn Motors, Inc. v. Nextgear Capital, Inc.*,
    No. CIV.A. 13-00778-BAJ-, 2014 WL 4986674 (M.D. La. Sept. 29, 2014) .........................13

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*,
    No. 6:16-CV-298-RWS-KNM, 2017 WL 3671377 (E.D. Tex. Feb. 9, 2017) ...............8, 9, 11

*Rickards v. Canine Eye Registration Found., Inc.*,
    704 F.2d 1449 (9th Cir. 1983) ...............................................................................................23

*Rimkus Consulting Group, Inc. v. Cammarata*,
    688 F.Supp.2d 598 (S.D.Tex. 2010) ................................................................................22, 23

*Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*,
    No. 4:10-CV-608, 2011 WL 2009958 (E.D. Tex. Apr. 11, 2011)..........................................12

*Software Sys., Inc. v. Ajuria,*
  No. 05-99-01338-CV, 2000 Tex. App. LEXIS 5277 (Tex. App.--Dallas Aug.
  9, 2000, no pet.) ............................................................................................20

*Star Tobacco Inc. v. Darilek,*
  298 F. Supp. 2d 436 (E.D. Tex. 2003) ...........................................................23, 24

*Texas Marine & Brokerage, Inc. v. Euton,*
  120 F. Supp. 2d 611 (E.D. Tex. 2000) .................................................................7

*Transplace Texas, LP v. Alioto,*
  No. 4:16-CV-647, 2016 WL 6996267 (E.D. Tex. Nov. 30, 2016) ........................14

*Versata Software, Inc. v. Internet Brands, Inc.,*
  2012 WL 588790 (E.D. Tex. Feb. 22, 2012) ........................................................19

*W. Gulf Mar. Ass'n v. Lake Charles Stevedores, LLC,*
  No. CIV. A. H-09-2367, 2010 WL 276169 (S.D. Tex. Jan. 15, 2010)....................8

*Whiddon v. Chase Home Fin., LLC,*
  666 F. Supp. 2d 681 (E.D. Tex. 2009)............................................................16, 18

*Williamson-Dickie Mfg. Co. v. M/V HEINRICH J,*
  762 F. Supp. 2d 1023 (S.D. Tex. 2011) ..........................................................6, 14

*Zhejiang Med. Co. v. Kaneka Corp.,*
  No. CV H-11-1052, 2012 WL 12893418 (S.D. Tex. Aug. 13, 2012) ....................22

**Statutes**

18 U.S.C. § 1832.................................................................................................21

18 U.S.C. § 1961.................................................................................................21

28 U.S.C. § 1391............................................................................................11, 12

28 U.S.C. § 1404(a) .......................................................................................10, 11

28 U.S.C. § 1406(a) .............................................................................................10

28 USC § 1391(b)(2) .......................................................................................6, 14

Computer Fraud and Abuse Act .................................................................5, 16, 17

Defend Trade Secrets Act of 2016...................................................................5, 21

Texas Citizen Participations Act...........................................................................24

Texas Uniform Trade Secrets Act...........................................................................5

**Other Authorities**

Exhibit A ...................................................................................................................................4, 5

Federal Rule of Civil Procedure 15(a)(1)(2)..................................................................................24

Federal Rule 15 ..............................................................................................................................2

Rule 9(b) ................................................................................................................................21, 22

Rule 12(b)(3)...............................................................................................................................10

Rule 12(b)(6)..........................................................................................................................1, 14

Plaintiffs Huawei Technologies Co., Ltd. ("Huawei") and Futurewei Technologies, Inc. ("Futurewei") (collectively, "Plaintiffs"), by and through their undersigned counsel, state as follows in response to Defendants Yiren Ronnie Huang ("Huang") and CNEX Labs, Inc.'s ("CNEX") (collectively, "Defendants") Motion to Dismiss for Improper Venue and for Failure to State a Claim Under Rule 12(b)(6).

## **INTRODUCTION**

Defendants' Motion asks this Court to dismiss Plaintiffs' Complaint on three grounds: (1) that venue is improper in this District, (2) that certain counts are time-barred, and (3) that certain counts lack the requisite particularity or are otherwise improperly pleaded. None of these arguments have merit and Defendants' Motion should be denied.

In their continuing efforts to avoid the clear forum and venue selection provisions in Huang's Employment Confidentiality, Proprietary Information and Inventions Agreement with Futurewei ("the Agreement"), Defendants attempt to turn the Supreme Court's decision in *Atlantic Marine* on its head. Instead of adhering to the rule that forum selection clauses be enforced in "all but the most exceptional cases," Defendants would have this Court hold that forum and venue selection clauses like the one in the Agreement are to be essentially disregarded in favor a traditional venue analysis. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). The *Atlantic Marine* decision contains no such holding. Although Huang expressly agreed to venue in this Court in his Agreement, venue is also statutorily proper in this District because a substantial part of the events giving rise to Plaintiffs' claims took place in the Eastern District of Texas. As a closely-related party, CNEX is also subject to venue in this District by virtue of the forum selection clause in Huang's Agreement. Nowhere in their Motion do Defendants acknowledge or cite to the closely-related-party doctrine.

Defendants' other arguments are similarly unavailing. Defendants' position that certain claims are time-barred assumes that Plaintiffs knew of **all** of their potential claims in April 2015, upon the very first publication of one of the patent applications listed in Plaintiffs' Complaint ("the Subject Patents").  But although Plaintiffs began to be made aware of some of the factual bases for their breach-of-contract and possibly their **trade secret** claims in April 2015 (and filed those claims within the relevant statutes of limitations), Plaintiffs did not discover Defendants' other wrongful conduct until Plaintiffs further investigated Defendants' activities. For example, Plaintiffs did not learn of Huang's unauthorized use of Plaintiffs' computer systems until well after April 2015.

Plaintiffs anticipate filing an Amended Complaint as a matter of course, within the time limits set forth in Federal Rule of Civil Procedure 15, which Plaintiffs anticipate would provide additional information substantiating certain claims (and to correct what Defendants already recognize as a scrivener's error in one allegation).  Nevertheless, given its failure on the merits, Defendants' Motion to Dismiss should be denied.

