# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., | § | |
| and FUTUREWEI TECHNOLOGOIES, | § | |
| INC. | § | |
| | § | Civil Action No. 4:17-CV-00893 |
| v. | § | Judge Mazzant |
| | § | |
| YIREN RONNIE HUANG, and CNEX | § | |
| LABS, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants CNEX Labs, Inc. and Yiren "Ronnie" Huang's Motion to Dismiss for Improper Venue and for Failure to State a Claim Under Rule 12(b)(6) (Dkt. #14) ("Initial Motion to Dismiss"), Defendants CNEX Labs, Inc. and Yiren "Ronnie" Huang's Motion to Dismiss Plaintiffs' First Amended Complaint for Improper Venue and for Failure to State a Claim Under Rule 12(b)(6) ("Motion to Dismiss") (Dkt. #34), and Defendants CNEX Labs, Inc. and Yiren Ronnie Huang's Motion for Leave to Address Issues Raised at the April 2, 2018 Hearing ("Motion for Leave") (Dkt. #56). Having considered the motions and the relevant pleadings, the Court finds that Defendants' Initial Motion should be denied as moot, Defendants' Motion to Dismiss as to Defendants' 12(b)(3) argument for improper venue should be denied, Defendants' 12(b)(6) argument for failure to state a claim should be granted in part, and Defendants' Motion for Leave should be granted.

## BACKGROUND

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") is a multinational networking and telecommunications equipment and services company headquartered in China. Plaintiff Futurewei Technologies, Inc. ("Futurewei") is a subsidiary of Huawei with several offices throughout the

United States, including Plano, Texas.  In December 2010, Futurewei offered Yiren "Ronnie" Huang ("Huang") employment as a Principal Engineer for its solid-state drive ("SSD") storage group, to assist in development and implementation of Advance Computing Network ("ACN"), non-volatile memory express ("NVMe"), and SSD technology.  Huang accepted the offer in January 2011.  Huang worked in the Santa Clara office and was domiciled in Santa Clara County, California.  At the Futurewei new hire orientation, Huang signed an employment contract (the "Employment Agreement"), which contained the following forum-selection clause:

**12. General Provisions.**

> **(a) <u>Governing Law</u>.**  This Agreement will be governed by and construed according to the laws of the State of Texas without regard to conflicts of law principles.
>
> **(b) <u>Exclusive Forum</u>.**  I hereby irrevocably agree that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Texas, and I agree to the exclusive personal jurisdiction and venue to any court on Collin County Texas.

(Dkt. #34, Exhibit 1 at pp. 21–22).  The Employment Agreement also contained provisions relating to non-disclosure, non-competition, and non-solicitation.

Based on Huang's job responsibilities, Plaintiffs contend that Huang had access to confidential, proprietary, and trade secret information.  On May 31, 2013, Huang ended his employment with Futurewei.  On June 3, 2013, Huang, along with others, incorporated CNEX Labs, Inc. ("CNEX"), a Delaware Corporation with its principal place of business in California. Plaintiffs allege, among other things, that Huang incorporated CNEX to compete directly with Plaintiffs, Huang is using Plaintiffs' confidential, proprietary, and trade secret information to develop and improve SSD technology and NVMe related technology for CNEX, and further that Huang and CNEX are improperly soliciting employees away from Plaintiffs.  Additionally,

Plaintiffs allege that Huang started to engage in this behavior informally prior to leaving Futurewei. Plaintiffs further contend that Huang and CNEX began filing patent applications in June 2013, using the information that Huang obtained through his employment with Futurewei.

Plaintiffs filed suit in the Eastern District of Texas on December 28, 2017, against Defendants seeking declaratory judgment and alleging a variety of causes of action including breach of contract, disclosure and misappropriation of confidential information and trade secrets, tortious interference with contract and prospective contracts, conspiracy claims, Racketeer Influence and Corrupt Organizations Act of 1970 ("RICO") claims, breach of fiduciary duty, and unfair competition under Lanham Act and Texas common and statuary law (Dkt. #1). On the same date, Defendants filed suit of a similar nature in the Superior Court of California, County of Santa Clara (Dkt. #34, Exhibit 5 at p. 1).[1]

In response to this Complaint, Defendants filed their Initial Motion to Dismiss on February 2, 2018 (Dkt. #14). Plaintiffs filed a response (Dkt. #22), but also filed Plaintiffs' First Amended Complaint (Dkt. #27). In response to the First Amended Complaint, on March 9, 2018, Defendants filed the present Motion to Dismiss (Dkt. #34). Plaintiffs filed a response (Dkt. #42), Defendants filed a reply (Dkt. #46), and Plaintiffs filed a sur-reply (Dkt. #50). The Court held a hearing on the Motion to Dismiss on April 2, 2018. After the hearing, Defendants filed a Motion for Leave to Address Issues Raised at the April 2, 2018 Hearing (Dkt. #56). Plaintiffs have not yet filed a response.

