# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., and FUTUREWEI TECHNOLOGOIES, INC. | § § § | |
| | § | Civil Action No. 4:17-CV-00893 |
| v. | § | Judge Mazzant |
| | § | |
| YIREN RONNIE HUANG, and CNEX LABS, INC. | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' Second Motion to Compel (Dkt. #83) and Defendants' Amended Motion to Compel (Dkt. #88). After reviewing the relevant pleadings, the Court finds that Plaintiffs' and Defendants' separate motions to compel should be granted in part and denied in part.

## BACKGROUND

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") is a multinational networking and telecommunications equipment and services company headquartered in China. Plaintiff Futurewei Technologies, Inc. ("Futurewei") is a subsidiary of Huawei with several offices throughout the United States, including Plano, Texas. In December 2010, Futurewei offered Yiren "Ronnie" Huang ("Huang") employment as a Principal Engineer for its solid-state drive ("SSD") storage group, to assist in development and implementation of Advance Computing Network ("ACN"), non-volatile memory express ("NVMe"), and SSD technology. Huang accepted the offer in January 2011. Huang worked in the Santa Clara office and was domiciled in Santa Clara County, California. The Employment Agreement also contained provisions relating to non-disclosure, non-competition, and non-solicitation.

Based on Huang's job responsibilities, Plaintiffs contend that Huang had access to confidential, proprietary, and trade secret information. On May 31, 2013, Huang ended his employment with Futurewei. On June 3, 2013, Huang, along with others, incorporated CNEX Labs, Inc. ("CNEX"), a Delaware Corporation with its principal place of business in California. Plaintiffs allege, among other things, that Huang incorporated CNEX to compete directly with Plaintiffs, Huang is using Plaintiffs' confidential, proprietary, and trade secret information to develop and improve SSD technology and NVMe related technology for CNEX, and further that Huang and CNEX are improperly soliciting employees away from Plaintiffs. Additionally, Plaintiffs allege that Huang started to engage in this behavior informally prior to leaving Futurewei. Plaintiffs further contend that Huang and CNEX began filing patent applications in June 2013, using the information that Huang obtained through his employment with Futurewei.

Plaintiffs filed suit in the Eastern District of Texas on December 28, 2017, against Defendants seeking declaratory judgment and alleging a variety of causes of action including breach of contract, disclosure and misappropriation of confidential information and trade secrets, tortious interference with contract and prospective contracts, conspiracy claims, Racketeer Influence and Corrupt Organizations Act of 1970 ("RICO") claims, breach of fiduciary duty, and unfair competition under Lanham Act and Texas common and statuary law (Dkt. #1). On the same date, Defendants filed suit of a similar nature in the Superior Court of California, County of Santa Clara (Dkt. #34, Exhibit 5 at p. 1).

On July 13, 2018, the Court held a telephone conference on certain discovery issues. The Court ordered the parties to submit briefing regarding the discovery disputes. On July 20, 2018, Plaintiffs filed a motion to compel (Dkt. #83). On July 27, 2018, Defendants filed a response (Dkt. #94). On August 1, 2018, Plaintiffs filed a reply (Dkt. #101).

On July 23, 2018, Defendants filed a motion to compel (Dkt. #88). On July 27, 2018, Plaintiffs filed a response (Dkt. #96). On August 1, 2018, Defendants filed a reply (Dkt. #102).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on

the basis of that objection." *Id.* 34(b)(2)(C).  On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.*

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a nonfrivolous argument for changing the law.  FED. R. CIV. P. 26(g).  This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery.  FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes.  FED. R. CIV. P. 26(b)(1), advisory committee note (2015).  This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue.  *Id.*  For example, a party requesting discovery may have little information about the burden or expense of responding.  *Id.*  "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information— with respect to that part of the determination."  *Id.*

## ANALYSIS

Plaintiffs assert that Defendants are improperly withholding relevant documents and specifically seeks to compel the production of (1) documents related to the solicitation and recruitment of Plaintiffs' former employees, (2) documents related to investment in CNEX or representations to investors regarding CNEX's technology, and (3) documents related to patent applications.  Defendants have maintained their position that they were withholding documents

from their initial production and supplemental production through the July 13, 2018 telephonic hearing. Defendants' counsel conceded to the Court:

> And, your Honor, I think as counsel said, this dispute underlies a very significant portion of the discovery dispute of plaintiffs. We absolutely agree that we are sitting on documents that are technical in nature and we agree to produce those after we get the Trade Secrets. And we've said that from day one.

(Dkt. #76 at 14:3–8). Defendants also assert that Plaintiffs are improperly withholding relevant documents and specifically seeks to compel the production of (1) documents related to Plaintiffs' disclosure of alleged trade secrets to Defendants, (2) documents related to the organizational structure of employees identified in the complaint, (3) documents related to Plaintiffs' tortious interference claim, (4) documents concerning Plaintiffs' alleged damages, and (5) documents concerning Defendants' unclean hands defense. Lastly, the parties cannot agree as to the custodians or reasonable search terms for the electronic systems information ("ESI").

## I. Pre-Discovery Identification of Trade Secrets

Defendants assert that Plaintiffs have failed to fully answer Interrogatory No. 1, which requests the identification of the trade secrets they claim Defendants misappropriated. Defendants maintain that Plaintiffs' answers have been insufficiently specific to enable Defendants to discover what trade secrets they claim were actually misappropriated. Defendants ask the Court to order Plaintiffs to identify each alleged trade secret by separately listing each of the individual alleged trade secrets that Plaintiffs claim Defendants have misappropriated and describe each such trade secret with sufficient particularly so that Defendants understand how each differs from public domain information.

Plaintiffs assert that they are not required under the law to provide the pre-discovery identification of their trade secrets. They further argue that they have identified the trade secrets

at issue with sufficient particularity to allow Defendants to produce relevant documents and information.

"[N]either Texas nor Fifth Circuit law requires pre-discovery identification of trade secrets." *Polydyne Software, Inc. v. Celestica Int'l, Inc.*, No. A-14-CV-797 LY, 2014 WL 12479201, at *2 (W.D. Tex. Dec. 31, 2014). However, several courts have found pre-discovery identification of trade secrets was appropriate and looked to Rule 16 of the Federal Rules of Civil Procedure as authority. *See StoneEagle Servs., Inc. v. Valentine*, 2013 WL 9554563, at *3 (N.D. Tex. June 5, 2013) ("[T]he undersigned agrees with those courts requiring plaintiffs, in appropriate cases, to describe with reasonable particularity the alleged trade secrets that form the basis of their claim."); *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. 2013) (concluding pre-discovery identification is available to assist court in managing cases, "such as the present case, that may involve complex issues or unusual proof problems").[1] More recently, the Texas Supreme Court recently denied a petition for mandamus in which the petitioner sought an order compelling a plaintiff to identify more specifically the trade secrets it contended where appropriated. *In re Terra Energy Partners, LLC*, No. 01-17-00137-CV, 2017 WL 4782533, at *1 (Tex. App.—Houston [1st Dist.] Oct. 24, 2017, orig. proceeding [mand. denied]).

In their answers to Defendants' First Set of Interrogatories, Plaintiffs identified the specific categories of trade secret information that Huang was exposed to while employed by Futurewei and that Defendants are accused of misappropriating. Plaintiffs then produced, and per Rule 33(d), specifically identified by Bates-number, approximately 250 documents containing the trade secret

---

[1] Rule 16 states that "[a]t any pretrial conference, the court may consider and take appropriate action [, which includes] . . . adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems[.]" FED. R. CIV. P. 16

and confidential information that Defendants allegedly misappropriated from Plaintiffs. When a response to an interrogatory may be derived from business records and when the burden of deriving the answer from the records is substantially the same for both sides, the production of these records sufficiently answers the interrogatory. FED. R. CIV. P. 33(d). Furthermore, this information includes detailed designs and schematics of Plaintiffs' products and prototype architecture, along with explanations for why these products and prototypes overcome existing issues in current industry offerings, system requirement specification manuals, along with Plaintiffs' internal comparisons of its prototypes against products already available in the marketplace. Defendants' cases are distinguishable because those cases involved plaintiffs generally identifying thousands of documents as containing their trade secrets, which were found to be insufficient under Rule 33(d).

The Court finds that ordering Plaintiffs to more specifically identify each alleged misappropriated trade secret is unnecessary at this time. Plaintiffs have answered Interrogatory No. 1 to the extent reasonably possible under the circumstances of this case. The Court notes that Plaintiffs will at some point have to specifically identify the alleged trade secrets with greater particularity as the Court will not permit a trial by surprise. In the event that the normal discovery procedures prove problematic, Defendants may seek relief from the Court at that time. The Court now turns to the specific documents Plaintiffs seek to compel from Defendants.

**II. Plaintiffs' Requested Documentation**

As the Court previously discussed, Defendants may not withhold relevant documents until Plaintiffs identify their trade secrets with specificity. Therefore, Defendants must produce any relevant documents they withheld from their initial production and supplemental production. The Court now turns to Plaintiffs' specific document requests.

**A. Documents Related to Solicitation and Recruitment of Plaintiffs' Former Employees**

Defendants assert that they are not withholding documents related to the alleged solicitation and recruitment of Plaintiffs' former employees. "To the extent Plaintiffs seek further documents related to the solicitation and recruitment, Defendants cannot produce documents that do not exist." (Dkt. #94 at p. 13). Defendants are directed to amend their responses and certify that no other documents related to the alleged solicitation and recruitment of Plaintiffs' former employees exist to Plaintiff within fourteen (14) days of this Order.

**B. Documents Related to Investments in CNEX or Representations to Investors Regarding CNEX's Technology**

Plaintiffs assert that "Defendants refuse to produce information and documents related to CNEX's investment, revenue, and profits since CNEX's inception relating to a handful of specifically-identified categories of technology." (Dkt. #83 at p. 11). Plaintiffs further assert that "Defendants also refuse to produce documents containing or reflecting representations made by Huang or anyone acting on CNEX's behalf to any investors about the type and nature of CNEX's products relating to those technologies, including any representations about the ownership of those technologies, about the technology CNEX had already developed, or about the technology that CNEX was developing." (Dkt. #83 at p. 11).

The Court finds that documents related to this information are relevant to liability, valuation, and damages in this matter. Thus, to the extent Defendants have not already done so, they must produce documents within fourteen (14) days of this Order, reflecting information regarding revenues and net profits earned, investor information including when Defendants solicited investors, what technology they used to promote and recruit investment money, and how much was invested based on those and related representations.

**C. Documents Related to Patent Applications**

On July 23, Defendants produced a provisional patent application and other material that reveal inventions Huang developed before joining Futurewei (Dkt. #94 at p. 14 n.14). To the extent Defendants have not already done so, they must produce documents within fourteen (14) days of this Order, reflecting inventions that Huang developed. However, the Court narrows such production to documents and communications dated during and after the time of Huang's employment with Plaintiffs.

**III. Defendants' Requested Documentation**

**A. Documents Related to Plaintiffs' Disclosure of Alleged Trade Secrets to Defendants**

Defendants assert that "Plaintiffs refuse to produce documents sufficient to show each employee accused of misappropriation's access to or knowledge of documents disclosing each of Plaintiffs' alleged trade secrets or confidential information" and also "refuse to produce documents reflecting CNEX and/or Mr. Huang's acquisition and/or disclosure of each alleged trade secret." (Dkt. #88 at pp. 12–13). Plaintiffs direct the Court to a conference letter dated June 22, 2018, in which Plaintiffs claim to have produced documents relevant to Defendants' requests (Dkt. #96, Exhibit A). However, the Court is unable to ascertain what documents, if any, Plaintiffs produced in response to Defendants' requests (See Dkt. #96, Exhibit A at pp. 6–8). The Court finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order. However, any production is limited to information dated or obtained during and after Huang's employment with Plaintiffs. Further, to the extent Plaintiffs are concerned that any information is confidential or relates to any trade secrets, the Court reiterates Plaintiffs' ability to produce any information subject to a Protective Order and/or in a reasonably redacted format.

Defendant also assert that "Plaintiffs refuse to produce documents reflecting all work Mr. Huang performed for Futurewei[,]" which would "relate to what information Mr. Huang was exposed to at Futurewei and the projects on which he worked." (Dkt. #88 at p. 13). Plaintiffs claim to have "produced documents related to Mr. Huang's relevant work in response to other requests." (Dkt. #96 at p. 8). The Court finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order. Furthermore, Plaintiffs must supplement their response and specifically identify those responsive documents already produced.

Defendants also assert that "Plaintiffs refuse to produce any documents reflecting confidentiality agreements with third parties under which Plaintiffs' alleged trade secrets were disclosed." (Dkt. #88 at p. 13). Plaintiffs assert that they "not only produced responsive documents but directed Defendants to examples in their production." (Dkt. #96 at p. 8). The Court finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order. However, any production is limited to information dated or obtained during and after Huang's employment with Plaintiffs. Further, to the extent Plaintiffs are concerned that any information is confidential or relates to any trade secrets, the Court reiterates Plaintiffs' ability to produce any information subject to a Protective Order and/or in a reasonably redacted format.

### B. Documents Related to Organizational Structure of Employees Identified in the Second Amended Complaint

Defendants claim that "Plaintiffs refuse to produce documentation reflecting the job titles, job descriptions, and organizational charts of the former Huawei or Futurewei employees named in the [Second Amended Complaint] including, but not limited to, paragraph 61." (Dkt. #88 at pp. 13–14). Plaintiffs assert that "produced documents they maintained in the ordinary course of business that described the organizational structure of Huawei's work teams and listed out the

job titles and departments of many of the former employees listed in the complaint." (Dkt. #96 at p. 8).

The Court finds that to the extent Plaintiffs have not already done so, they must produce documents within fourteen (14) days of this Order, reflecting the job titles, job descriptions, and organizational charts of the former Huawei or Futurewei employees named in the Second Amended Complaint, including specific projects each worked on for Plaintiffs. However, the Court narrows such production to documents and communications dated during and after the time of Huang's employment with Plaintiffs.

### C. Documents Related to Plaintiffs' Tortious Interference with Prospective Business Relations Claim

Defendants assert that Plaintiffs refuse to produce documents supporting their tortious interference with prospective business relations claim (Dkt. #88). Defendants request the Court to compel Plaintiffs to produce "documents and communications relating to (1) any past, current, or prospective contractual relationship with which Plaintiffs contend that CNEX has interfered; and (2) any past, current, or prospective business relationship with which Plaintiffs contend that CNEX has interfered." (Dkt. #88 at p. 14). Plaintiffs assert that they have "produced documents that support their tortious interference claim and directed Defendants to examples" but objected to "the extent it seeks documents relating to non-tortious interference" (Dkt. #96 at p. 9).

The Court finds that documents evidencing non-tortious inference may still be relevant and Plaintiffs must supplement their response. Furthermore, to the extent that Plaintiffs have not produced such information relating to (1) any past, current, or prospective contractual relationship with which Plaintiffs contend that CNEX has interfered; and (2) any past, current, or prospective business relationship with which Plaintiffs contend that CNEX has interfered, they must do so

within fourteen (14) days of this Order. However, any production is limited to information dated or obtained during and after Huang's employment with Plaintiffs.

### D. Documents Concerning Plaintiffs' Damages

Defendants claim that "Plaintiffs refuse to produce documents concerning the damages suffered as a result of Defendants' alleged conduct." (Dkt. #88 at p. 14). Plaintiffs assert that they "produced documents related to their expenditures on research and development of the trade secrets Defendants misappropriated[,]" however, their "damages determinations are complicated and may depend on the receipt of documents from the [D]efendant[s] in discovery." (Dkt. #96 at p. 9). The Court finds that to the extent that Plaintiffs have not produced such information, they must do so. Additionally, Plaintiffs must supplement their document production regarding damages within fourteen (14) days upon receipt of Defendants' supplemental production.

### E. Documents Concerning Defendants' Unclean Hands Defenses

Defendants assert that Plaintiffs should be compelled to provide documents concerning Defendants' unclean hands defense, which include "any documents referencing CNEX and any strategies contemplated or taken by Plaintiffs with respect to CNEX." (Dkt. #88 at p. 15). However, Defendants have not pleaded an unclean hands defense, and their allegations would not excuse or even relate to Plaintiffs' claim that Defendants' misappropriated Plaintiffs' trade secrets before CNEX was even formed. Defendants' motion to compel should be denied as to these documents.

## IV. ESI

Plaintiffs seek an order "approving the use of 50 discrete search terms to be run across Defendants' electronic systems for responsive documents (Dkt. #83 at pp. 13–14). Specifically, Plaintiffs reference an exhibit that lists search terms and specific custodians (Dkt. #83, Exhibit B

at pp. 5–16). Defendants respond that Plaintiffs' suggested search terms and requests are overly broad and unnecessarily increase the volume of ESI. Nevertheless, Defendants assert that "[a]though Plaintiffs propose a limit of 50 search terms, they have not identified what those terms are." (Dkt. #94 at p. 15). Defendants "invite Plaintiffs to identify their proposed search terms to allow a meaningful meet and confer on the issue." (Dkt. #94 at p. 15). Plaintiffs assert that they "have not yet identified the 50 proposed search terms because Defendants have not agreed to that number of terms" (Dkt. #101 at p. 5).

Plaintiffs have also agreed to reduce that list of custodians to the sixteen 16 employees who left in the 18 months after CNEX was founded (Dkt. #101 at p. 5). Defendants suggest that "the ten most significant email custodians" are sufficient (Dkt. #94 at p. 15).

Although Defendants assert that the parties are not at an impasse, the Court finds that given the ongoing discovery disputes and inability to cooperate, the requested relief is necessary. Accordingly, the Court finds that Plaintiffs' request for 50 search terms is appropriate and directs Plaintiffs to identify those search terms to Defendants within seven (7) days of this order. The Court also finds Plaintiffs requests number of custodians appropriate.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' and Defendants' separate Motions to Compel (Dkt. #83; Dkt. #88) are hereby **GRANTED in part** and **DENIED in part** as specified herein.

**SIGNED this 14th day of August, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE