**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., a Chinese corporation, and FUTUREWEI TECHNOLOGIES, INC., a Texas corporation, <br><br> Plaintiffs, <br><br> v. <br><br> YIREN "RONNIE" HUANG, an individual, and CNEX LABS, INC., a Delaware corporation, <br><br> Defendants. | Civil Action No. 4:17-cv-00893-ALM |

**DEFENDANTS CNEX LABS, INC. AND YIREN RONNIE HUANG'S FIRST AMENDED COUNTERCLAIMS AND ANSWER TO SECOND AMENDED COMPLAINT**

**COUNTERCLAIMS**

Defendants and Counterclaim-Plaintiffs CNEX Labs, Inc. ("CNEX") and Yiren Ronnie Huang ("Mr. Huang") (collectively, "Defendants") hereby provide their First Amended Counterclaims to Plaintiffs and Counterclaim-Defendants Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc.'s (collectively, "Plaintiffs") Second Amended Complaint ("SAC") as follows:

**INTRODUCTION**

1.     Huawei and Futurewei have served as critical participants in a corporate espionage campaign orchestrated to steal intellectual property from American technology companies, like CNEX, in hopes of surpassing the United States as the world's predominant technological superpower by 2025.  Their filing and pursuit of this litigation—following years of illicit spying and premised on bogus claims of trade secret misappropriation and false claims of

1

ownership of CNEX's proprietary technology—represents the latest in a long line of underhanded tactics waged by Plaintiffs in their ongoing effort for Chinese technological dominance.  Defendants Ronnie Huang and CNEX hereby bring these Counterclaims to put an end to Huawei and Futurewei's illicit campaign to steal CNEX and Mr. Huang's innovative technology and to restore the level playing field that is a necessary cornerstone of a free and competitive technology marketplace.

2.      Mr. Huang has worked in the technology industry and for some of its leading companies over the course of three decades and, at the time he began working at Futurewei in 2011, had already become a renowned industry expert in Solid State Disk Non-Volatile Memory ("SSD NVMe") technology.  When Mr. Huang agreed to join Futurewei, rather than lawfully purchase or license Mr. Huang's preexisting technology at the time, Huawei and Futurewei instead pressured Mr. Huang to sign an employment agreement replete with unlawful and unenforceable provisions.  Through this agreement, Huawei and Futurewei attempted to force Mr. Huang to assign to them the proprietary technology that Mr. Huang had already developed prior to joining Futurewei.  Despite Huawei's efforts to induce Mr. Huang to assign his proprietary technology to Huawei, however, Mr. Huang carved out his preexisting technology from the scope of his employment agreement with Futurewei.

3.      After Mr. Huang departed from Futurewei in May 2013, in June 2013, he formed CNEX with co-founders Alan Armstrong and Joe DeFranco.  Dr. Armstrong and Mr. DeFranco are veterans of the computer industry with decades of experience.  Based in part on Mr. Huang's technology developed prior to joining Futurewei, CNEX and Mr. Huang have gone on to develop leading SSD NVMe technology, and obtained numerous patents protecting their technology.

4.      Indeed, because of CNEX and Mr. Huang's innovative technology, CNEX quickly captured the attention of major computer companies and the support of many investors. On information and belief, Huawei immediately began tracking CNEX's progress and sought to obtain confidential and proprietary information concerning CNEX and its technology, including through illicit means.  As detailed below, Huawei repeatedly made false overtures to meet with CNEX, feigning interest as a potential customer.  Unbeknownst to Mr. Huang and CNEX, however, these efforts were a pretext, and a continuation of Huawei's previous attempts to unlawfully acquire Mr. Huang's technology.  After seeing the potential of CNEX's technology and the strength of CNEX's patent portfolio, Huawei and Futurewei hatched this baseless litigation, falsely claiming that CNEX's technology actually belonged to Huawei under the employment agreement—even though Mr. Huang expressly excluded it from the scope of his obligations pursuant to that agreement.

## THE PARTIES

5.      Mr. Huang is an individual currently residing in Santa Clara County, California. Mr. Huang has been a California resident since approximately January, 1989.  Mr. Huang has domiciled in Santa Clara County, California since that time.

6.      CNEX is a Delaware corporation with a principal place of business at 2880 Stevens Creek Blvd., Suite 108, San Jose, CA 95128.

7.      On information and belief, Futurewei is a Texas corporation and purports to have its principal place of business at 5340 Legacy Drive, Plano, TX 75024.

8.      Huawei is a multinational company headquartered in Shenzen, China. On information and belief, Huawei's principal place of business is located at Huawei Industrial Base, Bantian, Longgang District, Shenzhen, Guangdong, P.R. China 518129.  On information

and belief, and as the United States House of Representatives Permanent Select Committee on

Intelligence (HPSCI) has found, (1) Huawei is dependent on the Chinese government for support

and maintains close contact to the Chinese Government, and (2) Huawei's founder, Ren

Zhengfei, was a director of the People's Liberation Army Information Engineering Academy, an

organization that they believe is associated with 3PLA, China's signals intelligence division,

whose (and Huawei's) connections to the Chinese military continue.  As the HPSCI further

found, "Huawei exhibits a pattern of disregard for the intellectual property rights of other entities

and companies in the United States" and that "several former employees of Huawei said it

[Huawei] is known to purposely use the patented material of other firms."[1]

## JURISDICTION

9.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §

1367(a) because they are so related to claims in the action that they form part of the same case or

controversy under Article III of the United States Constitution.

## FACTUAL ALLEGATIONS

### Mr. Huang's Background and Development of SSD Technology

10.     Mr. Yiren "Ronnie" Huang has lived and worked continuously as an engineer and

inventor in the Silicon Valley for nearly 30 years.  Mr. Huang received his bachelor's degree in

electrical engineering from Shanghai Jiao Tong University in 1986 and his master's degree in

electrical and electronics engineering from Michigan Technological University in 1998.  Since

graduating from Michigan Technological University, Mr. Huang has worked for a number of

well-known technology companies, including Cisco, Sandforce, and Brocade, where his work

included researching, developing and inventing numerous intellectual property rights and trade-

---

[1] *See* https://intelligence.house.gov/sites/intelligence.house.gov/files/documents/huawei-zte%20investigative%20report%20(final).pdf.

secrets related to networking and solid-state storage drive ("SSD") technology.  After a long

career in networking and SSD technologies, Mr. Huang co-founded CNEX in June of 2013 and

currently works as its Chief Technology Officer.  As of the date of this filing, Mr. Huang has

been named an inventor on 9 U.S. patents and 13 pending U.S. patent applications that have been

assigned to CNEX.

11.     Mr. Huang began his engineering career at Cisco Systems, where he worked on

the development of a high-speed SERDES fabric that would become the Interlaken Data

Protocol standard.  This work resulted in Mr. Huang being listed as an inventor on at least U.S.

Patent Nos. 8,665,894; 8,340,005; 8,259,739; 7,782,805; and 7,660,252.  Mr. Huang was also

listed as an inventor on U.S. Patent No. 6,826,150, based on work he performed at Cisco to

improve the quality of service in network communications by using a timestamp.  The

technology underlying all of these patents has extensive application to the operation of SSDs in

modern-day networking communications.

12.     In January 2008, Mr. Huang left Cisco to work at Sandforce, where he was

responsible for the logic design for SATA-based SSD controllers.

13.     After years dedicated to working with both SSD and networking technologies, in

March of 2009, Mr. Huang decided to leave his employment at Sandforce to try to start a new

company (which he tentatively called "Rephisa") to develop high performance, low latency SSD

products, similar in design intent to the SSDs Mr. Huang would later develop at CNEX.

14.     Over the next several months, and well before *any* employment with or work for

Huawei or Futurewei, Mr. Huang conceived and invented numerous key concepts for the

advancement of SSD technology, including many novel and innovative ideas to improve the

performance of SSD controllers.   Mr. Huang documented many of these ideas for such an

improved SSD controller in a single Provisional Patent Application form, which he filed with the United States Patent and Trademark Office ("Rephisa Provisional Application").  The work Mr. Huang did while developing his inventions for Rephisa is reflected in the Rephisa Provisional Application and other Rephisa documents.  These inventions were and remain *Mr. Huang's*, not Plaintiffs', and Mr. Huang expressly excluded them from the scope of his obligations pursuant to any employment agreement he might have had with Plaintiffs.

15.     In October 2010, well over a year after Mr. Huang had filed the Rephisa Provisional Application, Futurewei started recruiting him to join the Futurewei organization in Santa Clara, California.  Futurewei expressed its interest in hiring someone who had expertise with SSD controller technology and promised Mr. Huang an entrepreneurial work culture and the opportunity to develop innovative new SSD products for the marketplace.  Futurewei aggressively recruited Mr. Huang, whom Futurewei recognized as an industry expert in the design and development of SSD technology.

16.     As part of the initial discussions with Futurewei, Mr. Huang told Futurewei that he already had developed significant intellectual property in the SSD controller technology space.  Although Mr. Huang offered to sell his existing intellectual property to Futurewei, including the inventions in the Rephisa Provisional Application, Futurewei told Mr. Huang that it was "cleaner" for the company to bring him on board as an employee rather than purchase his intellectual property.  On information and belief, Futurewei reached the decision not to purchase Mr. Huang's preexisting intellectual property only after deliberation of Huawei's senior management, and because Plaintiffs believed that hiring Mr. Huang as an employee would give them the opportunity to use and, if necessary, steal Mr. Huang's intellectual property without having to lawfully acquire it.

17.     As described in greater detail below, although Futurewei told Mr. Huang that it was unwilling to purchase the intellectual property Mr. Huang had already developed, Futurewei continued to recruit Mr. Huang, encouraging him to accept employment with promises of an entrepreneurial culture and significant responsibility.  On December 22, 2010, Futurewei made Mr. Huang a job offer, which he accepted, and Mr. Huang joined Futurewei at its Santa Clara offices in January 2011.

18.     Almost a full week after Mr. Huang began work at Futurewei, he was required to attend an orientation session during which he was asked to sign an "Employment, Confidentiality, Proprietary, Information and Inventions Agreement" (the "Employment Agreement") that purported to require him to assign his rights to inventions to Futurewei. Although he was required to quickly complete and sign the form during the orientation session and was not afforded the opportunity to consult with a lawyer concerning his rights prior to signing the Employment Agreement, consistent with his discussions with Futurewei leading up to his employment, Mr. Huang sought to and did exclude his pre-existing intellectual property, including patents and confidential (non-patented) trade secret inventions he had developed for Rephisa, from the scope of the Employment Agreement.  He did so by filling out a form attached as Exhibit A to the agreement which documented his "Prior Inventions."  These "Prior Inventions" are expressly excluded from the scope of the Employment Agreement.

19.     After documenting the existence of his preexisting intellectual property on the form and excluding it from the scope of the Employment Agreement, Mr. Huang signed the Employment Agreement based on the understanding that Plaintiffs were obligated under the Employment Agreement to respect his preexisting intellectual property rights, that his preexisting intellectual property was expressly excluded from the scope of Employment

Agreement, that Plaintiffs obtained no rights to his preexisting intellectual property (which Plaintiffs had declined to purchase only weeks before) and that Plaintiffs obtained no rights that could prevent Mr. Huang from developing his preexisting intellectual property outside of his work for Futurewei.  Mr. Huang returned the signed Employment Agreement during the orientation session.  Mr. Huang never received a copy of the Agreement from Futurewei or Huawei.

***Mr. Huang's Work at Futurewei***

20.     Mr. Huang worked as a Principal System Architect at Futurewei for a short period of his decades long career, a little over two years' time.  At all times, Mr. Huang's employment was based in Santa Clara, California.  Although Mr. Huang occasionally traveled to China in connection with his job duties, the work he performed for Futurewei was done primarily at Futurewei's offices in Santa Clara – and not in Texas.

21.     Despite the express promises made to him during the interview process, Mr. Huang's role at Futurewei (and the role of the Futurewei organization in general) was limited to technical research and development.  While employed for Futurewei, Mr. Huang was not given the opportunity to actually develop end customer products nor the leadership responsibility to bring new, advanced SSD products to market.  Instead, Mr. Huang was confined to research work in support of the product development efforts of Futurewei's parent organization, Huawei, of Shenzen, China.  Frustrated that the culture at Futurewei was not entrepreneurial and product-focused as had been promised, Mr. Huang resigned and left Futurewei in May 2013 to attempt to start a new company.

*Mr. Huang Co-Founds CNEX*

22.     In June 2013, after he left Futurewei, Mr. Huang co-founded CNEX with two other California residents—Dr. Alan Armstrong and Joe DeFranco, who themselves each have decades of experience in the semiconductor industry, specifically storage applications and in particular, SSDs and hard-disk drive technologies.  CNEX is an early stage company, headquartered in San Jose, California, that develops innovative SSDs system solutions in the form of semiconductors (controllers), and related software and firmware.

23.     A top priority for the founders was to develop an innovative approach to customer-focused SSD product offerings.  During the weekend of June 1-3, 2013, Mr. Huang and Dr. Armstrong met together to brainstorm what would become CNEX's technological differentiation in its SSD product offerings.  Through these meetings, Mr. Huang and Dr. Armstrong conceived of the idea of using Ethernet to scale and connect NVMe-based SSDs across Ethernet communication protocols (NVMoE).  CNEX's Patent No. 9,430,412, whose priority date is June 26, 2013, embodies this technology, along with other subsequent CNEX patent applications ("NVMoE Patent applications").

24.     CNEX currently has over 140 employees and continues to develop cutting-edge SSD products based primarily on customer-specific demands. For example, for its first product, CNEX teamed with NAND Flash manufacturers and customers to develop a revolutionary new NVMe PCIe SSD controller ASIC that supports LightNVM/Open-Channel operation, and includes native NVMoE I/O connectivity. CNEX SSD controllers deliver high-performance with low and predictable latency, and provide flexibility for software-defined-storage with host-based FTL, and Ethernet I/O for storage fabric scalability.

**Huawei and Futurewei's Attempts to Steal Mr. Huang and CNEX's Technology**

25.     On information and belief, Plaintiffs have been attempting to steal Mr. Huang and CNEX's technology ever since Futurewei recruited Mr. Huang.

<u>*Futurewei's Fraudulent Bait-and-Switch Hiring of Mr. Huang*</u>

26.     As part of its recruiting pitch, Futurewei told Mr. Huang that it was looking for someone who had experience with SSD controller technology to work on re-architecting Futurewei's then-existing SSD technology.  Although Mr. Huang offered to sell his existing SSD-related intellectual property, including his Rephisa Provisional Application, to Futurewei, Futurewei told Mr. Huang that it did not want to buy Mr. Huang's existing IP, declined Mr. Huang's offer and instead subsequently directed Mr. Huang to execute the numerous employment documents they subsequently presented to him. On information and belief, these actions were undertaken at the direction of Huawei senior executives.

27.     In hindsight, on information and belief, it appears that Futurewei did indeed want Mr. Huang's intellectual property and that, rather than obtaining that intellectual property lawfully by purchasing it or licensing it from Mr. Huang, Futurewei instead sought to unlawfully obtain it from Mr. Huang by hiring him as an employee on the basis of false, misleading and fraudulent disclosures. On information and belief, this practice is part of a greater Chinese government campaign, of which Huawei is a major participant, to steal technological know-how from the U.S. and surpass the U.S. as the world's technology leader by 2025.[2]  On December 22, 2010, after declining to pay Mr. Huang for his existing intellectual property, Futurewei sent an offer of employment letter to Mr. Huang.  *See* Ex. 1 [2010 Offer of Employment].

28.     The offer letter indicated that Mr. Huang was to start work on January 3, 2011,

---

[2] *See* https://www.npr.org/2018/10/07/654339389/china-makes-a-big-play-in-silicon-valley; https://intelligence.house.gov/sites/intelligence.house.gov/files/documents/huawei-zte%20investigative%20report%20(final).pdf.

and that the letter ███████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████ although no such agreements were

attached to or included with the offer letter, or were previously presented or explained to Mr.

Huang.

29.     Based on the December 22, 2010 offer letter, Mr. Huang accepted Futurewei's

offer of employment and joined Futurewei in its Santa Clara office in January 2011.

30.     On January 19, 2011, over two weeks after Mr. Huang had started his

employment at Futurewei, Futurewei presented its "Employment, Confidentiality, Proprietary,

Information and Inventions Agreement" ("Employment Agreement") to Mr. Huang and others at

a new employee orientation session.

31.     The Employment Agreement contains a number of one-sided and overbroad

provisions, ***none*** of which were disclosed to Mr. Huang prior to his employment with or within

his first two weeks of working at Futurewei, and many of which are unenforceable under the law.

32.     For example, Section 3(a) of the Employment Agreement defines the term

"Subject Ideas or Inventions" as including:

> any and all ideas, processes, trademarks, service marks, inventions, designs,
> technologies, computer hardware or software, original works of authorship,
> formulas, discoveries, patents, copyrights, copyrightable works, products,
> marketing, and business ideas, and all improvements, know-how, date, rights, and
> claims related to the foregoing that, whether or not patentable, are conceived,
> developed or created which: (1) ***relate to the Company's current or contemplated
> business or activities; (2) relate to the Company's actual or demonstrably
> anticipated research or developments***; (3) result from any work performed by me
> for the Company; (4) involve the use of the Company's equipment, supplies,
> facilities or trade secrets; (5) result from or are suggested by any work done by
> the Company or at the Company's request, or any projects specifically assigned to
> me; or (6) result from my access to any of the Company's memoranda, notes,

11

records, drawings, sketches, models, maps, customer lists, research results, data, formulae, specifications, inventions, processes, equipment or other materials (collectively, "Company Materials").  (emphasis added).

33.     Under Section 3(b) of the Employment Agreement, "[a]ll right, title, and interest in and to all Subject Ideas and Inventions, including but not limited to all registrable and patent rights which may subsist therein, shall be held and owned solely by" Futurewei.

34.     Multiple subsections of Section 3(d) purport to extend Futurewei's rights to intellectual property developed by its employees even after that employee terminates their employment with Futurewei, and Section 3(d) additionally purports to vest Futurewei with unilateral power to determine whether Intellectual Property is subject to the Employment Agreement, thus reserving for Futurewei the role of judge and jury.  For example, Section 3(d) of the Employment Agreement purports to require a former employee who believes that certain Intellectual Property is not "a Subject Idea or Invention, but that is conceived, developed, or reduced to practice" by that same former employee,  either alone as a solo entrepreneur or with another company-employer during the ***"one (1) year after the termination of such employment"*** with Huawei ***must nonetheless*** "be disclosed promptly" back to Futurewei/Huawei.   After this disclosure back to Futurewei, "***[t]he Company***" alone, without any input from the employee, "determine[s] if in fact the Intellectual Property is a Subject Idea or Invention subject to" the Employment Agreement.  (Emphasis added).

35.     Similarly, Section 3(e) of the Employment Agreement mandates that the employee agree that:

> any Subject Idea and Invention shall, among other circumstances, ***be deemed to have resulted from [the employee's] access to Company Materials if:*** (1) it grew out of or result from [the employee's] work with the Company ***or is related to the business of the Company***, and (2) it is made, used, sold, exploited or reduced to practice, or an application for patent, trademark, copyright or other proprietary protection is filed thereon, by [the employee] or with my significant aid, ***within one (1) year after [the employee's] termination from employment***. (emphasis

12

added).

36.     Despite purporting to cover Mr. Huang's employment relationship with Futurewei in Santa Clara, California, the Employment Agreement also fails to incorporate the mandatory employee rights disclosures required by California Labor Code Section 2870-72, which preclude the assignment of an employee's own inventions and which render provisions to the contrary unenforceable.  On information and belief, as part of their scheme to steal Mr. Huang's intellectual property, although Futurewei advised other employees of their rights under the California Labor Code, they did not so advise Mr. Huang.

37.     The Employment Agreement also violates the laws of both California and Texas by placing unlawful restraints on trade and limiting Mr. Huang's and CNEX's freedom to hire qualified employees.  For example, Section 6(b) of the Employee Agreement states that Mr. Huang may not "directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit, assist or in any way encourage any current employee or consultant of the Company or any subsidiary of the Company to terminate his or her employment relationship or consulting relationship with the Company or subsidiary" for a period of one year after Mr. Huang's employment with the Company.  This clause is overly broad, unreasonable, and void as an unlawful business restraint under the laws of California and Texas.

38.     The Employment Agreement also contains choice of law and forum selection clauses that violate California's public policies against requiring California residents working in California to have their employment relationship governed by a foreign state's laws and requiring such residents to agree to resolve disputes relating to their employment in a foreign venue.  For example, Section 12(a) of the Employment Agreement mandates that it "will be governed by and construed according to the laws of the State of Texas without regard to conflicts

of law principles."  Section 12(b) of the Employment Agreement further requires the employee to "irrevocably agree that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Texas" and to "agree to the exclusive personal jurisdiction and venue of any court on Collin County Texas."

39.     Having quit his previous job to join Futurewei based upon the promises made in connection with his December 22, 2010 offer and being told by Futurewei that his employment with them was contingent upon his acceptance of the Employment Agreement, Mr. Huang signed the Employment Agreement.

40.     Before signing the Employment Agreement, however, Mr. Huang carefully made clear his intent to retain all ownership and rights to his existing intellectual property, which Futurewei had declined to purchase from him.  The Employment Agreement imposes obligations on Futurewei to respect Mr. Huang's rights in connection with this pre-existing work and inventions.  Section 5 of the Agreement provides that Futurewei will respect "[i]nventions … that I made prior to commencement of my employment with the Company," which are expressly excluded by Section 5 from the scope of any obligations Mr. Huang undertook pursuant to the Agreement.  Under the contract and consistent with the parties' earlier discussions, Futurewei undertook to respect all of Mr. Huang's rights in his intellectual property, including Mr. Huang's right to independently develop his existing intellectual property outside of his work for Futurewei.

41.     The Agreement also included and incorporated an attachment (also referenced in Section 5) to identify any invention, patented or unpatented, made prior to the commencement of employment with Futurewei that would be subject to the exclusion.  Mr. Huang used this form to specifically exclude the Rephisa Patent Application and his other preexisting intellectual

property and also to state that he had other inventions that he could not disclose because of

confidentiality obligations—including the remainder of the extensive work he had done while

attempting to found Rephisa.  Mr. Huang therefore believed that all of these inventions were

excluded from the scope of the obligations he undertook pursuant to the Employment Agreement

and that Futurewei was required to act in a manner that would respect and protect his rights to his

inventions, including using best efforts to protect and respect his intellectual property rights in

the course of its business and his employment, not stealing or attempting to steal his inventions

for its own use, and not demanding that he assign or transfer any of his rights in his inventions to

Futurewei or Huawei without mutually-agreeable payment terms.  At no time did Plaintiffs

indicate anything to the contrary.

### *Futurewei's Attempts to Disrupt CNEX's Business and Steal Mr. Huang and CNEX's Technology After Mr. Huang Left Futurewei*

42.    Despite Mr. Huang's disclosures and the intent of the parties in signing the

Employment Agreement, Plaintiffs continued to repeatedly and improperly attempt to acquire the

intellectual property Mr. Huang had developed prior to his employment at Futurewei.  Moreover,

Plaintiffs not only improperly attempted to usurp Mr. Huang's preexisting trade secrets and other

intellectual property through the unlawful provisions in the Futurewei Employment Agreement,

they also have improperly attempted to obtain the trade secrets and proprietary technology Mr.

Huang and others at CNEX developed ***after*** Mr. Huang left Futurewei in May of 2013.  Starting

as early as summer of 2013, on information and belief, Plaintiffs began using improper means to

attempt to acquire CNEX's trade secrets and confidential information, including contacting Mr.

Huang and other CNEX employees seeking CNEX's technical information under the guise of a

purported interest in becoming a customer of CNEX.  During these communications, Huawei

asked Mr. Huang and CNEX on multiple occasions to provide Plaintiffs with confidential and

15

proprietary information regarding CNEX's technology. Such conduct is consistent with a well-documented larger campaign by the Chinese government and its technology companies like Huawei "to target small enterprises making valuable technology, such as semiconductors."[3]

43.     As part of this unlawful campaign, in the summer of 2015, Huawei invited CNEX to present at a forum at Huawei's headquarters in China.  Believing that Huawei was interested in potentially becoming one of CNEX's customers, Mr. Huang and Dr. Armstrong attended the forum and Dr. Armstrong provided a presentation, discussing details of CNEX's SSD controller technology and the concept of NVMe over Ethernet.  The presentation materials used by Dr. Armstrong were clearly labeled "CNEX Proprietary and Confidential."

44.     In June 2016, on information and belief, at the direction of senior Huawei personnel, a China-based Huawei architect named Keji Huang contacted Mr. Huang to inquire about CNEX's SSD controller, stating that he was following up on the confidential presentation Dr. Armstrong made at the Huawei forum in 2015.  The Huawei architect represented to Mr. Huang that he was responsible for selecting a new generation of technology for Huawei, and that Huawei was considering using CNEX's SSD controller as part of that new generation of technology.  On the basis of those representations, and again on the belief that Huawei was interested in potentially becoming one of CNEX's customers, Mr. Huang met with the Huawei architect on June 21, 2016 at CNEX's offices in San Jose, California to discuss CNEX's technology approach and offerings.  During this meeting, the Huawei architect pressed Mr. Huang for information related to CNEX's NVMoE, host FTL, NVM++, and LightNVM technology.  Holding Huawei out as a potential customer, the Huawei architect represented Huawei's understanding of the confidentiality inherent in these 2016 discussions.  Relying on the

---

[3] *See* https://www.npr.org/2018/10/07/654339389/china-makes-a-big-play-in-silicon-valley.

Huawei architect's representations, Mr. Huang explained details of CNEX's innovative SSD technologies. On information and belief, the Huawei architect was never interested in Huawei becoming a CNEX customer, but was instead a spy sent from China to CNEX's headquarters in California at the direction of Huawei senior management.  On information and belief, soon after the Huawei architect left the United States, he returned to Huawei management in China and exported what he learned from Mr. Huang back to Huawei's management in China.

45.     Despite promising to get back to Mr. Huang following the discussion, the Huawei architect avoided meeting again despite Mr. Huang's further efforts to explore what he continued to believe was Huawei's genuine interest in purchasing CNEX's innovative SSD controller. The architect, however, continued to reach out to Mr. Huang in an effort to pump him for still further information concerning CNEX's technology.

46.     Unbeknownst to Mr. Huang and CNEX, however, on information and belief, Huawei's representations were false and amounted to nothing more than corporate espionage directed by Huawei management in China through which Huawei sought information about CNEX's technology to obtain a competitive advantage and to improperly use CNEX's confidential information for its own benefit.[4]  Indeed, on information and belief, after learning about CNEX's trade secrets and technology, Plaintiffs decided to use what they learned about CNEX's technology to obtain their own intellectual property.  The launching of this lawsuit is part of Huawei's and Futurewei's scheme to use the United States court system to take ownership of Mr. Huang and CNEX's technology and intellectual property, which they were unwilling to pay to obtain through lawful means in 2010 and unable to independently develop on their own without violating CNEX's patents and without having access to the combined

_____

[4] *See* https://www.nytimes.com/2018/10/10/us/politics/china-spy-espionage-arrest.html?action=click&module=Top%20Stories&pgtype=Homepage.

expertise and experience of CNEX's founders and engineers, including Mr. Huang and Dr. Armstrong.

47.     As part of this scheme, in late July 2016, only a month after Mr. Huang's meeting with the Huawei architect, Futurewei's then-outside counsel sent Mr. Huang a letter asserting for the very first time that the inventions disclosed and claimed in Mr. Huang's NVMoE Patent Applications belonged to Futurewei based on the Employment Agreement.  Through this lawsuit, Futurewei and Huawei have since laid claim not only to the NVMoE Patent Applications, but also virtually all of CNEX's intellectual property.

48.     Recognizing CNEX's successful innovation and anticipating CNEX's likely success as a competitor in the marketplace, Huawei and Futurewei also began resorting to other measures to disrupt and derail CNEX's business. For example, an internal Huawei presentation which, on information and belief, ███████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████:



49.     On information and belief, Plaintiffs also have engaged in other illegal conduct in an attempt to surreptitiously and unlawfully solicit CNEX's confidential information and to derail CNEX's success, including other acts of corporate espionage through a number of third party organizations and individuals, referred to herein as the "Third Party Co-Conspirators." This has included Plaintiffs' collusion with and attempts to solicit CNEX's confidential information from or through  representatives from certain Chinese universities, Huawei procurement agents, CNEX distributors and/or representatives of the Chinese government, to misappropriate Defendants' confidential information and trade secrets and to improperly interfere with Defendants' prospective business relations and contractual relations.

50.     For example, in December 2016, approximately five months after Huawei demanded assignment of CNEX's patents and was informed that such patents were excepted from the scope of Mr. Huang's obligations pursuant to the Employment Agreement with Futurewei, Professor Bo Mao ("Mao"), an Associate Professor at Xiamen University, ▮



. Huawei has connections with and funds research at a number of Chinese state-controlled universities, including Xiamen University, and has previously funded at least two research projects conducted by Mao.  *See* Projects – Advanced Storage Technology Lab, Xiamen University, *available at* astl.xmu.edu.cn/projects.html (last accessed Nov. 19, 2018).  Later that month, in furtherance of his CNEX-related research for Huawei, Mao expressed to CNEX his interest in purchasing a CNEX Software Development Kit ("SDK").  At the time, CNEX was not aware that Mao was secretly working with Huawei.  On January 21, 2017, CNEX and Xiamen University entered into a licensing agreement called the Westlake SDK License Agreement "(SDK Agreement"), which

. After entering into the SDK Agreement, CNEX licensed and shipped a CNEX SDK and provided other confidential and proprietary CNEX information to Mao.

51.     In June 2017, C-Denkei and Electric Scientific Engineering, Ltd., two of Huawei's procurement agents, sent separate inquiries (at Huawei's behest) to CNEX, asking CNEX for information and pricing regarding the exact part number CNEX provided to Xiamen University pursuant to the SDK Agreement.

52.     On information and belief, at Huawei's direction and request, Mao provided the confidential CNEX Westlake SDK part number as well as other confidential and proprietary information relating to CNEX's SSD technology to Huawei, in violation of the SDK Agreement. On information and belief, Plaintiffs have also attempted to discuss, solicit and obtain CNEX confidential information from or through representatives from certain other Chinese universities, Huawei procurement agents, CNEX distributors and/or representatives of the Chinese government.

53.     On December 28, 2017, Plaintiffs filed this action, asking the Court to assign over 20 CNEX patents and patent applications to Futurewei.  Plaintiffs are improperly using this action and the United States federal court system as a competitive weapon to further their continuing campaign to burden CNEX with litigation costs, to improperly seek Mr. Huang's and CNEX's intellectual property, and ultimately to attempt to eliminate CNEX as a competitor in the global marketplace to further the nationalistic aims of the 2025 plan.[5]

*Plaintiffs' Underhanded Tactics to Steal Mr. Huang and CNEX's Technology is Part of a Larger Corporate Espionage Campaign Conducted by Plaintiffs Against American Technology Companies*

54.     Plaintiffs' efforts, including their efforts in conjunction with the Third Party Co-Conspirators, to steal Mr. Huang and CNEX's technology prior to and during this lawsuit are consistent with and is part of a larger corporate espionage campaign waged by Huawei and the Chinese government against American technology companies.

55.     In October 2012, the House Permanent Select Committee on Intelligence (HPSCI) issued a bipartisan report titled "Investigative Report on the U.S. National Security Issues Posed

---

[5] *See* https://www.nytimes.com/2018/10/10/us/politics/china-spy-espionage-arrest.html?action=click&module=Top%20Stories&pgtype=Homepage.

by Chinese Telecommunications Companies Huawei and ZTE.[6]  The HPSCI concluded that "the

risks associated with Huawei's … provision of equipment to U.S. critical infrastructure could

undermine core U.S. national-security interests."  Based on that assessment, the HPSCI

recommended (1) U.S. government systems should not include any Huawei equipment, (2) that

private-sector entities "are strongly encouraged to seek other vendors for their projects" because

Huawei "cannot be trusted to be free of foreign state influence and thus pose a security threat to

the United States and to our systems," and (3) that the "U.S. Congress and Executive Branch

enforcement agencies should investigate the unfair trade practices of the Chinese

telecommunications sector."

56.     The HPSCI concluded that Huawei "remains dependent on the Chinese

government for support" and noted that many industry analysts believe that Huawei's founder,

Ren Zhengfei, was a "director of the People's Liberation Army Information Engineering

Academy, an organization that they believe is associated with 3PLA, China's signals intelligence

division, and that his connections to the military continue."  Mr. Ren was asked to be a member

of the 12th National Congress of the Communist Party of China in 1982, a "once-in-a-decade

forum through which the next leaders of the Chinese state are chosen."  HPSCI's report further

noted that "many analysts suggest that the Chinese government and military proclaim that

Huawei is a 'national champion' and provide Huawei market-distorting financial support."  The

HPSCI reported that "Huawei admit[ted] that the Chinese Communist Party maintains a Party

Committee within the company" and that "experts in Chinese political economy agree that it is

through these Committees that the Party exerts influence, pressure, and monitoring of corporate

activities", including, as it appears in this case, pressure to achieve the nationalist aims of the

---

[6] *See* https://intelligence.house.gov/sites/intelligence.house.gov/files/documents/huawei-
zte%20investigative%20report%20(final).pdf.

2025 mandate.

57.     Because of Huawei's corporate espionage campaign in furtherance of the nationalistic ambitions of the 2025 central mandate, HPSCI found that "Huawei exhibits a pattern of disregard for the intellectual property rights of other entities and companies in the United States."  In view of Huawei's prayer for relief in this case seeking an assignment of CNEX's rightfully obtained patents, the HPSCI report most troublingly noted that "several former employees of Huawei said it [Huawei] is known to purposely use the patented material of other firms."

58.     In December 2017, members of Congress wrote a formal letter to the Federal Trade Commission highlighting their concern about Huawei's role in Chinese corporate espionage, and reiterating many of the findings from the 2012 HPSCI report.

59.     Congress passed the National Defense Authorization Act for Fiscal Year 2018 (NDAA) in December 2017, which, among other things, bars the Department of Defense from using "[t]elecommunications equipment [or] services produced . . . [or] provided by Huawei Technologies Company" for certain critical programs, including ballistic missile defense and nuclear command, control, and communications.[7]

60.     At the start of 2018, both Verizon and AT&T stated they would not sell Huawei phones in the United States, labeling them as security threats.[8]  The United Kingdom and Australia have also banned Huawei devices from being used by any governmental agencies or employees.

61.     The concerns continue to this day, with United States government intelligence agencies, including the FBI, CIA, and NSA, having testified before Congress in 2018 that

---

[7] *See* Pub. L. 115-91, 131 Stat. 1283, 1762 at Sec. 1656.
[8] *See* https://tech.co/huawei-genuine-security-threat-2018-09.

Huawei and its commercial products pose a security threat to United States citizens.[9]

62.     In response to growing concerns over the purchase and use of Huawei's products and services, on March 27, 2018, the Federal Communications Commission issued a Notice of Proposed Rulemaking Fact Sheet entitled "Protecting Against National Security Threats to the Communications Supply Chain Through FCC Programs."[10]   The proposed FCC rule would prohibit carriers from using money from the Universal Service Fund to buy equipment from companies deemed to pose national security risks, such as Huawei.

63.     In June 2018, the White House Office of Trade and Manufacturing Policy issued a report entitled "How China's Economic Aggression Threatens the Technologies and Intellectual Property of the United States and the World."[11]   In this report, the White House focused on "how China seeks to acquire technologies and intellectual property and capture industries of the future" by state-sponsored IP theft, placement of "non-traditional information collectors" at U.S. universities, national laboratories, and other centers of innovation, and "talent recruitment of business, finance, science and technology experts."   Huawei was one such Chinese company singled out in the report as a "non-traditional information collector."

64.     This pattern of corporate espionage and disregard for American intellectual property rights is also detailed in a number of troubling U.S.-based intellectual property lawsuits against Huawei, and are further supported by a court-appointed Neutral Expert's findings and misappropriation judgments in some of these cases.

65.     For example, in 2003, Cisco sued Huawei for infringing a series of Cisco's router

---

[9] *See* https://money.cnn.com/2018/02/14/technology/huawei-intelligence-chiefs/index.html.
[10] *See* https://transition.fcc.gov/Daily_Releases/Daily_Business/2018/db0327/DOC-349937A1.pdf.
[11] *See* https://www.whitehouse.gov/wp-content/uploads/2018/06/FINAL-China-Technology-Report-6.18.18-PDF.pdf

and switching technology patents.  In that case, a Neutral Expert's Final Source Code Report dated June 15, 2004 noted a series of instances where Huawei had accessed and misappropriated Cisco's source code.[12]  Huawei further publicly admitted that it used Cisco's EIGRP routing protocol in its products without permission and agreed to remove that routing protocol from its products.[13]  The case was resolved only after Huawei discontinued the sale of products at issue in the case and agreed to change its command line interface, user manuals, help screens, and portions of its *own* source code, and not Cisco's.[14]

66.     In 2004, a Huawei employee was caught after hours taking pictures of competing products at a trade show in Chicago.[15]

67.     In 2010, Motorola Inc. filed a lawsuit against Huawei in the Northern District of Illinois (No. 1:08-cv-05427), alleging that Huawei worked with a dozen of Motorola's employees to steal Motorola's trade secrets about its cellular network equipment.  Specifically, Motorola alleged that Shaowei Pan, a former Motorola employee, secretly reported to Huawei's founder and Chairman, Ren Zhengfei.

68.     In 2015, a company known as Quintel Technology filed suit in the Eastern District of Texas (No. 4:15-cv-00307), alleging that Huawei and Futurewei misappropriated Quintel's trade secrets pertaining to the design of an antenna for mobile devices.  In its suit against Huawei, Quintel alleged that Huawei and Futurewei violated the terms of an NDA and misappropriated Quintel's trade secrets by using Quintel's confidential information to apply for Futurewei's own patents in this antenna technology.  This case settled in 2018, six days into the

---

[12] *See* https://blogs.cisco.com/news/huawei-and-ciscos-source-code-correcting-the-record
[13] *Id.*
[14] *See* https://www.wsj.com/articles/SB10485560675556000 and
https://www.theregister.co.uk/2004/07/29/cisco_huawei_case_ends/.
[15] *See* https://www.wsj.com/articles/SB100014240527487046846604575381362665259760.

jury trial.

69.     In 2017, a jury in the United District Court for the Western District of
Washington found that Huawei stole trade secrets belonging to T-Mobile about a phone-testing
robot.  T-Mobile alleged that Huawei employees who had entered its testing lab as part of the
two companies' agreement had copied the design for the robot and stolen parts to replicate at
Huawei.  The jury awarded T-Mobile $4.8 million in damages.[16]

70.     On June 26, 2018, Jesse Hong, a former Senior Architect for Huawei's
subsidiaries in California, filed a lawsuit for whistleblower retaliation in the Superior Court of
California, County of Santa Clara.[17]  In his complaint, he alleges that he was retaliated against
after reporting Huawei's illegal acts of enterprise espionage to Huawei's Human Resources
department, illegal acts that bear substantial similarities to what Mr. Huang and CNEX are
informed and believe Huawei has done with respect to the their technology.[18]

71.     As alleged by Mr. Hong, after Facebook denied Huawei and its U.S. subsidiaries'
request to attend Facebook's close-door private meetings with U.S. companies in connection
with its November 1, 2017 TIP Summit, Huawei instructed Mr. Hong and others working for
Plaintiffs to register for the TIP Summit using fictitious U.S. company names to circumvent
Huawei's exclusion from the TIP Summit.[19]

72.     Mr. Hong alleges that Huawei subsequently generated a "TIP Summit report,
including TIP competitors' integration plans, and [exported] that information to product teams in

---

[16] *See* https://www.theregister.co.uk/2017/05/19/huawei_spied_us_jury_finds/.

[17] *See* https://www.theregister.co.uk/2018/07/11/huawei_100m_lawsuit_trade_theft_china/; *see also Hong v. Huawei USA Inc., et al*., Case No. 18CV330693 (Superior Court of California, Santa Clara County) (the "Hong Whistleblower Lawsuit"), Complaint *available at* https://regmedia.co.uk/2018/07/11/huawei_lawsuit.pdf.

[18] *See* Hong Whistleblower Lawsuit, at ¶ 1.

[19] *Id*. ¶ 29.

China."[20]

73.     The concerns around potential security threats created by Huawei against American technology companies such as CNEX are consistent with Huawei's Global Industry Vision (GIV) 2025.  Announced in April 2018, Huawei's GIV 2025 predicts that by year 2025, "all things will be able to sense and all things will be connected, bringing us all into a world where everything is intelligent."[21]  Based on this prediction, William Xu, Director of the Board and Chief Marketing Officer of Huawei, proclaimed their visions for global dominance: "It is our [Huawei's] goal to build the foundations that will enable the diverse ICT [information and communications technology] industry ecosystem to truly transition into the intelligent world, and team with our global partners to build this fully connected, intelligent world."

### Count One—Breach of Contract

### (By Mr. Huang Against Futurewei)

74.     Defendants incorporate by reference the allegations in paragraphs 1-73 of these Counterclaims.

75.     Plaintiffs allege that the Employment Agreement was a valid, enforceable, and binding contract between Futurewei and Mr. Huang.  Defendants allege that certain provisions of the parties' Employment Agreement are void and/or unenforceable, that those provisions are severable, and that the remaining terms of the Agreement constitute a valid, enforceable and binding contract between Futurewei and Mr. Huang.

76.     Mr. Huang fully performed his obligations under the terms of the agreement.

77.     Under the terms of the agreement, Futurewei agreed that Futurewei would not

---

[20] *Id.* ¶ 32.
[21] *See* https://www.huawei.com/en/press-events/news/2018/4/Huawei-Global-Industry-Vision-2025.

seek to assign to itself any of Mr. Huang's prior inventions, including those set forth by Mr. Huang in Exhibit A to the Employment Agreement.  Under the contract and consistent with the parties' earlier discussions, Futurewei undertook to respect all of Mr. Huang's rights in his intellectual property, including Mr. Huang's right to independently develop his existing intellectual property outside of his work for Futurewei.

78.     Futurewei breached the agreement by failing to honor its obligations and breaching its duty of good faith and fair dealing, including at least by violating Section 5 and other provisions of the Employment Agreement by embarking on an improper campaign to obtain and claim as its own Mr. Huang's and CNEX's proprietary technology and information.

79.     As a result of Futurewei's breach of the agreement, Mr. Huang has suffered damages in an amount to be determined at trial, including but not limited to the value of the inventions identified in Exhibit A, which exceeds $75,000.

80.     Under the terms of the agreement, in addition to monetary damages, Mr. Huang is entitled to all equitable relief necessary to remedy the above breaches by Futurewei, including specific performance and injunctive relief.

81.     Mr. Huang is entitled to recover its attorneys' fees in litigation proceedings arising from or relating to the agreement under both the express terms of the agreement and Texas Civil Practices & Remedies Code 38.001.

**Count Two – Misappropriation and Threatened Misappropriation of Trade Secrets under**

**Defend Trade Secrets Act- 18 U.S.C. §§ 1832, 1836 et seq.**

**(Against Futurewei and Huawei)**

82.     Defendants incorporate by reference the allegations in paragraphs 1-81 of these Counterclaims.

83.     Defendants' confidential, proprietary, and trade secret information includes, without limitation, technical information related to SSD and NVMe technology developed by Mr. Huang and by CNEX, and business and financial information related to CNEX's business, including without limitation, information about employee compensation.

84.     Defendants' trade secrets relate to products and services used in, or intended for, interstate commerce.

85.     Defendants' trade secrets derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use.

86.     Defendants' trade secrets have significant value, resulting from significant investment of time and resources.

87.     Defendants have made, and continue to make, efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets.

88.     Defendants owned the trade secrets at the time of the misappropriation.

89.     Futurewei and Huawei improperly acquired, disclosed, and used (and threaten to continue to disclose and use) Defendants' trade secrets.  Futurewei and Huawei knew or had reason to know that the trade secrets were acquired by improper means.

90.     Upon information and belief, Plaintiffs have acquired, disclosed and used Defendants' trade secrets to prepare and file patent applications and to develop products that they plan to release for sale to the general public that will compete directly with products being developed by Defendants.  Upon information and belief, Plaintiffs have also acquired, disclosed and used Defendants' trade secrets to derail CNEX in other ways, including but not limited to, by attempting to poach employees from CNEX and intentionally seeking to create instability at

CNEX as a way to harm the company and its place in the competitive market and compete for employees.

91.     As a direct and proximate cause of Plaintiffs' wrongful conduct, Defendants have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm. The losses and harm to Defendants are ongoing and cannot be remedied by damages alone.

92.     Defendants have no adequate remedy at law for sufficient compensation for the wrongs committed by Plaintiffs.

93.     Plaintiffs have acted willfully, maliciously, and with reckless disregard to the rights of Defendants.

### Count Three – Misappropriation and Threatened Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act and/or the Texas Uniform Trade Secrets Act

### (Against Futurewei and Huawei)

94.     Defendants incorporate by reference the allegations in paragraphs 1-93 of these Counterclaims.

95.     Defendants' confidential, proprietary, and trade secret information includes, without limitation, information related to  SSD and NVMe technology developed by Mr. Huang and by CNEX.

96.     Defendants' trade secrets relate to products and services used in, or intended for, interstate commerce.

97.     Defendants derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value

from their disclosure or use.

98.     Defendants' trade secrets have significant value, resulting from significant investment of time and resources.

99.     Defendants have made, and continue to make, efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets.

100.    Defendants owned the trade secrets at the time of the misappropriation.

101.    Futurewei and Huawei improperly acquired, disclosed, and used (and threaten to continue to disclose and use) Defendants' trade secrets.  Futurewei and Huawei had known or had reason to know that the trade secrets were acquired by improper means.

102.    As a direct and proximate cause of Plaintiffs' wrongful conduct, Defendants have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm. The losses and harm to Defendants are ongoing and cannot be remedied by damages alone.

103.    Futurewei and Huawei's improper acquisition, disclosure, and use of Defendants' trade secrets were a substantial factor in causing Defendants' harm and in causing Plaintiffs' unjust enrichment.

104.    Defendants have no adequate remedy at law for sufficient compensation for the wrongs committed by Plaintiffs.

105.    Plaintiffs have acted willfully, maliciously, and with reckless disregard to the rights of Defendants.

### Count Four – Misappropriation of Trade Secrets under Common Law

### (Against Futurewei and Huawei)

106.    Defendants incorporate by reference the allegations in paragraphs 1-105 of these Counterclaims.

107.    Defendants' confidential, proprietary, and trade secret information includes, without limitation, information related to SSD and NVMe technology developed by Mr. Huang and by CNEX.

108.    Defendants' trade secrets relate to products and services used in, or intended for, interstate commerce.

109.    Defendants derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use.

110.    Defendants' trade secrets have significant value, resulting from significant investment of time and resources.

111.    Defendants have made, and continue to make, efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets.

112.    Defendants owned the trade secrets at the time of the misappropriation.

113.    Futurewei and Huawei improperly acquired, disclosed, and used Defendants' trade secrets.  Futurewei and Huawei had known or had reason to know that the trade secrets were acquired by improper means.

114.    As a direct and proximate cause of Plaintiffs' wrongful conduct, Defendants have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm. The losses and harm to Defendants are ongoing and cannot be remedied by damages alone.

115.    Defendants have no adequate remedy at law for sufficient compensation for the wrongs committed by Plaintiffs.

116.    Plaintiffs have acted willfully, maliciously, and with reckless disregard to the rights of Defendants.

## Count Five – Common Law Misappropriation

## (Against Futurewei and Huawei)

117.    Defendants incorporate by reference the allegations in paragraphs 1-116 of these Counterclaims.

118.    Defendants have created their products and technology related to SSD and NVMe through extensive time, labor, skill, and money.

119.    Plaintiffs have used products and technology that compete with Defendants' products and technology.  Through these acts, Plaintiffs have gained an improper advantage in the competitive market for SSD and NVMe-related technology because Plaintiffs are burdened with little or none of the expense incurred by Defendants in creating this technology.  Huawei and Futurewei have further used CNEX's technology improperly to apply for their own patent protection.

120.    As a direct and proximate cause of Plaintiffs' wrongful conduct, Defendants have suffered and will continue to suffer significant commercial damage. The losses and harm to Plaintiffs are ongoing and cannot be remedied by damages alone.

## Count Six – Conspiracy to Misappropriate Trade Secrets under DTSA

## (Against Huawei and Futurewei)

121.    Defendants incorporate by reference the allegations in paragraphs 1-120 of these Counterclaims.

122.    Futurewei, Huawei, and other Third Party Co-Conspirators, including but not

limited to representatives of Chinese universities, procurement agencies, third party distributors, and the Chinese government, hatched a scheme to surreptitiously take and misappropriate Defendants' trade secrets.  Those efforts include, but are not limited to, Futurewei and Huawei hiring Mr. Huang as an employee to steal his technology rather than purchase his preexisting intellectual property; inviting Mr. Huang and Dr. Armstrong to present on CNEX and Hr. Huang's proprietary information at a 2015 CEO forum in China hosted by Huawei in their facilities and attended by their employees under the pretext of an interest in doing business with CNEX; sending an agent to investigate and learn details of CNEX's technology under the guise of prospective business; sending a demand intended to intimidate CNEX and Mr. Huang into handing over their rights to CNEX intellectual property to Plaintiffs; and, with the assistance of the Third Party Co-Conspirators, launching an unlawful campaign to obtain access to and ownership of Defendants' technology.  Futurewei, Huawei, and the Third Party Co-Conspirators were willing participants in this conspiracy.

123.    On information and belief, Futurewei, Huawei, and the Third Party Co-Conspirators entered into one or more agreements with one another for the purpose of misappropriating Defendants' confidential, proprietary, and trade secret information.

124.    On information and belief, Futurewei, Huawei, and the Third Party Co-Conspirators have taken affirmative steps in furtherance of these conspiratorial agreements, including the actual misappropriation of Defendants' trade secrets, thereby proximately damaging Defendants.

125.    On information and belief, Futurewei, Huawei, and the Third Party Co-Conspirators had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or

course of action.

126.     Defendants suffered injury as a proximate result of these wrongful acts.

127.     As such, Defendants further request that Futurewei, Huawei, and the Third Party Co-Conspirators be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

128.     Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

## Count Seven – Conspiracy to Misappropriate Trade Secrets under TUTSA
## (Against Huawei and Futurewei)

129.     Defendants incorporate by reference the allegations in paragraphs 1-128 of these Counterclaims.

130.     Futurewei, Huawei, and other Third Party Co-Conspiratorss, including representatives of Chinese universities, procurement agencies, third party distributors, and the Chinese government, hatched a scheme to surreptitiously take and misappropriate Defendants' trade secrets. Those efforts include, but are not limited to, Futurewei and Huawei hiring Mr. Huang as an employee to steal his technology rather than purchase his preexisting intellectual property; inviting Mr. Huang and Dr. Armstrong to present on CNEX and Hr. Huang's proprietary information at a 2015 CEO forum in China hosted by Huawei in their facilities and attended by their employees under the pretext of an interest in doing business with CNEX; sending an agent to investigate and learn details of CNEX's technology under the guise of prospective business; sending a demand intended to intimidate CNEX and Mr. Huang into handing over their rights to CNEX intellectual property to Plaintiffs; and, with the assistance of the Third Party Co-Conspirators, launching an unlawful campaign to obtain access to and ownership of Defendants' technology. Both Futurewei and Huawei were willing participants in this conspiracy.

131.    On information and belief, Futurewei, Huawei, and the Third Party Co-Conspirators entered into one or more agreements with one another for the purpose of misappropriating Defendants' confidential, proprietary, and trade secret information.

132.    On information and belief, Futurewei, Huawei, and the Third Party Co-Conspirators have taken affirmative steps in furtherance of these conspiratorial agreements, including the actual misappropriation of Defendants' trade secrets, thereby proximately damaging Defendants.

133.    On information and belief, Futurewei, Huawei, and the Third Party Co-Conspirators had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

134.    Defendants suffered injury as a proximate result of these wrongful acts.

135.    As such, Defendants further request that Futurewei, Huawei, and the Third Party Co-Conspirators be held jointly and severally liable for their acts, and be ordered to pay all actual ad consequential damages resulting from their wrongful conduct.

136.    Because their actions in this conspiracy and the underlying torts were intentional, the award of exemplary damages is appropriate.

## Count Eight – Tortious Interference with Prospective Business Relations
### (Against Futurewei and Huawei)

137.    Defendants incorporate by reference the allegations in paragraphs 1-136 of these Counterclaims.

138.    A reasonable probability existed that CNEX would enter into business relationships with customers, funders, and employees.

139.    Plaintiffs committed unlawful acts, including but not limited to breach of contract, espionage, unfair competition and trade secret misappropriation, that have prevented these customer, funder, and employee relationships from occurring.

140.    Plaintiffs committed such acts with a conscious desire to prevent Defendants from establishing relationships with customers, funders, and employees.

141.    As a direct and proximate cause of Plaintiffs' wrongful conduct, Defendants have suffered and will continue to suffer actual harm and damages in form of lost profits, lost opportunities for funding, lost employees, and lost market share.  Defendants have been damaged in an amount well in excess of $75,000.

## Count Nine – Tortious Interference with Contractual Relations

## (Against Futurewei and Huawei)

142.    Defendants incorporate by reference the allegations in paragraphs 1-141 of these Counterclaims.

143.    A contract existed between CNEX and other entities, including but not limited to Xiamen University and CNEX's vendors and developers.

144.    Plaintiffs acted willfully and intentionally to interfere with the contracts between CNEX and other entities, including but not limited to Xiamen University and CNEX's vendors and developers, by inducing and/or colluding with these entities to breach confidentiality and other obligations under the contracts.

145.    As a direct and proximate cause of Plaintiffs' wrongful conduct, Defendants have suffered and will continue to suffer actual harm and damages in form of lost profits, lost opportunities for funding, lost employees, and lost market share.  Defendants have been damaged in an amount well in excess of $75,000.

**Count Ten – Racketeer Influenced and Corrupt Organizations Act (RICO)**

**18 U.S.C. § 1962(c)**

**(Against Futurewei and Huawei)**

146.    Defendants incorporate by reference the allegations in paragraphs 1-145 of these Counterclaims.

147.    Plaintiffs have been and continue to be involved in a scheme with Third Party Co-Conspirators, including but not limited to representatives of Chinese universities, procurement agencies, third party distributors, and the Chinese government, to defraud Defendants by committing a series of unlawful acts which constitute racketeering acts in violation of 18 U.S.C. § 1962(c).  This pattern by Plaintiffs has existed over a prolonged period of time—in excess of two years—and multiple nefarious bad acts in several short spans during that same time.

148.    During their scheme to defraud Defendants, Plaintiffs with Third Party Co-Conspirators, including representatives of Chinese universities, procurement agencies, third party distributors, and the Chinese government, committed predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), on multiple occasions and in violation of various federal statutes, including the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, *et seq*., and the federal Wire Fraud statutes, 18 U.S.C. § 1343.

149.    For more than two years, Plaintiffs  worked in concert with one another and one or more of the Third Party Co-Conspirators, committing numerous and repeated violations of the above federal statutes to harm Defendants economically, acting as a RICO enterprise, including as an association in fact and/or legal entity RICO enterprise.

150.    During their scheme to defraud Defendants, Plaintiffs refused to buy Mr. Huang's preexisting intellectual property and instead attempted to obtain from Mr. Huang his preexisting

intellectual property while employing him (despite the carve-out of such technology from the Employment Agreement); Plaintiffs continued to unlawfully attempt to obtain Mr. Huang and CNEX's technology and intellectual property after Mr. Huang left Futurewei in 2013; and Plaintiffs further undertook a campaign of corporate espionage to steal Mr. Huang's and CNEX's technology and intellectual property thereafter, including by attempting to obtain details of CNEX's SSD controller and other innovations under false pretenses at the 2015 Huawei forum and in the later discussions and meetings between Huawei employees and Mr. Huang that occurred in 2016; and in and around December 2016 through at least one or more contacts at Xiamen University, Huawei fraudulently sought and obtained confidential CNEX information. Throughout this period, Plaintiffs sought and obtained CNEX confidential information from or through representatives from certain Chinese Universities, Huawei procurement agents, CNEX distributors and/or representatives of the Chinese government.

151.    The predicate acts of racketeering activity are connected to the acquisition, establishment, conduct, or control of an enterprise, as defined in 18 U.S.C. § 1961(4), specifically of Huawei.

152.    Upon information and belief, Huawei has been engaged in a long-time scheme to improperly obtain and misappropriate innovations and technology developed by researchers and companies in the United States.  In 2018, Members of Congress wrote to Secretary Betsy DeVos stating that Huawei "cannot be trusted to be free of foreign state influence and thus pose[s] a security threat to the United States and to our systems."  Huawei's malicious conduct against CNEX is a tangible example of this pattern of behavior.

153.    As set forth above, Plaintiffs acted knowingly and willfully in their commission of racketeering activity.

154.     Upon information and belief, the predicate acts described above were taken for the purpose of securing a competitive advantage against Defendants.

155.     As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Defendants have been injured in their business and property, including, but not limited to, loss of trade secrets, drawings, intellectual property, protected business information, equipment, business opportunities, reputation, and profits.

## Count Eleven – RICO conspiracy 18 U.S.C. §1962(d)

### (Against Futurewei and Huawei)

156.     Defendants incorporate by reference the allegations in paragraphs 1-155 of these Counterclaims.

157.     Futurewei, Huawei with Third Party Co-Conspirators, including representatives of Chinese universities, procurement agencies, third party distributors, and the Chinese government, hatched a scheme to surreptitiously take and misappropriate Defendants' trade secrets.  Those efforts include but are not limited to, inviting Mr. Huang to present on his proprietary information at a 2015 CEO forum in China hosted by Huawei in their facilities and attended by their employees; sending an agent to investigate CNEX's technology under the guise of prospective business; and launching an unlawful campaign to obtain access to and ownership of Defendants' technology.  Futurewei, Huawei, and the Third Party Co-Conspirators were willing participants in this conspiracy.

158.     Plaintiffs with the Third Party Co-Conspirators have been and continue to be involved in a scheme to defraud Defendants by committing a series of unlawful acts which constitute racketeering acts in violation of 18 U.S.C. § 1962(c).  This pattern by Plaintiffs and the Third Party Co-Conspirators has existed over a prolonged period of time—in excess of two years—and multiple nefarious bad acts in several short spans during that same time.

159.    During their scheme to defraud Defendants, Plaintiffs with the Third Party Co-Conspirators committed predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), on multiple occasions and in violation of various federal statutes, including the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, *et seq*., and the federal Wire Fraud statutes, 18 U.S.C. § 1343.

160.    For more than two years, Plaintiffs and one or more of the Third Party Co-Conspirators worked in concert with one another, committing numerous and repeated violations of the above federal statutes to harm Defendants economically.

161.    During their scheme to defraud Defendants, Plaintiffs refused to buy Mr. Huang's intellectual property developed in connection with his work on Rephisa and instead attempted to obtain from Mr. Huang his preexisting intellectual property while employing him (despite the carve-out of Rephisa technology from the parties' agreement of employment); Plaintiffs continued to unlawfully attempt to obtain Mr. Huang and CNEX's technology and intellectual property after Mr. Huang left Futurewei in 2013; and Plaintiffs further undertook a campaign of corporate espionage to steal Mr. Huang's and CNEX's technology and intellectual property thereafter, including by attempting to obtain details of CNEX's SSD controller and other innovations under false pretenses at the 2015 Huawei forum, in the later discussions and meetings between Huawei employees and Mr. Huang that occurred in 2016 and through one or more of the Third Party Co-Conspirators; and in and around December 2016 through at least one or more contacts at Xiamen University, Huawei fraudulently sought and obtained confidential CNEX information.  Throughout this period, Plaintiffs sought and obtained CNEX confidential information from or through representatives from certain Chinese Universities, Huawei procurement agents, CNEX distributors and/or representatives of the Chinese government.

162.    The predicate acts of racketeering activity are connected to the acquisition, establishment, conduct, or control of an enterprise, as defined in 18 U.S.C. § 1961(4), specifically of Huawei.

163.    As set forth above, Plaintiffs with the Third Party Co-Conspirators acted knowingly and willfully in their commission of racketeering activity.

164.    On information and belief, the predicate acts described above were taken for the purpose of securing a competitive advantage against Defendants.

165.    On information and belief, Huawei has been engaged in a long-time scheme to improperly obtain and misappropriate innovations and technology developed by researchers and companies in the United States.  In 2018, Members of Congress wrote to Secretary Betsy DeVos stating that Huawei "cannot be trust to be free of foreign state influence and thus pose[s] a security threat to the United States and to our systems." Huawei's malicious conduct against CNEX is a tangible example of this pattern of behavior.

166.    As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Defendants have been injured in their business and property, including, but not limited to, loss of trade secrets, drawings, intellectual property, protected business information, equipment, business opportunities, reputation, and profits.

## Count Twelve – Civil Conspiracy under Common Law
### (Against Futurewei and Huawei)

167.    Defendants incorporate by reference the allegations in paragraphs 1-166 of these Counterclaims.

168.    On information and belief, Huawei, Futurewei and other Third Party Co-Conspirators, including but not limited to representatives of Chinese universities, procurement agencies, third party distributors, and the Chinese government, conspired collectively to

accomplish the unlawful purposes and torts discussed in this Complaint. Specifically, Plaintiffs conspired in the following manner: Futurewei and Huawei hatched a scheme to surreptitiously take and misappropriate Defendants' trade secrets.  Those efforts include but are not limited to, inviting Mr. Huang to present on his proprietary information at a 2015 CEO forum in China hosted by Huawei in their facilities and attended by their employees, sending an agent to investigate CNEX's technology under the guise of prospective business; and launching an unlawful campaign to obtain access to and ownership of Defendants' technology.  Futurewei, Huawei, and the Third Party Co-Conspirators were willing participants in this conspiracy and have taken affirmative steps in furtherance of this conspiracy.

169.    To this end, on information and belief, Plaintiffs and the Third Party Co-Conspirators entered into one or more agreements for the purpose of misappropriating Defendants' confidential, proprietary, and trade secret information, and its intellectual property.

170.    On information and belief, Huawei, Futurewei (through the employees of each respective company), and the Third Party Co-Conspirators had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

171.    Defendants suffered injury as a proximate result of these wrongful acts.

172.    As such, Defendants further request that Huawei, Futurewei, and the Third Party Co-Conspirators be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

173.    Because their actions in this conspiracy and the underlying torts were intentional, the award of exemplary damages is appropriate.

**Count Thirteen – Unfair Competition under Lanham Act and Common Law**

**(Against Futurewei and Huawei)**

174. Defendants incorporate by reference the allegations in paragraphs 1-173 of these Counterclaims.

175. The acts and omissions of Defendants described above constitute unfair competition in violation of 15 U.S.C. § 1125(a) and Texas and California common and statutory law.

176. During their scheme to defraud Defendants, Plaintiffs refused to buy Mr. Huang's preexisting intellectual property and instead attempted to obtain from Mr. Huang his preexisting intellectual property while employing him (despite the carve-out of such technology from the Employment Agreement); Plaintiffs continued to unlawfully attempt to obtain Mr. Huang and CNEX's technology and intellectual property after Mr. Huang left Futurewei in 2013; and Plaintiffs further undertook a campaign of corporate espionage to steal Mr. Huang's and CNEX's technology and intellectual property thereafter, including by attempting to obtain details of CNEX's SSD controller and other innovations under false pretenses at the 2015 Huawei forum and in the later discussions and meetings between Huawei employees and Mr. Huang that occurred in 2016.  These unfair and deceptive tactics taken by Plaintiffs have given Plaintiffs an unfair advantage in the industry and marketplace.

177. Until Plaintiffs carried out their scheme, Defendants maintained valid relationships, or the expectancy of relationships, with their customers and employees and maintained the intellectual capital contained within their work force through training and experience. Defendants reasonably expected that these relationships, their work force and their intellectual capital would continue and would not be unjustifiably disrupted.

178. Defendants have been competitively and commercially damaged as a proximate result of the acts and omissions of unfair competition committed by Plaintiffs. Specifically, there

was a reasonable probability of entering into contractual or business relationships with third parties, but those prospective business relationships were disrupted by Plaintiffs' actions.

179.    Plaintiffs' conduct has been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

180.    Plaintiffs' conduct has caused and is causing irreparable injury to Defendants, including through the threat of losing the value of their confidential, proprietary, and trade secret information and certain customer relationships, along with income and goodwill. Unless enjoined by this Court, Plaintiffs will continue to damage Defendants and to deceive the public. Defendants have no adequate remedy at law with respect to Plaintiffs' acts of unfair competition.

## Count Fourteen – Unjust Enrichment

### (Against Futurewei and Huawei)

181.    Defendants incorporate by reference the allegations in paragraphs 1-180 of these Counterclaims.

182.    Plaintiffs sought to be enriched and were enriched by their unlawful misappropriation of Defendants' trade secrets and other confidential, proprietary, and trade secret information.

183.    In using Defendants' confidential, proprietary, and trade secret information, Plaintiffs were unjustly enriched by obtaining business and investment that they could not have obtained otherwise through lawful means.

184.    During Mr. Huang's employment with Futurewei and continuing thereafter, Plaintiffs improperly utilized Mr. Huang's confidential and proprietary information for their own enrichment and to the detriment and harm of Defendants, in derogation of their rights.

185.    Plaintiffs are obligated to disgorge the benefits derived from their unlawful conduct, and to compensate Defendants in the amount of all wrongfully obtained business,

profits, and benefits.

186.    Further, it would be unequitable, unfair, and unconscionable for Plaintiffs to be allowed to continue to benefit from their unlawful conduct without paying appropriate compensation to Defendants. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of their proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

187.    Defendants have no adequate remedy at law to compensate for the losses they have incurred and continue to incur as a result of Plaintiffs' unlawful conduct.

**Count Fifteen – Declaratory Judgment that The Assignment Provision in Ronnie Huang's Employment Agreement with Futurewei Is Unenforceable**

**Calif. Labor Code §§2870-2872**

**(Against Futurewei)**

188.    Defendants incorporate by reference the allegations in paragraphs 1-187 of these Counterclaims.

189.    Plaintiffs have alleged that Mr. Huang breached the Employment Agreement by failing to assign patents containing Futurewei Technology.

190.    Related to this allegation, Plaintiffs have alleged that Mr. Huang assigned to Futurewei, *inter alia*, any invention or idea that he conceived of that "related to" his work at Futurewei.

191.    However, the assignment provision in the Employment Agreement is unenforceable, and Mr. Huang is accordingly not subject to any such provision.

192.    California Labor Code Section 2870 requires the following:  "Any provision in an

employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) Result from any work performed by the employee for the employer."

193.     California Labor Code Section 2872 further provides as follows: "If an employment agreement entered into after January 1, 1980, contains a provision requiring the employee to assign or offer to assign any of his or her rights in any invention to his or her employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention which qualifies fully under the provisions of Section 2870."

194.     The Employment Agreement between Mr. Huang and Futurewei contained a provision requiring Mr. Huang to assign rights to his employer.

195.     The Employment Agreement between Mr. Huang and Futurewei was entered into after January 1, 1980.

196.     At the time Mr. Huang was presented with the Employment Agreement in January 2011, Futurewei did not provide Mr. Huang with a written notification that the agreement does not apply to an invention which qualifies fully under the provisions of Section 2870.

197.     On information and belief, although Plaintiffs provided the required notice under the California Labor Code to other employees, they did not give Mr. Huang the required notice.

47

198.     An actual controversy exists between Plaintiffs and Defendants, as evidenced by the claims asserted by Plaintiffs against Defendants in the present case.

199.     Defendants respectfully seek a judicial declaration that the assignment provision under Mr. Huang's Employment Agreement with Futurewei is unenforceable.

**Count Sixteen – Declaratory Judgment that Section 6(b) of the Employment Agreement between Mr. Huang and Futurewei Is Unenforceable Under California and Texas Law (Against Futurewei)**

200.     Defendants incorporate by reference the allegations in paragraphs 1-199 of these Counterclaims.

201.     Plaintiffs have alleged that Mr. Huang breached Section 6(b) the Employment Agreement by soliciting Futurewei employees.

202.     Section 6(b) of the Employment Agreement is unenforceable, and Mr. Huang is accordingly not subject to any such provision.

203.     Covenants such as Section 6(b) that restrict the ability of former employees to solicit their customer or employees are considered restraints on trade and are subject to stringent requirements under California and Texas law.

204.     Section 6(b) of the Employment Agreement between Mr. Huang and Futurewei is unduly broad, is not supported by valid consideration, and is not reasonable in scope.

205.     Accordingly, Section 6(b) of the Employment Agreement between Mr. Huang and Futurewei constitutes an unlawful restraint on trade and is thus void and unenforceable under California and Texas law.

206.     An actual controversy exists between Plaintiffs and Defendants, as evidenced by the claims asserted by Plaintiffs against Defendants in the present case.

207.     Defendants respectfully seek a judicial declaration that Section 6(b) of the Employment Agreement between Mr. Huang and Futurewei is void and unenforceable.

**Count Seventeen – Declaratory Judgment that All CNEX Intellectual Property is the Sole Property of CNEX**

**(Against Futurewei and Huawei)**

208.     Defendants incorporate by reference the allegations in paragraphs 1-207 of these Counterclaims.

209.     Plaintiffs have falsely alleged that Mr. Huang used information he obtained through his work at Futurewei to draft patent applications from June 2013 to October 2015. Plaintiffs have also alleged that patents assigned to CNEX are based on Futurewei's proprietary technology.

210.     As set forth more fully above, the patents that Mr. Huang obtained and assigned to CNEX are the sole property of Mr. Huang and/or CNEX.

211.     An actual controversy exists between Plaintiffs and Defendants, as evidenced by the claims asserted by Plaintiffs against Defendants in the present case.

212.     Defendants respectfully seek a judicial declaration that all CNEX intellectual property is the sole property of CNEX.

**Count Eighteen – Declaratory Judgment that All Trade Secrets in This Case are the Sole Property of Ronnie Huang and/or CNEX**

**(Against Futurewei and Huawei)**

213.     Defendants incorporate by reference the allegations in paragraphs 1-212 of these Counterclaims.

214.     Plaintiffs have falsely alleged that Defendants misappropriated trade secrets to

develop competing products to those being developed by Plaintiffs in the SSD and NVMe fields of technology and to file patents using Plaintiffs' confidential, proprietary, and trade secret information.

215.    Plaintiffs are not the owners of the trade secrets believed to be alleged in the SAC.

216.    As set forth more fully above, the purported trade secrets believed to be alleged in the SAC are the sole property of Mr. Huang and/or CNEX.

217.    An actual controversy exists between Plaintiffs and Defendants, as evidenced by the claims asserted by Plaintiffs against Defendants in the present case.

218.    Defendants respectfully seek a judicial declaration that all trade secrets in this case are the sole property of Mr. Huang and/or CNEX.

## DISCOVERY RULE

To the extent Plaintiffs-Counterclaim Defendants raise the affirmative defense of limitations or laches, Defendants-Counterclaim Plaintiffs' claims are subject to the discovery rule because the nature of the injury was inherently undiscoverable and the evidence of the injury was objectively verifiable.

## FRAUDULENT CONCEALMENT

To the extent Plaintiffs-Counterclaim Defendants raise the affirmative defense of limitations, fraudulent concealment applies to defer the accrual period of Defendants-Counterclaim Plaintiffs' claims because, as reflected in the allegations set forth above, (1) Plaintiffs-Counterclaim Defendants had actual knowledge of the wrong, (2) Plaintiffs-Counterclaim Defendants concealed the wrong by making a misrepresentation or by remaining silent when they had a duty to speak, (3) Plaintiffs-Counterclaim Defendants had a fixed purpose to conceal the wrong, and (4) Defendants-Counterclaim Plaintiffs reasonably relied on the misrepresentation or silence.

## JOINT AND SEVERAL LIABILITY

At all relevant times, Plaintiffs-Counterclaim Defendants Huawei and Futurewei were jointly engaged in the commission of the aforementioned tortious and unlawful actions. Huawei and Futurewei each acted intentionally and their actions caused a single, indivisible injury to Defendants. Accordingly, Huawei and Futurewei are jointly and severally liable for all of Defendants' damages as plead herein.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment with respect to Plaintiffs' complaint and Defendants' defenses and counterclaims as follow:

A. A judgment in favor of Defendants denying Plaintiffs all relief requested in their Second Amended Complaint and dismissing their complaint with prejudice;

B. A judgment in favor of Defendants on all counterclaims alleged herein;

C. For an award to Defendants of monetary relief, including but not limited to economic damages, unjust enrichment, restitution and royalties, in amounts to be determined according to proof.

D. For an award of attorney's fees to Defendants;

E. For an award of costs to Defendants;

F. For injunctive relief enjoining Huawei, Futurewei, and its agents and directors from further attempts to steal and misappropriate CNEX's trade secrets and proprietary information, from wrongfully interfering with CNEX's business, and from claiming or attempting to claim that any of CNEX's intellectual property as their own, an assignment of Plaintiffs' patents bearing Mr. Huang's name as an inventor to CNEX Labs, and/or any other equitable relief that the Court deems just and proper; and

G. Such other relief as the Court shall deem just and proper.

51

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT**

Defendants and Counterclaim Plaintiffs CNEX Labs, Inc. ("CNEX") and Yiren Ronnie Huang ("Mr. Huang") (collectively, "Defendants") hereby provide their answer to Plaintiffs and Counter-defendants Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc.'s (collectively, "Plaintiffs") Second Amended Complaint ("SAC") as follows:

**INTRODUCTION**[22]

1.      Defendants deny the allegations of Paragraph 1 of the SAC.

2.      Defendants deny the allegations of Paragraph 2 of the SAC.

3.      Defendants deny the allegations of Paragraph 3 of the SAC.

4.      Defendants admit that Mr. Huang began working at Futurewei in January 2011 and that he worked on SSD technology, including PCIe SSD architecture, during his employment at Futurewei and introduced certain SSD related technologies to the Central R&D group at Futurewei. Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of paragraph 4 of the SAC and, on that basis, deny them.

5.      Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 5 of the SAC and, on that basis, deny them.

6.      Defendants admit that Mr. Huang signed a version of the Agreement referenced in Paragraph 6 of the SAC.  Defendants deny the remaining allegations of Paragraph 6 of the SAC.

7.      Defendants deny the allegations of Paragraph 7 of the SAC.

8.      Defendants admit that Mr. Huang voluntarily terminated his employment with Futurewei effective May 31, 2013.  Defendants admit that Mr. Huang co-founded CNEX, a Delaware corporation, with Alan Armstrong and Joe DeFranco on June 3, 2013.  Defendants

---

[22] To the extent that Plaintiffs intend the table of contents or headings in their SAC to constitute allegations, Defendants deny them.

deny the remaining allegations of Paragraph 8 of the SAC.

9.      Defendants deny the allegations of Paragraph 9 of the SAC.

10.     Defendants admit that since Mr. Huang's departure from Futurewei and founding of CNEX, certain of Huawei and Futurewei's former employees have gone to work for CNEX. Defendants deny the remaining allegations of Paragraph 10 of the SAC.

11.     Defendants deny the allegations of Paragraph 11 of the SAC.

12.     Defendants admit that Plaintiffs purport to bring this lawsuit seeking a declaration that the patent applications, issued patents, and associated inventions by Mr. Huang belong to Futurewei, as well as damages and injunctive relief for Defendants' alleged breach of contract, conversion, theft of trade secrets under the laws of the United States and the State of Texas, computer fraud, racketeering, breach of fiduciary duty, tortious interference, unjust enrichment, and conspiracy.  Defendants deny that Plaintiffs are entitled to any relief.

## THE PARTIES

13.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 13 of the SAC and, on that basis, deny them.

14.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 14 of the SAC and, on that basis, deny them.

15.     Defendants admit the allegations of Paragraph 15 of the SAC.

16.     Defendants admit the allegations of Paragraph 16 of the SAC.

## JURISDICTION

17.     Paragraph 17 of the SAC contains legal conclusions to which no response is required.

18.     Paragraph 18 of the SAC contains legal conclusions to which no response is

required.

19.     Paragraph 19 of the SAC contains legal conclusions to which no response is required.

20.     Paragraph 20 of the SAC contains legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 20 of the SAC.

21.     Paragraph 21 of the SAC contains legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 21 of the SAC.

22.     Paragraph 22 of the SAC contains legal conclusions to which no response is required.

## **FACTUAL BACKGROUND**

23.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 23 of the SAC and, on that basis, deny them.

24.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 24 of the SAC and, on that basis, deny them.

25.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 25 of the SAC and, on that basis, deny them.

26.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 26 of the SAC and, on that basis, deny them.

27.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 27 of the SAC and, on that basis, deny them.

28.     Defendants admit that Plaintiffs purport to define the term "SSD" for us in the

SAC as solid-state storage device that uses integrated circuit assemblies as memory to store data

persistently and that, compared with traditional electromechanical magnetic disks, SSDs have no

moving mechanical components, run silently, and have stronger resistance to physical shock but

lower access time and latency.

29.      Defendants admit that Plaintiffs purport to define the term "NVMe" for use in the

SAC as non-volatile memory express, a logical interface specific for accessing non-volatile

storage media, that by its design, NVMe allows host hardware and software to fully exploit the

levels of parallelism possible in modern SSDs, and that as a result, reduces I/O overhead and

brings various performance improvements in comparison to previous logical-device interfaces,

including multiple, long command queues, and reduced latency.

30.      Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of Paragraph 30 of the SAC and, on that basis, deny them.

31.      Defendants admit that Futurewei began negotiations with Mr. Huang in late 2010

and that Mr. Huang began working at Futurewei in January 2011 and that he worked on SSD

technology, including PCIe SSD architecture, during his employment at Futurewei. Defendants

lack sufficient information to form a belief as to the truth or falsity of the remaining allegations

of paragraph 31 of the SAC and, on that basis, deny them.

32.      Defendants admit that Futurewei extended an offer to Mr. Huang in December

2010 and that Mr. Huang began working at Futurewei in January 2011 and that he worked on

SSD technology, including PCIe SSD architecture, during his employment at Futurewei.

Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining

allegations of paragraph 32 of the SAC and, on that basis, deny them.

33.      Defendants admit that Mr. Huang was appointed leader of projects at Futurewei

and that he worked on SSD technology, including PCIe SSD architecture, during his

employment at Futurewei. Defendants lack sufficient information to form a belief as to the truth

or falsity of the remaining allegations of paragraph 33 of the SAC and, on that basis, deny them.

34.    Defendants admit that Mr. Huang was appointed leader of projects at Futurewei

and that he worked on SSD technology, including PCIe SSD architecture, during his

employment at Futurewei. Defendants further admit that Mr. Huang was listed as an inventor on

certain patent applications filed by Plaintiffs.  Defendants lack sufficient information to form a

belief as to the truth or falsity of whether product applications of the group's research referenced

in Paragraph 34 of the SAC include elements which can be used in big data, data centers, and

high performance computing ("HPC") applications, that these applications can allow for rapid

access of data, including non-volatile memory, through a variety of interfaces, and these

applications further allow the use of various standards to obtain remote data as if was stored as

local data using various translation techniques, and on this basis deny them.  Defendants deny

the remaining allegations of Paragraph 34 of the SAC.

35.    Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of paragraph 35 of the SAC and, on that basis, deny them.

36.    Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of paragraph 36 of the SAC and, on that basis, deny them.

37.    Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of paragraph 37 of the SAC and, on that basis, deny them.

38.    Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of paragraph 38 of the SAC and, on that basis, deny them.

39.    Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of paragraph 39 of the SAC and, on that basis, deny them.

40.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 40 of the SAC and, on that basis, deny them.

41.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 41 of the SAC and, on that basis, deny them.

42.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 42 of the SAC and, on that basis, deny them.

43.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 43 of the SAC and, on that basis, deny them.

44.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 44 of the SAC and, on that basis, deny them.

45.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 45 of the SAC and, on that basis, deny them.

46.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 46 of the SAC and, on that basis, deny them.

47.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 47 of the SAC and, on that basis, deny them.

48.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 48 of the SAC and, on that basis, deny them.

49.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 49 of the SAC and, on that basis, deny them.

50.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 50 of the SAC and, on that basis, deny them.

51.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 51 of the SAC and, on that basis, deny them.

52.     Defendants admit that Mr. Huang signed certain documents, including a version of the Agreement.  Paragraph 52 of the SAC also purports to refer to and quote selectively from portions of the Agreement, which speaks for itself.  Defendants deny the remaining allegations of Paragraph 52 of the SAC.

53.     Paragraph 53 of the SAC purports to refer to and quote selectively from portions of the Agreement, which speaks for itself.  Defendants deny the remaining allegations of Paragraph 53 of the SAC.

54.     Paragraph 54 of the SAC purports to refer to and quote selectively from portions of the Agreement, which speaks for itself.  Defendants deny the remaining allegations of Paragraph 54 of the SAC.

55.     Paragraph 55 of the SAC purports to refer to and quote selectively from portions of the Agreement, which speaks for itself.  Defendants deny the remaining allegations of Paragraph 55 of the SAC.

56.     Defendants admit that on May 31, 2013, Mr. Huang ceased his employment with Futurewei.  Defendants deny the remaining allegations of paragraph 56 of the SAC.

57.     Defendants deny the allegations of Paragraph 57 of the SAC.

58.     Defendants deny the allegations of Paragraph 58 of the SAC.

59.     Defendants admit the allegations of Paragraph 59 of the SAC.

60.     Defendants admit that Mr. Huang co-founded CNEX.  Defendants deny the remaining allegations of Paragraph 60 of the SAC.

61.     Defendants admit that the employees listed in Paragraph 61 of the SAC were

formerly employed by Futurewei and Huawei.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of paragraph 61 of the SAC and, on that basis, deny them.

62.     Defendants deny the allegations of Paragraph 62 of the SAC.

63.     Defendants deny the allegations of Paragraph 63 of the SAC.

64.     Defendants deny the allegations of Paragraph 64 of the SAC.

65.     Defendants deny the allegations of Paragraph 65 of the SAC.

66.     Defendants deny the allegations of Paragraph 66 of the SAC.

67.     Defendants deny the allegations of Paragraph 67 of the SAC.

68.     Defendants deny the allegations of Paragraph 68 of the SAC.

69.     Defendants admit that CNEX filed a patent application on June 26, 2013. Defendants deny the remaining allegations of Paragraph 69 of the SAC.

70.     Defendants deny the allegations of Paragraph 70 of the SAC.

71.     Defendants admit that Mr. Huang filed the patent applications identified in Paragraph 71 (the "Patent Applications") of the SAC and that those filings occurred after May 31, 2013.  Defendants deny the remaining allegations of Paragraph 71 of the SAC.

72.     Defendants admit that Mr. Huang did not disclose or assign the CNEX Patent Applications to Futurewei.  Defendants deny the remaining allegations of Paragraph 72 of the SAC.

73.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations that Futurewei began learning of the CNEX Patent Applications only after conducting its own patent research in April 2015, when it learned that the USPTO had published the first of these patents in January, and on that basis, deny them.  Defendants deny the

remaining allegations of Paragraph 73 of the SAC.

74.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 74 of the SAC, and on that basis, deny them.  Defendants further specifically deny any characterization as Mr. Huang's conduct as "illicit."

75.     Defendants deny the allegations of Paragraph 75 of the SAC.

76.     Defendants admit that Futurewei sent a letter to Defendants on July 29, 2016 and that the parties engaged in negotiations over the following months in an attempt to reach a resolution absent involvement from the Court, that these negotiations were unsuccessful, and that this litigation followed.  Defendants deny the remaining allegations of Paragraph 76 of the SAC.

## COUNTS

### Count One – Declaratory Relief

### (Against Huang and CNEX)

77.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 76 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

78.      Defendants deny the allegations of Paragraph 78 of the SAC.

79.     Defendants admit that Mr. Huang did not execute assignments for the Subject Ideas or Inventions discussed in the SAC, including the CNEX Patent Applications, to Futurewei.  Defendants deny the remaining allegations of Paragraph 79 of the SAC.

80.     Defendants deny the allegations of Paragraph 80 of the SAC.

81.     Defendants deny the allegations of Paragraph 81 of the SAC.

82.     Defendants admit that Futurewei purports to seek a declaration from the Court that the CNEX Patent Applications referenced in the SAC are a Subject Idea or Invention under

the terms of the Agreement, that the assignments by Mr. Huang of the CNEX Patent Applications to CNEX are void, and that all intellectual property derived from or related to the Patent Applications is the property of Futurewei.  Defendants deny that Plaintiffs are entitled to any such relief.

## Count Two – Breach of Contract

## Failing to Disclose and Assign Patents Containing Futurewei Technology

## (Against Huang)

83.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 82 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

84.     Defendants deny that certain provisions of the Agreement were enforceable and binding.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 84 of the SAC, and on that basis, deny them.

85.     Defendants deny that Futurewei fully performed its obligations under the Agreement.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 85 of the SAC and, on that basis, deny them.

86.     Defendants deny the allegations of Paragraph 86 of the SAC.

87.     Defendants deny the allegations of Paragraph 87 of the SAC.

88.     Defendants deny the allegations of Paragraph 88 of the SAC.

89.     Defendants deny the allegations of Paragraph 89 of the SAC.

90.     Defendants deny the allegations of Paragraph 90 of the SAC.

## Count Three – Breach of Contract

## Disclosure of Confidential Information

## (Against Huang)

91.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 90 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

92.     Defendants deny that certain provisions of the Agreement were enforceable and binding.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 92 of the SAC, and on that basis, deny them.

93.     Defendants deny that Futurewei fully performed its obligations under the Agreement.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 93 of the SAC and, on that basis, deny them.

94.     Defendants deny that Mr. Huang received any confidential information or trade secrets from Huawei or Futurewei, and on that basis, deny the allegations of Paragraph 94 of the SAC.

95.     Defendants deny the allegations of Paragraph 95 of the SAC.

96.     Defendants deny the allegations of Paragraph 96 of the SAC.

97.     Defendants deny the allegations of Paragraph 97 of the SAC.

98.     Defendants deny the allegations of Paragraph 98 of the SAC.

## Count Four – Breach of Contract

## Solicitation of Futurewei Employees

## (Against Huang)

99.     Defendants incorporate and restate their responses to the allegations set forth in

paragraphs 1 through 98 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

100.    Defendants deny that certain provisions of the Agreement were enforceable and binding.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 100 of the SAC.

101.    Defendants deny that Futurewei fully performed its obligations under the Agreement.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 101 of the SAC and, on that basis, deny them

102.    Defendants deny the allegations of Paragraph 102 of the SAC.

103.    Defendants deny the allegations of Paragraph 103 of the SAC.

104.    Defendants deny the allegations of Paragraph 104 of the SAC.

105.    Defendants deny the allegations of Paragraph 105 of the SAC.

106.    Defendants deny the allegations of Paragraph 106 of the SAC.

**Count Five – Misappropriation of Trade Secrets**

**Defend Trade Secrets Act – 18 U.S.C. §§ 1832, 1836, et seq.**

**(Against Huang and CNEX)**

107.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 106 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

108.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 108 of the SAC and, on that basis, deny them.

109.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 109 of the SAC and, on that basis, deny them.

110.    Defendants deny the allegations of Paragraph 110 of the SAC.

111.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 108 of the SAC and, on that basis, deny them.

112.    Defendants deny the allegations of Paragraph 112 of the SAC.

113.    Defendants deny the allegations of Paragraph 113 of the SAC.

114.    Defendants deny the allegations of Paragraph 114 of the SAC.

115.    Defendants deny the allegations of Paragraph 115 of the SAC.

116.    Defendants deny the allegations of Paragraph 116 of the SAC.

117.    Defendants deny the allegations of Paragraph 117 of the SAC.

118.    Defendants deny the allegations of Paragraph 118 of the SAC.

119.    Defendants deny the allegations of Paragraph 119 of the SAC.

120.    Defendants deny the allegations of Paragraph 120 of the SAC.

121.    Defendants deny the allegations of Paragraph 121 of the SAC.

122.    Defendants deny the allegations of Paragraph 122 of the SAC.

123.    Defendants deny the allegations of Paragraph 123 of the SAC.

124.    Defendants deny the allegations of Paragraph 124 of the SAC.

**Count Six - Threatened Misappropriation of Trade Secrets**

**Defend Trade Secrets Act - 18 U.S.C. §§ 1832, 1836, et seq.**

**(Against Huang and CNEX)**

125.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 124 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

126.    Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of Paragraph 126 of the SAC and, on that basis, deny them.

127.     Defendants deny the allegations of Paragraph 127 of the SAC.

128.     Defendants lack sufficient information to form a belief as to the truth or falsity of

the allegations of Paragraph 128 of the SAC and, on that basis, deny them.

129.     Defendants deny the allegations of Paragraph 129 of the SAC.

130.     Defendants deny the allegations of Paragraph 130 of the SAC.

131.     Defendants deny the allegations of Paragraph 131 of the SAC.

132.     Defendants deny the allegations of Paragraph 132 of the SAC.

133.     Defendants deny the allegations of Paragraph 133 of the SAC.

134.     Defendants deny the allegations of Paragraph 134 of the SAC.

135.     Defendants deny the allegations of Paragraph 135 of the SAC.

136.     Defendants deny the allegations of Paragraph 136 of the SAC.

137.     Defendants deny the allegations of Paragraph 137 of the SAC.

**Count Seven - Conspiracy to Misappropriate Trade Secrets**

**Defend Trade Secrets Act - 18 U.S.C. §§ 1832, 1836 et seq.**

**(Against Huang and CNEX)**

138.     Defendants incorporate and restate their responses to the allegations set forth in

paragraphs 1 through 137 of the SAC and incorporate the allegations in paragraphs 1-209 from

Defendants' Counterclaims set forth above.

139.     Defendants deny the allegations of Paragraph 139 of the SAC.

140.     Defendants deny the allegations of Paragraph 140 of the SAC.

141.     Defendants deny the allegations of Paragraph 141 of the SAC.

142.     Defendants deny the allegations of Paragraph 142 of the SAC.

143.    Defendants deny the allegations of Paragraph 143 of the SAC.

144.    Defendants deny the allegations of Paragraph 144 of the SAC.

145.    Defendants deny the allegations of Paragraph 145 of the SAC.

## Count Eight – Misappropriation of Trade Secrets under Common Law

### (Against Huang and CNEX)

146.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 145 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

147.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 147 of the SAC and, on that basis, deny them.

148.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 148 of the SAC and, on that basis, deny them.

149.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 149 of the SAC and, on that basis, deny them.

150.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 150 of the SAC and, on that basis, deny them.

151.    Defendants deny the allegations of Paragraph 151 of the SAC.

152.    Defendants deny the allegations of Paragraph 152 of the SAC.

153.    Defendants deny the allegations of Paragraph 153 of the SAC.

154.    Defendants deny the allegations of Paragraph 154 of the SAC.

155.    Defendants deny the allegations of Paragraph 155 of the SAC.

156.    Defendants deny the allegations of Paragraph 156 of the SAC.

157.    Defendants deny the allegations of Paragraph 157 of the SAC.

158.    Defendants deny the allegations of Paragraph 158 of the SAC.

159.    Defendants deny the allegations of Paragraph 159 of the SAC.

## Count Nine – Misappropriation of Trade Secrets under

## Texas Uniform Trade Secrets Act

## (Against Huang and CNEX)

160.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 159 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

161.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 161 of the SAC and, on that basis, deny them.

162.    Defendants deny the allegations of Paragraph 162 of the SAC.

163.    Defendants deny the allegations of Paragraph 163 of the SAC.

164.    Defendants deny the allegations of Paragraph 164 of the SAC.

165.    Defendants deny the allegations of Paragraph 165 of the SAC.

## Count Ten – Threatened Misappropriation of Trade Secrets under

## Texas Uniform Trade Secrets Act

## (Against Huang and CNEX)

166.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 165 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

167.    Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 167 of the SAC and, on that basis, deny them.

168.    Defendants deny the allegations of Paragraph 168 of the SAC.

169.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 168 of the SAC and, on that basis, deny them.

170.     Defendants deny the allegations of Paragraph 170 of the SAC.

171.     Defendants deny the allegations of Paragraph 171 of the SAC.

172.     Defendants deny the allegations of Paragraph 172 of the SAC.

173.     Defendants deny the allegations of Paragraph 173 of the SAC.

174.     Defendants deny the allegations of Paragraph 174 of the SAC.

175.     Defendants deny the allegations of Paragraph 175 of the SAC.

176.     Defendants deny the allegations of Paragraph 176 of the SAC.

177.     Defendants deny the allegations of Paragraph 177 of the SAC.

178.     Defendants deny the allegations of Paragraph 178 of the SAC.

**Count Eleven - Conspiracy to Misappropriate Trade Secrets**

**Texas Uniform Trade Secrets Act**

**(Against Huang and CNEX)**

179.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 178 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

180.     Defendants deny the allegations of Paragraph 180 of the SAC.

181.     Defendants deny the allegations of Paragraph 181 of the SAC.

182.     Defendants deny the allegations of Paragraph 182 of the SAC.

183.     Defendants deny the allegations of Paragraph 183 of the SAC.

184.     Defendants deny the allegations of Paragraph 184 of the SAC.

185.     Defendants deny the allegations of Paragraph 185 of the SAC.

186.     Defendants deny the allegations of Paragraph 186 of the SAC.

## Count Twelve – Tortious Interference with Contractual Relations

### (Against CNEX)

187.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 186 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

188.     Defendants deny the allegations of Paragraph 188 of the SAC.

189.     Defendants deny the allegations of Paragraph 189 of the SAC.

190.     Defendants deny the allegations of Paragraph 190 of the SAC.

191.     Defendants deny the allegations of Paragraph 191 of the SAC.

## Count Thirteen - Tortious Interference with Prospective Business Relations

### (Against CNEX)

192.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 191 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

193.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 193 of the SAC and, on that basis, deny them.

194.     Defendants deny the allegations of Paragraph 194 of the SAC.

195.     Defendants deny the allegations of Paragraph 195 of the SAC.

196.     Defendants deny the allegations of Paragraph 196 of the SAC.

197.     Defendants deny the allegations of Paragraph 197 of the SAC.

198.     Defendants deny the allegations of Paragraph 198 of the SAC.

199.     Defendants deny the allegations of Paragraph 199 of the SAC.

**Count Fourteen - Conspiracy to Commit Computer Fraud and Abuse Act ("CFAA")**

**18 U.S.C. §§ 1030, et seq.**

**(Against Huang and CNEX)**

200.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 199 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

201.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 201 of the SAC and, on that basis, deny them.

202.     Defendants deny the allegations of Paragraph 202 of the SAC.

203.     Defendants deny the allegations of Paragraph 203 of the SAC.

204.     Defendants deny the allegations of Paragraph 204 of the SAC.

205.     Defendants deny the allegations of Paragraph 205 of the SAC.

**Count Fifteen - RICO 18 U.S.C. § 1962(c)**

**(Against Huang and CNEX)**

206.     Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 205 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

207.     Defendants deny the allegations of Paragraph 207 of the SAC.

208.     Defendants deny the allegations of Paragraph 208 of the SAC.

209.     Defendants deny the allegations of Paragraph 209 of the SAC.

210.     Defendants deny the allegations of Paragraph 210 of the SAC.

211.     Defendants deny the allegations of Paragraph 211 of the SAC.

212.     Defendants deny the allegations of Paragraph 212 of the SAC.

213.    Defendants deny the allegations of Paragraph 213 of the SAC.

214.    Defendants deny the allegations of Paragraph 214 of the SAC.

215.    Defendants deny the allegations of Paragraph 215 of the SAC.

216.    Defendants deny the allegations of Paragraph 216 of the SAC.

217.    Defendants deny the allegations of Paragraph 217 of the SAC.

218.    Defendants deny the allegations of Paragraph 218 of the SAC.

219.    Defendants deny the allegations of Paragraph 219 of the SAC.

220.    Defendants deny the allegations of Paragraph 220 of the SAC.

221.    Defendants deny the allegations of Paragraph 221 of the SAC.

222.    Defendants deny the allegations of Paragraph 222 of the SAC.

223.    Defendants deny the allegations of Paragraph 223 of the SAC.

224.    Defendants deny the allegations of Paragraph 224 of the SAC.

## Count Sixteen - RICO Conspiracy - 18 U.S.C. § 1962(d)

## (Against Huang and CNEX)

225.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 224 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

226.    Defendants deny the allegations of Paragraph 226 of the SAC.

227.    Defendants deny the allegations of Paragraph 227 of the SAC.

228.    Defendants deny the allegations of Paragraph 228 of the SAC.

229.    Defendants deny the allegations of Paragraph 229 of the SAC.

230.    Defendants deny the allegations of Paragraph 230 of the SAC.

231.    Defendants deny the allegations of Paragraph 231 of the SAC.

232.    Defendants deny the allegations of Paragraph 232 of the SAC.

233.    Defendants deny the allegations of Paragraph 233 of the SAC.

234.    Defendants deny the allegations of Paragraph 234 of the SAC.

235.    Defendants deny the allegations of Paragraph 235 of the SAC.

236.    Defendants deny the allegations of Paragraph 236 of the SAC.

237.    Defendants deny the allegations of Paragraph 237 of the SAC.

238.    Defendants deny the allegations of Paragraph 238 of the SAC.

### Count Seventeen – Conversion

### (Against Huang and CNEX)

239.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 238 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

240.    Defendants deny the allegations of Paragraph 240 of the SAC.

241.    Defendants deny the allegations of Paragraph 241 of the SAC.

242.    Defendants deny the allegations of Paragraph 242 of the SAC.

243.    Defendants deny the allegations of Paragraph 243 of the SAC.

244.    Defendants deny the allegations of Paragraph 244 of the SAC.

245.    Defendants deny the allegations of Paragraph 245 of the SAC.

### Count Eighteen – Breach of Fiduciary Duty

### (Against Huang)

246.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 245 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

247.    Defendants admit the allegations of Paragraph 247 of the SAC.

248.    Defendants deny the allegations of Paragraph 248 of the SAC.

249.    Defendants deny the allegations of Paragraph 249 of the SAC.

250.    Defendants deny the allegations of Paragraph 250 of the SAC.

251.    Defendants deny the allegations of Paragraph 251 of the SAC.

252.    Defendants deny the allegations of Paragraph 252 of the SAC.

253.    Defendants deny the allegations of Paragraph 253 of the SAC.

### Count Nineteen - Unjust Enrichment

### (Against Huang and CNEX)

254.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 253 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

255.    Defendants deny the allegations of Paragraph 255 of the SAC.

256.    Defendants deny the allegations of Paragraph 256 of the SAC.

257.    Defendants deny the allegations of Paragraph 257 of the SAC.

258.    Defendants deny the allegations of Paragraph 258 of the SAC.

259.    Defendants deny the allegations of Paragraph 259 of the SAC.

260.    Defendants deny the allegations of Paragraph 260 of the SAC.

261.    Defendants deny the allegations of Paragraph 261 of the SAC.

### Count Twenty – Common Law Civil Conspiracy

### (Against Huang and CNEX)

262.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 261 of the SAC and incorporate the allegations in paragraphs 1-209 from

Defendants' Counterclaims set forth above.

263.    Defendants deny the allegations of Paragraph 263 of the SAC.

264.    Defendants deny the allegations of Paragraph 264 of the SAC.

265.    Defendants deny the allegations of Paragraph 265 of the SAC.

266.    Defendants deny the allegations of Paragraph 266 of the SAC.

267.    Defendants deny the allegations of Paragraph 267 of the SAC.

268.    Defendants admit that Plaintiffs seek to hold Defendants jointly and severally liable.  Defendants deny the remaining allegations of Paragraph 268 of the SAC.

269.    Defendants deny the allegations of Paragraph 269 of the SAC.

## Count Twenty-One - Unfair Competition Under Lanham Act and
## Texas Common and Statutory Law
### (Against Huang and CNEX)

270.    Defendants incorporate and restate their responses to the allegations set forth in paragraphs 1 through 269 of the SAC and incorporate the allegations in paragraphs 1-209 from Defendants' Counterclaims set forth above.

271.    Defendants deny the allegations of Paragraph 271 of the SAC.

272.    Defendants deny the allegations of Paragraph 272 of the SAC.

273.    Defendants deny the allegations of Paragraph 273 of the SAC.

274.    Defendants deny that they "carried out" any "scheme."  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 274 of the SAC and, on that basis, deny them.

275.    Defendants deny the allegations of Paragraph 275 of the SAC.

276.    Defendants deny the allegations of Paragraph 276 of the SAC.

277.    Defendants deny the allegations of Paragraph 277 of the SAC.

## DISCOVERY RULE

278.    Defendants deny the allegations of Paragraph 278 of the SAC.

## FRAUDULENT CONCEALMENT

279.    Defendants deny the allegations of Paragraph 279 of the SAC.

## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

280.    Defendants deny the allegations of Paragraph 280 of the SAC.

## JOINT AND SEVERAL LIABILITY

281.    Defendants deny the allegations of Paragraph 281 of the SAC.

## JURY DEMAND

Plaintiffs' demand for a jury trial in the SAC does not require a response.

## REQUEST FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief requested in the SAC or any relief whatsoever.  Defendants deny all allegations in the SAC that have not been specifically admitted in paragraphs 1 through 281 above.

## DEFENDANTS' AFFIRMATIVE DEFENSES

282.    Defendants assert the following affirmative defenses to the SAC.  In doing so, the Defendants do not assume any burden of proof on any issue that is the Plaintiffs' burden as a matter of law.  Defendants incorporate by reference the allegations in Defendants' Counterclaims in support of their defenses.  Defendants also reserve the right to amend or supplement these defenses as additional facts become known.

## FIRST DEFENSE: FAILURE TO STATE A CLAIM

283.    Defendants allege that the SAC, and each purported cause of action contained

therein, fails to state a claim upon which relief can be granted.

## SECOND DEFENSE: UNCLEAN HANDS

284.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands

and/or *in pari delicto*, including without limitation because of Plaintiffs' bad faith efforts in

using this vexatious litigation as part of a coordinated scheme to drive CNEX out of business.

On information and belief, this scheme is evidenced by Plaintiffs' conduct of actively and

improperly seeking and obtaining Mr. Huang's and CNEX's technology, confidential

information, and Trade Secrets with the aim of causing turmoil in the company and engaging in

corporate espionage of CNEX and Mr. Huang for the purpose of misappropriating CNEX's

technology, confidential information, and trade secrets.

285.     On information and belief, Plaintiffs have also employed other nefarious means to

obtain Mr. Huang's and/or CNEX's technology, trade secrets and confidential and proprietary

information, including using their significant ties to the Chinese government to gather non-public

information about CNEX employees.

286.     On information and belief, Plaintiffs have also attempted to raid CNEX's valuable

personnel.  Plaintiffs filed this litigation in bad faith as a continuation of this unlawful scheme to

destabilize CNEX.

## THIRD DEFENSE: LACHES, EQUITABLE ESTOPPEL, WAIVER,  ACQUIESCENCE AND FRAUDULENT CONCEALMENT

287.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches,

equitable estoppel, waiver, consent, consent, acquiescence and/or fraudulent concealment.  On

information and belief, Plaintiffs have made multiple material misrepresentations related to the

present case, including but not limited to, false representations made to Mr. Huang to induce him

to join Futurewei and by concealing from Mr. Huang unenforceable terms in his Employment

Agreement, including by failing to reference California Labor Code Section 2870, *et seq.* and

provide the requisite written notification that the agreement does not apply to inventions that

qualify under those provisions, and by failing to notify Mr. Huang that provisions of the

Employment Agreement, including Section 12(a) and Section 6(b), were unlawful under

California and/or Texas law.  Mr. Huang's position was detrimentally altered when he signed the

Employment Agreement in reliance on these misrepresentations.

288.     After Mr. Huang's departure in 2013, Plaintiffs began their scheme to destabilize

CNEX and to steal CNEX's valuable trade secrets and intellectual property.  On information and

belief, Plaintiffs have been aware of the technology and work that CNEX has conducted since

2013, when Mr. Huang informed his management at Futurewei that he was leaving to start his

own company working on NVMe SSD technology.

289.     In 2014, Mr. Bin Zhou, a manager at Huawei overseeing the logic design group,

contacted Mr. Huang regarding the movement of 4 former Huawei employees to CNEX.  Mr.

Zhou never contended Mr. Huang had breached or even referenced Mr. Huang's employment

agreement.  Mr. Zhou asked Mr. Huang to stop hiring additional Huawei employees from China,

and as a good faith gesture, Mr. Huang agreed that CNEX would take steps to stop hiring

additional Huawei employees.  Upon the conclusion of this conversation, Mr. Huang understood

that Mr. Zhou, Huawei, and Futurewei had agreed that this would resolve any issues surrounding

the recruiting of former Huawei employees.

290.     Plaintiffs have admitted that they learned of Mr. Huang's alleged breach of

contract at least by as early as April 2014 (or 2015) when they learned of patent applications

filed by Mr. Huang, assigned to CNEX. Dkt. 1 (Compl) at ¶ 59.  Plaintiffs' allegations leave no

room for debate that they knew at that time of the asserted cause of action: "These Patent

Applications demonstrate that Huang took Plaintiffs' confidential, proprietary, and trade secret

information when he left Futurewei and founded CNEX." *Id*.

291.    Plaintiffs' claims are further barred because of Plaintiffs' repeated

misrepresentations to CNEX and Mr. Huang regarding Plaintiffs' true intentions behind their

outreaches and invitations to meet with CNEX and Mr. Huang, as alleged in Paragraphs 1-209 in

Defendants' Counterclaims set forth above.

## FOURTH DEFENSE: STANDING

292.    Plaintiffs' claims are barred, in whole or in part, by their lack of ownership of the

alleged trade secrets asserted.

## FIFTH DEFENSE: ALLEGED TRADE SECRETS ARE KNOWN OR READILY ASCERTAINABLE

293.    Plaintiffs' trade secret misappropriation claims are barred, in whole or in part,

because Plaintiffs' alleged trade secrets are known or readily ascertainable by the relevant

industry and/or persons who could obtain economic value, if any, from their information and

were in the public domain.  For example and without limitation, Plaintiffs have disclosed their

purported trade secrets to the public through patent applications and to third parties through

publication on their websites.

## SIXTH DEFENSE: NO DAMAGES

294.    Plaintiffs have not suffered any damages, or to the extent Plaintiffs have suffered

any damages, Plaintiffs' claims for damages are barred because they are purely speculative and

impossible to prove or allocate.

## SEVENTH DEFENSE: ALLEGED DAMAGES CAUSED BY PLAINTIFFS

295.    If Plaintiffs suffered any injury or damages as alleged in the Second Amended

Complaint, which is expressly denied, then said damages or injuries resulted from Plaintiffs'

own acts and/or omissions.

## EIGHTH DEFENSE: PLAINTIFFS' FAILURE TO PERFORM

296.    Defendants are informed and believe, and upon such information and belief

alleges, that the Second Amended Complaint, and each alleged cause of action therein, is barred

by Plaintiffs' failure to perform or satisfy some or all of the conditions precedent to any further

obligations of Huang under the alleged contract or agreement.

## NINTH DEFENSE: ESTOPPEL

297.    Defendants hereby incorporate their averments and allegations from their Third

Affirmative Defense regarding laches, equitable estoppel, laches, waiver, and acquiescence.

Defendants are informed and believe, and upon such information and belief allege, that the

Second Amended Complaint, and each cause of action therein, is barred by the doctrine of

estoppel.

## TENTH DEFENSE: CONSENT

298.    Defendants hereby incorporate their averments and allegations from their Third

Affirmative Defense regarding laches, equitable estoppel, laches, waiver, and acquiescence.

Defendants are informed and believe, and upon such information and belief allege, that the

Second Amended Complaint, and each alleged cause of action therein, is barred by Plaintiffs'

consent.

## ELEVENTH DEFENSE: PREEMPTION

299.    The Second Amended Complaint, and each cause of action therein, is barred by

the doctrine of preemption.

### TWELVETH DEFENSE: NO USE (INDEPENDENT DEVELOPMENT)

300.    Defendants are informed and believe, and upon such information and belief allege, that Counts 5, 6, 7, 8, 9, 10, and 11 in the Second Amended Complaint are barred because the alleged trade secrets were not improperly acquired, disclosed or used by Mr. Huang or CNEX.  CNEX independently developed all CNEX intellectual property.

### THIRTEENTH DEFENSE: NO MISAPPROPRIATION

301.    Plaintiffs' trade secret misappropriation claims are barred, in whole or in part, because Defendants did not misappropriate any alleged trade secrets nor was any alleged misappropriation conducted by improper means.

### FOURTEENTH DEFENSE: NO BASIS FOR INJUNCTIVE RELIEF

302.    Plaintiffs' claims for injunctive relief are barred, in whole or in part, because on information and belief, Plaintiffs have failed to state facts sufficient to provide a legal or factual basis to award injunctive relief against Defendants.

### FIFTEENTH DEFENSE: FAILURE TO MITIGATE

303.    To the extent Plaintiffs sustained any damages allegedly caused by Defendants' conduct, Plaintiffs cannot recover all or any portion of their claims because Plaintiffs have to exercise reasonable care and diligence to mitigate any alleged damages they have suffered as a consequence of Defendants' actions.  Defendants hereby incorporate their averments and allegations in full from their Third Defense regarding laches, equitable estoppel, waiver, consent, and acquiescence.  Plaintiffs therefore unreasonably delayed filing this lawsuit.

### SIXTEENTH DEFENSE: STATUTE OF LIMITATIONS

304.    Defendants hereby incorporate their averments and allegations in full from their

Third Defense regarding laches, equitable estoppel, waiver, consent, and acquiescence. Plaintiffs' claims of Conspiracy to Commit Misappropriation of Trade Secrets under the Defend Trade Secrets Act and under the Texas Uniform Trade Secrets Act, Tortious Interference with Contractual Relations, Tortious Interference with Prospective Business Relations, Conspiracy to Commit violations of the Computer Fraud and Abuse Act, Conversion, Unjust Enrichment, Common Law Civil Conspiracy, and Unfair Competition are barred by the applicable statute of limitations.

## SEVENTEENTH DEFENSE: LEGAL JUSTIFICATION OR PRIVILEGE

305.    Plaintiffs' claims are barred, in whole or in part, because on information and belief, Defendants' actions as alleged in the SAC were and are protected by the privilege of fair competition or legal justification.

## EIGHTEENTH DEFENSE:  STATUTE OF FRAUDS

306.    Plaintiffs' contract claims are barred, in whole or in part, by the statute of frauds. On information and belief, Plaintiffs have failed to produce a fully executed version of the purported Employment Agreement.

## NINETEENTH DEFENSE:  CONTRACT CONTRARY TO EXPRESS PROVISION OF LAW

307.    Plaintiffs' contract claims are barred because Sections 3, 4, and 6(b) in the Employment Agreement are unenforceable for contradicting express provisions of the law, including but not limited to, California Labor Code §§2870-2872.

## TWENTIETH DEFENSE:  CONTRACT CONTRARY TO PUBLIC POLICY OR GOOD MORALS

308.    Plaintiffs' contract claims are barred because Sections 3, 4, and 6(b) of the Employment Agreement are unenforceable for contradicting public policy, violating the laws of Texas and California, and constituting unlawful restraints on trade and fair competition.

## RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

309.    Defendants reserve the right to assert any additional defenses which may become known during the course of discovery.

## DEMAND FOR JURY TRIAL

Defendants request a trial by jury on all issues so triable, including without limitation,

Plaintiffs' claims and Defendants' defenses and counterclaims.


Dated:   November 21, 2018                    Respectfully submitted,


                                              */s/ Jeffrey M. Fisher*

                                              Stephanie Skaff, CSB No. 183119 (*pro hac vice*)
                                              Email: sskaff@fbm.com
                                              Jeffrey M. Fisher, CSB No. 155284 (*pro hac vice*)
                                              Email: jfisher@fbm.com
                                              FARELLA BRAUN + MARTEL LLP
                                              235 Montgomery St., 17th Floor
                                              San Francisco, CA  94104
                                              Telephone:     415.954.4400
                                              Facsimile:     415.954.4480

                                              Deron Dacus, Texas Bar No. 790553
                                              Email: ddacus@dacusfirm.com
                                              THE DACUS FIRM, P.C.
                                              821 Ese 323 Loop Ste 430
                                              Tyler, TX 75701-0518
                                              Telephone:     903.705.1117
                                              Facsimile:     903.581.2543

                                              Attorneys for Defendants-Counterclaim Plaintiffs
                                              CNEX LABS, INC. and YIREN RONNIE HUANG

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on November 21, 2018.


_____*/s/ Jeffrey M. Fisher*_____
Jeffrey M. Fisher

## CERTIFICATE OF AUTHORIZATION TO SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 118) entered in this case on October 2, 2018.

*/s/   Jeffrey M. Fisher*
Jeffrey M. Fisher