**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., a Chinese corporation, and FUTUREWEI TECHNOLOGIES, INC., a Texas corporation, | |
| Plaintiffs, | The Honorable Amos L. Mazzant, III |
| vs. | Civil Action No. 4:17-cv-00893 ALM |
| YIREN RONNIE HUANG, an individual, and CNEX LABS, INC., a Delaware corporation, | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

# TABLE OF CONTENTS

**Page**

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS..............................................................................................1

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................1

PLAINTIFFS' MOTION TO DISMISS IS MOOT IN LIGHT OF DEFENDANTS'
AMENDED ANSWER AND COUNTERCLAIMS ............................................3

STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS .............................................4

ARGUMENT .....................................................................................................................5

I.     Counts One, Six, Seven, Nine, Ten, and Eleven of Plaintiffs' Counterclaims
       Properly State Claims and the Rule 12(b)(6) Motion as to These Claims Should be
       Denied. ...............................................................................................................5

       A.     Defendants' Conspiracy-Related Counterclaims (Counts Six, Seven, Ten,
              and Eleven) Are Adequately Pled. ...........................................................5

       B.     Defendants Have Properly Stated a Claim for Breach of Contract
              (Count One). ...........................................................................................8

       C.     Sufficient Facts Have Been Alleged to Sustain Defendants' RICO Claims
              (Counts Nine and Ten). ...........................................................................11

II.    Defendants' Counterclaims Are Not Time-Barred. ..........................................11

III.   Defendants' Misappropriation-Related Common Law Tort Claims (Counts Four,
       Five, and Thirteen) Are Not Preempted by TUTSA. ........................................13

IV.    Defendants' Claims for Declaratory Judgment (Counts Fourteen through
       Seventeen) Seek Unique Relief and Are Not "Mirror Images" of Any of
       Defendants' Claims. ..............................................................................................16

V.     Defendants' Allegations Regarding Huawei and Futurewei's Conspiratorial
       Conduct And Links to the Chinese Government Are Properly Pled and Are
       Linked to the Counts Alleged in the Counterclaims. .........................................18

CONCLUSION.................................................................................................................19

CERTIFICATE OF SERVICE .........................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*AMID, Inc. v. Medic Alert Found. United States, Inc.*,
   241 F. Supp. 3d 788 (S.D. Tex. 2017) ................................................................14, 15

*Atlantic Richfield Co. v. Long Trusts*,
   860 S.W.2d 439 (Tex. App. 1993) ................................................................................7

*AWP, Inc. v. Commonwealth Excavating, Inc.*,
   No. 5:13CV031, 2013 WL 3830500 (W.D. Va. July 24, 2013) ...............................15

*Baker v. Putnal*,
   75 F.3d 190 (5th Cir. 1996) .........................................................................................4

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984).....................................................................................................6

*Davidson v. RGIS Inventory Specialists*,
   553 F. Supp. 2d 703 (E.D. Tex. 2007).........................................................................4

*Downhole Tech. LLC v. Silver Creek Servs. Inc.*,
   No. CV H-17-0020, 2017 WL 1536018 (S.D. Tex. Apr. 27, 2017) .........................15

*Dresser-Rand Co. v. Virtual Automation Inc.*,
   361 F.3d 831 (5th Cir. 2004) ....................................................................................14

*Freeport Sulphur Co. v. Am. Sulphur Royalty Co. of Texas*,
   117 Tex. 439 (1928).....................................................................................................9

*Hinojosa v. Guidant Corp.*,
   No. C.A. C-05-399, 2005 WL 2177212 (S.D. Tex. Sept. 7, 2005) ............................7

*Holloway v. Atl. Richfield Co.*,
   970 S.W.2d 641 (Tex. App. 1998)...............................................................................7

*Jacked Up, LLC v. Sara Lee Corp.*,
   854 F.3d 797 (5th Cir. 2017) .......................................................................................5

*KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*,
   988 S.W.2d 746 (Tex. 1999).....................................................................................11

*Long v. Hitzelberger*,
   602 S.W.2d 321 (Tex. Civ. App. 1980) ......................................................................9

*Maxxim Med., Inc. v. Michelson*,
   51 F. Supp. 2d 773 (S.D. Tex. 1999) ........................................................................5

*Metropolitan Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*,
   762 S.W.2d 646 (Tex. App. 1988) ...........................................................................6

*Morgan v. Hubert*,
   335 Fed. App'x 466 (5th Cir. 2009) .........................................................................5

*New Trend Foods, LLC v. Kato Sushi Rest.*,
   No. CIV. M-06-330, 2008 WL 901568 (S.D. Tex. Mar. 31, 2008).........................14

*Nogart v. Upjohn Co.*,
   981 P.2d 79 (Cal. 1999) ........................................................................................11

*Olivas v. Four Unknown United States Marshals*,
   No. EP-17-CV-278-PRM, 2018 WL 1899738 (W.D. Tex. Mar. 26, 2018) ..............4

*Pittsburg SNF LLC v. PharMerica E., Inc.*,
   No. 2:10-CV-363-JRG-RSP, 2012 WL 4509753 (E.D. Tex. July 19, 2012) ..........17

*Rail Scale, Inc. v. Balanced Railscale Certification, LLC*,
   No. 2:15-CV-02117-RSP, 2017 WL 319077 (E.D. Tex. Jan. 23, 2017) ...........15, 16

*Transplace Texas, LP v. Alioto*,
   No. 4:16-cv-647, 2016 WL 6996267 (E.D. Tex. Nov. 30, 2016)............................4

*Watson v. Citimortgage, Inc.*,
   814 F. Supp. 2d 726 (E.D. Tex. 2011).....................................................................8

## STATUTES

18 U.S.C.
   §§ 1962(c) and (d).............................................................................................10, 11

Sherman Antitrust Act
   § 1.........................................................................................................................6

## OTHER AUTHORITIES

Federal Rule of Civil Procedure
   8(d)(2) ................................................................................................................10
   15(a).............................................................................................................1,3,4
   15(a)(1)(2).............................................................................................................4
   15(a)(1)(A) .........................................................................................................3
   9(b).............................................................................................................10, 11
   12(b)(6) ..........................................................................................................4,5,18

**OTHER AUTHORITIES**

S.B. 953, 83rd Leg., Reg. Sess., § 4 (Tex. 2013)...........................................................................13

Texas Uniform Trade Secret Act ......................................................................................... *passim*

Defendants CNEX Labs, Inc. ("CNEX") and Yiren "Ronnie" Huang (collectively, "Defendants") hereby respond to the Motion to Dismiss Defendants' Counterclaims filed by Plaintiffs Huawei Technologies Co., Ltd. ("Huawei") and Futurewei Technologies, Inc. ("Futurewei") (collectively, "Plaintiffs").

## INTRODUCTION

Plaintiffs' Motion to Dismiss Defendants' Counterclaims should be denied. The majority of arguments raised in Plaintiffs' Motion—many of which contradict positions they have previously taken in opposing Defendants' prior motions to dismiss—are factually and legally incorrect. To the extent amendments are required to address remaining arguments raised in the Motion, pursuant to Fed. R. Civ. P 15(a), Defendants are concurrently filing their First Amended Counterclaims and Answer that address alleged deficiencies set forth in the Motion. The Motion is therefore moot. To the extent leave to amend is required, Defendants respectfully request leave to amend to file their First Amended Counterclaims and Answer.

## BACKGROUND

Although Plaintiffs have been levelling baseless allegations at Defendants since the outset of this action, based on the limited discovery adduced to date[1], it is apparent that Plaintiffs' claims are entirely without merit and that it is ***Plaintiffs*** who have been embarking on a protracted and illicit campaign to steal Mr. Huang's and CNEX's technology and to drive CNEX, its employees and its investors out of business through baseless claims and by imposing excessive litigation costs on CNEX. As alleged in Defendants' Counterclaims, among other things:

---

[1] Plaintiffs continue to stonewall discovery into their misconduct, and continue to refuse to provide the most basic discovery relating to the allegations in their Complaint or in Defendants' Counterclaims. *See, e.g.*, Dkt. 115 (Defendants' pending motion to compel).

- Rather than lawfully acquire Mr. Huang's preexisting intellectual property in 2010, Plaintiffs instead told Mr. Huang that it was supposedly "cleaner" for them to bring him on board as an employee rather than purchase his intellectual property.  It now appears clear that this decision was reached, not because Plaintiffs were disinterested in Mr. Huang's existing IP, but instead because Plaintiffs determined that by hiring Mr. Huang as an employee, they could not only obtain the benefit of his SSD expertise, but also the opportunity to siphon, leverage and, if necessary, steal his intellectual property without having to pay to lawfully acquire it.  (*See* CNEX Amended Counterclaims ¶¶ 16, 26-27 at Dkt. No. 132);

- In January 2011, more than three weeks after turning down Mr. Huang's offer to purchase his IP and two weeks after Mr. Huang had started his employment at Futurewei, Futurewei presented its form "Employment, Confidentiality, Proprietary, Information and Inventions Agreement" ("Employment Agreement") to Mr. Huang The Employment Agreement contains a number of one-sided and overbroad provisions, ***none*** of which were disclosed to Mr. Huang prior to his employment with or within his first two weeks of working at Futurewei, and many of which are clearly unenforceable under the law.  Mr. Huang nonetheless identified his preexisting intellectual property (both published and confidential) on the form agreement, and consistent with his previous discussions with Futurewei, excluded his IP from the scope of his obligations under the agreement and affirmatively obligated Plaintiffs to respect and protect his rights to his inventions and not steal or attempt to assign his inventions for their own use.  (*See id.* ¶¶ 30-40);

- Starting on or after June 2013, after learning of CNEX and Mr. Huang's innovative technology, Plaintiffs began tracking CNEX's progress and sought to and did obtain confidential and proprietary information concerning CNEX and its technology, including through illicit means, and through non-Huawei third party co-conspirators, which Defendants believe include one or more representatives from certain Chinese state-controlled universities, Huawei procurement agents, CNEX distributors and/or representatives of the Chinese government.  Indeed, despite Mr. Huang's disclosures and the intent of the parties in signing the Employment Agreement, Plaintiffs continued to repeatedly and improperly attempt to acquire and did acquire the intellectual property Mr. Huang had developed prior to his employment at Futurewei and also have improperly attempted to obtain and did obtain the proprietary technology Mr. Huang and others at CNEX developed *after* Mr. Huang left Futurewei in May of 2013.  Plaintiffs' acts of corporate espionage have included:

  o wrongfully obtaining confidential and proprietary information concerning CNEX's technology from Mr. Huang and others at CNEX under the false premise that Plaintiffs were interested in being a CNEX customer; and

  o unlawfully seeking and obtaining confidential and proprietary CNEX information through third party co-conspirators – including one or more Chinese Universities which Huawei funds -- in blatant violation of confidentiality obligations.  (*Id.*, ¶¶ 41-52.)

## PLAINTIFFS' MOTION TO DISMISS IS MOOT IN LIGHT OF DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS

In compliance with Rule 15(a), Defendants have filed concurrently herewith their First Amended Counterclaims and Answer.  *See* Fed. R. Civ. P. 15(a)(1)(A).  Although no motion for

leave to amend is necessary when, as is this case here, the other party has not yet filed a

responsive pleading within the meaning of Rule 15(a),[2] if the Court finds any deficiencies in

Defendants' Counterclaims, Defendants seek and hereby respectfully request an opportunity to

further amend the Counterclaims to cure any such deficiencies.  Fed. R. Civ. P. 15(a)(1)(2)

(stating that court should "freely give leave when justice so requires"); *see also* Dkt. 59 at 22-25

(granting Plaintiffs leave to amend).

Defendants' filing of amended counterclaims moots Plaintiffs' previously filed Motion to

Dismiss, and the Motion to Dismiss (which is addressed solely to the original counterclaims filed

on October 16, 2018 at Docket No. 127) therefore need not be considered.  *See Olivas v. Four*

*Unknown United States Marshals*, No. EP-17-CV-278-PRM, 2018 WL 1899738, at *1 (W.D.

Tex. Mar. 26, 2018).  Though Plaintiffs' Motion to Dismiss should be denied as moot and need

not be considered at all, because Defendants' Counterclaims, read together with the factual

allegations under the appropriate Rule 12(b)(6) standard, adequately support the claims as pled,

the Motion also fails on the merits and can be denied entirely on that basis as well.

## STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS

In evaluating a Rule 12(b)(6) motion, the court "must accept as true all well-pleaded facts

contained in the plaintiffs complaint and view them in the light most favorable to the plaintiff."

*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The pleading standard at the motion dismiss

stage "simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of necessary claims or elements." *Transplace Texas, LP v. Alioto*, No. 4:16-cv-647,

---

[2] Plaintiffs' filing of a motion to dismiss Defendants' counterclaims does not affect Defendants' ability to amend their counterclaims as of right.  *See Davidson v. RGIS Inventory Specialists*, 553 F. Supp. 2d 703, 705 (E.D. Tex. 2007)("[T]he filing of a motion to dismiss 'does not extinguish a party's right to amend as a matter of course.' Because RGIS has not filed a responsive pleading within the meaning of Rule 15(a), Plaintiffs did not need to obtain permission from the court to amend their complaint.").

2016 WL 6996267, at *1 (E.D. Tex. Nov. 30, 2016); *see also Morgan v. Hubert*, 335 Fed. App'x 466, 470 (5th Cir. 2009).  The allegations in Defendants' Counterclaims far exceed the bar for sufficiency of allegations.[3]

# ARGUMENT[4]

## I.   Counts One, Six, Seven, Nine, Ten, and Eleven of Plaintiffs' Counterclaims Properly State Claims and the Rule 12(b)(6) Motion as to These Claims Should be Denied.

### A.   Defendants' Conspiracy-Related Counterclaims (Counts Six, Seven, Ten, and Eleven) Are Adequately Pled.

In their initial counterclaims, Defendants alleged that Plaintiffs conspired with one another to misappropriate Defendants' trade secrets.  In their Motion to Dismiss, Plaintiffs misstate the law on the intra-corporate conspiracy doctrine in seeking dismissal of these claims.  Without citing any authority, Plaintiffs incorrectly state that "Texas courts have concluded that

---

[3] Plaintiffs appeal to Texas law in their motion to dismiss, and while the motion to dismiss should be denied even under Texas law, Defendants' counterclaims are in fact governed by California law.  Under the "most significant relationship" test adopted in Texas for choice of law issues, the laws of the state which has the most significant relationship to the parties and the occurrence at issue should be applied.  "The factors to consider in determining the applicable law for a tort case such as this are (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence, nationality, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 815 (5th Cir. 2017).  For torts such as trade secret misappropriation, "the place of injury does not play so important a role;" "[i]nstead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight." *Id*; *see also Maxxim Med., Inc. v. Michelson*, 51 F. Supp. 2d 773, 774 (S.D. Tex. 1999), rev'd and vacated on other grounds, 182 F.3d 915 (5th Cir. 1999) (applying California law to tort claims asserted by Texas employer against California employee where the "locus of the conduct" occurred in California).  Here, the conduct Plaintiffs alleged to have caused that injury took place in California, where Mr. Huang worked at Futurewei and where Defendants are—and have at all relevant times—been located.

[4] On the first page of their Motion, Plaintiffs incorrectly assert that they are seeking dismissal of "all" of Defendants' counterclaims and that "none" of Defendants' claims states a claim on which relief can be granted.  Not so.  Plaintiffs' Motion only addresses certain counts or portions of certain counts in the Counterclaims, and does not attack, for example, Counts Two (misappropriation under DTSA), Three (misappropriation under TUTSA) or Eight (tortious interference)., or the standalone (non-conspiracy based) portions of Counts 1, 6, 7, 9, 10 and 11.

parent corporations cannot conspire with their subsidiaries for other common law tort claims that include conspiracy as a requisite element." Dkt. 131 at 8.  To the contrary, Texas courts have explicitly *rejected* the argument that wholly-owned subsidiaries cannot conspire with their parent. *Metropolitan Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 652 (Tex. App. 1988), writ dismissed (Apr. 12, 1989) ("In *Copperweld* the Supreme Court limited its holding to cases involving alleged violations of the Sherman Act. Since we are not here dealing with an alleged violation of the Sherman Act, the holding concerning the meaning of that statute is irrelevant. We are here concerned with an alleged conspiracy under common law theories. Under the common law, a parent corporation and its subsidiary are separate legal entities.") (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 765 (1984)).

While Plaintiffs rely heavily on *Copperweld*, Texas state courts have been clear that *Copperweld* is limited to conspiracy claims under Section 1 of the Sherman Antitrust Act and that corporations can conspire with their subsidiaries for the purpose of common law theories. *Id.*  In fact, the Texas case that Plaintiffs cite to, *Atlantic Ritchfield v. Misty Products* (Tex. App. Houston 1991), has been expressly disapproved of for the exact proposition upon which Plaintiffs rely.  Referring to the *Atlantic Ritchfield v. Misty Products* decision, the Texas Court of Appeals held as follows:

> The Fourteenth Court of Appeals in Houston *ignored the antitrust distinctions* and held as a matter of law that a parent corporation cannot conspire with its wholly owned subsidiary. However, we agree with the San Antonio court that *Copperweld* was restricted to the antitrust context and was not applicable to common law conspiracies. *Metropolitan Life Ins. Co. v. La Mansion Hotels*, 762 S.W.2d 646, 651–52 (Tex.App.— San Antonio 1988, writ dism'd as moot). Because this is not an antitrust case, we find that the trial court did not err by submitting this issue to the jury."

*Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex. App. 1993), on reh'g (June 15, 1993), writ denied (Jan. 5, 1994) (emphasis added).[5]  Texas courts have, in no uncertain terms, stated that the rule that parent corporations cannot conspire with wholly owned corporations is only applicable in the antitrust context.  *See Holloway v. Atl. Richfield Co*., 970 S.W.2d 641, 644 (Tex. App. 1998) ("Arco prayed for summary judgment on this issue on the grounds that 'the law in Texas is quite clear that a parent corporation cannot conspire with its wholly owned subsidiary...' We agree with the Texarkana Court of Appeals' holding that this is true only in the antitrust context and not in common law conspiracies.").  None of Defendants' counterclaims involve antitrust allegations, and Plaintiffs have not and cannot demonstrate that the intra-corporate conspiracy doctrine applies to the specific conspiracy counterclaims that Defendants have pled.

Regardless of the sufficiency of the allegations in Defendants' original counterclaims, however, the amended counterclaims state additional detailed facts to support a conspiracy between Plaintiffs and third party entities.  *See, e.g.*, CNEX Amended Counterclaims ¶¶ 49-54, 122-27, 130-35, 157-60, 168-72.  Discovery will likely reveal additional evidence of Plaintiffs' conspiracy and additional co-conspirators.  As a result, Defendants' conspiracy claims as amended do not rely solely on a theory of intra-corporate conspiracy and plead more than

---

[5] The cases cited herein more accurately reflect the intra-corporate conspiracy doctrine as specifically applied in Texas to non-antitrust claims.  At the very least, under these cases,, it cannot be said that the conspiracy counterclaims are deficient as a matter of law, and the motion to dismiss these claims on the basis of conflicting law should be denied.  *See Hinojosa v. Guidant Corp.*, No. C.A. C-05-399, 2005 WL 2177212, at *5 (S.D. Tex. Sept. 7, 2005) ("Given that all ambiguities in state law must be resolved in favor of the non-removing party, Hart, 199 F.3d at 246, this Court finds that Plaintiff has alleged the existence of two or more parties to the conspiracy.").

enough facts to state a claim and survive a motion to dismiss.  Plaintiffs' request to dismiss Counts Six, Seven, Ten, and Eleven should therefore be rejected.

### B. Defendants Have Properly Stated a Claim for Breach of Contract (Count One).

Plaintiffs contend that Defendants' breach of contract claim should be dismissed because Defendants did not identify a specific provision of the Agreement that was breached and because Defendants did not allege the existence of a valid contract.  Neither of these arguments provides a basis to dismiss Defendants' claims.

Plaintiffs cite to cases in Texas holding that a party must identify a specific provision of the contract that was breached, but in those cases, the non-moving party had simply alleged in a conclusory fashion that the other party had breached a contract.  In contrast, in this case, the full text of the Employment Agreement is already in the record, and Defendants have attached the Employment Agreement to the counterclaims and have further outlined the manner in which Plaintiffs violated the Employment Agreement.  In the cases cited by Defendants, the party asserting a breach of contract not only failed to attach the contract itself, but in most cases, failed to even identify which contract was at issue.  In contrast, in cases where the breach is described in a way that makes it clear enough which provision is at issue, as here, courts in this District deny motions to dismiss breach of contract claims.  *See, e.g., Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011) (denying a motion to dismiss on the basis that the pleading was sufficient, even when the plaintiff did not provide the contract itself or identify a specific provision of the contract that was breached, because the plaintiff had alleged with sufficient specificity the manner in which the defendant had violated the contract).  Defendants' allegations regarding their breach of contract claim far exceed the standard for sufficiency of pleadings, and Plaintiffs' case law does not support a contrary finding.

Defendants have now amended their breach of contract counterclaim and have identified provisions of the Employment Agreement that Futurewei has breached.  *See* CNEX Amended Counterclaims ¶¶ 40-41, 77-78.  The Employment Agreement expressly states the excluded technology is not covered by and within the scope of the agreement.  Yet, Huawei seeks to impose the obligations of the Agreement on the excluded technology, thereby breaching an express provision of the contract.

Furthermore, Texas law also recognizes implied covenants in express contracts in cases where "it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole.  *Long v. Hitzelberger*, 602 S.W.2d 321, 324 (Tex. Civ. App. 1980).[6]  The Texas Supreme Court has held as follows:

> A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face. In order that an unexpressed term may be implied the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties.

*Freeport Sulphur Co. v. Am. Sulphur Royalty Co. of Texas*, 117 Tex. 439, 451 (1928).  In this case, Plaintiffs' interpretation of the Employment Agreement in their motion to dismiss would frustrate the entire purpose of the employment relationship between Mr. Huang and Futurewei if Futurewei could claim as its own and/or prevent Mr. Huang from independently developing on his own the inventions and trade secrets that Mr. Huang expressly excluded from the assignment provisions of the Employment Agreement.  By noting that certain inventions and trade secrets

---

[6] None of the cases cited by Plaintiffs state that an express provision of a contract cannot confer upon a party an implied obligation—they simply stand for the proposition that an express obligation will override an obligation that has not been expressed in cases where the two are in direct conflict with one another.  In this case, none of the express obligations are inconsistent with a reading of the Employment Agreement that confers upon Futurewei an obligation not to misappropriate Mr. Huang's previously-held trade secrets.

were excluded from the scope of the Agreement, Futurewei acknowledged that Mr. Huang had

rights to this pre-existing intellectual property, that it would respect those rights as well as Mr.

Huang's confidentiality obligations related to the intellectual property, and thereby undertook an

obligation not to attempt to steal Mr. Huang's intellectual property or otherwise impinge on Mr.

Huang's rights with respect to that intellectual property.

Plaintiffs further attempt to dismiss Defendants' breach of contract claim by stating that

Defendants have not alleged the existence of a contract.  Through their Counterclaims and

Answer, Defendants have been clear that the provisions that Plaintiffs attempt to enforce against

Defendants are unenforceable as a matter of law and have provided detailed factual allegations in

support of this claim.  However, to the extent those unlawful provisions are severable and the

contract is otherwise binding and enforceable, Plaintiffs should be held accountable for their own

breaches.  Defendants' breach of contract claims sought to plead (and should be read to plead) a

breach of contract theory in the alternative, which even Plaintiffs admit is a viable course of

action.  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or

defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

Regardless of the sufficiency of the original counterclaims, as noted above, Defendants

have amended their breach of contract counterclaim and have identified with specificity

provisions of the Employment Agreement that Futurewei has breached, and have also made clear

that, while certain provisions of the Employment Agreement are unenforceable, Futurewei's

obligations under the agreement are valid and enforceable.  *See* CNEX Amended Counterclaims

¶¶ 40-41, 74-81.  Accordingly, Plaintiffs' Motion to Dismiss Count One of the counterclaims

should be rejected.

### C.   Sufficient Facts Have Been Alleged to Sustain Defendants' RICO Claims (Counts Nine and Ten).

Huawei's Motion seeks dismissal of CNEX's RICO claims under 18 U.S.C. §§ 1962(c) and (d) based on deficiencies in the enterprise allegations relying on the parent-subsidiary relationship between Huawei and Futurewei, and a claimed failure to meet FRCP 9(b)'s heightened pleading standard.[7]  Ironically, while Defendants' RICO allegations against Plaintiffs are sufficient, Huawei's RICO allegations against Defendants are susceptible to precisely this same attack.  While this is an issue for another day, unlike with Defendants' claims, there are no facts that Huawei can point to in order to save its RICO claim against Defendants.  In any event, CNEX has amended its counterclaims to include specific allegations of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d) to add allegations regarding Defendants' association-in-fact with certain co-conspirators (including Xiamen University and Professor Bo Mao, representatives of the Chinese Government, etc.), which discovery obtained from Huawei now shows were formed in order to unlawfully seek and obtain CNEX confidential information.  *See* CNEX Amended Counterclaims ¶¶ 49-52, 54, 147-150, 157-161.

## II.   Defendants' Counterclaims Are Not Time-Barred.

Under both Texas and California law, statute of limitations defenses are considered affirmative defenses, and as such, Plaintiffs bear the burden of establishing as a matter of law

---

[7] The allegations in Defendants' counterclaims are not subject to the heightened Rule 9(b) standard for fraud claims.  Defendants' RICO claim does not rely on the allegations that Plaintiffs committed fraud.  The counterclaims clearly identify multiple instances of trade secret misappropriation—each of which would constitute a separate predicate act for RICO purposes.  As Plaintiffs argued themselves in their opposition to Defendants' motion to dismiss, "[t]here is no authority cited by [Plaintiffs] for the proposition that a heightened pleading standard under Rule 9(b) applies to claims of civil conspiracy where the agreement is to convert property or misappropriate trade secrets." Dkt. No. 22 at 22.  Regardless, the allegations in the counterclaims are sufficient to meet the high bar of Rule 9(b).

that the statute of limitations applies to Defendants' counterclaims.  *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Nogart v. Upjohn Co.*, 981 P.2d 79, 87 (Cal. 1999).  In their counterclaims, Defendants asserted the discovery rule, equitable estoppel, and fraudulent concealment.  *See* Dkt. 127 at 45.  Notably, Plaintiffs have themselves previously relied on similar theories in opposing Defendants' previously filed motion to dismiss.  *See* Dkt. 22 at 15-16 ("All of Defendants' arguments…are based upon the same faulty assumption: that Plaintiffs knew or should have known of *all* of their claims in April 2015… Because their Motion fails to establish the accrual date of Plaintiffs' claims, Defendants' Motion should be denied on those grounds as well.").  The Court has previously found that, under these circumstances, the party asserting a statute of limitations defense must "prov[e] the applicability of the statute of limitations in spite of the discovery rule, equitable estoppel, and fraudulent concealment" in order to succeed on a motion to dismiss.  Order at Dkt. 59.

Plaintiffs have not met their burden of demonstrating as a matter of law that the statute of limitations defense applies in spite of the discovery rule, equitable estoppel, and fraudulent concealment.  In attempting to argue that Defendants' claims are time-barred, Plaintiffs misconstrue Defendants' claims for misappropriation of trade secrets—Defendants are not claiming that Mr. Huang was unaware of the existence of the Employment Agreement or that the existence of Employment Agreement itself was a misappropriating act, but rather that Mr. Huang later discovered that Futurewei and Huawei had improperly used the Employment Agreement as a means (one of many) by which to acquire and use Mr. Huang's trade secrets.  Plaintiffs' Motion to Dismiss does nothing to prove that Mr. Huang and/or CNEX were aware of Plaintiffs' improper motives at the time of signing the agreement.  To the contrary, Mr. Huang's continued employment with Futurewei and his willingness to continue a business relationship with the

company even after his departure demonstrates that Mr. Huang continued to be unaware of the unlawful steps that Plaintiffs had taken and were planning to take to misappropriate his and CNEX's trade secrets.  In fact, because of Plaintiffs' fraudulent concealment and the clandestine nature of many of the measures they employed, a number of the facts alleged in the counterclaims did not come to light until *after* Huawei and Futurewei initiated this litigation and Defendants began obtaining discovery.  Plaintiffs failed to meet their burden to prove that the statute of limitations applies in light of the facts pled in the counterclaims and the discovery rule, collateral estoppel, and fraudulent concealment.

## III.    Defendants' Misappropriation-Related Common Law Tort Claims (Counts Four, Five, and Thirteen) Are Not Preempted by TUTSA.

Defendants' claims for misappropriation of trade secrets under common law (Count Four) and for unjust enrichment (Count Thirteen) are not preempted by the Texas Uniform Trade Secret Act (TUTSA). Enacted on September 1, 2013, the text of TUTSA is clear that the Texas state law only applies to "the misappropriation of a trade secret made on or after the effective date" and that Texas common law applies to any acts of misappropriation of trade secrets that occurred before September 1, 2013.  *See* S.B. 953, 83rd Leg., Reg. Sess., § 4 (Tex. 2013).  The detailed factual allegations in Defendants' Counterclaims demonstrate that Huawei and Futurewei began taking steps to misappropriate Mr. Huang's trade secrets as early as 2010 when Futurewei encouraged Mr. Huang to accept employment with them, rather than lawfully acquire his intellectual property.

Plaintiffs simply misconstrue Defendants' claims by contending that the only acts Defendants allege occurred in 2015 and 2016.  In their counterclaims, Defendants alleged that in 2010 "Futurewei reached the decision not to purchase Mr. Huang's preexisting intellectual property only after deliberation of Huawei's senior management, and because Plaintiffs believed

that hiring Mr. Huang as an employee would give them the opportunity to use and, if necessary, steal Mr. Huang's intellectual property without having to lawfully acquire it." Dkt. 127 ¶ 16. Because these acts pre-date the enactment of TUTSA, TUTSA cannot be applied to these claims, and Texas common law instead would govern. Plaintiffs recognize and advanced this same argument in defense of their own claims. *See* Dkt. 22 at 24-25 ("The Texas Uniform Trade Secrets Act does not pre-empt common law tort claims for conduct which took place in part prior to the enactment of the statute on September 1, 2013.")(citation omitted). Defendants properly pled misappropriation of trade secrets claims under both TUTSA and under common law to cover all of the acts of misappropriation taken by Huawei and Futurewei since the start of their relationship with Mr. Huang and CNEX.

Furthermore, Plaintiffs do not (and cannot) prove that Count Five alleging common law misappropriation would be preempted by the TUTSA. Their only treatment of this counterclaim is to group it in with the misappropriation of trade secrets allegations. However, common law misappropriation, also referred to as unfair competition by misappropriation, is an "independent cause of action under Texas law." *See New Trend Foods, LLC v. Kato Sushi Rest.*, No. CIV. M-06-330, 2008 WL 901568, at *4 (S.D. Tex. Mar. 31, 2008). The elements for a common law misappropriation claim are distinct from those of a misappropriation of trade secrets claim:

> The elements of a cause of action for unfair competition by misappropriation in Texas are: "(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff." United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 218 (Tex.App.—Waco 1993, writ denied).

*Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004).  A party need not show that its product or information is a trade secret or even that it is confidential in order to sufficiently plead a claim for common law misappropriation.

In fact, Texas district courts have confirmed that TUTSA does not preempt the tort of common law misappropriation.  In *AMID Inc. v. Medic Alert Foundation*, the court denied a motion to dismiss an unfair competition by misappropriation claim and expressly rejected the argument that the claim was preempted by TUTSA. *See AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 827 (S.D. Tex. 2017).  The court interpreted the claim of misappropriation of trade secrets and the claim of common law misappropriation to be "alternative theories of relief" and noted that the difference between the two claims was that the common law misappropriation claim did not require an allegation that the information was protected as trade secrets.  *Id.*; *see also Downhole Tech. LLC v. Silver Creek Servs. Inc.*, No. CV H-17-0020, 2017 WL 1536018, at \*4 (S.D. Tex. Apr. 27, 2017) ("Because Downhole's claims involve activity other than misappropriation of trade secrets and permit recovery in the event that the information obtained and used by defendants does not qualify as "trade secrets," the claims are not preempted by the TUTSA.").  TUTSA does not preempt Defendants' common law misappropriation claim because Defendants "could recover on [their] tort claim without proving that the information is protected as trade secrets." *AMID*, 241 F. Supp. 3d at 827; *see also AWP, Inc. v. Commonwealth Excavating, Inc.*, No. 5:13CV031, 2013 WL 3830500, at \*7 (W.D. Va. July 24, 2013), at \*6-7 (rejecting the argument that a claim for unjust enrichment is preempted by a state claim for misappropriation of trade secrets).

**IV.** **Defendants' Claims for Declaratory Judgment (Counts Fourteen through Seventeen) Seek Unique Relief and Are Not "Mirror Images" of Any of Defendants' Claims.**

Plaintiffs argue that Defendant' declaratory judgment claims are duplicative of Plaintiffs' claims and should be dismissed under the "mirror image" rule; however, Plaintiffs fail to demonstrate how Defendants claims are "mirror images" of Plaintiffs' claims. The cases Plaintiffs cite all deal with situations in which a claimant stated a claim (i.e. seeking a declaratory judgment finding that defendants were negligent) and the counter-claimant sought relief simply negating the claimant's allegations (i.e. seeking a declaratory judgment finding that defendants were not negligent). For example, in *Rail Scale v. Balanced Railscale Certification*, the court described a situation in which the "mirror image" rule is applicable:

> Defendants' declaratory judgment counterclaim concerning RSI's allegations of trademark and tradename infringement is a mirror-image of RSI's claim. RSI alleges that Defendants are infringing its "Rail Scale" mark and name. Dkt. No. 11 ¶ 88. Defendants' counterclaim seeks a declaratory judgment that "RSI has no enforceable rights with regard to the term 'RAIL SCALE," and that "none of the Defendants is infringing any protectable or enforceable trademark or trade name rights as to that term."

*Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 2:15-CV-02117-RSP, 2017 WL 319077, at *2 (E.D. Tex. Jan. 23, 2017). In that case, the plaintiff's claim was that the defendants had infringed on plaintiff's trademark, and defendants' request for declaratory judgment was essentially the exact flip-side of plaintiff's argument—that defendants did not infringe. In this case, the declaratory judgment counterclaims pled by Mr. Huang and CNEX are not simply the exact opposite claim as Plaintiffs' breach of contract and misappropriation of trade secrets claims and will not necessarily be resolved through the resolution of Plaintiffs' claims.

For example, Defendants' claim for a declaratory judgment that the Assignment Provision of the Employment Agreement between Mr. Huang and Futurewei is unenforceable

does not completely overlap any of Plaintiff's affirmative claims for relief.  Without Defendants'

request for declaratory judgment on the enforceability of Assignment Provision, the issue of the

enforceability of the provision might never be decided by this Court.  Plaintiffs oversimplify this

argument by stating that they "already assert a claim for breach of contract against Huang that

necessarily requires a determination as to whether his Agreement is enforceable."  Dkt. at 17.

However, resolving the question of whether the Assignment Provision specifically is enforceable

does not necessarily require a determination to whether other aspects of the Agreement are

enforceable.  Defendants' request for declaratory judgment regarding the enforceability of

Section 6(b) also does not invite the same questions that Plaintiffs' claims invite.  For example,

the Court or a jury could properly find that Mr. Huang did not breach his Employment

Agreement with Futurewei without ever answering the question of whether Section 6(b) of that

Agreement was enforceable in and of itself.

Similarly, Counts Sixteen and Seventeen regarding the ownership of all of CNEX's

intellectual property are discrete issues related to the misappropriation of trade secrets, but not

necessarily resolved through the misappropriation claims. Plaintiffs make no attempt to even

demonstrate in what way these two counts would be "mirror images" of any of their claims.  The

declaratory judgment claims that Defendants seek related to CNEX's intellectual property have

independent value separate from the misappropriation allegations.  When declaratory judgment

counterclaims seek "broader relief" than what a plaintiff is claiming, this District has found that

the declaratory judgment counterclaims are "not redundant to Plaintiffs' claims" and state a

claim upon which relief may be granted.  *Pittsburg SNF LLC v. PharMerica E., Inc*., No. 2:10-

CV-363-JRG-RSP, 2012 WL 4509753, at *2 (E.D. Tex. July 19, 2012), report and

recommendation adopted, No. 2:10-CV-363-JRG-RSP, 2012 WL 4508127 (E.D. Tex. Sept. 28, 2012).

**V.      Defendants' Allegations Regarding Huawei and Futurewei's Conspiratorial Conduct And Links to the Chinese Government Are Properly Pled and Are Linked to the Counts Alleged in the Counterclaims.**

While Plaintiffs are attempting to completely stonewall discovery into Defendants' allegations, the relevance of the conspiratorial acts of Huawei and Futurewei (and Plaintiffs' links to the Chinese Government) to the claims alleged was clearly laid out in the original Counterclaims and Answer.  Still, Defendants' amended counterclaims even more clearly plead the link between the bad acts alleged in the counterclaims and the various counts that Defendants have alleged against Huawei and Futurewei.  These include Defendants' allegations that Plaintiffs conspired with a number of co-conspirators—including Chinese state-controlled universities and other representatives of the Chinese Government—to misappropriate Defendants' confidential information and trade secrets and to improperly interfere with Defendants' prospective business relations and contractual relations.  *See, e.g.,* CNEX Amended Counterclaims ¶¶ 49-52, 54-73, 122-27, 147-52, 157-65.  Indeed, Huawei's critical role in China's efforts to surpass the United States as the world's predominant technological superpower by 2025 ***regardless of whose IP rights it tramples upon*** explains the motivation for Plaintiffs' underhanded actions towards Mr. Huang and CNEX.  *See id.* ¶¶ 1-4, 54-73.  Given the relevance of the conduct alleged to both the tort claims and the RICO enterprise and conspiracy allegations, these allegations are properly before the Court.[8]

---

[8] A Rule 12(b)(6) motion is not the proper procedural instrument for excluding the allegations in Defendants' counterclaims that Plaintiffs do not want to be presented to the jury.  This type of argument is better suited for the motion *in limine* stage, after Defendants have been afforded discovery into their allegations.  To make factual determinations about the relevance of allegations in Defendants' counterclaims at this stage would be premature.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Dismiss should be denied.  To the extent

leave to amend is required, Defendants respectfully request that they be allowed to amend their

Counterclaims as set forth in the concurrently filed First Amended Counterclaims and Answer.


DATED: November 21, 2018                    Respectfully submitted,

                                            FARELLA BRAUN + MARTEL LLP


                                            _____*/s/   Jeffrey M. Fisher*_____


                                            Stephanie P. Skaff (*admitted pro hac vice*)
                                            Jeffrey M. Fisher (*admitted pro hac vice*)
                                            235 Montgomery Street, 17th Floor
                                            San Francisco, California 94104
                                            Telephone:  (415) 954-4400
                                            Fax:  (415) 954-4480
                                            sskaff@fbm.com
                                            jfisher@fbm.com

                                            Attorneys for Defendants YIREN RONNIE
                                            HUANG and CNEX LABS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel who are deemed to have consented to

electronic service are being served with a copy of this document via the Court's CM/ECF system

per Local Rule CV-5(a)(3) on November 21, 2018.


_____ */s/   Jeffrey M. Fisher*_____
Jeffrey M. Fisher