# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., and FUTUREWEI TECHNOLOGIES, INC. <br><br> v. <br><br> YIREN RONNIE HUANG, and CNEX LABS, INC. | § § § § § § § § § § Civil Action No. 4:17-CV-00893 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants CNEX Labs, Inc.'s and Yiren "Ronnie" Huang's Second Motion to Compel (Dkt. #115) and Plaintiffs' Third Motion to Compel (Dkt. #116). The Court, having considered the motions and relevant pleadings, finds that Defendants' and Plaintiffs' separate motions to compel (Dkt. #115 and Dkt. #116, respectively) should be granted in part and denied in part.

## BACKGROUND

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") is a multinational networking and telecommunications equipment and services company headquartered in China. Plaintiff Futurewei Technologies, Inc. ("Futurewei") is a subsidiary of Huawei with several offices throughout the United States, including Plano, Texas. In December 2010, Futurewei offered Defendant Yiren "Ronnie" Huang ("Huang") employment as a Principal Engineer for its solid-state drive ("SSD") storage group, to assist in development and implementation of Advance Computing Network ("ACN"), non-volatile memory express ("NVMe"), and SSD technology. Huang accepted the offer in January 2011. The Employment Agreement contained provisions relating to non-disclosure, non-competition, and non-solicitation.

Based on Huang's job responsibilities, Plaintiffs contend that Huang had access to confidential, proprietary, and trade secret information. On May 31, 2013, Huang ended his employment with Futurewei. On June 3, 2013, Huang, along with others, incorporated CNEX Labs, Inc. ("CNEX"), a Delaware Corporation with its principal place of business in California. Plaintiffs allege, among other things, that Huang incorporated CNEX to compete directly with Plaintiffs; Huang is using Plaintiffs' confidential, proprietary, and trade secret information to develop and improve SSD technology and NVMe related technology for CNEX; and further that Huang and CNEX are improperly soliciting employees away from Plaintiffs. Additionally, Plaintiffs allege that Huang started to engage in this behavior informally prior to leaving Futurewei. Plaintiffs further contend that Huang and CNEX began filing patent applications in June 2013, using the information that Huang obtained through his employment with Futurewei.

Plaintiffs filed suit in the Eastern District of Texas on December 28, 2017, against Defendants seeking declaratory judgment and alleging a variety of causes of action including breach of contract, disclosure and misappropriation of confidential information and trade secrets, tortious interference with contract and prospective contracts, conspiracy claims, Racketeer Influence and Corrupt Organizations Act of 1970 ("RICO") claims, breach of fiduciary duty, and unfair competition under Lanham Act and Texas common and statuary law (Dkt. #1).

On September 26, 2018, the Court held a telephone conference on certain discovery issues. The Court ordered the parties to submit briefing regarding the discovery disputes. On October 1, 2018, Defendants filed a motion to compel (Dkt. #115). On October 9, 2018, Plaintiffs filed a response (Dkt. #123). On October 12, 2018, Defendants filed a reply (Dkt. #125). On October 1, 2018, Plaintiffs filed a motion to compel (Dkt. #116). On October 9, 2018, Defendants filed a response (Dkt. #122). On October 12, 2018, Plaintiffs filed a reply (Dkt. #126)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #129 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense . . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

ANALYSIS

Defendants' second motion to compel (Dkt. #115) is twofold. Defendants first allege that Plaintiffs have failed to fully and completely respond to their interrogatories nos. 2, 3, 6–9, and 15, which Defendants aver seek relevant facts concerning the claims and defenses at issue in the present action. Defendants next contend that Plaintiffs have failed to produce certain categories of documents that are relevant to Plaintiffs' claims and defenses.

Plaintiffs' third motion to compel (Dkt. #116) is, similarly, in two parts. Plaintiffs assert that Defendants have failed to (1) produce technical documents that are essential for Plaintiffs' experts to develop their opinions and (2) fully respond to their interrogatories nos. 12 and 21. The Court will address each argument in the manner circumscribed in the parties' briefings.

I. **Defendants' Motion to Compel**

A. **Information Concerning Defendants' alleged Misappropriation of Plaintiffs' Purported Trade Secrets**

Defendants claim that interrogatory nos. 7 and 8 seek highly relevant information about the factual bases for, and the evidence of, Plaintiffs' allegation that Defendants misappropriated Plaintiffs' purported trade secret, confidential, and/or propriety information. Interrogatory no. 7 asks Plaintiff to specify when and how Defendants improperly used any information Plaintiffs contend is/are their confidential propriety, and/or trade secret, together with all evidence relating thereto. And, interrogatory no. 8 asks Plaintiff to identify where any information that Plaintiffs contend is/are their confidential, proprietary, and trade secret appear in the patent and patent applications, together with all evidence relating thereto.

Plaintiffs responded to both interrogatories by identifying the Subject Patents and stating that their trade secrets appear in the claims and in certain parts of the specifications therein. Defendants argue that these responses are insufficiently vague because the Subject Patents and

5

patent applications contain over 600 claims and 250 pages of specifications.  Plaintiffs do not dispute that their answers decline to specifically identify the trade secrets that they claim have been misappropriated and further acknowledge that they are obligated to provide more definite responses.  Plaintiffs only argue that that they are not required to supplement their answers at this time under the Court's scheduling order (Dkt. #129).  The Court agrees.

It is common practice in the Eastern District of Texas, and particularly the Court, to allow parties to engage in discovery for a limited period before requiring plaintiffs to identify, with particularity, the trade secrets that they allege have been misappropriated.  Such is the case here.  On October 4, 2018, the Court held a telephonic hearing at the request of the parties to take up issues concerning the schedule governing the disposition of the present action.  After the hearing, the Court entered an amended scheduling order (Dkt. #129), which, among other things, designated January 14, 2019, as the date by which Plaintiffs must serve Defendants a list identifying asserted trade secrets.  The amended scheduling order further set the discovery deadline for February 28, 2019.

Interrogatories nos. 7 and 8 constructively, if not explicitly, ask or require Plaintiffs to identify their purported trade secrets.  Thus, compelling Plaintiffs to fully respond to the interrogatories circumvents the Court's scheduling order and effectively forces Plaintiffs to identify their trade secrets before the expiration of the Court-imposed deadline.  Further, interrogatories nos. 7 and 8 are contention interrogatories, which "asks a party to state what it contends, state whether it makes a specified contention, state all the facts upon which it bases a contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for a contention." *See InternetAd Sys., LLC v. ESPN, Inc.*, No. 3:03-cv-2787-D, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004).  That is, the

interrogatories ask that Plaintiffs disclose what they contend their trade secrets are and to further explain how and when these trade secrets were misappropriated, and by whom. Again, such requests are best answered once Plaintiffs have disclosed their trade secrets. Federal Rule of Civil Procedure 33(a)(2) anticipates this exact circumstance and recognizes that "the court may order that the interrogatory need not be answered until designated discovery is complete . . . ." *See* FED. R. CIV. P. 33(a)(2). The Court therefore finds that Defendants request that Plaintiffs be compelled to fully respond to interrogatories nos. 7 and 8, at this time, is denied.

As expressed in their briefings, Plaintiffs are acutely aware of their obligation to supplement their answers to interrogatories nos. 7 and 8 after they disclose what purported trade secrets were allegedly misappropriated. The Court will not allow trial by surprise, and Defendants will have the opportunity to request and receive the information made subject of this motion to compel.

**B. Information Concerning the Disclosure and Conception, and Secrecy of Plaintiffs' Purported Trade Secrets**

Defendants' objections to Plaintiffs' responses to interrogatory nos. 2, 3, and 6 as being insufficient are likewise premature, as they are positioned on Plaintiffs' disclosing their purported trade secrets. Interrogatory No. 2 asks Plaintiffs to "[i]dentify with particularity each article of Futurewei or Huawei Proprietary Information that was disclosed to or conceived by Mr. Huang or other employees of CNEX during their employment with Futurewei or Huawei, including a detailed description of each specified article of Futurewei or Huawei Proprietary Information . . . ." (Dkt. #115, Exhibit 2 at p. 2). In response, Plaintiff identified 259 documents which purportedly contained the information sought by Defendants. Defendants again argued that the documents "fail[] to identify even a single trade secret, distinguish between Plaintiffs' purported trade secret

7

and confidential and/or proprietary information, or identify any evidence relating to the disclosure of any such information to Mr. Huang or any other CNEX employee." (Dkt. #115, at p. 4)

Interrogatory no. 3 asks Plaintiffs to "[s]eparately for each article of Futurewei or Huawei Proprietary Information identified in response to Interrogatory Nos. 1 and/or 2, identify with particularity how each of such article has derived independent, actual or potential economic value by virtue of not being generally known to the public . . . ." (Dkt. #115, Exhibit 2 at p. 3). And, Interrogatory 6 asks Plaintiffs to "[s]eparately for each article of Futurewei or Huawer Proprietary Information identified in response to Interrogatory Nos. 1 and/or 2, specify with particularity when, how, and by whom each was disclosed or otherwise became known to Mr. Huang or any other person alleged to provided such information to CNEX . . . ." (Dkt. #115, Exhibit 2 at p. 11). For similar reasons as stated above, the Court finds it premature for Plaintiffs to fully respond to interrogatories nos. 2, 3, and 6 before they are required to disclose their trade secrets. The Court therefore finds Defendants request that Plaintiffs be compelled to, at this time, fully respond to interrogatories nos. 2, 3, and 6 is denied.

**C. Information Concerning Plaintiffs' Tortious Interference Claims**

Plaintiffs' second amended complaint alleges that Defendant CNEX (1) tortuously interfered with Plaintiffs contractual relations and (2) tortuously interfered with Plaintiffs' prospective business relations. Defendants interrogatory no. 9 responsively asks Plaintiffs to "[i]dentify every sale or service agreement that you have lost as a result of any alleged conduct of Mr. Huang and/or CNEX . . . ." (Dkt. #115, Exhibit 2 at p. 17). On August 14, 2018, the Court ordered Plaintiffs to produce information relating to (1) any past, current, or prospective contractual relationships with which Plaintiffs contend that CNEX has interfered; and (2) any past, current, or prospective business relationship with which Plaintiffs contend that CNEX has

interfered. Defendants argue that Plaintiffs, nevertheless, responded to interrogatory no. 9 with boilerplate objections followed by a plege to supplement as appropriate. Plaintiffs concede that they have not identified any specific existing sale or service agreement that was lost as a result of Defendants' activities. Defendants therefore contend that Plaintiffs should be barred from presenting any evidence at trial concerning their tortious interference with prospective business relations claim or any past, current, or prospective contractual relationship with which Plaintiffs contend that CNEX has interfered, or, alternatively, be ordered to supplement their response stating that they cannot identify any sale of service agreement that they have lost because of any of Defendants alleged conduct.

As pointed out by Plaintiffs, interrogatory no. 9 asks about every sale or service agreement—contract—that Plaintiffs alleged they have lost as a result of Defendants' conduct. The interrogatory, however, does not inquire about Plaintiffs' claim that Defendant CNEX tortuously interfered with their prospective business relationships. The Court therefore finds that Defendants' request that Plaintiff be barred from presenting any evidence at trial concerning their tortious interference with prospective business relations claim is misplaced and denied.[1]

Plaintiffs further argue that interrogatory no. 9 is limited to *existing* sales and service agreements. This interpretation is unreasonably narrow and contrary to the interrogatory's explicit language, which requests that Plaintiffs identify every sale or service agreement that they have lost—which include past, present, and future. The Court does not agree that Plaintiffs should be barred from presenting any evidence at trial concerning any past, current, or prospective sale or service agreement that Plaintiffs contend have been lost; however, it is appropriate and necessary

---

[1] Defendants interrogatory no. 10 addresses Plaintiffs' tortious interference with prospective business relations claim. *See* (Dkt. #115, Exhibit 2 at p. 17). This is interrogatory was not made subject of Defendants current motion to compel.

9

that Plaintiffs fully and completely respond to interrogatory no. 9. The Court therefore finds that to the extent that Plaintiffs have not fully and completely responded to Defendants' interrogatory no. 9, they must do so within fourteen (14) days of this Order.

**D. Information Relevant to Plaintiffs' damages**

Interrogatory no 15 asks Plaintiffs to "[i]dentify any past, present, or planned products of Futurewei or Huawei that have practiced, are practicing, or will practice any claim of the Subject Patents." (Dkt. #115, Exhibit 2 at p. 27). Defendants argue that this information is necessary to assess the economic value of Plaintiffs' trade secrets and calculate their potential damages. Plaintiffs argue that this is another attempt to force Plaintiffs to disclose their trade secrets before the designated deadline. Plaintiffs assert that the information sought is irrelevant because patent infringement is neither a claim nor a defense raised by any party in the present action. The Court agrees.

As Defendants have acknowledged, the Subject Patents that Plaintiffs contend evidence the misappropriation of Plaintiffs' trade secrets contain over 600 claims and 250 pages of specifications. Plaintiffs have not argued that each of the claims in the Subject Patents contain or are being claimed as Plaintiffs' trade secrets. Thus, requiring Plaintiff to identify any and every past, present, or planned product that have or will practice any claim of the Subject Patents is overly broad and unnecessary. An interrogatory requesting information about past, current, and future products that have or will practice claims of the Subject Patent that contain Plaintiffs' trade secrets is best reserved for after Plaintiffs disclose their purported trade secrets. The Court therefore finds that Defendants' request that Plaintiffs be compelled to, at this time, fully respond to interrogatory no. 15 is denied. The Court now turns to Defendants' document production requests.

### E. Defendants' Requests for Production

Defendants assert that Plaintiffs have failed to produce documents concerning their (1) breach of contract and breach of fiduciary duty claims; (2) tortious interference claims; (3) misappropriation of trade secrets, Computer fraud and Abuse Act ("CFAA"), and conversion claims; (4) racketeer influenced and corrupt organizations act (RICO), conspiracy, unjust enrichment, and unfair competition claims; (5) damages and financial information; and, lastly, (6) Defendants state that Plaintiffs should be require to produce a complete map of their document and data systems.

#### i. Breach of Contract and Breach of Fiduciary Duty Claims

Defendants claim that Plaintiffs have not produced all documents relating to the intellectual property Mr. Huang offered to sell to Futurewei during the hiring process, which he subsequently excluded from the scope of his employment agreement. Plaintiffs do not specifically respond to this allegation and state only that they have produced Mr. Huang's employment agreement with Futurewei as well as any materials submitted by Mr. Huang as part of the employment application process. It is unclear to the Court whether the materials produced included documents relating to the intellectual property Mr. Huang offered to sell to Futurewei during his interview process. The Court finds that documents related to this information are relevant, and therefore to the extent that such documents have not already been produced, Plaintiffs are ordered to produce to Defendants all relevant documents relating to the intellectual property that Mr. Huang offered to sell Futurewei during the interview process within fourteen (14) days of this Order.

As to Defendants' more broad request that Plaintiffs produce all relevant documents related to their breach of fiduciary duty and breach of contract claims, Plaintiffs have asserted that "[t]o the best of Plaintiffs' information, knowledge, and belief, they have produced all reasonably

11

available, non-priviledge documents . . . ." (Dkt. #123, at p. 12). The Court therefore finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order.

  **ii.**  **Tortious Interference Claims**

Defendants assert that Plaintiffs have failed to produce documents concerning their tortious interference with prospective business relations claims and documents concerning their tortious interference with contractual relations claims. Plaintiffs claim that "[t]o the best of Plaintiffs' information, knowledge, and belief, there are no additional, non-priviledge documents in Plaintiffs' possession . . . ." (Dkt. #123, at p. 12). The Court therefore finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order.

  **iii.**  **Misappropriation of Trade Secrets, Computer Fraud and Abuse Act ("CFAA"), and Conversion Claims**

Defendants first claim that Plaintiffs have not produced complete discovery concerning the alleged misappropriation of their trade secrets. Defendants specifically argue that Plaintiffs have not produced (1) all documents that were allegedly copied by Yong Chen prior to his last day at Futurewei, or any internal communications concerning this alleged conduct; (2) any internal communications concerning this alleged conduct, including any communications discovery the alleged copying or confirming the deletion of those documents; (3) all documents and communications concerning CNEX, including any information related to Plaintiffs' competition with CNEX; and (4) all documents relating to the patents, patent applications, and any other public disclosure of Plaintiffs' purported trade secrets.

As to the first category, Plaintiffs assert that they have produced the logs that list the documents that Defendant Yong Chen copied on his last day at Futurewei—however, not the actual

documents. The Court finds that these documents are relevant and therefore to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order.

Defendants further argue that Plaintiffs have not and should be required to produce all relevant documents concerning their CFAA and conversion claims including: (1) documents concerning Plaintiffs data control methods or all employees that allegedly exceeded their authorized access to Plaintiffs' computers; (2) all logs reflecting when Defendants or any of Defendants' employees accessed or downloaded any of Plaintiffs' files and on which computers these files exist, or confirm that no such documents exist; and (3) documents supporting Plaintiffs' allegation that Defendants assumed dominion or control over documents containing their purported confidential, proprietary, or trade secret information inconsistent with Plaintiffs' rights to those documents. Plaintiffs contend that Defendants' requests are overbroad and specifically object to the production "of all logs reflecting when Defendants or any of Defendants' employees accessed or downloaded any of Plaintiffs' files and on which computers these files exist . . . ." (Dkt. #115, at p. 10). Plaintiffs reason that the employees who left were all computer engineers who had daily access to Plaintiffs files and that an exhaustive production of logs reflecting such daily and routine access would be irrelevant. The Court agrees; Defendants request as to such logs is overly broad, unduly burdensome, and likely to produce an excessive amount of irrelevant information. The Court therefore finds that Defendants' request in this regard is denied, and Defendants are directed to narrow their request, accordingly.

As to Defendants' other above-mentioned requests, Plaintiffs assert that "[t]o the best of their information, knowledge, and belief Plaintiffs produced all reasonably available, non-privileged documents related to their misappropriation, CFAA, RICO, and conversion claims."

(Dkt. #123, at p. 12). The Court finds that these documents are relevant and therefore to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order.

### iv. Racketeer Influenced and Corrupt Organizations Act (RICO), Conspiracy, Unjust Enrichment, and Unfair Competition Claims

Defendants claim that Plaintiffs have failed to produce all relevant documents concerning their Racketeer Influenced and Corrupt Organizations Act (RICO), conspiracy, unjust enrichment, and unfair competition claims. Plaintiff respond that "[t]o the best best of their infomraiton, knowledge, and belief, Plaintiffs produced all reasonably available, non-priviledged documents related to their misappropriation, CFAA, RICO, and conversion claims." (Dkt. #123, at p. 12). Plaintiffs, however, fail to respond to Defendants allegations of missing documents concerning Plaintiffs' unjust enrichment and unfair competition claims. The Court therefore finds that to the extent that Plaintiffs have not produced such information, they must do so or amend their responses to certify that no such documents exists within fourteen (14) days of this Order.

### v. Damages and Financial Information

Defendants claim that Plaintiffs have failed to produce all relevant documents concerning their damages and financial information. Defendants specifically contend that Plaintiffs have not produced all relevant documents reflecting any roadmaps or financial statement relating to products incorporating their purported trade secrets and related financial information. Plaintiffs respond that they have produced the documents that Defendants request concerning their damages and financial information but are unsure as to what Defendants contemplate by "roadmaps." The Court agrees that Defendants are not clear as to what they are seeking with their financial "roadmaps" request. The Court therefore finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order. The Court further finds

that Defendants are to supplement their request and specifically identify what they seek concerning financial "roadmaps."

### vi. Complete Data Map of Plaintiffs' Document and Data Systems

Defendants request that the Court order Plaintiffs to produce:

> a complete data map of Plaintiffs' document and data systems, including a brief description of: each ESI source available to each of Plaintiffs' custodians; (2) for Plaintiffs' custodians, the ESI sources identified in response to #1 that were a) preserved, and b) collected for e-discovery; (3) for each ESI source that was preserved or collected in response to #2, the data of preservation, and the time frame covered by the ESI collection; (4) for each ESI source not preserved or preserved but not collected, a brief description why the source was not preserved, or was preserved but not collected; (5) when each system was implemented, upgraded and/or decommissioned; and (6) the physical and virtual environment hosting the data sources identified above.

(Dkt. #115, at pp. 16–17). The Court has previously considered this request and found that, on this specific matter, Plaintiffs have complied with their production obligations and such a request from Defendants exceed those obligations. *See* (Dkt. #123, Exhibit 4 at pp. 3–4). The Court therefore finds that this request is denied. The Court now turns to Plaintiffs' motion to compel.

## II. Plaintiffs' Third Motion to Compel

Plaintiffs' third motion to compel alleges that Defendants have failed to produce pertinent documents and to fully respond to their interrogatories nos. 12 and 21. Plaintiffs specifically request the production of the following five categories of documents: (1) detailed technical documents, such as specifications, schematics, and source code; (2) complete employment files for all of the employees who left Huawei or Futurewei for CNEX; (3) documents related to Defendants' solicitation and recruitment of Plaintiffs' employees; (4) all of the agreements that Defendants have made with third parties to research, develop, test, market, license, and sell SSD technology, CAN technology, PCIE SSD architecture, CAN architecture and chip design, or

NVMe related technology; and (5) external emails between Huang and CNEX regarding or referencing the assignment or license of any of the patent applications at issue in this case.

**A. Technical Documents**

Plaintiffs claim that Defendants' document production is missing important, key technical documents that are necessary for Plaintiffs' experts to draft their reports. Plaintiffs specifically contend that the missing technical documents include detailed engineering specifications, testing plans, source code design documents, source code flow charts, hardware design documents and schematics, hardware and software bug status, engineering personnel responsibility designations, emails, correspondence and documents exchanged between Defendants and potential customers, client product delivery details, and production schedules.

In response, Defendants agree to produce all of CNEX's patent applications and Defendants' submissions to NVM Express, Inc. Defendants further agreed to produce technical documents including architectural specifications, engineering planning and development documents and schematics sufficient to show the development of the CNEX chip Defendants' believe to be the subject of Plaintiffs' allegations, including documents from the inception of the company. Lastly, Defendants state that the parties have already agreed to produce emails on a rolling basis. The Court therefore finds that to the extent that Defendants have not produced such information, they must do so within fourteen (14) days of this Order.

Plaintiffs further seek the production of Mr. Huang's engineering lab note books and reject Defendants' contention that the PowerPoint presentations provided to Plaintiffs are equivalent to Mr. Huang's lab notebooks. Defendants, however, assert that Mr. Huang does not maintain separate lab note books and "cannot produce that which does not exists." (Dkt. #122, at p. 4). The

Court therefore directs Defendants to amend their response to certify that no such note books exists within fourteen (14) days of this Order.

Plaintiffs lastly request the production of versions of Defendants firmware and software source code and HDL source code dating back to the first code written for the subject matter of this litigation. Plaintiffs ensure that the sensitive source code information will be safeguarded under the terms of the Agreed Protective Order (Dkt. #118). Defendants argue that Plaintiffs production request is overly broad, and that Plaintiffs have failed follow the proper procedure in requesting the inspection of their source code. Defendants do not offer a basis for their overbroad objection and only quote a section of the Agreed Protective Order that prohibits Plaintiffs from requesting a hard-copy production of an unlimited number of pages of source code. (Dkt. #118, at p. 10). The Court finds that the earliest versions of Defendant CNEX's source code are relevant, as they have the potential to show resemblance to Plaintiffs' code and ultimately trade secrets. The Court notes, however, that to the extent that Plaintiffs are requesting a whole-scale hardcopy production of Defendants source code information, such a request is inappropriate and contrary to the expressed, agreed terms of the governing protective order. The Court finds that the Defendants are directed to identify source code that is relevant to the claims and defenses of the parties—including their firmware and software source code and HDL source code dating back to the first code written for the subject matter of this litigation—and produce the source code for inspection. This shall be done within fourteen (14) days of this Order. Once the source code is identified, the parties are directed to abide by the terms the Agreed Protective Order regarding inspection of the source code, requesting paper copies of the source code, and so forth as detailed in the protective order.

**B. Employees' Files**

Plaintiffs allege that Defendants have not produced complete employment files for all of the employees who left Huawei or Futurewei for CNEX. Plaintiff specifically claims that Defendants have only produced employment agreements for some of the employees—but not others—and have failed to produce other documents that might exist, such as employment applications. Defendants respond that they have produced the documents that Plaintiffs requested during the parties' meet and confer talks, which did not mention the above described topic. Defendants nevertheless agree to produce the entire employee files for the employee who left Huawei or Futurewei and joined CNEX. The Court therefore finds that to the extent that Defendants have not produced such information, they must do so within fourteen (14) days of this Order.

**C. Documents Related to Defendants' Purported Solicitation and Recruitment of Plaintiffs' Employees**

Plaintiffs claim that Defendants have failed to produce all documents related to Defendants' purported solicitation and recruitment of Plaintiffs' employees. The specific issue here seemingly centers on potential documents possessed by Defendant CNEX's subsidiary, Hangzhou ARMU Technologies Limited, that is in the People's Republic of China. On August 28, 2018, Defendants stated that "[a]fter performing a reasonable search of Defendants' documents . . . they have no other documents related to the alleged solicitation and recruitment of Plaintiffs' former employees." Defendants' further asserted that they "are working to collect document from employees of CNEX's subsidiary Hangzhou ARMU Technologies Limited, that is located in the People's Republic of China, but must comply with export restrictions under Chinese law." At the time of filing their response to Plaintiffs' current motion to compel, Defendants stated that "[t]he documents are currently being redacted as required by the export restricts under Chinese law and

will be produced by the October 24 production deadline." As that production deadline has passed, the Court finds that the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order.

**D. Documents Relating to Agreements Huang and/or CNEX have Entered into with Third Parties Regarding the Technologies at Issue in this Dispute**

Plaintiffs claim that Defendants have failed to produce all of the agreements they have made with third parties to research, develop, test, market, license, and sell SSD technology, CAN technology, PCIE SSD architecture and chip design, or NVMe related technology. Defendants deny the allegations and state that "[a]s an act of good faith and to eliminate any possible argument of not providing relevant information, Defendants agree to produce documents reflecting what information was disclosed to such third parties." (Dkt. #122, at p. 12). The Court therefore finds that to the extent that Plaintiffs have not produced such information, they must do so within fourteen (14) days of this Order.

Relatedly, Plaintiffs contend that Defendants have failed to fully respond to interrogatory no. 12, which asks Defendants to "[i]dentify and describe each and every agreement Huang and/or CNEX have entered into with third parties to research, develop, test, market, license, and sell SSD technology, CAN technology, PCIE SSD architecture and chip design, or NVMe related technology, and any product, method, apparatus or system that practices or otherwise incorporates any of the foregoing technologies." (Dkt. #122, Exhibit 4 at p. 58). And, interrogatory no. 21, which asks Defendants to "[i]dentify and describe any partnership, joint venture or any cooperation agreement that CNEX, Huang, or others employed by CNEX have negotiated, explored, proposed, or entered into with third parties for the development of SSD technology, CAN technology, PCIE SSD architecture, CAN architecture and chip design, or NVMe related technology, regardless of whether it involves direct investment in CNEX or its parent companies, subsidiaries, or affiliates."

19

(Dkt. #122, Exhibit 5 at p. 8). For the reasons discussed above, the Court finds that to the extent that Defendants have not fully responded to interrogatory no. 12 and 21, they must supplement their response within fourteen (14) days of this Order.

**E. Documents Concerning Communications between Huang and CNEX Regarding or Referencing the Assignment or License of any of the Patent Applications**

Plaintiffs claim that Defendants have not produced internal communications between Huang and other CNEX personnel about potential licensing of the technologies at issue in this case. Defendants argue that Plaintiffs have not previously requested such information. Defendants nevertheless "agree to perform a reasonable search for any non-privileged, responsive documents . . . and produce those communications to the extent that they exist." (Dkt. #122, at p. 12). The Court therefore finds that to the extent that Defendants have not produced such information, they must do so within fourteen (14) days of this Order.

## CONCLUSION

It is therefore **ORDERED** that Defendants' and Plaintiffs' separate motions to compel (Dkt. # and Dkt. #, respectively) are hereby **GRANTED in part** and **DENIED in part** as specified herein.

**SIGNED this 4th day of December, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE