IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO., LTD.**, a Chinese corporation, and **FUTUREWEI TECHNOLOGIES, INC.**, a Texas corporation,<br><br>   Plaintiffs,<br><br> v.<br><br>**YIREN RONNIE HUANG**, an individual, and **CNEX LABS, INC.**, a Delaware Corporation,<br><br>   Defendants. | No. 4:17-cv-893 ALM<br><br>Jury Trial Demanded<br><br>**FILED UNDER SEAL** |

**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANTS' FOURTH MOTION TO COMPEL**

Plaintiffs Huawei Technologies Co., Ltd. ("Huawei") and Futurewei Technologies, Inc. ("Futurewei") submit this Sur-reply in Further Opposition to Defendants CNEX Labs, Inc.'s ("CNEX") and Yiren "Ronnie" Huang's ("Huang") Fourth Motion to Compel. Plaintiffs respectfully request that the Court deny Defendants' request for Plaintiffs source code.

After being confronted with evidence that the claims in their Motion to Compel were baseless, Defendants performed an abrupt about-face and emphasized a *new* theory in their Reply.[1] But a reply brief is not a proper vehicle for newly developed arguments only raised in perfunctory fashion before, and for that reason alone, Defendants latest new tack to access Plaintiffs' source code should not be considered. *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 278968, at *2 (E.D. Tex. Jan. 22, 2016) (arguments raised for the first time in a reply brief are generally waived). But even on the merits, Defendants' new justification for their demand—for "all versions of … all source code"—has no more merit than the theory advanced in their Motion. As made clear in their Reply, Defendants demand access to Plaintiffs' source code simply because Defendants were ordered to produce their own source code, and to further Defendants' tit-for-tat litigation strategy. But the fact that Defendants' source code is relevant and discoverable does not make Plaintiffs' source code relevant or discoverable. Each side's request for source code should rise or fall on their own merits. Defendants' arguments regarding Xiamen University are an additional attempt to justify their harassment with irrelevant allegations that the Court should reject out of hand. The Court should deny Defendants' Fourth Motion to Compel.

I. **Defendants seem to abandon their initial justification for inspecting Plaintiffs' source code.**

Defendants originally argued that Defendants had shared purported trade secret information with Plaintiffs during a series of meetings in 2015 and 2016, under the guise of

---

[1] This Court did not contemplate a Reply brief, but Defendants filed the Reply without leave, thereby necessitating Plaintiffs filing this Sur-reply after obtaining leave from the Court. Transcript of December 17, 2018 Hearing at 73:18 - 75:20.

Huawei becoming a customer of CNEX.[2] (Dkt. 143, pp. 2-3.) Defendants claimed that their purported trade secret information was disclosed during those meetings and had been incorporated into the source code for three of Plaintiffs' memory controllers ("the Controllers"), Defendants assert that they needed to inspect Plaintiffs' source code for the Controllers[3] to determine whether Plaintiffs used the information disclosed in those meetings. The only evidence that Defendants offered in support of their claim that trade secret information had been disclosed to Plaintiffs during those meetings ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 143, p. 4.)

Defendants did not share trade secret information with Plaintiffs in 2015 or 2016, and certainly not trade secret information that would implicate the source code for the Controllers. Instead, as set forth in the declarations of the individuals who attended those meetings, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 148, pp. 6-8.) In fact, and as shown in Plaintiffs' Response and the supporting declarations, even the documents relied upon by Defendants in their Motion showed Plaintiffs' engineers discussing the fact that the concepts relayed by CNEX were high-level concepts of general technologies that were already well-known to Plaintiffs, and were being used or developed by other companies already. (*Id.*)

---

[2] As explained in Plaintiff's Opposition, the theory advanced in Defendants' Motion differed from the original rationale Defendants presented to the Court in their December 3rd letter. (*See* Dkt. 147, p. 5.) In short, Defendants now resort to a ***third*** theory for why they should be given access to Plaintiffs' source code.

[3] Defendants' Motion asked for all source code for the 1812, 1813, and 1822 controllers. (Dkt. 144, p. 4.) Plaintiffs' Response pointed out that there is no 1813 controller—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 148, p. 1, n. 1.) Defendants' Reply makes much of this fact; arguing—without explanation—that it is more proof as to the relevance of Plaintiffs' source code. (Dkt. 149, p. 1.) But Defendants' insistence on source code for a controller that does not exist is further evidence that Defendants do not know what they are asking for in their scattershot demand.

In their Reply, Defendants do not address the declarations attached to Plaintiffs' Response or offer any further explanation as to how the "evidence" attached to Defendants' Motion to Compel supports their claims. Defendants' Reply *still* does not explain how lengthy exhibits attached to Defendants' Motion support the claim that Plaintiffs misappropriated CNEX's purported trade secrets. And despite Plaintiffs pointing out that Defendants did not identify what portion of those lengthy exhibits Defendants were relying upon, Defendants instead simply cite to the exhibits in their entirety again. (Dkt. 149, p. 2.) Defendants' silence appears to concede that there is no credible evidence to support their claim that Plaintiffs misappropriated their so-called trade secret information through meetings in 2015 and 2016. Not only do the documents that Defendants rely upon for that claim not state as much, but Defendants offer no other evidence in support of that claim in their Reply. Thus, the Court should deny Defendants' Motion.

**II.     Defendants' new argument as to the relevancy of Plaintiffs' source code also fails.**

Rather than using their Reply to address the evidence or arguments in Plaintiffs' Response, Defendants instead appears to shift gears and focus on their claim that their purported trade secrets were misappropriated through a *different and new* avenue. Specifically, Defendants claim that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Dkt. 149, p. 1.) But yet again, Defendants offer no evidence for this allegation other than pointing to their own unsubstantiated pleadings. *Id.* And even those pleadings do not contain the allegations that Defendants now insist they do. Despite claiming in the Reply that they *do* allege that Plaintiffs accessed CNEX's source code, Defendants *never* allege that in their Counterclaims. (*Id.*) This fact alone would seem to doom Defendants' ever-shifting argument. To be sure, the portion of the Counterclaims in which Defendants now claim they alleged that Plaintiffs accessed CNEX's source code actually says no such thing; rather, it alleges that Huawei attempted to obtain a "part number" and pricing information from Xiamen University. (Dkt. 132, pp. 19-21.) Defendants

3

do not explain—nor could they—how a "part number" and pricing information could possibly be reflected in Plaintiffs' source code for the Controllers. There is no allegation in the Counterclaims, and certainly not in the portion cited by Defendants' Reply, claiming that Plaintiffs accessed CNEX's source code through Xiamen University.

Notably, Plaintiffs already produced their relevant, non-privileged communications with representatives of Xiamen University, and Defendants had those communications *before* filing their Reply brief. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Yet the Reply does not reference a *single document* substantiating Defendants' allegations that Plaintiffs did anything improper with Xiamen University or any other third party, much less that Plaintiffs attempted to misappropriate CNEX's source code. Defendants do not point to any support for the claim Plaintiffs obtained CNEX's SDK technology, that the SDK technology contains CNEX's source code, or that the SDK technology has anything to do with the Controllers. Defendants do not cite to any documents substantiating their claims about alleged misappropriation of CNEX source code or trade secrets with Xiamen University because none exists. Yet again, Defendants are seeking access to Plaintiffs' most sensitive and closely-guarded trade secret information based on nothing more than unsubstantiated allegations that Defendants are unable to back up with any credible evidence, despite the millions of pages of documents produced so far in this case. This Court should not accept Defendants' bald assertions at face value. For these reasons as well, Plaintiffs respectfully request that the Court deny Defendants' Motion.

**III. Defendants ask the Court to ignore the burden their request would put on Plaintiffs.**

Defendants' Reply argues that any burden on Plaintiffs in producing source code should not impact this Court's analysis of whether Plaintiffs' source code should be produced. However, this misses the point. When information sought in discovery appears to be of nominal relevance to the claims and defenses in a lawsuit, this Court can and should take into account the

4

burden of producing such information, particularly when the request appears to be predicated on a copy-cat approach to litigation. *See Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 579 (N.D. Tex. 2016) (denying discovery request as overbroad and noting that courts should take into account "whether the burden or expense of the proposed discovery outweighs its likely benefit."). The 2015 Amendments to Federal Rule of Civil Procedure codified that requirement when the rule was changed to state that discovery must be "relevant to any party's claim or defense ***and*** proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1) (emphasis added).

Plaintiffs submitted declarations setting forth the undue burden in responding to Defendants' demand for "all versions of … all source code" for three highly complex memory controllers. (Dkt. 147, pp. 12-13.) Those declarations confirm what Plaintiffs' counsel consistently explained in written correspondence, telephonic meet-and-confers, and the December 10th telephonic hearing: Defendants' request is unreasonably expansive and onerous. Yet even at this late date, Defendants demand all of the Controller code. The Court should not endorse Defendants' all-or-nothing demand when Defendants should know that it is not relevant to any claim or defense and, even if it were, is too onerous (perhaps by design) to be undertaken without Herculean effort by Plaintiffs and otherwise disproportionate to its probative value.

## IV.  Conclusion

Plaintiffs respectfully request that the Court deny Defendants' Fourth Motion to Compel.

5

6

| | |
|---|---|
| Dated: December 26, 2018 | RESPECTFULLY SUBMITTED |
| | By: /s/ Clyde M. Siebman |

| | |
|---|---|
| **SIEBMAN, FORREST, BURG & SMITH, LLP** | **SEYFARTH SHAW LLP** |
| | **Michael D. Wexler** (*Pro Hac Vice*) |
| **Clyde M. Siebman** | **Lead Attorney** |
| Texas Bar No. 18341600 | Illinois Bar No. 6207847 |
| clydesiebman@siebman.com | mwexler@seyfarth.com |
| **Elizabeth S. Forrest** | **Andrew S. Boutros** (*Pro Hac Vice*) |
| Texas Bar No. 24086207 | Illinois Bar Number: 6322276 |
| elizabethforrest@siebman.com | ABoutros@seyfarth.com |
| Federal Courthouse Square | 233 South Wacker Drive, Suite 8000 |
| 300 N. Travis Street | Chicago, Illinois 60606 |
| Sherman, Texas 75090 | Telephone 312-460-5536 |
| (903) 870-0070 (office) | Facsimile 312-460-753 |
| (903) 819-3076 (cell) | |
| | **Jesse M. Coleman** |
| | Texas Bar No. 24072044 |
| | jmcoleman@seyfarth.com |
| | 700 Milam Street, Suite 1400 |
| | Houston, Texas 77002-2812 |
| | Telephone: (713) 225-2300 |
| | Telecopier: (713) 225-2340 |
| | |
| | ***Attorneys for Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc***. |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 26, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By: */s/ Clyde M. Siebman*

*Counsel for Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc*.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This Motion is filed under seal pursuant to Local Rule CV-5(a)(7) and the Protective Order entered in this case on October 2, 2018 (Dkt. #118). The Motion refers to and incorporates documents identified as "Restricted Information" pursuant to the Protective Order. (Dkt. #118).

*/s/ Clyde M. Siebman*
Clyde M. Siebman