# Exhibit D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YIREN HUANG, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FUTUREWEI TECHNOLOGIES, INC., et al.,<br><br>　　　　Defendants. | Case No. 18-cv-00534-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE; TRANSFERRING CASE TO THE EASTERN DISTRICT OF TEXAS**<br><br>[Re: ECF 84] |

　　　　In this declaratory relief action, Defendants Futurewei Technologies, Inc. ("Futurewei") and Huawei Technologies Co., Ltd. ("Huawei") (collectively, "Defendants") seek transfer to the Eastern District of Texas where a similar suit was simultaneously filed. Defendants base this motion on a contractual forum selection clause. Plaintiffs Yiren Huang ("Huang") and CNEX Labs, Inc. ("CNEX") (collectively, "Plaintiffs") filed this action against Defendants, requesting declaratory relief on various grounds and asserting violation of California Business and Professions Code §§ 17200, *et seq.* ("UCL"). *See generally* First Amended Complaint ("FAC"), ECF 21. Defendants subsequently[1] filed a Motion to Dismiss, or in the alternative to Transfer, or to Stay, Plaintiffs' First Amended Complaint. *See* Motion to Dismiss ("MTD"), ECF 84. The Court previously stayed discovery in this case until ruling on the present motion. *See* ECF 78.

　　　　The Court heard oral argument on Defendants' Motion to Dismiss, or in the alternative to Transfer, or to Stay, on September 12, 2018. Having considered the oral argument, briefing, and relevant law, and for the reasons set forth below, Defendants' Motion to Transfer venue is

---

[1] Defendant Futurewei filed an earlier Motion to Dismiss, *see* ECF 47, that was terminated by the Court without prejudice, *see* ECF 78. Because Plaintiffs amended their complaint to add Defendant Huawei, the Court granted Defendants leave to file a joint Motion to Dismiss. ECF 78.

GRANTED. This action shall be transferred to the United States District Court for the Eastern District of Texas. Accordingly, the Court does not reach the parties' motion to dismiss or motion to stay arguments.

## I. BACKGROUND

Futurewei is a subsidiary of Huawei, which is a multinational company headquartered in Shenzen, China. FAC ¶¶ 9–10 ("FAC"). Huang is a California resident residing in Santa Clara County, and CNEX is a Delaware corporation with its principal place of business in San Jose, California. *Id.* ¶¶ 7–8. Huang was previously employed at Futurewei in its Santa Clara office. *Id.* ¶¶ 17–18. When he began working at Futurewei in early 2011, Huang signed an Employment, Confidentiality, Proprietary, Information and Inventions Agreement ("Employment Agreement") which contains a forum selection clause. *Id.* ¶¶ 17, 52. The forum selection clause provides that Huang "agree[s] to the exclusive and personal jurisdiction and venue of any court on [sic] Collin County, Texas."[2] *Id.* ¶ 35. Around May 31, 2013, Mr. Huang's employment with Futurewei ended. *Id.* ¶ 37. Around June 3, 2013, Huang began working at CNEX. *Id.* ¶ 38. According to the FAC, Huang co-founded CNEX, "which is chartered to deliver innovative system solutions in the form of semiconductors and systems." *Id.* ¶ 14. Thereafter, Huang and Futurewei began disputing whether Huang was required to assign certain patents to Huawei. *Id.* ¶ 39–41.

On December 28, 2017, Futurewei and Huawei filed a complaint against Huang and CNEX in the United States District Court for the Eastern District of Texas, asserting 22 causes of action ("Texas Action"). FAC ¶ 45. On the same day, Huang and CNEX filed an action against Futurewei in the Superior Court of the State of California, County of Santa Clara. Notice of Removal ¶ 1, ECF 1. Futurewei removed this action to this District on January 24, 2018, on the basis of diversity. *Id.* On February 14, 2018, Plaintiffs filed their FAC and added Huawei as a defendant. FAC. This motion followed on May 30, 2018. ECF 84.

Meanwhile, the parallel Texas Action has been running. On April 25, 2018, the Eastern District of Texas court found "a valid and enforceable forum-selection clause, selecting the

---

[2] Collin County, Texas, is located within the Eastern District of Texas.

2

Eastern District of Texas as the agreed to forum and venue for disputes arising out of Huang's Employment Agreement," and thus maintained the action in Texas. *See Huawei Techs. Co. v. Yiren Huang*, 2018 WL 1964180, at *9 (E.D. Tex. Apr. 25, 2018). Huang and CNEX filed a Motion for Certification for Interlocutory Appeal of the venue issue, which was denied. *See* Emergency Mot. for Certification for Interlocutory Appeal, E.D. Tex. No. 4:17-cv-00893-ALM, Dkt. No. 60; Memorandum Opinion and Order, E.D. Tex. No. 4:17-cv-00893-ALM, Dkt. No. 66. Huang and CNEX then filed a Petition for Writ of Mandamus to the Fifth Circuit on the venue issue, which was also denied. *See In re Yiren Ronnie Huang and CNEX Labs, Inc.*, No. 18-40555 (5th Cir. July 5, 2018).

## II. LEGAL STANDARD

### A. Traditional § 1404(a) Transfer Analysis

A district court may, in the interest of justice, transfer any civil action "to any other district or division where it might have been brought" for the convenience of the parties and of the witnesses. 28 U.S.C. § 1404(a). To determine if a transfer of venue is appropriate under § 1404(a), courts apply a two-part test. *Ctr. For Biological Diversity v. McCarthy*, No. 14-cv-5138, 2015 WL 1535594, at *1 (N.D. Cal. Apr. 6, 2015) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985)). First, courts consider whether the case could have been brought in the proposed transferee district. *Id.* Second, if the case could have been brought in the transferee district, courts determine if the case should be moved to that forum "for convenience of parties and witnesses [and] in the interest of justice." *McCarthy*, 2015 WL 1535594, at *1; 28 U.S.C. § 1404(a).

In determining the interest of justice under the traditional § 1404(a) analysis, courts consider a wide variety of factors. *Dillon v. Murphy & Hourihane, LLP*, No. 14- CV-01908, 2014 WL 5409040, at *13 (N.D. Cal. Oct. 22, 2014). In particular, the Ninth Circuit explains that courts may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the

availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).

"No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) (citation omitted). "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

### B. The Effect of a Valid Forum Selection Clause on Traditional Transfer Analysis

The multifactor private-public interest analysis changes dramatically when the parties to an action have agreed to a valid forum selection clause. In *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Tex.*, the Supreme Court made clear that a forum selection clause "may be enforced through a motion to transfer under § 1404(a)," and clarified its effect on the traditional § 1404(a) analysis. 134 S.Ct. 568, 579, 581 (2013). Rather than evaluating both the private interests of the parties and public interest considerations, a district court considering a motion to transfer when the parties' agreement contains a valid forum-selection clause must consider that clause to represent the parties' "agreement as to the most proper forum" and should give the clause "controlling weight in all but the most exceptional cases." *Id.*

More specifically, where a valid forum selection clause preselects a different forum than the one selected by the plaintiff, the § 1404(a) analysis is altered in three ways: (1) the plaintiff's choice of forum "merits no weight," and the burden shifts to the plaintiff to show why the action should not be transferred to the preselected forum; (2) the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum"; and (3) a § 1404(a) transfer of venue "will not carry with it the original venue's choice-of-law rules." *Id.* at 582. Although the defendant generally carries the heavy burden on a traditional motion to transfer under § 1404(a), when an agreement contains a valid forum selection clause it is the plaintiff's burden to show either that the forum selection clause is not valid, or that the public interest factors to be

4

considered under § 1404(a) make transfer inappropriate. *Id.* at 579, 582. However, where the forum selection clause does not cover the parties' dispute, the burden of showing why transfer is warranted remains with the defendant, and the Court must evaluate the motion to change venue under the normal § 1404(a) framework. *See Jones*, 211 F.3d at 499; *Atl. Marine*, 134 S.Ct. at 582.

Federal law governs enforceability of a contractual forum selection clause in a diversity case. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Supreme Court has recognized three distinct reasons a court can find a forum selection clause unenforceable, even if presumptively valid: "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing and quoting *M/S Bremen*, 407 U.S. at 1, 12–13, 15, 18).

In other words, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine*, 134 S.Ct. at 583. "Only under *extraordinary circumstances* unrelated to the convenience of the parties" should a court deny a party's request to enforce a forum selection clause. *Id.* at 581 (emphasis added). "[A]s the party defying the forum-selection clause, [] plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

### C. Evidentiary Hearing Standard

Because a motion to dismiss for improper venue or a motion to transfer venue has a dramatic effect on plaintiff's choice of forum, the trial court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138–39 (9th Cir. 2003). Alternatively, the trial court may hold an evidentiary hearing. *Id.* at 1139. Such a hearing may be warranted if a party raises a genuine factual issue concerning enforcement of a forum selection

clause.[3] *Id.*

The Ninth Circuit has further instructed that an employee is "entitled to an evidentiary hearing as to the enforceability of a forum selection clause in his employment contract where he establishe[s] that litigating in the forum mandated by the clause might 'effectively preclude [his] day in court.'" *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (quoting *Murphy*, 362 F.3d at 1142). Although "whether to hold a hearing on disputed facts . . . is within the sound discretion of the district court," *Murphy*, 362 F.3d at 1139, "genuine questions of material fact regarding the existence and enforceability of a forum selection clause [] requires an evidentiary hearing," *T & M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 869 (N.D. Cal. 2015) (citing *Petersen*, 715 F.3d at 283).

### D. Requests for Judicial Notice

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of LA.*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g., United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

Defendants request judicial notice of various filings and orders in state and federal court proceedings involving the parties. *See* ECF 89; ECF 93. Because these are court documents

---

[3] Prior to 2013 and *Atlantic Marine*, courts in the Ninth Circuit held that a Rule 12(b)(3) motion was the proper vehicle to seek enforcement of a forum selection clause and transfer of the case. E.g., *Murphy* and *Petersen* concerned Rule 12(b)(3) motions to dismiss for improper venue. Although *Atlantic Marine* makes clear that the proper vehicle to seek enforcement of a forum selection clause is a motion to transfer venue under § 1404(a), the Ninth Circuit has not yet addressed whether an evidentiary hearing remains appropriate in this context. However, the Court does not see grounds for *Atlantic Marine* having stripped it of discretion to hold an evidentiary hearing. *See also T & M Solar*, 83 F. Supp. 3d at 870–71 (discussing this issue and a similar approach by other courts). Finally, the parties did not raise any points to the contrary.

6

properly subject to judicial notice, the Court hereby GRANTS Defendants' Requests for Judicial Notice.

### III. DISCUSSION

#### A. Motion to Transfer

The crux of this motion is whether the forum selection clause in Huang's Employment Agreement is valid and enforceable. Decisions of fellow district courts, while persuasive, are not binding on this Court. *See G&G Closed Circuit Events, LLC v. Duc Minh Dinh*, 2012 WL 4006471, at *2 (N.D. Cal. Sept. 12, 2012). Therefore, the Court reviews anew the venue and forum selection clause issues considered by the Eastern District of Texas court in *Huawei Techs. Co. v. Yiren Huang*, 2018 WL 1964180 (E.D. Tex. Apr. 25, 2018). However, the Court ultimately reaches the same conclusion in finding the forum selection clause valid and enforceable.

##### i. Jurisdiction and Venue in the Eastern District of Texas

As a threshold matter under § 1404(a), this Court must determine whether the instant action could have been brought in the proposed transferee district—the Eastern District of Texas. To find that the action could have been brought in the transferee district, the Court must be satisfied that the transferee district has personal jurisdiction over all of the Defendants and that venue would be proper in that District. Personal jurisdiction over the Defendants in the proposed transferee district is not at issue; indeed, Defendants selected the Eastern District of Texas to run the parallel Texas Action. And if the forum selection clause is valid and enforceable—as the Court finds—venue would be proper in the Eastern District of Texas. Thus, the action could have been brought in the proposed transferee district.

##### ii. Validity of the Forum Selection Clause

The Court next considers the applicable § 1404(a) analysis, and must determine whether the forum selection clause at issue is valid and enforceable. This is because the *Atlantic Marine* analysis "presupposes a contractually valid forum-selection clause." 134 S.Ct. at 581. Otherwise, the Court evaluates the traditional § 1404(a) factors at the outset. There is no dispute that Huang's Employment Agreement contains a forum selection clause. The clause provides in full:

> Exclusive Forum. I hereby irrevocably agree that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Texas, and I agree to the exclusive personal jurisdiction and venue of any court on Collin County Texas.

Ex. B to FAC § 12(b) ("Employment Agreement"), ECF 21-2. The Employment Agreement clearly states that Texas courts will be the exclusive forum for any lawsuit, and Huang has signed the agreement. *Id.* And as previously noted, Collin County, Texas, is located within the Eastern District of Texas. Plaintiffs challenge the enforceability of the forum selection clause on two grounds: (1) that the forum selection clause was a product of fraud or overreaching by Futurewei; and (2) that the forum selection clause is contrary to California public policy. *See* Opp'n to MTD at 6, ECF 90. A party challenging the clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15, 17. Here, the Court finds that plaintiffs have not met their heavy burden, and therefore that the forum selection clause is valid and enforceable.

### 1. Fraud or Overreaching

In their opposition to the Motion to Dismiss, Plaintiffs contend that the § 1404(a) analysis should ignore the forum selection clause because it is unenforceable due to fraud or overreaching. *See* Opp'n at 6. Specifically, Plaintiffs argue that Huang was not given notice of the forum selection clause when he accepted employment at Futurewei and thus that clause was procured by overreaching or fraud. *Id.* at 6–9. "To establish the invalidity of a forum selection clause on the basis of fraud or overreaching, the party resisting enforcement must show that the *inclusion of that clause in the contract* was the product of fraud or coercion." *Petersen*, 715 F.3d at 282 (internal citations and quotations omitted) (emphasis in original).

Plaintiffs' have not shown that inclusion of the forum selection clause was a product of fraud or coercion, and their argument necessarily fails. Plaintiffs argue that Huang received an offer letter[4] (the "Offer Letter"), which Huang believed contained all the material terms of his

---

[4] Huang's Offer Letter is dated December 22, 2010, and Huang's Employment Agreement was signed January 19, 2011. *See* Offer Letter, ECF 80-1; Employment Agreement, ECF 21-2.

8

employment. However, Plaintiffs *acknowledge* that Huang was on notice as to an "Employment and Confidentiality Agreement" requirement per his Offer Letter. *See* Opp'n at 7. Indeed, Huang's Offer Letter states, in no uncertain terms, that "[t]his offer of employment is contingent upon . . . signing the FutureWei Technologies, Inc. Employment Agreement and Confidentiality Agreement." Offer Letter p. 1, ECF 80-1. The parties agree that the forum selection clause was contained within the Employment Agreement Huang signed on January 19, 2011, and importantly, no party contends that Huang was given any version of the Employment Agreement other than the one he signed on January 19, 2011. *See* Opp'n at 7–8; Ex. B to FAC ("Employment Agreement"), ECF 21-2.

Huang's Offer Letter goes on to state "[t]his letter is a final and integrated agreement with respect to the at-will nature of our employment relationship and regarding the terms of employment. This supersedes all previous agreements, understandings and discussions, whether oral or written, express or implied, pertaining to your employment." Offer Letter p. 2. In light of this statement in the Offer Letter, Huang claims that he "had no reason to believe, and did not expect, that [the Employment and Confidentiality Agreement] would contain . . . any other provisions other than typical confidentiality provisions. *See* Declaration of Yiren Ronnie Huang ¶5 ("Huang Decl."), ECF 58-1. In other words, Huang argues that the Offer Letter required him to sign *only* a Confidentiality Agreement, and *not* an Employment Agreement. See Opp'n at 7. This belies reason. The integration clause in Huang's Offer Letter acted upon "all *previous* agreements, understandings and discussions," and was not directed towards eliminating terms of the Offer Letter itself—such as the conditional requirement of signing the "FutureWei Technologies, Inc. Employment Agreement and Confidentiality Agreement." *See* Offer Letter p. 1–2 (emphasis added).

Accordingly, the Offer Letter from Futurewei put Huang on notice as to the Employment Agreement requirement. At the very least, upon receiving the Offer Letter, Huang had adequate opportunity to request a copy of the Employment Agreement and to seek the advice of an attorney with respect to the "Employment Agreement and Confidentiality Agreement" requirement, before committing to employment with Futurewei. In any event, the record does not show that Futurewei

9

"concealed" the Employment Agreement from Huang, as Plaintiffs claim. *See* Opp'n at 7. To the contrary, the Offer Letter provided Huang with notice and opportunity to request a copy of the "Employment Agreement and Confidentiality Agreement," consult an attorney, or otherwise clarify his obligations with respect to that requirement. The record does not show that Huang took any of these steps or similar steps or was prevented from taking the same, and thus his claim that he was "not permitted" to consult with an attorney before signing the Employment Agreement is not reasonably supported by any factual allegations proffered by Huang. *See* Huang Decl. ¶ 8.

Moreover, the record does not reveal that Futurewei "materially changed" the terms of Huang's employment or "unilaterally modif[ied] the terms of employment." *See* Opp'n at 7. Instead, as Huang admits, Futurewei presented Huang with the Employment Agreement[5] at the new hire session, which Huang marked up and signed. *See* Huang Decl. ¶ 8; Employment Agreement. To support their fraud or overreaching contentions, Plaintiffs rely on *Petersen*. *See* Opp'n at 7, 9. This reliance is misplaced.

In *Petersen*, the employee's supervisor in Saudi Arabia did not permit the employee time to read the agreement and told the employee that failure to sign would result in the employee being forced to immediately return to the United States at the employee's own expense. 715 F.3d at 282–83. Plaintiffs' arguments do not map to *Petersen*. Unlike the employee in *Petersen*, Huang—by virtue of his handwritten responses in the Employment Agreement—had time to read and modify the Employment Agreement and did not face the prospect of being immediately forced to leave the country at considerable personal expense if he did not sign. Furthermore, Huang does not argue that he was required to sign the Employment Agreement without modification, or that he attempted to modify the Employment Agreement and was denied, or that he would have lost his job at Futurewei if he did not sign the Employment Agreement at the new hire session. *See* Huang Decl. ¶¶ 7–8. In addition, the new hire session took place in Santa Clara, and Huang has lived in Santa Clara County since approximately January 1989. *Id.* at ¶¶ 2–3, 6–7. Huang was on his home turf, and simply not in the same "vulnerable position" as the "newly-arrived employee in

---

[5] Officially the "Employment, Confidentiality, Proprietary, Information and Inventions Agreement."

10

Saudi Arabia" in *Petersen*. 715 F.3d at 283.

As the parties resisting enforcement of the forum selection clause, Plaintiffs have not shown that inclusion of the forum selection clause in the contract was the product of fraud or coercion. Huang was on notice as to the Employment Agreement, the requirement that Huang sign an employment agreement was consistent with his Offer Letter, Huang had time to read and markup the Employment Agreement, and he was not unduly influenced to sign the Employment Agreement on the spot. Accordingly, Plaintiffs have not met their "heavy burden of proof" to show that the forum selection clause "was invalid for such reasons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15, 17.

### 2. Public Policy

Plaintiffs also assert that requiring a California employee to litigate claims in a distant forum contravenes California public policy and thus the forum selection clause at issue is unenforceable. *See* Opp'n to MTD at 9–11. Defendants counter that numerous courts have rejected similar arguments, and that like analysis applies here. *See* Reply in Supp. of MTD 6–7 ("Reply") (collecting cases). The Court agrees with Defendants.

As an initial matter, the Court notes that California Labor Code § 925 does not directly apply to the present action, as the employment contracts at issue were entered into years before § 925 took effect in January 2017. *See, e.g.*, *Scales v. Badger Daylighting Corp.*, 2017 WL 2379933, at *5 (E.D. Cal. June 1, 2017) (Plaintiff entered into the contract at issue in 2014 and terminated his employment with Defendant in July 2016, before § 925 took effect. "Therefore, by its very terms § 925 does not apply to the Agreement."). Thus, the forum selection clause in Huang's Employment Agreement is not subject to § 925 because Huang signed the Employment Agreement before January 1, 2017. Plaintiffs acknowledge this point. Opp'n at 9.

Plaintiffs contend that § 925 merely codified the "consistent, longstanding policy of this state" with respect to forum selection clauses in employment contracts. *See* Opp'n at 9–10. The Court need not and does not reach the issue of whether, or to what extent, § 925 codifies pre-existing public policy. Under pre-§925 case law, plaintiffs have not met their burden of showing that enforcement of the forum selection clause in Huang's Employment Agreement "would

11

contravene a strong public policy of the forum in which suit is brought." *Richards v. Lloyd's of London*, 135 F.3d at 1294. Plaintiffs' principal arguments appear to be that Huang's Employment Agreement violates California public policy because (1) the forum selection clause does not select a California forum, and (2) the Employment Agreement would not apply California law. *See* Opp'n at 9.

Plaintiffs' first argument is conclusory, and fails. Plaintiffs do not articulate *how* or *why* the forum selection clause in Huang's Employment Agreement itself violates California public policy. Plaintiffs merely recite § 925 legislative history concerned with forum selection clauses that would "diminish the rights of California residents in a way that violates our state's public policy," and franchise agreement law (Cal Bus. & Prof. Code, § 20040.5), with little more. *See* Opp'n at 9–10 (citing and quoting § 925 legislative history; citing § 20040.5). Simply put, Plaintiffs have not shown why an out-of-state federal court could not protect Plaintiffs' interests as well as a California court could. *See AJZN, Inc. v. Yu*, 2013 WL 97916, at *4 (N.D. Cal. Jan. 7, 2013) (finding forum selection clause enforceable and transferring case to the District of Delaware). In addition, federal law, not California law, controls the enforceability of forum selection clauses in this context. *See Manetti-Farrow*, 858 F.2d at 513. Finally, an Eastern District of Texas court might apply California law, or "some other law that would be equally protective of the interests of California citizens." *AJZN*, 2013 WL 97916, at *4.

Plaintiffs' second arguments also fails. Huang's Employment Agreement contains a choice of law provision that is not before the Court. Rather, the Court must decide whether the contractual forum takes precedence. Plaintiff's reliance on *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082–84 (9th Cir. 2009), is unpersuasive. As noted by another court is this district, unlike the statute at issue in *Doe*, the UCL does not contain an anti-waiver provision indicating a fundamental California public policy favoring application of California's consumer protections above the law of foreign jurisdictions. *See Madanat v. First Data Corp.*, 2011 WL 208062, at * 4 (N.D. Cal. Jan. 21, 2011) (finding forum selection clause enforceable and transferring case to the Eastern District of New York). Accordingly, Plaintiffs have not met their burden to demonstrate that enforcing the forum selection clause in Huang's Employment Agreement contravenes

12

fundamental California public policy with respect to venue.

In sum, Plaintiffs' articulated public policy considerations do not overcome the presumption in favor of finding the forum selection clause valid and enforceable. *M/S Bremen*, 407 U.S. at 10.

### iii. The Traditional § 1404(a) Factors

Under *Atlantic Marine*, Plaintiffs' choice of venue in California "merits no weight," and the burden shifts to Plaintiffs to show why the action should not be transferred to the preselected forum. 134 S.Ct. at 581–82. In addition, the Court must ignore Plaintiffs' arguments regarding private interest factors, such as their assertion that "the conveniences of the parties and witnesses . . . favor [California]." *See* Opp'n at 13–14. As here, when a valid forum selection clause covers a parties' dispute, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 134 S.Ct. at 582. This is because the forum selection clause waives the parties' "right to challenge the preselected forum as inconvenient" and the "district court may consider arguments about public-interest factors only." *Id.* at 582. Huang agreed to litigate disputes "arising out of or in any way related to" the Employment Agreement in Texas, *see* Employment Agreement § 12(b), and his traditional § 1404(a) arguments that the convenience of the parties and witnesses and the interests of justice weigh in favor of venue in California are simply irrelevant under *Atlantic Marine*. In other words, where there is a valid forum selection clause in a contract between the parties, "the interest of justice" is best served by giving effect to the parties' bargain. *Id.* at 581.

In the face of a valid and enforceable forum selection clause, Plaintiffs can only avoid transfer pursuant to the forum selection clause by demonstrating that the public interest under § 1404(a) makes transfer inappropriate. *Id.* at 579, 582. At the hearing and in their briefing, Plaintiffs put forth no persuasive public interest arguments. Plaintiffs contend that, in the public interest, California law should govern and California public policy mandates keeping the action in this Court. *See* Opp'n at 14–15. These arguments have already been considered above, and rejected. The Court thus finds that Plaintiffs have failed to raise any exceptional circumstances or public interest factors that preclude enforcement of the forum selection clause. *Atlantic Marine*,

134 S.Ct. at 581; see also *T & M Solar*, 83 F. Supp. 3d at 868.

### iv. Evidentiary Hearing

Plaintiffs contend they should be afforded an evidentiary hearing under *Petersen* due to "Mr. Huang's sworn evidence that Futurewei procured the forum-selection clause by fraud or overreaching." *See* Opp'n to MTD at 9. However, Plaintiffs' reliance on *Petersen* is inapposite. For an evidentiary hearing to be appropriate, "genuine questions of material fact regarding the existence and enforceability of a forum selection clause" must exist. *See T & M Solar*, 83 F. Supp. 3d at 869 (citing *Petersen*, 715 F.3d at 283). Plaintiffs have raised no such genuine questions of material fact. In *Petersen*, the factual dispute concerned whether the employee (Petersen) had been presented with "a full copy of the employment agreement he signed in Saudi Arabia prior to arriving there." 715 F.3d at 283 n.6. Petersen submitted sworn testimony that he had not been presented with a full copy prior to arrival, while his employers maintained otherwise, thus creating "a triable issue of fact as to any potential fraud." *Id.* There is no such factual conflict of "concealment" in the present action, as Plaintiffs argued at the hearing before this Court on September 12, 2018. The parties do not dispute when or whether Huang first received his Offer Letter or the Employment Agreement, or the contents of those documents. *Cf. T & M Solar*, 83 F. Supp. 3d at 871 (findings grounds to hold an evidentiary hearing because the dispute concerned whether *particular terms were actually included* in the credit contract). Here, Plaintiffs and Defendants agree that the Offer Letter pointed out an "Employment Agreement and Confidentiality Agreement," and agree that the Employment Agreement Huang received and signed contained the forum selection clause at issue. Likewise, the parties do not dispute that Huang received and signed one and only one version of the Employment Agreement. Thus, Plaintiffs' argument that Futurewei concealed the terms of the Employment Agreement does not create a genuine issue of material fact.

Nor does Plaintiffs' argument[6] that Huang believed additional or unanticipated terms were imposed on him by virtue of the Employment Agreement create a genuine issue of material fact.

---

[6] Plaintiffs discussed the prospect of an evidentiary hearing in only one sentence of their Opposition Brief, but also made additional arguments at the hearing on September 12, 2018.

14

The Offer Letter specifically made Huang's employment at Futurewei contingent on agreeing to additional terms, and—accepting as true that Huang did not anticipate a forum selection clause—the fact is that he *did* receive an Employment Agreement that contained a forum selection clause, and he signed and marked up[7] that same Employment Agreement. And, as previously discussed, Huang does not contend that he was denied the opportunity to obtain a copy of the Employment Agreement at the time it was disclosed in his Offer Letter or to read the Employment Agreement or seek clarification prior to signing the agreement. *See* Huang Decl. ¶¶ 7–8.[8] Accordingly, Plaintiffs have not shown that a genuine question of material fact exists regarding the validity and enforceability of the forum selection clause in Huang's Employment Agreement.

Finally, the Court notes that because a Texas forum is unquestionably available, Huang is not remotely at risk of "effectively be[ing] deprived of his day in court were the clause enforced." *Petersen*, 715 F.3d at 280 (internal quotations and citations omitted); *see also Murphy Schneider National Inc.*, 362 F.3d 1133, 1142 (9th Cir. 2004).

### B. CNEX

Plaintiffs also argue that the forum selection clause in Huang's Employment Agreement should not be binding on CNEX because CNEX was not a signatory to the agreement. *See* Opp'n at 11. The Court is not persuaded. Under Ninth Circuit law, closely related parties may be bound by a forum selection clause even though they were not signatories to the contract containing the clause. *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513–14 (9th Cir. 1988). Huang admits that he is Chief Technology Officer at CNEX, co-founder of the company, and a member of the CNEX board of directors. Huang Decl. ¶ 1. Huang began working at CNEX approximately three days after his employment at Futurewei ended. *See* FAC ¶¶ 37–38. In *Universal Operations Risk Mgmt., LLC v. Global Rescue, LLC*, this Court found that under *Manetti* the forum selection clause in the individual plaintiffs' agreements applied to a company

---

[7] Huang wrote numerous full sentences in the "Invention Disclosure" portion of the Employment Agreement.
[8] *See also supra* Section III.A.ii.1 for the Court's discussion with respect Huang's claim that he was not permitted to consult with an attorney before signing the Employment Agreement (finding Huang could have, at the very least, consulted an attorney regarding the employment agreement requirement after receiving the Offer Letter).

formed by the individual plaintiffs less than six weeks after two of the plaintiffs resigned, with those two plaintiffs as vice-presidents. 2012 WL 2792444, *2, *5 (N.D. Cal. July 9, 2012).

Here, Huang formed CNEX in an even shorter time after his employment ended than the vice-presidents in *Universal Operations*, with Huang as a C-level executive sitting on the board. In addition, the activities of CNEX and the subject matter of Huang's employment at CNEX are potentially relevant to the underlying claims in the instant action. Thus, the Court finds that CNEX is a "closely related" party and subject to the forum selection clause in Huang's Employment Agreement.

### C. The Parties' Additional Arguments

The parties additionally raise "first-to-file," judicial stay, statute of limitations, standing, and Declaratory Judgment Act and *Brillhart* doctrine arguments. *See* MTD at 14–25; Opp'n to MTD at 15–25. The Court need not and does not reach these issues. Defendants' motion under Fed. R. Civ. Pro. 12(b)(6) is terminated without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Transfer Venue with respect to all claims and parties. Accordingly, the Court need not and does not reach Defendants' alternative request for dismissal or stay of this action. The clerk shall transfer this action to the United States District Court for the Eastern District of Texas. Upon transfer, the Clerk shall close the file in this District.

**IT IS SO ORDERED.**

Dated: September 24, 2018

BETH LABSON FREEMAN
United States District Judge