# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., a Chinese corporation, and FUTUREWEI TECHNOLOGIES, INC., a Texas corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>YIREN RONNIE HUANG, an individual, and CNEX LABS, INC., a Delaware corporation,<br><br>Defendants. | **FILED UNDER SEAL**<br><br>The Honorable Amos L. Mazzant, III<br><br>Civil Action No. 4:17-cv-00893 ALM |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' AMENDED COUNTERCLAIMS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................1

LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT......................................2

ARGUMENT ........................................................................................................................2

I. Defendants' Breach of Contract Claim (Count One) Should Survive Summary Judgment. ..........................................................................................................2

II. Summary Judgment is Not Appropriate on Defendants' Misappropriation Counterclaims (Counts Two through Fourteen). ..................................................5

III. Counts Eight, Nine, Thirteen, and Fourteen of Defendant's Amended Counterclaims Are Not Preempted by the Texas Uniform Trade Secret Act (TUTSA). ...........................................................................................................9

IV. All of the Elements of Defendants' RICO Claims (Counts Ten and Eleven) Are Properly Alleged and Supported by the Evidence. ...........................................10

V. Summary Judgment Should Not Be Granted on Defendants' Conspiracy-Related Counterclaims (Counts Eleven and Twelve). ..........................................11

VI. Defendants' Claims for Declaratory Judgment (Counts Fourteen to Seventeen) Seek Unique Relief and Are Not "Mirror Images" of Any of Plaintiffs' Claims.............13

CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*AMID, Inc. v. Medic Alert Found. United States, Inc.*,
   241 F. Supp. 3d 788 (S.D. Tex. 2017) .................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................................................2

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ................................................................................................2

*Downhole Tech. LLC v. Silver Creek Servs. Inc.*,
   No. CV H-17-0020, 2017 WL 1536018 (S.D. Tex. Apr. 27, 2017) .....................................9

*Hart v. Bayer Corp*,
   199 F.3d 239 (5th Cir. 2000) ..............................................................................................12

*Hinojosa v. Guidant Corp.*,
   No. C.A. C-05-399, 2005 WL 2177212 (S.D. Tex. Sept. 7, 2005) ....................................12

*In re Newell Industries, Inc.*,
   336 F.3d 446 (5th Cir. 2003) ................................................................................................4

*Pittsburg SNF LLC v. PharMerica E., Inc.*,
   No. 2:10-CV-363-JRG-RSP, 2012 WL 4509753 (E.D. Tex. July 19, 2012) ....................13

*Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*,
   No. 4:15CV307, 2018 WL 460227 (E.D. Tex. Jan. 18, 2018) ........................................7,8

*Raytheon Co. v. Indigo Sys. Corp.*,
   No. 4:07-CV-109, 2014 WL 5341920 (E.D. Tex. Sept. 30, 2014) ......................................6

*Wellogix, Inc. v. Accenture, LLP*,
   823 F. Supp. 2d 555 (S.D. Tex. 2011) .................................................................................8

**STATE CASES**

*Atlantic Richfield Co. v. Long Trusts*,
   860 S.W.2d 439 (Tex. App. 1993) .....................................................................................12

*Coker v. Coker*,
   650 S.W.2d 391 (Tex. 1983) ............................................................................................4,5

*Freeport Sulphur Co. v. Am. Sulphur Royalty Co. of Texas*,
   117 Tex. 439 (1928) .............................................................................................................3

*Holloway v. Atl. Richfield Co.*,
   970 S.W.2d 641 (Tex. App. 1998) ..................................................................................12

*KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*,
   988 S.W.2d 746 (Tex. 1999) ...........................................................................................5

*Long v. Hitzelberger*,
   602 S.W.2d 321 (Tex. App. 1980) ..................................................................................3

*Martinez v. Costilla*,
   No. 04-07-00691-CV, 2008 WL 4173819 (Tex. App. Sept. 10, 2008) ...........................4

*Metropolitan Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*,
   762 S.W.2d 646 (Tex. App. 1988) ................................................................................11

*Nogart v. Upjohn Co.*,
   981 P.2d 79 (Cal. 1999) ...................................................................................................5

*In re Sterling Chemicals, Inc.*,
   261 S.W.3d 805 (Tex. App. 2008) ..................................................................................5

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. 56 ........................................................................................................................2

## STATE STATUTES

Cal. Civ. Code
   § 3426.1(b)(2) .................................................................................................................8
   § 3426.6 ...........................................................................................................................6

Tex. Civ. Prac. & Rem.Code Ann.
   § 16.010(a) .......................................................................................................................6
   § 134A.002(3)(B) ............................................................................................................8

Texas Uniform Trade Secret Act ..................................................................................................9

## STATE RULES AND REGULATIONS

Rule 30(b)(6) ................................................................................................................................5

Rule 56(d) .....................................................................................................................................5

Rule 56(f) ......................................................................................................................................2

## INTRODUCTION

Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims should be denied. Plaintiffs' motion simply re-hashes erroneous legal arguments that Defendants have refuted in briefing in connection with Plaintiffs' motion to dismiss (*see* Dkt. 139, 166, 177) which remains pending before this Court, and it raises scarcely any facts whatsoever despite the fact that all issues of fact should be resolved in the light most favorable to the non-moving party. Plaintiffs' motion in fact simply ignores the actual allegations in the Amended Counterclaims and the significant evidence adduced to date regarding Plaintiffs' illicit activity.

Because Plaintiffs have separated out the legal arguments and the allegations that the claims are not supported by evidence, this brief primarily demonstrates the various reasons why each of the counts in the Amended Counterclaims are legally tenable and do not fail as a matter of law at this stage, while Defendants' Opposition to Plaintiffs' Motion for Summary Judgment of No Evidence on Defendants' Counterclaims ("Opposition Re Evidence of Counterclaims") addresses the ample evidence Defendants have adduced to date supporting the counterclaims. Defendants will not repeat these arguments here and hereby incorporate the Opposition Re Evidence of Counterclaims by reference. *See* Opp. Re Evidence.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

Notably, the facts Plaintiffs cite have little to no bearing on any of the issues raised in this motion, but largely track the statement of facts included in their motion for summary judgment on their breach of contract claim. *See* Dkt. 158. Defendants nevertheless address them below:

1. Undisputed

2. Disputed. Ronnie "Yiren" Huang entered into an Employment, Confidentiality, Proprietary Information and Inventions Agreement several weeks after he had joined Futurewei. *See* Declaration of Ronnie "Yiren" Huang (filed herewith) at ¶9.

3. Disputed. Defendants dispute the enforceability of various provisions of the Agreement. Plaintiffs also ignore the exemptions of his preexisting IP that Mr. Huang carved out of the Agreement. *See* Agreement (Dkt. 159, Ex. 1); Huang Decl. at ¶¶9-13.

4. Disputed. Mr. Huang co-founded CNEX in June 2013. Huang Decl. at ¶17.

5. Undisputed.

## LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is only proper if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 (5th Cir. 2003); Fed. R. Civ. P. 56. In moving for summary judgment, the nonmoving party has the burden to "set forth specific facts showing there is a genuine issue for trial," subject to "Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute exists if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

## ARGUMENT

**I.     Defendants' Breach of Contract Claim (Count One) Should Survive Summary Judgment.**

Contrary to Plaintiffs' assertions, Defendants have identified affirmative obligations of the Employment Agreement that Futurewei has breached in their Amended Counterclaims, and the Agreement itself supports these claims. *See* CNEX Amended Counterclaims (Dkt. 132) ¶¶40-41, 77-78; Opp. Re. Evidence at 2-14. The Employment Agreement expressly states that excluded technology, which Mr. Huang described in the Agreement (*see* Agreement at Dkt. 159, Ex. 1), is not covered by and is not within the scope of the Agreement, and that Futurewei had an affirmative obligation under the Agreement not to misuse Mr. Huang's preexisting IP. This is consistent with the plain meaning of the agreement and was Mr. Huang's understanding and

intent when he entered into the Agreement.  Huang Decl. at ¶¶12-13.  Notably, Plaintiffs have not cited *any* evidence to the contrary, and appear to pretend as if Mr. Huang did not exclude any of his preexisting IP whatsoever.  Yet, as detailed in Defendants' Opposition Re Evidence of Counterclaims, Plaintiffs have improperly misappropriated the excluded technology and have claimed this technology as their own in breach of an express provision of the contract as well as the parties' clear intent in entering into the agreement.  *See* Opp. Re Evidence at 2-14.  These facts alone create an issue of material fact pertaining to Defendants' breach of contract claim.

Texas law also recognizes implied covenants in express contracts in cases where "it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole."  *Long v. Hitzelberger*, 602 S.W.2d 321, 324 (Tex. App. 1980).[1]  The Texas Supreme Court has held that a "contract includes not only what is expressly stated but also what is necessarily to be implied from the language used; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face."  *Freeport Sulphur Co. v. Am. Sulphur Royalty Co. of Texas*, 117 Tex. 439, 451 (1928). In this case, Plaintiffs' interpretation of the Employment Agreement would frustrate the entire purpose of the employment relationship between Mr. Huang and Futurewei if Futurewei could claim as its own and/or prevent Mr. Huang from independently developing on his own the inventions and trade secrets that Mr. Huang expressly excluded from the assignment provisions of the Employment Agreement.  *See* Huang Decl. ¶¶9-14.

---

[1] None of the cases cited by Plaintiffs state that an express provision of a contract cannot confer upon a party an implied obligation—they simply stand for the proposition that an express obligation will override an obligation that has not been expressed in cases where the two are in direct conflict with one another.  In this case, none of the express obligations are inconsistent with a reading of the Employment Agreement that confers upon Futurewei an obligation not to misappropriate Mr. Huang's preexisting IP.

Plaintiffs' insistence on reading the contract so as to avoid any meaningful obligations on its part is therefore in direct conflict with basic principles of contract interpretation. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)("[C]ourts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). By excluding Mr. Huang's preexisting IP from the scope of the Agreement, Futurewei acknowledged that Mr. Huang had rights to this pre-existing intellectual property, that it would respect those rights as well as Mr. Huang's confidentiality obligations related to the intellectual property, and thereby undertook an obligation not to attempt to steal Mr. Huang's intellectual property or otherwise impinge on Mr. Huang's rights with respect to that intellectual property. *See* Dkt. 159, Ex. 1; Huang Decl. at ¶¶13-14. Mr. Huang's declaration is the ***only*** evidence submitted on this issue. Accordingly, Plaintiffs' motion for summary judgment on Count One of the Amended Counterclaims should be rejected.

While the Agreement through its text confers affirmative obligations on Futurewei which Plaintiffs have admitted (see Dkt. 61, ¶88),[2] it would be legal error to grant summary judgment where the parties' intent is at issue and the contract is susceptible to different interpretations. *See Coker,* 650 S.W.2d at 394 ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue"). A court's primary concern in interpreting a contract is "ascertaining the true intent of the parties." *Martinez v. Costilla*, No. 04-07-00691-CV, 2008 WL 4173819, at *2 (Tex. App.

---

[2] The interpretation of the contract and determination of ambiguity are questions of law for the Court. *In re Newell Industries, Inc.*, 336 F.3d 446, 448 (5th Cir. 2003). During a recent meet and confer discussion, Plaintiffs' counsel suggested that Defendants had not affirmative pled ambiguity and that therefore evidence relating to the parties' intent was not admissible. While Defendants disagree and the Court can determine the contract is ambiguous even in the absence of such a pleading by either party, *id.* at 449 n.5, out of an abundance of caution, Defendants intend to request leave to amend to add such a defense in their Answer.

Sept. 10, 2008). In order to understand the intent of the parties, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker*, 650 S.W.2d at 393. To determine if a contract is ambiguous, courts consider "the contract as a whole, in light of the circumstances present when the parties entered into the contract." *In re Sterling Chemicals, Inc.*, 261 S.W.3d 805, 808 (Tex. App. 2008). As a result, this determination is fact-dependent and should be resolved in favor of the non-moving party, precluding summary judgment on this claim. *See id.; Coker*, 650 S.W.2d at 393.

At a minimum, the motion should be denied or deferred pursuant to Rule 56(d) given the outstanding discovery – including Rule 30(b)(6) deposition testimony – concerning Plaintiffs' understanding and intent of the meaning and impact of Mr. Huang's exclusion of his preexsting IP in the Employment Agreement. Opp. Re Evidence at 14-15.

## II. Summary Judgment is Not Appropriate on Defendants' Misappropriation Counterclaims (Counts Two through Fourteen).

Without any justification for their claim, Plaintiffs summarily state that Counts Two through Fourteen are time-barred. Under both Texas and California law, statute of limitations defenses are considered affirmative defenses, and as such, Plaintiffs bear the burden of establishing as a matter of law that the statute of limitations applies to Defendants' counterclaims. *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Nogart v. Upjohn Co.*, 981 P.2d 79, 87 (Cal. 1999). Plaintiffs ***have not even attempted to meet their burden*** of demonstrating as a matter of law that the statute of limitations defense applies in spite of the discovery rule and fraudulent concealment. *See* Amended Counterclaims at 50. Texas law and California law both recognize that statutes of limitations are tolled when an injury is undiscoverable or when a party has concealed its wrongdoing. *See*

*Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2014 WL 5341920, at *1 (E.D. Tex. Sept. 30, 2014)(holding that, under both Texas and California law, the statute of limitations for trade secret misappropriation claims accrue when the plaintiff knew or reasonably should have known of the facts that give rise to the claim and that the statute of limitations is tolled by fraud); Tex. Civ. Prac. & Rem.Code Ann. § 16.010(a); Cal. Civ. Code § 3426.6. Here, the facts indicate that Mr. Huang and CNEX were not aware of Plaintiffs' misappropriating acts until well after Mr. Huang stopped working at Futurewei.[3] *See* Huang Decl. at ¶16. Summary judgment is not appropriate on Counts Two through Fourteen on this basis.

Aside from Plaintiffs' failure to meet their burden on the statute of limitations defense, Plaintiffs' arguments also do not support the disposal of any of Defendants' claims because they expressly limit their defense to claims that "arise from the 2011 execution of the Agreement, or from any alleged trade secret misappropriation while Huang was employed by Futurewei from January 2011 until May 2013." First, none of the claims arise from the 2011 execution of the Agreement in itself. As described in Defendants' Opposition Re Evidence of Counterclaims, the facts demonstrate that Futurewei and Huawei were planning to misappropriate Mr. Huang's preexisting IP even before the Agreement was signed and certainly by at least as early as 2013, but that (1) Mr. Huang was not aware of these improper motives until after his employment with Futurewei ended and (2) these acts of misappropriation took place over a long period of time and did not culminate until after Mr. Huang's employment with Futurewei ended. *See* Opp. Re

---

[3] Because of Plaintiffs' fraudulent concealment and the clandestine nature of many of the measures they employed, a number of the facts alleged in the counterclaims did not come to light until *after* Huawei and Futurewei initiated this litigation and Defendants began obtaining discovery. Plaintiffs have not and cannot meet their burden to prove that the statute of limitations applies in light of the facts pled in the counterclaims and the discovery rule and Plaintiffs' fraudulent concealment.

Evidence at 3-11; Huang Decl. at ¶16.  Second, without any support for their claim, Plaintiffs incorrectly state that Futurewei could not misappropriate any of Huang's trade secrets while he was employed by Futurewei from January 2011 until May 2013.  In their Motion, Plaintiffs apparently overlook, as Futurewei and Huawei have done through their conduct since 2011, the specific carve-outs and exemptions to the Assignment provision in the Agreement.  It is undisputed that any IP independently developed or previously owned by Mr. Huang before his employment at Futurewei and carved out of the assignment provision would not be property of Futurewei or Huawei, and any misappropriation of that IP, even if those acts occurred during Mr. Huang's employment, would still give rise to a claim.  *See* Opp. Re Evidence at 4-12.

   Plaintiffs further mischaracterize the Amended Counterclaims by stating that Defendants admit that CNEX willingly provided information to Huawei and that, as a result, all allegations of misappropriation of trade secrets after the founding of CNEX must fail as a matter of law.  Defendants have never stated that CNEX willingly provided trade secret information to Plaintiffs.  On the contrary, Plaintiffs obtained information from CNEX and Mr. Huang under false pretenses (including by falsely claiming they were interested in becoming a CNEX customer and notwithstanding CNEX marking documents "confidential and proprietary") and through other illicit means, including through their contacts at Xiamen University notwithstanding a restrictive license agreement that precluded them from sharing CNEX's proprietary information with Plaintiffs.  *See* Opp. Re Evidence at 15-20.  It is well-settled that the issue of whether a party has taken reasonable measures to protect its trade secrets is a question of fact.  *See Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15CV307, 2018 WL 460227, at *3-4 (E.D. Tex. Jan. 18, 2018).  Furthermore, courts have held that "even where a plaintiff voluntarily discloses the trade secret without the benefit of a confidentiality agreement,

the requisite secrecy is retained if the 'disclosure occurs in a context that would not ordinarily occasion public exposure, and in a manner that does not carelessly exceed the imperatives of a beneficial transaction.'" *Id.* at *4; *see also Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 564 (S.D. Tex. 2011). The ***only*** evidence submitted on this issue is that CNEX intended and understood that Huawei would maintain the information as confidential and not use it for its own purposes and/or pursuant to a restrictive license agreement with a third party that was contractually precluded from sharing it with Huawei. *See* Huang Decl. at ¶¶20-25. It would therefore constitute error to grant summary judgment on this issue based on this record.

Second, Plaintiffs' request for summary judgment on this issue fails because it is inconsistent with the law on trade secret misappropriation. Plaintiffs ignore the fact that the acquisition of a trade secret through misrepresentation can constitute improper means for purposes of a trade misappropriation claim. *See, e.g.,* Judicial Council Of California Civil Jury Instruction 4408 (stating that improper means of acquiring a trade secret includes through misrepresentation). Still, even if it was undisputed that Plaintiffs did not improperly acquire Defendants' trade secrets (which it is not), that would not foreclose claims of trade secret misappropriation stemming from the improper ***use*** or the ***disclosure*** of that information by Huawei and/or Futurewei. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3)(B); Cal. Civ. Code § 3426.1(b)(2). Furthermore, the Amended Counterclaims and the supporting evidence point to instances in which Huawei surreptitiously sought access to Mr. Huang's and CNEX's trade secret information without Defendants' permission or knowledge. *See* Opp. Re Evidence at 15-20. Whether or not CNEX willingly gave this information to Huawei and Futurewei is clearly a disputed fact given that CNEX was not even aware of the actions and had signed NDAs

with the third party co-conspirators that prohibited the disclosure of CNEX's confidential information.

The factual allegations in the Counterclaims are supported by ample evidence that would prove up claims of misappropriation of Defendants' trade secrets by improper acquisition, improper use, and improper disclosure. Plaintiffs have not pointed to a single piece of evidence to the contrary. Summary judgment on Counts Two to Fourteen would therefore be improper.

### III. Counts Eight, Nine, Thirteen, and Fourteen of Defendant's Amended Counterclaims Are Not Preempted by the Texas Uniform Trade Secret Act (TUTSA).

Counts Eight (Tortious Interference with Prospective Business Relations), Nine (Tortious Interference with Contractual Relations), Thirteen (Unfair Competition), and Fourteen (Unjust Enrichment) of Defendants' Counterclaims are not preempted by the TUTSA. Plaintiffs have made *no showing whatsoever* as to how TUTSA displaces the laws through which Counts Eight, Nine, Thirteen, and Fourteen arise. Here, the moving party has not created even a semblance of an issue of law or fact with regards to preemption by TUTSA and has failed to meet its burden.

Still, courts have rejected Plaintiffs' argument in in analogous situations involving TUTSA where, as here, the elements of the claims are distinct. *See Downhole Tech. LLC v. Silver Creek Servs. Inc.*, No. CV H-17-0020, 2017 WL 1536018, at *4 (S.D. Tex. Apr. 27, 2017) (holding that claims for tortious interference, and unjust enrichment were not preempted by TUTSA); *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 827 (S.D. Tex. 2017) (denying a motion to dismiss an unfair competition claim and expressly rejected the argument that the claim was preempted by TUTSA). Taking all issues in the light most favorable to the non-moving party, summary judgment cannot be granted on these claims.

## IV. All of the Elements of Defendants' RICO Claims (Counts Ten and Eleven) Are Properly Alleged and Supported by the Evidence.

The only justification that Plaintiffs provide for why Defendants cannot point to a legally cognizable enterprise is that "Count Ten alleges that Huawei is both the 'person' who committed the predicate acts and the enterprise itself." However, no such allegation has been made in any of Defendants' RICO-related counterclaims. To the contrary, the Amended Counterclaims clearly state that Plaintiffs worked with third party conspirators to create a RICO enterprise, including as an association in fact and/or legal entity, and all of the evidence in support of Defendants' RICO claims is consistent with the notion that the RICO enterprise is separate and distinct from the people or entities charged with violating the statute. *See* Amended Counterclaims at ¶149; Opp. Re Evidence at 15-20. Plaintiffs have made no attempt to argue that Defendants' counterclaims rely on allegations that Huawei is both the person who committed the predicate acts and the enterprise itself or that Plaintiffs and the co-conspirators identified in the Amended Counterclaims could not form an association-in-fact or a legal entity. Plaintiffs have failed to meet their burden of proving that the claim must be disposed of at this stage.

Moreover, the Opposition Re Evidence of Counterclaims points to ample evidence demonstrating the predicate acts that constitute the RICO-related counterclaims. *See* Opp. Re Evidence at 19-20. The Amended Counterclaims and the supporting evidence show that Plaintiffs have collaborated at least with Xiamen University and/or with Professor Mao and with third party procurement agents in forming a legally cognizable enterprise and that the these entities arrived at a meeting of the minds to commit trade secret theft and wire fraud. These facts on their own are sufficient to overcome a motion for summary judgment.

## V. Summary Judgment Should Not Be Granted on Defendants' Conspiracy-Related Counterclaims (Counts Eleven and Twelve).

Summary judgment on Count Ten is not appropriate for the simple reason that ***none of the Amended Counterclaims rely on a conspiracy between Huawei and Futurewei***. Plaintiffs insist on making this argument despite the fact that Defendants amended their counterclaims precisely to avoid this issue and have repeatedly stated in multiple subsequent briefs (at least three to date) that this doctrine is inapplicable to their claims. *See* Dkt. 139, 166, 177.

Similarly, Plaintiffs again claim that Defendants have failed to identify specific third-party co-conspirators. However, this is simply not the case. The Amended Counterclaims point to material facts that support a theory that Defendants have worked in conjunction with multiple third party actors to commit illicit acts. Specifically, as discussed in the Opposition Re Evidence of Counterclaims, Huawei has conspired with third party entities of the Chinese government, including Xiamen University and Professor Bo Mao, to steal CNEX's confidential information. Amended Counterclaims ¶¶ 50-52; Opp. Re Evidence at 15-20. The Amended Counterclaims and facts obtained through discovery support the notion that ███████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████ Opp. Re Evidence at 15-20. Mao then successfully procured CNEX's confidential SDK and provided to Huawei confidential CNEX information from that software development kit, in violation of Xiamen University's license agreement with CNEX (*i.e.*, damage to CNEX). *Id.* ¶ 50. The facts relating to Plaintiffs' conspiracy with Mao and Xiamen University are more than enough to create a genuine issue of material fact with regards to CNEX's conspiracy claims and to survive a motion for summary judgment. *See* Opp. Re Evidence at 15-20.

While Defendants' conspiracy claims do not rely on a conspiracy between Huawei and Futurewei, Plaintiffs are still wrong on the law—a civil claim for conspiracy between a corporation and its subsidiary would be legally tenable under Texas law. Plaintiffs argue that Counts Eleven (RICO Conspiracy) and Twelve (Civil Conspiracy) should be dismissed under *Copperweld*. However, Texas state courts have repeatedly held that *Copperweld* is limited to conspiracy claims under Section 1 of the Sherman Antitrust Act and that corporations can conspire with their subsidiaries for the purpose of common law theories. *See Metropolitan Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 652 (Tex. App. 1988), writ dismissed (Apr. 12, 1989) ("In *Copperweld* the Supreme Court limited its holding to cases involving alleged violations of the Sherman Act. Since we are not here dealing with an alleged violation of the Sherman Act, the holding concerning the meaning of that statute is irrelevant. We are here concerned with an alleged conspiracy under common law theories. Under the common law, a parent corporation and its subsidiary are separate legal entities.").[4]

Regardless, courts in Texas acknowledge that this is not a well-settled area of law and that it would be inappropriate to dismiss a conspiracy claim at the summary judgment stage because this is precisely the type of legal ambiguity that must be resolved in favor of the non-removing party. *See Hinojosa v. Guidant Corp.*, No. C.A. C-05-399, 2005 WL 2177212, at *5

---

[4] *See also Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex. App. 1993), on reh'g (June 15, 1993), writ denied (Jan. 5, 1994) (The Fourteenth Court of Appeals in Houston ignored the antitrust distinctions and held as a matter of law that a parent corporation cannot conspire with its wholly owned subsidiary. However, we agree with the San Antonio court that *Copperweld* was restricted to the antitrust context and was not applicable to common law conspiracies"); *Holloway v. Atl. Richfield Co.*, 970 S.W.2d 641, 644 (Tex. App. 1998) ("Arco prayed for summary judgment on this issue on the grounds that 'the law in Texas is quite clear that a parent corporation cannot conspire with its wholly owned subsidiary...' We agree with the Texarkana Court of Appeals' holding that this is true only in the antitrust context and not in common law conspiracies.").

(S.D. Tex. Sept. 7, 2005) ("Given that all ambiguities in state law must be resolved in favor of the non-removing party…this Court finds that Plaintiff has alleged the existence of two or more parties to the conspiracy.") (citing *Hart v. Bayer Corp*, 199 F.3d 239 (5th Cir. 2000)).

## VI. Defendants' Claims for Declaratory Judgment (Counts Fourteen to Seventeen) Seek Unique Relief and Are Not "Mirror Images" of Any of Plaintiffs' Claims.

Plaintiffs argue that Defendants' declaratory judgment claims are duplicative of Plaintiffs' claims and should be dismissed under the "mirror image" rule; however, Plaintiffs fail to demonstrate how Defendants claims are "mirror images" of Plaintiffs' claims. Defendants' declaratory judgment counts are not "mirror images" of any of Plaintiffs' claims because none of them will necessarily be decided through the resolution of Plaintiffs' claims. Plaintiffs overlook the fact that a claim comprised of multiple elements can still be rejected or denied without a full set of findings of each required element. For example, if no valid contract is even found to exist, the issue of the enforceability of specific sections like Section 5 and Section 6(b), which are the subject of Counts Fifteen and Sixteen for declaratory judgments, would not necessarily be decided. *See* Amended Counterclaims (Dkt. 132) at ¶¶ 188-99, 200-207.

Counts Seventeen and Eighteen seeking a declaratory judgment that "all CNEX property is the sole property of CNEX" and a declaratory judgment that "all trade secrets at issue in this case are the sole property of Ronnie Huang and/or CNEX," respectively, are broader than any of Plaintiffs' claims. *Id.* at ¶¶ 208-12, 213-18. When declaratory judgment counterclaims seek "broader relief" than what Plaintiffs claims, as is the case here, courts have found that they are not "mirror images" of plaintiffs' claims and that they state a claim upon which relief may be granted. *See Pittsburg SNF LLC v. PharMerica E., Inc.*, No. 2:10-CV-363-JRG-RSP, 2012 WL 4509753, at *2 (E.D. Tex. July 19, 2012), report and recommendation adopted, No. 2:10-CV-363-JRG-RSP, 2012 WL 4508127 (E.D. Tex. Sept. 28, 2012).

# CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaims should be denied in its entirety.

DATED: January 10, 2019

Respectfully submitted,

FARELLA BRAUN + MARTEL LLP

_/s/ Jeffrey M. Fisher_

Stephanie P. Skaff (*admitted pro hac vice*)
Jeffrey M. Fisher (*admitted pro hac vice*)
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
sskaff@fbm.com
jfisher@fbm.com

Attorneys for Defendants YIREN RONNIE HUANG and CNEX LABS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel who are deemed to have consented to electronic service are being served with a copy of this document via email service and the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 10, 2019.

*/s/ Jeffrey M. Fisher*
Jeffrey M. Fisher

## CERTIFICATE OF AUTHORIZATION TO SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 118) entered in this case on October 2, 2018.

*/s/ Jeffrey M. Fisher*
Jeffrey M. Fisher