## <u>BACKGROUND</u>

Defendant Huang is a former employee of Futurewei. He was hired in January 2011 to research various technologies, including architecture design and product development about Solid State Storage Device ("SSD") technology and Advanced Computing Network ("ACN") technology. (Compl. Dkt. 1, ¶ 4.) As part of his job responsibilities, Huang worked closely with Plaintiffs' employees on researching and developing PCIE SSD architecture, ACN architecture and chip design, and related products, and implementing new technologies, including extensive work on the implementation of the Non-Volatile Memory Express ("NVMe") standard and the Interlaken standard. (*Id.*) As part of his job responsibilities, Huang worked closely with employees of Plaintiffs on researching and developing SSD architecture, ACN architecture and

2

chip design, and related products. This research included extensive work on the implementation of the NVMe interface. NVMe is a logical interface for accessing SSD non-volatile storage media.

By nature of his job responsibilities, Huang had direct access to Plaintiffs' confidential, proprietary, and trade secret information. (*Id.* ¶ 5.) This included highly sensitive information about Plaintiffs' research, development, products and market analysis. Specifically, this information included highly valuable confidential, proprietary, and trade secret information regarding Plaintiffs' implementation of SSD technology, ACN technology, and NVMe related technology. Huang accessed this information on a regular basis and used it to strategically develop Plaintiffs' products, patents or other intellectual property, and also to market and to perform technology analysis. (*Id.*)

At the outset of his employment with Futurewei, and as a condition of that employment, Huang entered into the Agreement. (*Id.* at ¶ 6.) Huang's job responsibilities involved access to Plaintiffs' confidential, proprietary and trade secret information, including highly sensitive information about Plaintiffs' research, development, products, and market analysis. Accordingly, pursuant to the Agreement, Huang agreed not to disclose any of Futurewei's confidential, proprietary and trade secret information to anyone not authorized to receive that information. (*Id.*)  Moreover, Huang assigned to Futurewei, *inter alia*, any invention or idea that he conceived of that related to his work at Futurewei. The Agreement also required Huang, for one year following termination of his employment, to provide Futurewei with a complete copy of each patent application filed by Huang or that named Huang as an inventor or co-inventor. (*Id.*)

Huang resigned from Futurewei effective May 31, 2013. Three days later, he established Defendant CNEX with two other individuals. (*Id.* ¶ 8.)  Less than a month later, Huang began

filing patent applications that were based on or related to work that he performed while employed by Futurewei, and specifically related to his work on NVMe technologies. (*Id.*) Rather than being timely informed of those patent applications by Huang per the requirements of the Agreement, Plaintiffs began discovering some of Huang's unlawful conduct in 2015, after the United States Patent and Trademark Office ("USPTO") published one of Huang's patent applications that was closely related to his work at Futurewei.  (*Id.* ¶ 9.) Over the next two years, Huang went on to file twenty-five (25) other patent applications that are closely related to his work at Futurewei ("the Subject Patents"). (*Id.* ¶57.)

Since Huang's departure from Futurewei and founding of CNEX, other of Plaintiffs' employees have departed Futurewei or Huawei and gone to work for CNEX. (*Id.* ¶ 10.) At least one of these employees was caught downloading thousands of documents from Plaintiffs' information systems (including hundreds of confidential documents) before his departure from Plaintiffs and subsequently joining CNEX. (*Id.*) Upon information and belief, and in violation of the Agreement, Defendants offered those employees lucrative positions at CNEX to leave their employment with Plaintiffs.  (*Id.* ¶ 10.)

Contrary to the assertions in Defendants' Motion to Dismiss, Huang's employment with Futurewei represented a substantial connection to the Eastern District of Texas. Futurewei is incorporated in the State of Texas, with its principal place of business in Plano Texas. (*See* Declaration of P. Hashim attached hereto as Exhibit A ¶ 3.) In particular, the principal place of business for the ownership and management of Futurewei's intellectual property assets at issue in this dispute is in Plano, Texas. (*Id.*) Futurewei employs a significant number of employees in this District at its offices in Plano, Texas. (*Id.* ¶ 4.) Certain of Futurewei's corporate departments, which Huang would have interacted with as part of his duties at Futurwei such as Finance,

4

Payroll, Standards, and Intellectual Property, are headquartered in Plano, Texas. (*Id.* ¶ 5.) Moreover, certain employment records, including Huang's Agreement, are located in Plano, Texas, as well as relevant documents concerning the confidentiality, proprietary, and trade secret information Futurewei alleges Huang used to create the patents in dispute. (*Id.*) During Huang's employment with Futurewei, he interacted on numerous occasions with individuals in Futurewei's intellectual property law department in Plano, Texas. Relevant interactions would have occurred telephonically, or via email. (*Id.* ¶ 6.)

During Huang's employment, Futurewei filed three provisional patent applications originated by Huang during the course of his employment at Futurewei. (*Id.* ¶ 7.) These three provisional applications gave rise to corresponding U.S. non-provisional patent applications. Each of the provisional and non-provisional patent applications originated from, and was prosecuted by, the law firm of Slater and Matsil, located in Dallas, Texas, based upon numerous telephonic and/or email exchanges between Huang and Slater and Matsil personnel located in Texas. (*Id.*) Huawei, Futurewei's parent, established patent "families" arising from these U.S. patent applications, and filed corresponding patent applications internationally for purposes of securing patent protection for the innovations Huang developed as presented in each of these applications.  Ultimately, a total of seventeen provisional and non-provisional patent applications have been filed by Futurewei or Huawei directed to inventions Huang developed during the course of his employment by Futurewei.  Four patents have issued to date from these applications. (*Id.*)

Futurewei maintains a data center within the Eastern District in Allen, Texas.  This data center hosts an array of internet proxy servers, email servers, and virtual private network ("VPN") remote access servers for purposes of handling communications needs of Futurewei

personnel wherever they may be located, including when traveling from their respective offices. This functionality is duplicated in at least one other site for purposes of redundancy and network security. (*Id.* ¶ 8.) Defendants' claims that "Futurewei (R&D) USA Headquarters" are located in California are incorrect. (*Id.* ¶ 9.)  "Futurewei (R&D) USA Headquarters" is not a legal entity of Futurewei, and has no organizational relevance within Futurewei's principal place of business is located in Plano, Texas. (*Id.*)

After Plaintiffs learned of some of Huang's wrongful conduct, the parties entered into a standstill agreement, which allowed Plaintiffs to continue investigating Defendants' activities, including applications for the Subject Patents that CNEX filed in 2016 and 2017. Plaintiffs subsequently filed this lawsuit against Huang and CNEX on December 28, 2017, for claims including but not limited to declaratory relief, breach of contract, violations of the Defend Trade Secrets Act of 2016, conspiracy, violations of the Texas Uniform Trade Secrets Act, violation of the Computer Fraud and Abuse Act, violations of the Racketeer Influenced and Corrupt Organizations Act, and Lanham Act violations. Plaintiffs' Complaint seeks, in part, to establish ownership of the patents that were submitted by Huang, and to further determine what confidential, proprietary, and trade secret material belonging to Plaintiffs was misappropriated by Defendants and incorporated into the Subject Patents, CNEX products, or intellectual property licensed or sold to third-parties.

## ARGUMENT

## I.    VENUE IS PROPER IN THE EASTERN DISTRICT OF TEXAS.

Defendants first argue that Plaintiffs' Complaint should be dismissed because the Eastern District of Texas is an improper venue for this lawsuit. In considering a motion to dismiss for improper venue, courts will "accept uncontroverted facts contained in the plaintiff's complaint as true, and resolve any conflicts in the parties' affidavits in the plaintiff's favor." *Williamson-Dickie*

*Mfg. Co. v. M/V HEINRICH J*, 762 F. Supp. 2d 1023, 1026 (S.D. Tex. 2011); *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 520 (S.D. Tex. 2001). "While a defendant need not affirmatively disprove all bases for a plaintiff's choice of venue, courts will provide the plaintiff the benefit of the doubt in ascertaining the controlling facts." *Id.*

In this matter, venue in this District is appropriate because a substantial part of the acts giving rise to Plaintiffs' claims arose in this District.  Venue is also appropriate regarding Huang because he expressly agreed to venue in this District as part of the Agreement.  And, venue is appropriate regarding CNEX because it is as a closely-related party.

A. **Venue is proper in the Eastern District of Texas pursuant to 28 USC § 1391(b)(2).**

A case may also be brought in a judicial district in which a "substantial part" of the events giving rise to the dispute occurred. 28 U.S.C. § 1391(b)(2). "This subsection requires only that the contacts with the district be substantial, not that 'the most relevant events took place' there." *JetPay Merch. Servs., LLC v. Chartis Specialty Ins. Co.*, No. 3:13-CV-0401-M, 2013 WL 3387517, at *2 (N.D. Tex. July 8, 2013) *citing Emelike v. L–3 Commc'ns Corp.*, No. 3:12–CV– 2470, 2013 WL 1890289, at *3 (N.D.Tex. May 7, 2013) *and Becker v. DPC Acquisition Corp.*, No. 00 CIV 1035 WK, 2001 WL 246385, at *3 (S.D.N.Y. Mar.13, 2001). "The language of the statute, as amended in 1990, operates to establish venue in a given district as long as 'substantial' activities took place in that district, even if the activities in another district happen to be more substantial, or even the most substantial." *Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000) (venue proper in Eastern District of Texas in trademark infringement action where defendant advertised in a magazine distributed in the Eastern District of Texas).

Venue is proper in this District because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Texas. With regard to Plaintiffs' breach of contract claims, "[i]n determining where substantial events giving rise to an action for breach of contract occur[ ], the Court should consider where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Principal Tech. Eng'g, Inc. v. SMI Cos.*, No. 4:09-CV-316, 2009 WL 4730609, at *2 (E.D. Tex. Dec. 8, 2009) (internal citations and quotations omitted). Where a contract is negotiated, even partially, in a district, venue is proper in that district even if performance of the contract was to take place in another district. *Id.* ("Here, the pleadings and testimony show that the contract for Defendant to fabricate the modular sulfur recovery units was negotiated, at least partially, in Collin County, Texas, executed by Plaintiff in Collin County, Texas, and payment was made from Collin County, Texas. While the contract was partially negotiated in Louisiana, executed by Defendant in Louisiana, and the alleged breach appears to have occurred in Louisiana, substantial events giving rise to an action for breach of contract occurred in the Eastern District of Texas."). In this case, Huang's Agreement would have been returned to Huawei's legal and human resources departments in Collin County, Texas. (Ex. A at ¶ 5.)

Even if Huang's Agreement had been negotiated *entirely* outside of this District, venue would still be proper here because his breach is connected to this District. *See Conn Credit I, LP v. TF LoanCo III, LLC*, No. 1:14-CV-00429, 2015 WL 13036678, at *3–4 (E.D. Tex. Mar. 11, 2015) ("Here, all contract negotiations were conducted outside of the Eastern District of Texas…But Plaintiff's performance and Defendant's breach are both connected to this district.") *citing W. Gulf Mar. Ass'n v. Lake Charles Stevedores, LLC*, No. CIV. A. H-09-2367, 2010 WL 276169, at *7 (S.D. Tex. Jan. 15, 2010) ("[E]vents or omissions pertaining to [performance and

breach] are sufficient to qualify as a substantial part of the plaintiff's claim and constitute prima facie evidence supporting venue in this district.").  Specifically, his breach violates the legal rights of Futurewei, which is a Texas corporation with its principal place of business in Collin County.

For Plaintiffs' tort claims, venue is also appropriate in this District as substantial events giving rise to those claims occurred in this District. In denying a motion to transfer venue under similar circumstances, the court in *Redi-Mix Solutions, Ltd. v. Express Chipping, Inc.* found proper venue in the Eastern District of Texas for tort claims related to a breach of contract claim:

> The only tort Plaintiffs allege [defendant] Knox committed is misappropriation of confidential information…accordingly, a substantial part of the events giving rise to the claim of misappropriation of confidential information must arise in the Eastern District of Texas, Tyler Division for venue to be proper….
>
> …The contract, which is the basis for this cause of action, was signed in Anderson County. Redi-Mix gave the employee information and other confidential information to Knox in Anderson County. The cease and desist letter Redi-Mix sent to Knox and Express Chipping was mailed from Anderson County. Additionally, Knox and/or Express Chipping made contact with certain employees in Anderson County. These actions go toward the elements of the existence of a valid contract and the willful and intentional act of interference. As such, they are a substantial part of the events giving rise to the cause of action for tortious interference with contract. Accordingly, venue is proper with this Court and this District as to Express Chipping for both respondeat superior and tortious interference.

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, No. 6:16-CV-298-RWS-KNM, 2017 WL 3671377, at *8–9 (E.D. Tex. Feb. 9, 2017), *report and recommendation adopted*, No. 6:16-CV-298-RWS-KNM, 2017 WL 3671372 (E.D. Tex. Mar. 14, 2017) (internal citations omitted). Here, the Complaint alleges that Defendants tortiously interfered with Plaintiffs prospective business relations: those business relations naturally arise out of Futurewei's principal place of business in this District.

**B.      Venue is proper in the Eastern District of Texas because of the forum-selection clause in the Agreement.**

In their Motion, Defendants dismiss the idea that parties could determine venue through a private agreement, "as though a private contract can outweigh controlling statutory authority and judicial authority." (Mot. p. 11.) The Supreme Court's holding in *Atlantic Marine* specifically states that parties can do exactly that by contractually stipulating to venue where it might not otherwise be proper (although in this case, it is otherwise proper): "Unlike § 1406(a), § 1404(a) does not condition transfer on the initial forum's being 'wrong. And it permits transfer to any district where venue is also proper (i.e., "where [the case] might have been brought") *or* to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Const. Co.*, 134 S. Ct. at 579 (2013) (emphasis added).

Defendants' position, and respectfully that taken by the district court in *Prosperity Bank v. Balboa Music Festival, LLC,* No. 4:13-cv-00288, 2014 WL 1023935, at *2 (S.D. Tex. Mar. 13, 2014), are incorrect, and misapply the *Atlantic Marine* holding. (Mot. p. 12.) The question presented in *Atlantic Marine* was fundamentally a question of civil procedure: the Court was considering whether a 28 U.S.C. § 1404(a) Motion, a 28 U.S.C. § 1406(a) Motion, or a Rule 12(b)(3) Motion was the proper mechanism for enforcing a valid forum selection clause. *Atlantic Marine*, 134 S. Ct. at 577. As the Court noted, two of those potential mechanisms for enforcing a forum selection clause—§1406(a) and 12(b)(3)— "authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought," while a § 1404(a) motion does not require a finding that venue in the original court is improper. *Id.* The portions of *Atlantic Marine* quoted in Defendants' Motion addressed whether or not a forum selection clause, *in and of itself*, rendered venue improper when the lawsuit was filed in a district other than the district specified by the parties in their forum selection agreement. *Id.* The Court found that while a

forum selection clause did not render venue "wrong" or "improper" in a district other than the one selected by the parties' agreement, that valid forum selection clauses should still be enforced "in all but the most exceptional cases" and that § 1404(a) was the proper mechanism for enforcing such an agreement. *Id.* at 578. The Court did ***not*** state that a valid forum selection clause would nonetheless be ignored if venue was improper in the selected district. In fact, the Court stated just the opposite, noting ***in the disjunctive*** that 1404(a) "permits transfer to any district where venue is also proper (i.e., "where [the case] might have been brought") ***or*** to any other district to which the parties have agreed by contract or stipulation." *Id.* at 579 (2013) (emphasis added).

The facts of the underlying case in *Atlantic Marine* demonstrate the error of Defendants' approach. The petitioner in *Atlantic Marine* was headquartered in the Eastern District of Virginia, but the respondent was located in the Western District of Texas where all of the work was to be performed under the contract at issue. *Id.* at 575. The only connections to the Eastern District of Virginia were that (1) the petitioner was headquartered in that district, and (2) the parties contractually agreed that all disputes arising out of the agreement would be litigated in state or federal courts in the Eastern District of Virginia (both of these connections are also present in this case). *Id.* Under Defendants' interpretation of *Atlantic Marine*, the Court should have engaged in a venue analysis to determine whether venue was proper in the forum selected in the contract (the Eastern District of Virginia). Yet the Supreme Court found the ***exact opposite***: it did not engage in a venue analysis for the Eastern District of Virginia, and instead remanded the case to the Fifth Circuit to consider only whether public interest factors weighed against the transfer to the Eastern District of Virginia. *Id.* at 584. The Supreme Court added that

if no such public interest factors were present, the case was to be transferred to the Eastern District of Virginia *on the basis of the parties' forum selection agreement*. *Id.*

Defendants rely upon the holding in *Prosperity Bank v. Balboa Music Festival, LLC*, which no other court in the Southern District of Texas, nor the Fifth Circuit or the Eastern District of Texas has adopted. On the other hand, there are numerous decisions *from this District*—-from both before and after Atlantic Marine—enforcing forum selection clauses without any analysis or consideration of whether the selected forum was also the proper venue under § 1391. *See Redi-Mix Sols., Ltd.*, 2017 WL 3671377, at *8 (E.D. Tex. Feb. 9, 2017) ("Plaintiffs assert that venue is proper as to Knox because he contractually agreed to venue in Texas…venue selection clauses are prima facie valid…Defendants do not dispute the validity of the clause… Accordingly, Knox agreed to venue in Anderson County, which is located in the Tyler Division of the Eastern District of Texas. Therefore, venue is proper as to each claim asserted against Knox.") (internal citations omitted); *Conn Credit I, LP v. TF LoanCo III, LLC*, No. 1:14-CV-00429, 2015 WL 13036678, at *1 (E.D. Tex. Mar. 11, 2015) ("This court holds that Plaintiff's choice of venue is proper in the Eastern District of Texas because an unambiguous forum selection clause in the parties' contract permits venue in the Eastern District."); *Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*, No. 4:10-CV-608, 2011 WL 2009958, at *3 (E.D. Tex. Apr. 11, 2011), *report and recommendation adopted*, No. 4:10-CV-608, 2011 WL 1986201 (E.D. Tex. May 23, 2011) ("Parties to a contract are permitted to select venue via a forum selection clause.") *citing City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501 (5th Cir. 2004).

The Supreme Court's ruling in *Atlantic Marine* with regards to the enforcement of forum selection clauses was clear: they should be enforced in "all but the most exceptional

circumstances." *Atl. Marine Const. Co.*, 134 S. Ct. at 578 (2013). The Supreme Court did not

state that forum selection clauses should be enforced only if venue is proper in the selected

forum under 28 U.S.C. § 1391. Huang's Agreement and his consent to the exclusive jurisdiction

of this Court and venue in this Court should not be ignored simply because Defendants would

rather litigate this matter in California.

### C.      Venue is proper over CNEX as a closely-related party.

The forum selection clause in Huang's Agreement also provides for venue in this District

over any claims against CNEX because it is a closely-related party. Defendants argue, without

citation to any authority, that "Plaintiffs cannot attempt to assert venue over CNEX by virtue of a

forum-selection clause in a contract to which CNEX is not a party." (Mot. p. 12.) On the

contrary, district courts throughout the Fifth Circuit hold that a non-party to a forum selection

clause may still be bound or may enforce a forum-selection clause if the non-party is "closely

related to the dispute such that it becomes foreseeable that it will be bound." *D.B. Inc. v. Nat'l

Admin. Sols. Corp.*, No. 3-03-CV-2189-R, 2004 WL 865842, at *3 (N.D. Tex. Apr. 21, 2004)

(citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993), *Baker v. LeBoef, Lamb,

Leiby, & Macrae*, 105 F.3d 1102 (6th Cir. 1997), *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858

F.2d 509, 514 (9th Cir. 1988)); A*lternative Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*,

No. CIV.SA05CA0172-XR, 2005 WL 1862631, at *15 (W.D. Tex. July 8, 2005) ("Some circuits

have held that a nonsignatory to a contract containing a forum selection clause may enforce the

clause if the nonsignatory is 'closely related' to a signatory or the alleged conduct is closely

related to the contractual relationship."); *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, No.

CIV.A. 13-00778-BAJ-, 2014 WL 4986674, at *5 (M.D. La. Sept. 29, 2014) (noting that "[a]

'non-signatory' or third party can be bound to an agreement even though the contract's terms do

not clearly bind the party" and finding that 'First Choice, while a non-signatory of the contract, is bound by the forum selection clause.").

Huang co-founded CNEX three days after his last day at Futurewei. (Compl. ¶¶ 47, 48.) Plaintiffs' Complaint further alleges that, upon information and belief, Huang informally operated CNEX as its founder, promoter, agent, and officer even before CNEX was formed, while he was still employed at Futurewei, and continued in this same role following its formal incorporation." (*Id.* ¶ 49.) Plaintiffs' Complaint further alleges that Huang and CNEX solicited other employees of Huawei to resign their positions and join CNEX, in express violation of Huang's Agreement. (*Id.* ¶¶ 52, 53.) None of the declarations submitted with Defendants' Motion contest any of these allegations. Particularly where this Court "accept[s] uncontroverted facts contained in the plaintiff's complaint as true" for purposes of this Motion, Plaintiffs' Complaint more than sufficiently alleges a basis for finding that CNEX is closely related to Huang, and that CNEX's conduct is closely related to Huang's contractual relationship. *Williamson-Dickie Mfg. Co.*, 762 F. Supp. 2d at 1026. CNEX—founded in part by Huang—was certainly apprised of the terms of Huang's Agreement and foresaw (or should have foreseen) being bound by forum selection clause therein. Although venue is proper over CNEX pursuant to 28 U.S.C. § 1391(b)(2), *see* Section I(A) *supra*, CNEX is also bound by the same forum selection clause as its co-founder Huang.

## II.    COUNTS 5-22 OF PLAINTIFFS' COMPLAINT PROPERLY STATE CLAIMS.

Defendants next argue that the Court should dismiss Counts 5-22 pursuant to Rule 12(b)(6) because, according to Defendants, Plaintiffs failed to adequately plead those claims. In considering a Rule 12(b)(6) Motion, this Court "must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). As this Court noted, the pleading standard

after *Twombly* and *Iqbal* "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.'" *Transplace Texas, LP v. Alioto*, No. 4:16-cv-647, 2016 WL 6996267, at *1 (E.D. Tex. Nov. 30, 2016) *citing Morgan v. Hubert*, 335 Fed. Appx. 466, 470 (5th Cir. 2009) (Mazzant, J.). "This evaluation will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id. citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### A. None of Plaintiffs' claims are barred by any statute of limitations.

Defendants argue that 14 of the 22 counts in Plaintiffs' Complaint should be dismissed because they are barred by applicable statutes of limitations. (Mot. p. 16.) All of Defendants' arguments in this regard are premised upon the same faulty assumption: that Plaintiffs knew or should have known of *all* of their claims in April 2015,[1] when Plaintiffs first found the patent applications for the Subject Patents. Plaintiffs knew of at least some of their *trade secret* claims in April of 2015, and pleaded those claims within the applicable three-year statute of limitations. Defendants' argument that Plaintiffs knew of *all* of their potential causes of action against both Defendants as of that date, however, makes no sense, and contradicts Plaintiffs' allegations that they only learned of *some* of Huang's conduct in April 2015. (Compl. ¶ 9) (emphasis added). The basis for other claims in Plaintiffs' Complaint, however, required considerable investigation

---

[1] As acknowledged in Defendants' Motion, the referenced to "April 2014" in paragraph 59 of the Complaint is a scrivener's error. (Mot. P. 16, n. 9.) As alleged elsewhere in the Complaint, Plaintiffs did not learn of the patent applications for the Subject Patents before they were published, and thus could not have learned of the patent applications for the Subject Patents in April 2014, months before the earliest publication date. While Plaintiffs intend to file an Amended Complaint that corrects that typographical error, for purposes of this Motion and Response, Plaintiffs will refer to the correct date of April 2015.

to uncover. Plaintiffs did not discover Huang's violation of the CFAA, for example, until well into its internal investigation, which did not begin until April of 2015. (Compl. ¶ 60.)[2]

Defendants also provide no reasoning why Plaintiffs learning of the first Subject Patent applications in April 2015 would start the clock on the statute of limitations for later Subject Patent applications—in some cases years later than the first Subject Patent applications. Put differently, many of the Subject Patents incorporate confidential information that Defendants misappropriated from Plaintiffs. (Compl. ¶ 59) ("Each of the Patent Applications, on information and belief, constitute a Subject Idea or Invention under the terms of the Agreement and, thus, should have been disclosed by Huang to allow Futurewei to determine the source of the technology and its ownership."). For example, how could Plaintiffs be expected to know, in April 2015, of potential claims for misappropriation related to a patent application first published in October of 2017 (*Id.*, US9785356)?

It is the defendant's burden to establish the affirmative defense of limitations, including the accrual date of the plaintiff's claims. *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 688 (E.D. Tex. 2009); *Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15CV307, 2018 WL 446320, at *3 (E.D. Tex. Jan. 17, 2018) *citing Hernandez v. Frazier*, No. CV SA-11-CV-9-DAE, 2014 WL 1390887, at *3 (W.D. Tex. Apr. 9, 2014). Defendants' assumption that all of Plaintiffs' claims accrued in April 2015 because Plaintiffs knew of those claims in April 2015 is incorrect. Defendants offer no reasoning why the very *earliest* publication of one of the Subject Patents would be the accrual date for Plaintiffs' claims related to *all* of the Subject Patents or all of Plaintiffs' other tort claims. Because their Motion fails to establish the accrual date of Plaintiffs' claims, Defendants' Motion should be denied on these grounds as well.

---

[2] Defendants' Motion conveniently omits the fact that the parties entered into a stand-still agreement for nearly two years to allow Plaintiffs to complete that investigation.

1.    **Plaintiffs' claims for common law civil conspiracy (Count 20), Conspiracy to Commit Misappropriation of Trade Secrets (Counts 7, 11), and Conspiracy to Violate the CFAA (Count 14) are not time-barred by either Texas or federal law.**

Defendants claim that Plaintiffs should have known of the alleged conversion and misappropriation of their confidential information in April 201[5] when Futurewei first discovered some of the applications for the Subject Patents. As Defendants point out, the Complaint alleges that Plaintiffs knew of some of *Huang's* wrongful actions in April 2015. (Mot. 18, Compl. ¶ 59.) However, Defendants do not explain what this has to do with Plaintiffs' claims for common law civil *conspiracy*, *conspiracy* to commit misappropriation of trade secrets, and *conspiracy* to violate the Computer Fraud and Abuse Act ("CFAA"). Counts 20, 7, 11, and 14 of Plaintiffs' Complaint are directed at Huang's and CNEX's *joint* activities in furtherance of a conspiracy. Plaintiffs did not learn of the details of CNEX's involvement until much later. Thus, the two-year statute of limitations for those counts did not begin to run in April 2015.

The same is true of Defendants' arguments that Plaintiffs' claims for *conspiracy* to violate the CFAA began to run on May 31, 2013: Huang's last day of employment. (Motion p. 19.) Plaintiffs did not discover the wrongful conduct giving rise to that claim on Huang's last day of employment. Defendants cite no authority, and the undersigned know of no federal authority exists, holding that the accrual date for CFAA claims against a former employee is automatically the employee's last day. Because Defendants have not established the accrual date of those claims, Defendants' Motion to dismiss those claims should be denied.

2.    **Plaintiffs' claims for Conversion (count 17), Unjust Enrichment (Count 19), and Unfair Competition (Count 22) are not time-barred.**

Similarly, Defendants provide no reasoning or authority as to why Counts 17, 19, and 22 of Plaintiffs' Complaint all accrued in April 2015. The basis for Plaintiffs' conversion, unjust enrichment, and unfair competition claims is what Defendants did with Plaintiffs' intellectual

property after it was misappropriated. Plaintiffs did not discover—nor could they have

discovered—the extent of Defendants' wrongful actions (including Huang's alleged assignment

of the Subject Patents to CNEX) until its investigation into Defendants' activities was complete.

Moreover, if California law governs the unfair competition and unjust enrichment claims, as

Defendants insist, then both claims are timely because they were filed within three years of the

alleged accrual date in April 2015. (Motion p. 19.)

> ### 3. Plaintiffs' claims for tortious interference with contractual relations and prospective business relations (Counts 12-13) are not time-barred.

Plaintiffs' claims for tortious interference with contractual relations and prospective

business relations are solely brought against only CNEX. (Compl. ¶¶ 173-185.) Plaintiffs'

Complaint alleges that Plaintiffs learned of some of *Huang's* conduct in April 2015. How or why

that equates to Plaintiffs also learning of CNEX's conduct in April 2015 is never explained in

Defendants' Motion; instead, Defendants simply state it as a fact. (Motion p. 20.) Plaintiffs did

not know, nor could they have known, of the extent of CNEX's involvement until their

investigation into CNEX's activities. Defendants do not argue (nor could they argue) when *that*

date occurred, and thus fail to meet their burden to establish the affirmative defense of

limitations. *Whiddon*, 666 F. Supp. 2d at 688 (E.D. Tex. 2009).

> ### 4. Plaintiffs' Misappropriation and Threatened Misappropriation of Trade Secrets Claims (Counts 5-6, 8-10) were filed well within the applicable three year statutes of limitation.

Defendants argue that Plaintiffs' misappropriation claims and threatened

misappropriation of trade secrets claims are time-barred because Plaintiffs filed them more than

three years after those claims accrued. (Motion p. 20.) But, as stated above, the reference to April

2014 in Plaintiffs' Complaint is a scrivener's error: as acknowledged by Defendants' Motion, the

correct date is April 2015. Thus, counts 5, 6, 8, 9, and 10 of Plaintiffs' Complaint for

misappropriation and threatened misappropriation of trade secrets were filed within the applicable three-year statutes of limitation—regardless of whether federal, Texas, or California law applies.

### 5. The discovery rule and Defendants' fraudulent concealment are both proper bases for tolling the statutes of limitation.

Defendants' Motion argues that Plaintiffs cannot rely on the discovery rule to toll the applicable statutes of limitations because Huawei took an inapposite position in a different, unrelated case. (Motion p. 22.) According to Defendants, all applicable statutes of limitations began running in April 2015 because once patent applications are published, they are no longer "inherently undiscoverable." Defendants offer no authority for their argument that a legal argument raised by Huawei in unrelated litigation is binding on both Plaintiffs in *this* litigation.

More importantly, this Court disagreed with Huawei's arguments in that case. In *Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, this Court rejected the argument that the publication of a patent application *as a matter of law* puts a party on notice of any misappropriation claims. No. 4:15CV307, 2018 WL 446320, at *5–6. Rather, the Court found that "[t]he issuance of a patent may sometimes suffice to put the defendants on notice that it incorporates their misappropriated technology," but that there may also be "countervailing circumstances to consider." *Id.* at *5 (*citing Versata Software, Inc. v. Internet Brands, Inc.*, 2012 WL 588790 (E.D. Tex. Feb. 22, 2012)). Because "constructive notice based on allegedly public information is a disputed issue for the jury to decide," Defendants' Motion to Dismiss on those grounds must be denied. *Id*

As this Court noted, one of the "countervailing circumstances" to be considered is when a defendant owes a "duty to disclose" their patent application filings, in which case the doctrine of fraudulent concealment may justify tolling any applicable statutes of limitation. *Id*. at *6. ("Thus, Defendants assert they did not owe Quintel a 'duty to disclose' their patent application filings.

The Court disagrees…For the same reason discussed above, that the parties were operating under an NDA, the Court finds reasonable Quintel's reliance on any alleged deceptive statements by Defendants.") Here, Plaintiffs allege that Huang had a duty to disclose his patent applications and failed to do so. (Compl. ¶ 6.) Huang did not do so. (*Id.* ¶ 59.) These are precisely the kind of circumstances that justify tolling applicable statutes of limitation because of fraudulent concealment. It is unclear what other "factual allegations" need to be made to substantiate that claim.

**B.       Plaintiffs' claim for Corporate Raiding (Count 21) is valid under Texas law.**

With regard to Count 21, while there is no direct Texas authority discussing the independent tort of corporate raiding, other courts have held such a claim to be viable and Texas courts find the conduct alleged in Plaintiffs' Complaint actionable. *See, e.g. Johns-Manville Corp. v. Guardian Indus. Corp.*, 586 F. Supp. 1034, 1075 (E.D. Mich. 1983), amended, No. CIV.A. 81-70248, 1984 WL 63627 (E.D. Mich. Apr. 3, 1984), and aff'd, 770 F.2d 178 (Fed. Cir. 1985); *Aeroquip Corp. v. Chunn*, 526 F. Supp. 1259, 1260 (M.D. Ala. 1981) (discussing settlement at underlying trial on claims for "unfair trade practices, infringement of trade secrets, breach of fiduciary duty, and corporate raiding"). Texas courts recognize the impropriety and illegality of conduct similar to Defendants' conduct in this case.  Under Texas common law, a party that engages in business practices that are "contrary to honest practice in industrial or commercial matters" or misappropriates a business opportunity is liable for unfair competition. *See O'Grady v. Twentieth Century Fox Film Corp.*, No. 5:02 CV 173, 2003 WL 24174616, at *16 (E.D. Tex. Dec. 19, 2003) (recognizing liability where plaintiff can establish "Defendants' acts damaged his ability to conduct business"); *See also, Software Sys., Inc. v. Ajuria*, No. 05-99-01338-CV, 2000 WL 1122917 at *8-9 (Tex. App.--Dallas Aug. 9, 2000, no pet.) (finding a material issue of fact on tortious interference claim brought by employer against competitor that

20

solicited all four employees working at a particular facility to leave their employment and begin working with the competitor in another city).  Accordingly, Defendants' Motion to Dismiss on those grounds should be denied as well.

      **C.**      **Plaintiffs' Common Law Civil Conspiracy (Count 20) and RICO claims (Counts 15-16) are pleaded with the requisite particularity.**

Plaintiffs pleaded their Civil Conspiracy and RICO claims with the requisite specificity, even under Rule 9(b)'s heightened pleading standard. Defendants argue that the Complaint does not allege "what information Defendants allegedly obtained, what fraudulent scheme they allegedly further, how they did so, when it happened, and what Plaintiffs lost…" (*Id.*) But the Complaint alleges that Defendants obtained Plaintiffs' confidential trade secrets related to the inventions disclosed in the Subject Patents, as well as how Defendants obtained those trade secrets and when: "Huang used information he obtained through his employment at Futurewei in drafting these patent applications, going so far as to send proprietary documents to his personal email account immediately prior to his departure from Futurewei." (Compl. ¶¶ 56, 210.) There is no authority cited, nor are the undersigned aware of authority, requiring Plaintiffs to specifically allege each and every one of its proprietary trade secrets misappropriated by Defendants, or that Plaintiffs are required to allege in their Complaint the exact date that Defendants misappropriated Plaintiffs' information, particularly where that knowledge is in the possession of Defendants and was fraudulently concealed from Plaintiffs.

Defendants' claim that "Plaintiffs merely allege mail and wire fraud as a predicate act" is incorrect. Plaintiffs' Complaint alleges that Plaintiffs misappropriated trade secrets in violation of the Defend Trade Secrets Act of 2016 ("DTSA") as part of their racketeering activity. The DTSA expressly amended the RICO statute to include the theft of trade secrets as a predicate act. *See* 18 U.S.C. § 1832 and 18 U.S.C. § 1961.

Defendants' arguments regarding Plaintiffs' civil conspiracy claim (Count 20) are similarly misplaced. Plaintiffs' claim does not "rest" on allegations that Defendants committed fraud–rather, it alleges that Defendants entered into agreements for the purposes of defrauding Plaintiffs **and** committing the conversion and misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, and its intellectual property." (Compl. ¶ 248.) There is no authority cited by Defendants for the proposition that a heightened pleading standard under Rule 9(b) applies to claims of civil conspiracy where the agreement is to convert property or misappropriate trade secrets.

    **D.**     <u>Plaintiffs' Complaint states a claim for intentional interference with prospective business relations (Count 13).</u>

Defendants argue that Plaintiffs fail to state a claim for intentional interference with prospective business relations under California or Texas law because (1) the Complaint does not specifically identify the third-party customers with whom Plaintiffs would have done business, (2) Plaintiffs do not allege that there was a reasonable probability that they would enter into a business relationship with those third parties, and (3) Plaintiffs do not allege that their prospective business relations were disrupted. (Motion pp. 26-27.) Defendants are incorrect, and several of the cases cited as authority by Defendants consider whether elements were established at the summary judgment stage or at trial.

*First*, Plaintiffs are not required to identify the specific prospective business relationships that Defendants tortiously interfered with at the pleading stage. In *Zhejiang Med. Co. v. Kaneka Corp.*, the Southern District of Texas dismissed claims for tortious interference with prospective business relationships on the grounds that the plaintiff did not identify which clients it would have done business with but for defendants' conduct. No. CV H-11-1052, 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012). But the *Zhejiang* court cited to a prior decision in *Rimkus*

*Consulting Group, Inc. v. Cammarata* as the basis for its ruling. *Id.* (*citing Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp.2d 598, 676 (S.D.Tex. 2010))*.* The *Rimkus* decision was at the summary judgment stage, not the pleading stage. *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d at 676. That Court did not hold that a party had to identify specific prospective business relationships at the pleading stage, only that a party had to identify specific prospective business relationships at the summary judgment stage to create an issue of fact. *Id.* To the extent that *Zhejiang* relied upon *Rimkus* for determining the pleading standards for tortious interference with prospective business relationships claims, the *Zhejiang* decision was respectfully in error. Similarly, Defendants' reliance on *Rickards v. Canine Eye Registration Found., Inc.* is unavailing: *Rickards* was decided at the directed verdict stage after trial. 704 F.2d 1449, 1451 (9th Cir. 1983). Courts within this District have not adopted the holding that a plaintiff must identify specific prospective business relationships in its pleadings to sustain a cause of action. *Star Tobacco Inc. v. Darilek*, 298 F. Supp. 2d 436, 450 (E.D. Tex. 2003) (plaintiff stated claim for tortious interference with prospective business relationships without specifically identifying such relationships or potential customers).

    *Second,* Plaintiffs sufficiently allege that there was a reasonable probability of entering into business relationships with third parties. Defendants' Motion does not cite to any authority from this District and for good reason. The *Star Tobacco Inc.* decision rejected the same argument that Defendants' Motion asserts:

> First, Defendants must allege that there was a "reasonable probability" that they "would have entered a contractual relationship with a third-party." In their counterclaim, Defendants claim to have had a "reasonable expectation of making profits in their new business...." Defendants do not state specifically that they were poised to enter any specific contractual relationship, but such a claim is not necessary. The court can reasonably infer that some contractual relationship was at least reasonably probable if Defendants had reasonable expectations of making a profit in their new business.

23

*Star Tobacco Inc.*, 298 F. Supp. 2d at 450.

      *Third*, Plaintiffs adequately plead that their prospective business relationships were damaged by Defendants' conduct. Again, Defendants' Motion cites cases that are procedurally inapposite to the instant motion. In *Camp v. Patterson*, the Texas Court of Appeals addressed whether or not the plaintiff had presented *evidence* necessary to substantiate her claims at preliminary evidentiary hearing pursuant to the Texas Citizen Participations Act. No. 03-16-00733-CV, 2017 WL 3378904, at *8 (Tex. App.—Austin, Aug. 3, 2017, no pet.) ("Thus, there is no evidence of a specific party with whom Patterson had a reasonable probability of entering into a business relationship absent Camp's emails.") This case is not at the evidentiary stage, and Plaintiffs' allegations that it was damaged by Defendants' conduct are sufficient. *See Star Tobacco Inc.*, 298 F. Supp. 2d at 450.

      **E.**      <u>**Plaintiffs' claims for Conversion (Count 17) state a cause of action.**</u>

      Defendants move to dismiss Plaintiffs' claim for conversion on the grounds that Texas law does not recognize the tort of conversion for intellectual property. Plaintiffs concede that if Texas law applies, this count is properly dismissed, but intend to amend their Complaint to clarify that tangible property was also converted by Defendants. Moreover, if this Court finds that California law governs this claim, Plaintiffs' Complaint states a cause of action because California law allows for the tort of conversion for intellectual property. *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (noting in *dicta* that California law allows for conversion of intellectual property).

      **F.**      <u>**Plaintiffs' claims are not pre-empted by the Texas Uniform Trade Secrets Act.**</u>

      Finally, Defendants argue that that Plaintiffs' claims for conversion, breach of fiduciary duty, and unjust enrichment (Counts 17-19) are pre-empted by the Texas Uniform Trade Secrets

Act because they are based on the misappropriation of confidential information. (Motion p. 27-28.) The Complaint alleges that at least part of Defendants' activities took place prior to September 1, 2013. (Compl. ¶ 8.) The Texas Uniform Trade Secrets Act does not pre-empt common law tort claims for conduct which took place in part prior to the enactment of the statute on September 1, 2013. *See ZeniMax Media, Inc. v. Oculus VR, LLC*, 165 F. Supp. 3d 697, 704 (N.D. Tex. 2015) (TUTSA pre-emption does not apply to continuing misappropriation acts which began prior to September 1, 2013.) Plaintiffs' claims are not pre-empted. To the extent necessary, Plaintiffs request leave to amend their Complaint to allege in further detail those acts which arose prior to September 1, 2013.

### III.    PLAINTIFFS REQUEST LEAVE TO REPLEAD ANY CLAIMS THIS COURT DEEMS INADEQUATELY PLEADED.

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(2), Plaintiffs request leave to amend and replead any claims which this Court may determine are potentially subject to dismissal, including any claims which this Court may find are not supported by adequately alleged facts. Fed. R. Civ. P. 15(a)(1)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.") Plaintiffs' request for leave to file an Amended Complaint would not prejudice Defendants in any way.

### CONCLUSION

Plaintiffs Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc. respectfully request that this Court enter an Order denying Defendants' Motion to Dismiss, and granting Plaintiffs any other such relief as this Court deems appropriate.

Dated:  February 16, 2018               Respectfully Submitted,

By:   */s/ Clyde M. Siebman*

Respectfully submitted,

**SIEBMAN, BURG, PHILLIPS &
SMITH, LLP**

**Clyde M. Siebman**
Texas Bar No. 18341600
**Elizabeth S. Forrest**
Texas Bar No. 24086207
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090
(903) 870-0070 (office)
(903) 819-3076 (cell)
clydesiebman@siebman.com


**SEYFARTH SHAW LLP**

**Michael D. Wexler** (*Admitted Pro Hac Vice*)
Illinois State Bar No. 6207847
**Andrew S. Boutros** (*Admitted Pro Hac Vice*)
Illinois Bar Number: 6322276
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606

**Jesse M. Coleman**
E.D. Tex. Bar. No. 24072044
Texas Bar No. 240702044
700 Milam Street, Suite 1400
Houston, Texas  77002-2812
Telephone:  (713) 225-2300
Telecopier:  (713) 225-2340
jmcoleman@seyfarth.com

***Attorneys for Huawei Technologies Co.,
Ltd. and Futurewei Technologies, Inc*.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on **February 16, 2018**, copies of this submission were served by CM/ECF on counsel for Defendants:

FENWICK & WEST LLP
Michael J. Sacksteder
555 California Street, 12th Floor
San Francisco, CA 94104
msacksteder@fenwick.com
***Attorneys for CNEX Labs, Inc.***


LATHAM & WATKINS LLP
Gabriel S. Gross
140 Scott Drive
Menlo Park, CA 94025
Gabe.gross@lw.com
***Attorneys for Yiren Huang***


By:    */s/ Clyde M. Siebman*


***Counsel for Huawei Technologies Co., Ltd.
and Futurewei Technologies, Inc***.