---

[1] Neither party asked the Court to stay or dismiss this case based on *Colorado River* abstention. Thus, the Court does not engage in an analysis of whether it should abstain from the "virtual unflagging obligation . . . to exercise the jurisdiction given to [it].'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

<h1 style="text-align:center">LEGAL STANDARD</h1>

## I.  Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party the ability to move the Court to dismiss an action for "improper venue." The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Global Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the [C]ourt is permitted to look at evidence in the record beyond those facts alleged in the complaints and its proper attachments." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss it, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *accord* FED. R. CIV. P. 12(b)(3).

## II.  Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III.      Federal Rule of Civil Procedure 9(b)

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).

Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged.  *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).  A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).  The goals of Rule 9(b) are to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims."  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)).  Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  However, this requirement "does not 'reflect a subscription to fact pleading.'"  *Grubbs*, 565 F.3d at 186.  "Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)."  *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998); *see Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2010 WL 3422873, at *14 (N.D. Tex. Aug. 26, 2010) ("'[W]hen the parties have not urged a separate focus on the negligent misrepresentation claims,' the Fifth Circuit has found negligent misrepresentation claims

subject to Rule 9(b) in the same manner as fraud claims.").  Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6).  *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

## ANALYSIS

Defendants ask the Court to dismiss Plaintiffs' claims because the Eastern District of Texas is not the proper venue for the case and because Plaintiffs failed to properly state a claim for which relief can be granted.  Plaintiffs assert that venue is proper and that the First Amended Complaint satisfies Federal Rules of Civil Procedure 8(a) and 9(b).  The Court addresses each basis for dismissal in turn.

### I.    Motion to Dismiss for Improper Venue Pursuant to 12(b)(3)

Defendants argue that the Court should dismiss Plaintiffs' claims because the Eastern District of Texas is not a proper venue pursuant to the federal venue statutes and the forum-selection clause does not make venue proper.  Further, Defendants maintain, that even if the forum-selection clause made venue proper in the Eastern District of Texas, venue is still improper because CNEX is not bound by the agreement and is an indispensable party.  The Court first addresses the enforceability and effect of the forum-selection clause, then whether CNEX is properly bound by the forum-selection clause.

#### A.  Forum-Selection Clause

Defendants ask the Court to dismiss the case arguing that venue is improper under the federal venue statutes and the forum-selection clause does not affect the propriety of venue.

Plaintiffs counter that the forum-selection clause contained in Huang's Employment Agreement makes venue proper in the Eastern District of Texas.[2]

When analyzing the enforceability of forum-selection clauses "federal law applies . . . in both diversity and federal question cases." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974)). Under federal law, forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*The Bremen*"). A forum-selection clause may be found unreasonable when the movant shows: (1) that it is the product of fraud or overreaching; (2) that it violates a strong public policy of the forum; (3) that enforcement of the clause effectively deprives plaintiff of his day in court; or (4) that the fundamental unfairness of the chosen law will deprive plaintiff of a remedy. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). The resisting party asserting unreasonableness bears "'a heavy burden of proof.'" *Carnival Cruise Lines, Inc.*, 499 U.S. at 592 (quoting *The Bremen*, 407 U.S. at 17). If the forum-selection clause is found to be reasonable, courts must then determine whether the claims arise under the forum-selection clause. *Ginter ex rel. Ballard v. Belcher, Predergrast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (citing *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 222–23 (5th Cir. 1998)).

Additionally, courts must also determine whether the forum-selection clause is mandatory or permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994). "A party's

---

[2] Plaintiffs additionally argue that venue is proper under 28 U.S.C. § 1391(b)(2) because they claim a substantial part of the events or omissions took place in the Eastern District of Texas. However, it is unnecessary for the Court to analyze whether a substantial part of the events took place in the Eastern District of Texas because the Court finds the forum-selection clause makes venue proper.

consent to jurisdiction in one forum does not necessarily waive that party's right to have an action heard in a different forum." *City of New Orleans v. Mun. Admin. Serv., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *accord Caldas & Sons*, 17 F.3d at 127. "For a forum[-]selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans*, 376 F.3d at 504 (citing *Keaty v. Freeport Indon., Inc.,* 503 F.2d 955 (5th Cir. 1974)).

Here, the parties do not dispute that the clause is mandatory or that Plaintiffs' claims are within the scope of the forum-selection clause. The forum-selection clause states "I hereby irrevocably agree that the *exclusive* forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Texas, and I agree to the *exclusive* personal jurisdiction and venue to any court on Collin County Texas." (Dkt. #34, Exhibit 1 at pp. 21–22) (emphasis added). The clause contains clear language that venue is appropriate only in state or federal courts in Collin County, Texas. As such, the only remaining issue is whether the forum-selection clause is reasonable. If so, then venue is proper in the Eastern District of Texas.

In their reply, Defendants argue that the forum-selection clause is unreasonable and therefore unenforceable based on fraud and overreaching. Defendants maintain that the forum-selection clause is the result of fraud and overreaching because (1) Futurewei materially changed the terms of employment after Huang accepted employment and quit his prior job; (2) Huang was not permitted to consult an attorney or otherwise investigate the legality of the terms; (3) the factual scenario created an inequality of bargaining power; and (4) no one at Futurewei

pointed out the terms of the "governing law" or "exclusive forum" section. Plaintiffs contend that the argument is waived because Defendants raised it too late.[3]

> [U]nreasonable fraud or overreaching 'does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud[,] . . . the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the ***inclusion of that clause in the contract*** was the product of fraud or coercion.' Allegations of such [fraudulent] conduct as to the contract as a whole—or portions of it other than the . . . [forum-selection] clause— are insufficient, the claims of fraud or overreaching must be aimed straight at the [forum-selection] clause in order to succeed.

*Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd.*, No. 4:15-cv-821-ALM-CAN, 2016 WL 4083241, at *4 (E.D. Tex. July 8, 2016), *report and recommendation adopted by*, 2016 WL 4039226 (E.D. Tex. July 28, 2016) (emphasis in original) (alterations in original) (quoting *Haynsworth*, 121 F.3d at 963); *accord Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*, No. 4:10-cv-608, 2011 WL 665812, at *6 (E.D. Tex. Jan. 21, 2011), *report and recommendation adopted by*, 2011 WL 665854 (E.D. Tex. Feb. 14, 2011).

Here, regardless of whether Defendant waived the argument, the Court finds the argument unpersuasive. As to the first three reasons Defendants provided to prove fraud and overreaching, they address the Employment Agreement as a whole, as opposed to being specifically directed toward the forum-selection clause. As to Defendants' first argument—Futurewei materially changed the terms of Huang's employment after accepting his job and quitting his old job— Defendants argue that Huang received an offer letter (the "Offer Letter"), which Huang believed contained all the material terms of employment. According to Huang, the Offer Letter made "no mention that the [Employment Agreement] would include a forum-selection clause or any clause

---

[3] At the April 2, 2018 hearing, the Court also asked the parties whether Defendants waived this argument by not asserting it in the opening brief for the Motion to Dismiss. After the hearing and the sur-reply, Defendants filed their Motion for Leave arguing that the argument was not waived and maintained that Plaintiffs were not prejudiced by raising the argument in the reply (Dkt. #56). The Court hereby grants the Motion for Leave; however, as the Court further discusses whether or not Defendants raised the argument is immaterial to the Court's analysis.

requiring [him] to assign all of [his] inventions relating to Futurewei's business for one year after [he] left the company."  (Dkt. #46, Exhibit 2 at ¶ 5).[4]  Both of these clauses are contained in the Employment Agreement.  As such, there are at least two provisions that Defendants contend Futurewei materially altered between what was contained in the Offer Letter to what was contained in the Employment Agreement.  This falls short of a specific challenge to the forum-selection clause.  *See Haynsworth*, 121 F.3d at 964.

As to Defendants' second argument—Huang was not permitted to consult with an attorney—Huang's declaration claims that he "was not permitted nor encouraged to consult with an attorney before signing [the Employment Agreement]."  (Dkt. #46, Exhibit 2 at ¶ 8).  This is not a specific challenge to the forum-selection clause, but challenges the entirety of the agreement.  Similarly, Defendants' third argument—the alleged inequality of bargaining power—is based on the circumstances surrounding Huang's signing of the Employment Agreement, stated differently, it is a challenge to the entirety of the Employment Agreement, not specifically the forum-selection clause.  As previously detailed, a challenge to the Employment Agreement as a whole is insufficient to show that a forum-selection clause is unreasonable.

Finally, Defendants' fourth argument—Futurewei failed to point out the forum-selection clause—also fails to demonstrate fraud or overreaching.  "'A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it.'"[5]  *Haynsworth*, 121 F.3d at 965 n.17 (quoting *In re Cajun Elec. Power Coop. v. Riley Stoker Corp.*, 791 F.2d 353, 359 (5th Cir. 1986) (citing *Bonny v. Soc'y of Llyod's*, 3 F.3d 156, 160 n.10 (7th Cir. 1993); *St.*

---

[4] The Court notes that the Offer Letter did indicate that his offer of employment was contingent upon his signing the Employment Agreement (Dkt. #47).

[5] To the extent, if any, this is part of the argument as to why there was unequal bargaining power, it is similarly unpersuasive.

*Petersburg Bank & Trust Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971)). Because all of Defendants' arguments fall short, the Court finds Defendants failed to meet their "heavy burden" to show the forum-selection clause is unenforceable. As a result, the Court finds that it should enforce the mandatory forum-selection clause.

Defendants contend that even if the Court finds that the forum-selection clause is enforceable and mandatory, venue is still improper pursuant to the Supreme Court of the United States' holding in *Atlantic Marine*. The Court is unpersuaded. The Supreme Court in *Atlantic Marine* faced a different factual scenario and decided a wholly different issue. In *Atlantic Marine*, the parties entered into a forum-selection clause, which required disputes to be brought in the "'Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division.'" *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 53 (2013). However, when a dispute arose, the plaintiff filed suit in the Western District of Texas, and the defendant subsequently moved to dismiss the suit, arguing that the forum-selection clause made venue "wrong" or "improper" in the Western District of Texas. *Id.* Thus, "[t]he question in [*Atlantic Marine*] concern[ed] the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause." *Id.* at 52. The Court decided that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* at 55. Accordingly, the Supreme Court held that the proper vehicle for a defendant to enforce a forum-selection clause is § 1404 or *forum non conveniens*, if the forum-selection clause identified a state or foreign forum. *Id.* at 59–60.

The Supreme Court of the United States' holding in *Atlantic Marine* holding combatted concerns that enforcing a forum-selection clause could flout congressional intent. "[T]he venue

statutes reflect Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant." *Atlantic Marine*, 571 U.S. at 56 (emphasis in original).

> "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." Yet [the defendant's] approach would mean that in some number of cases—those in which the forum-selection clause points to a state or foreign court—venue would not lie in any federal district  That would not comport with the statute's design, which contemplates that venue will always exist in some federal court.

*Id.* (quoting *Smith v. United States*, 507 U.S. 197, 203 (1993)).  Consequently, the Court held that "[i]f the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district 'wrong,'" thereby ensuring at least one federal court would have proper venue in every case upholding Congressional intent.  *Id.* at 58.

While some courts throughout the country[6] have found this holding to be applicable to the current set of facts, the Court respectfully finds *Atlantic Marine* is inapposite to the Court's analysis in this case.  Initially, the present case presents an entirely different factual scenario.  Here, Plaintiffs filed suit in the venue mandated by the forum-selection clause.  Moreover, this set of facts does not present the same risk of running afoul Congress' intent to have venue lie in at least one federal court.  This set of facts actually promotes the strong federal policy in favor of enforcing forum-selection clauses.  *Calix-Chacon v. Global Int'l Marine, Inv.*, 493 F.3d 507, 513 (5th Cir. 2007) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988)).  The Supreme Court in *Atlantic Marine* identified the importance of enforcing the parties' agreement:

---

[6] See generally *G4S Tech., LLC v. WCC Cable, Inc.*, No. 8:17cv182, 2017 WL 4564726 (D. Neb Oct. 10, 2017); *Red Mortgage Capital, LLC v. Shores, LLC*, No. 2:16-cv-678, 2017 WL 1196170 (S.D. Oh. Mar. 31, 2017); *Howmedica Osteonics Corp. v. DJO Global, Inc.*, No. 16-2330, 2017 WL 1136671 (D.N.J. Mar. 27, 2017); *CORT Bus. Servs. Corp. v. Eleven23 Mktg., LLC*, NO. 2:15-cv-2454-GMN-PAL, 2017 WL 701371 (D. Nev. Feb. 22, 2017); *Sightpath Med. Servs. LLC v. Terry*, 4:14-cv-1488-JCH, 2015 WL 362662 (E.D. Mo. Jan. 27, 2015); *Prosperity Bank v. Balboa Music Festival, LLC*, No. 4:13-cv-288, 2014 WL 1023935 (S.D. Tex. Mar. 13, 2014).

When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.

*Atlantic Marine*, 571 U.S. at 66.

The general federal venue statute dictates that venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The Court agrees with the holding in *Atlantic Marine* that "[w]hether the parties entered into a contract containing a  forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Atlantic Marine*, 571 U.S. at 56.

However, what the Court in *Atlantic Marine* did not need to address is that "[v]enue also 'may be proper . . . if consented to by the parties in a forum[-]selection clause." *Healthcare Servs. Grp., Inc. v. Skyline Servs. Grp.*, No. 17-2703, 2018 WL 637773, at *5 (E.D. Pa. Jan. 30, 2018) (quoting *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 706 (E.D. Pa. 2014)) (citing *Carnival Cruise Lines, Inc.*, 499 U.S. at 591–94); *accord Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (holding "we find that the choice of forum provision validly contracts for venue in Dallas County, Texas, thereby granting the district court jurisdiction[7] over

---

[7] Venue selection clauses are treated similarly to forum selection clauses. *Alliance Health Grp., LLC v. Bridging Health Option, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (citing *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 826 (5th Cir. 2006); *Collin Cty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45 (5th Cir. 2007)).

[the defendant]."). Several district courts across the country after *Atlantic Marine* have agreed.[8]

*See, e.g.*, *Nymbus, Inc. v. Sharp*, No. 3:17-cv-1113, 2018 WL 705003, at *6 (D. Conn. Feb. 5, 2018); *Healthcare Servs. Grp.*, No. 17-2703, 2018 WL 637773, at *5; *Kamtel, Inc. v. Bore Tech Const., LLC*, No. 16-cv-633-bbc, 2017 WL 532337, at *6 (W.D. Wis. Feb. 9, 2017); *Javeler Marine Servs. LLC v. Cross*, No. H-14-0670, 2014 WL 6886097, at *7 (S.D. Tex. Dec. 4, 2014); *Mach 1 Air Servs., Inc. v. Mainfreight, Inc.*, No. CV-14-01444-PHX-SPL, 2015 WL 11181334, at *4 (D. Ariz. Mar. 5, 2015).

Not only have courts found that venue is proper based on mandatory venue selection clauses, but also a permissive forum-selection clauses make venue proper. A permissive clause "authorizes filing in a designated forum but does not foreclose other fora." *TruGreen Landcare, L.L.C. v. Telfair Cmty. Ass'n, Inc.*, No. H–12–514, 2013 WL 2147471, at *1 (S.D. Tex. May 14, 2013) (citing *Breakbulk Transp., Inc. v. M/V Renata*, Civ. A. No. H–07–2985, 2008 WL 1883790, at *2 (S.D. Tex. Apr. 25, 2008); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127–28 (5th Cir. 1994); *Keaty*, 503 F.2d at 956–57). If a permissive clause authorizes filing in the venue designated by the forum-selection clause, it necessarily follows that a mandatory clause would also "authorize[] filing in [the] designated forum." *Id.* (citations omitted).

Here, the Court found that the parties entered into a valid and enforceable mandatory forum-selection clause, in which the parties consented to venue in the Eastern District of Texas. Accordingly, venue is proper in the Eastern District of Texas

Moreover, even if a forum-selection clause does not make venue "proper," dismissal based on improper venue would be inappropriate because "[t]he venue statute 'merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may

---

[8] As previously mentioned, there are also several district courts across the country that have not agreed with this result.

waive, at his election." *Nymbus*, 2018 WL 705003, at *6 (quoting *Neribo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). Indeed, the personal privilege of proper venue, "may be waived by express agreement or by conduct." *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1068 (5th Cir. 1986); *accord City of New Orleans*, 376 F.3d at 504; *In re RFC & ResCap Liquidating Trust Lit.*, 2017 WL1483374, at *13 (D. Minn. Apr. 25, 2017). "A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract." *City of New Orleans*, 376 F.3d at 504. As previously noted, the parties established exclusive venue in the Employment Agreement. Accordingly, even if venue is not "proper," the parties waived their right to have their suit heard in a proper venue by contractually agreeing to venue in the Eastern District of Texas.

Further, the Court's holding today also makes practical sense in terms of judicial efficiency. Under Defendants' reasoning, the Court would dismiss the case for improper venue allowing Plaintiffs to file in a place of a proper venue. However, once filed in the proper venue, Plaintiffs could then, pursuant to the Supreme Court's holding in *Atlantic Marine*, move to transfer the case under 28 U.S.C. § 1404(a), which "permits transfer to any district where venue is proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine*, 571 U.S. at 59. The Supreme Court of the United States altered the analysis for transferring venue under § 1404(a) when a forum-selection clause is involved because "'the interest of justice' is served by holding parties to their bargain." *Id.* at 66. "Because [the adjusted transfer analysis] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. Therefore, the newly filed case in a court with proper venue would likely transfer the case back to the Eastern District of Texas. This is an inefficient

use of the parties' time and the Court's time. This cannot be the result that the Supreme Court intended based on its holding in *Atlantic Marine*.

Accordingly, because the Court found a valid and enforceable forum-selection clause, selecting the Eastern District of Texas as the agreed to forum and venue for disputes arising out of Huang's Employment Agreement, the Court finds that dismissal based on improper venue inappropriate.

**B. CNEX**

Defendants maintain that even if venue is proper as to Huang based on the forum-selection clause, CNEX was not a party or a signatory to the Employment Agreement. Defendants contend that CNEX is an indispensable party, and accordingly, the Court must dismiss Plaintiffs' claims because venue is not proper as to CNEX. Plaintiffs maintain that CNEX is bound by the forum-selection clause as a closely related party.

Several circuits have held that a nonsignatory may be bound to a forum-selection clause if the nonsignatory or alleged conduct is closely related to the contractual relationship. *See, e.g.*, *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 758 (8th Cir. 2001); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998); *Hugel v. The Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993). The Fifth Circuit has not yet spoken to the issue; however, the Fifth Circuit has recognized a non-exclusive number of theories through which a nonsignatory can be bound to a specialized forum-selection clause, an arbitration clause. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). Further, several district courts within the Fifth Circuit have held that a nonsignatory can be bound by a forum-selection clause if the nonsignatory or the alleged conduct is closely related to the contractual relationship. *See, e.g.*, *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, No. 13-0078-BAJ-RLB, 2014 WL

4986674, at \*5–\*6 (M.D. La. Sept. 29, 2014); *Excel Mktg. Sols., Inc. v. Direct Fin. Sols., LLC*, No. 3:11-cv-109-D, 2011 WL 1833022, at \*6 (N.D. Tex. May 13, 2011); *Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, No. Civ.SA05CA0172-XR, 2005 WL 1862631, at \*15–\*16 (W.D. Tex. July 8, 2005); *Tex. Source Grp., Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997). The Court joins these courts in finding this to be an appropriate means to bind a nonsignatory to a forum-selection clause.

"A nonparty can be bound to a forum[-]selection clause if the nonparty is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" *Excel Mktgs. Sols.*, 2011 WL 1833022, at \*6 (quoting *Harrison v. Procter & Gamble Co.*, 2007 WL 431085, at \*2 (N.D. Tex. Feb. 8, 2007)); *accord Hugel*, 999 F.2d at 209. A nonparty can be "closely related" to the signatory or the alleged conduct can be "closely related" to the contractual relationship. *Duncan v. Banks*, No. SA-15-cv-148-XR, 2015 WL 5511253, at \*19 (W.D. Tex. Sept. 16, 2015) (citing *Alt. Delivery Sols.*, 2005 WL 1862631, at \*16). That is, if the nonsignatory is so inextricably intertwined with the signatories that he should be the subject of the forum-selection clause, it can be enforced against the nonsignatory. *Tex. Source Grp., Inc.*, 967 F. Supp. at 237 (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997)).

A case from the Seventh Circuit with a similar set of facts found the requisite close relationship to bind a nonsignatory to the forum-selection clause. *Hugel*, 99 F.2d at 209–10. In *Hugel*, the individual defendant entered into a "General Undertaking" in order to be a member of a corporation, which included a forum-selection clause. *Id.* at 207. The district court found that because the individual defendant was the president and chairman of the board for both corporate defendants and the individual defendant owned 99% of the stock of one of the corporate

defendants, which in turn owned 100% of the stock of the other corporate defendant, the corporate defendants were "so closely related to the dispute that they are equally bound by the forum selection clause . . . ." *Id.* at 210. The United States Court of Appeals for the Seventh Circuit held that those "findings [were] not clearly erroneous." *Id.* at 210.

Similarly here, the Court, taking as true the allegations in Plaintiffs' First Amended Complaint, finds CNEX is closely related to Huang and the alleged conduct against CNEX is closely related to Huang's Employment Agreement. Huang incorporated CNEX three days after ending his employment with Futurewei. Huang is the founder, promoter, agent, and officer of CNEX. According to Plaintiffs, Huang began operating as the founder, promoter, agent, and officer of CNEX informally, prior to CNEX's formal incorporation on June 3, 2013. Further, Plaintiffs allege that both Huang and CNEX solicited employees to leave Huawei and join CNEX. Accordingly, the Court concludes that CNEX is inextricably intertwined and closely related such that it is foreseeable it would be bound to the terms of the forum-selection clause.

## II.     Motion to Dismiss for Failure to State a Claim Pursuant to 12(b)(6)

Defendants argue that the Court should dismiss Counts 7, 9, and 11–22 pursuant to Rule 12(b)(6). Defendants assert a variety of arguments as to the different counts and the Court will address the arguments in turn.

As to Counts 7, 11–14, 17, 19–20, and 22, Defendants argue that they are time-barred. Plaintiffs counter that the discovery rule, equitable estoppel, and fraudulent concealment all work to toll the applicable statute of limitations. The application of the statute of limitations is an affirmative defense. *KPMG Peat Marwick v. Harris Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Nogart v. The Upjohn Co.*, 981 P.2d 79, 87 (Cal. 1999).[9] Accordingly, Defendants

---

[9] Defendants argue that California law applies; however, both parties go back and forth between using Texas and California law. Accordingly, the Court will analyze under both at this time.

bear the burden of establishing as a matter of law that the statute of limitations applies to Plaintiffs' claims. *See KPMG Peat Marwick v.* 988 S.W.2d at 748; *Nogart*, 981 P.2d at 87. Where, as here, Plaintiffs assert the discovery rule, equitable estoppel, and fraudulent concealment, Defendants bear the burden of disproving their application—or proving the applicability of the statute of limitations in spite of the discovery rule, equitable estoppel, and fraudulent concealment—to prevail on a motion to dismiss. After reviewing the First Amended Complaint, the motion to dismiss, the response, the reply, and the sur-reply, the Court finds that Defendants have not met their burden of demonstrating the applicability to the statute of limitations in spite of the discovery rule, equitable estoppel, and fraudulent concealment, as a matter of law and Plaintiffs have stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

Defendants maintain that the Court should dismiss Counts 9–11, Plaintiffs' claims under the Texas Uniform Trade Secrets Act, because the alleged misappropriation began prior to the Texas Uniform Trade Secrets Act's enactment. Plaintiffs counter that they have alleged a variety of acts extending over the course of several years. Based on the current standard and the face of the pleadings, the Court finds that Plaintiffs have adequately pleaded a cause of action under the Texas Uniform Trade Secrets Act; however, the Court does not foreclose Defendants from raising this argument in a later motion for summary judgment.

As to Counts 15–16 and Count 20, Defendants argue that Plaintiffs' claims for common law civil conspiracy and RICO violations are not sufficiently pleaded under the heightened Rule 9(b) pleading standard. Further, Defendants aver that Plaintiffs have not pleaded the existence of an enterprise with any degree of specificity. Moreover, as to the conspiracy to commit fraud claim, Defendants claim that Plaintiffs' pleading falls far short of meeting the standards set out by Rule 9(b). Plaintiffs maintain that they have adequately pleaded their RICO and conspiracy claims.

Plaintiffs assert a cause of action for common law civil conspiracy based on fraudulent activity. Further, Plaintiffs assert causes of action under RICO based on fraudulent conduct, alleging violations of 18 U.S.C. § 1962(c) and conspiracy to commit unlawful acts under 18 U.S.C. § 1962(c) pursuant to 18 U.S.C. § 1962(d). Because Plaintiffs' claims are based on fraud, Plaintiffs' must satisfy the heightened pleading standard contained in Rule 9(b). FED. R. CIV. P. 9(b).

"The elements of a common law civil conspiracy are: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Hadnot v. City of Woodville*, No. 9:10-cv-117, 2011 WL 13221060, at *2 (E.D. Tex. Feb. 11, 2011) (quoting *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

Further, common elements required to prove a violation of a subsection of § 1962 include: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)). "A RICO claim, 18 U.S.C. § 1962(c), 'requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan*, 319 F.3d at 229 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "The enterprise may be a legal entity or 'any group of individuals *associated in fact* although not a legal entity.'" *Id.* (emphasis in original) (quoting 18 U.S.C. § 1961(4)).

"An association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). It "'must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission of the predicate acts.'" *Zastrow v. Houst. Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (quoting *Montesano*, 818 F.2d at 427). Stated differently, "[t]he enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages." *Whelan*, 319 F.3d at 229 (citing *Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 441 (5th Cir. 1987)); *accord Manax*, 842 F.2d at 811. An association-in-fact enterprise, "need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods." *Boyle*, 556 U.S. at 948. "Members of the group need not have fixed roles; different members may perform different roles at different times." *Id.* The plaintiff "must plead specific facts, not mere conclusory allegations, which establishes the enterprise." *Montesano*, 818 F.2d at 427.

The Court agrees with Defendants that Plaintiffs have failed to plead with the requisite specificity an adequate claim for relief for RICO violations and common law civil conspiracy. However, in their response, Plaintiffs request leave to amend their complaint. Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. FED. R. CIV. P. 15(a). After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when justice so requires." *Id.* The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend

"is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to allow amendment "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) may consider "whether there has been 'undue delay, bad faith or dilatory motive, . . . undue prejudice to the opposing party, and futility of amendment.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996)). The Court finds no undue delay, bad faith, or dilatory motive. Defendants have not argued that an amendment would cause them any prejudice or that it would be futile. Accordingly, the Court grants Plaintiffs leave to amend their complaint to fix the deficiencies identified by Defendants in their motion to dismiss.

As to Count 21, Defendants argue that "corporate raiding" is not a cause of action under either Texas or California law. Plaintiffs respond that while it might not be an independent tort under Texas or California law, other courts have held the claim to be viable and courts in Texas recognize corporate raiding as engaging in unfair competition. Because Plaintiffs acknowledge that "corporate raiding" is not its own independent tort under either California or Texas law, the Court dismisses the cause of action. However, because the Court grants Plaintiffs leave to file an amended complaint, Plaintiffs may amend its complaint to include this conduct as part of their cause of action for unfair competition.

As to Count 22, Defendants assert that Plaintiffs failed to properly state a claim for unfair competition under the Lanham Act. Further, regarding Count 13, Defendants aver that Plaintiffs did not sufficiently allege a claim for international interference with prospective business relations because they do not identify any third party with which they would have done business, do not

allege that there was a reasonable probability of entering into a contractual or business relationship with any third party, and did not allege that the prospective business relationships were disrupted. The Court agrees that Plaintiffs' complaint regarding unfair competition under the Lanham Act and tortious interference with prospective business relationships fall short of stating a plausible claim. Nonetheless, Plaintiffs requested leave to amend their complaint, which the Court should freely grant. FED. R. CIV. P. 15(a). Accordingly, the Court grants Plaintiffs leave to amend their complaint to fix the deficiencies identified by Defendants in their motion to dismiss.

As to Count 17, Defendants argue that the Court should dismiss Plaintiffs' conversion claim under Texas law because conversion does not include intellectual property and Plaintiffs have not alleged the conversion of any physical property. Plaintiffs maintain that the First Amended Complaint also alleges that "[o]ne of Futurewei's employees, a chief engineer who had worked with Huang before his departure to CNEX on June 6, 2014, was caught downloading thousands of Plaintiffs' documents to his personal computer without permission. This included hundreds of documents containing confidential, proprietary, and trade secret information." (Dkt. #27 at ¶ 54); *accord* (Dkt. #27 at ¶¶ 10, 197). Nevertheless, Plaintiffs did not allege that these documents were within the possession, dominion, or control of Defendants. *See Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971) (explaining "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion."). As such, the Court finds that this claim is not sufficiently pleaded; however, the Court grants Plaintiffs leave to file an amended complaint to fix the deficiencies noted by the motion to dismiss and this Order.

## CONCLUSION

It is therefore **ORDERED** that Defendants CNEX Labs, Inc.'s and Yiren "Ronnie" Huang's Motion to Dismiss for Improper Venue and for Failure to State a Claim Under Rule 12(b)(6) (Dkt. #14) is hereby **DENIED as moot**, Defendants CNEX Labs, Inc. and Yiren Ronnie Huang's Motion for Leave to Address Issues Raised at the April 2, 2018 Hearing (Dkt. #56) is hereby **GRANTED**, and Defendants CNEX Labs, Inc. and Yiren "Ronnie" Huang's Motion to Dismiss Plaintiffs' First Amended Complaint for Improper Venue and for Failure to State a Claim Under Rule 12(b)(6) (Dkt. #34) is hereby **DENIED** as to the Motion to Dismiss for Improper Venue and hereby **GRANTED in part** as to the Motion to Dismiss for Failure to State a Claim. The Motion to Dismiss for Failure to State a Claim is granted as to Count 21 and the Court hereby **DISMISSES WITH PREJUDICE** corporate raiding as its own independent cause of action. However, Plaintiffs shall file an amended complaint to address the deficiencies identified as to Counts 15–17, 20, and 22, and may also include the allegations of corporate raiding as part of Plaintiffs' claim for unfair competition within fourteen (14) days of this Order. The motion is denied as to the remainder of the grounds asserted.

**SIGNED this 25th day of April, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE