# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., | § | |
| and FUTUREWEI TECHNOLOGIES, | § | |
| INC. | § | |
| | § | Civil Action No. 4:17-CV-00893 |
| v. | § | Judge Mazzant |
| | § | |
| YIREN RONNIE HUANG, and CNEX | § | |
| LABS, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are: (1) Plaintiffs' Motion for Partial Summary Judgment on their Breach of Contract Claim for Failure to Disclose Patent Applications (Count II) (Dkt. #158); (2) Defendants' First Motion for Summary Judgment and/or Summary Adjudication on Plaintiffs' Breach of Contract Claims (Dkt. #159); (3) Defendants' Second Motion for Summary Judgment on Counts 13, 14, 15, 16, 17 and 21 of the Second Amended Complaint (Dkt. #161); (4) Plaintiffs' Motion for Summary Judgment of no Evidence on Defendants' Counterclaims (Dkt. #160); and (5) Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaims (Dkt. #162). The aforementioned motions and cross-motions are all propositioned on challenges to the same contract provisions and conduct arising thereout; therefore, the Court will analyze these motions contemporaneously. The Court, having considered the motions, pleadings, and relevant evidence, finds that Defendants' First Motion for Summary Judgment and/or Summary Adjudication on Plaintiffs' Breach of Contract Claims (Dkt. #159) should be granted in part; Defendants' Second Motion for Summary Judgment on Counts 13, 14, 15, 16, 17 and 21 of the Second Amended Complaint (Dkt. #161) should be granted in part; Plaintiffs' Motion for Partial Summary Judgment on their Breach of Contract Claim for Failure to Disclose Patent Applications (Count II) (Dkt. #158) should be denied; Plaintiffs' Motion for Summary Judgment on Defendants'

Amended Counterclaims (Dkt. #162) should be granted in part; and Plaintiffs' Motion for Summary Judgment of no Evidence on Defendants' Counterclaims (Dkt. #160) should be denied.

## BACKGROUND

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") is a multinational networking and telecommunications equipment and services company headquartered in China. Plaintiff Futurewei Technologies, Inc. ("Futurewei") is a subsidiary of Huawei with several offices throughout the United States, including Plano, Texas. In December 2010, Futurewei offered Defendant Yiren "Ronnie" Huang ("Huang") employment as a Principal Engineer for its solid-state drive ("SSD") storage group, to assist in development and implementation of Advance Computing Network ("ACN"), non-volatile memory express ("NVMe"), and SSD technology. Huang accepted the offer in January 2011. The Employment Agreement contained provisions relating to non-disclosure, assignment, and non-solicitation.

Based on Huang's job responsibilities, Plaintiffs contend that Huang had access to confidential, proprietary, and trade secret information. On May 31, 2013, Huang ended his employment with Futurewei. On June 3, 2013, Huang, along with others, incorporated CNEX Labs, Inc. ("CNEX"), a Delaware Corporation with its principal place of business in California. Plaintiffs allege, among other things, that Huang incorporated CNEX to compete directly with Plaintiffs; Huang is using Plaintiffs' confidential, proprietary, and trade secret information to develop and improve SSD technology and NVMe related technology for CNEX; and further that Huang and CNEX are improperly soliciting employees away from Plaintiffs. Additionally, Plaintiffs allege that Huang started to engage in this behavior informally prior to leaving Futurewei. Plaintiffs further contend that Huang and CNEX began filing patent applications in June 2013, using the information that Huang obtained through his employment with Futurewei.

On December 28, 2017, Plaintiffs filed suit against Defendants in the Eastern District of Texas seeking declaratory judgment and alleging a variety of causes of action including: breach of contract; disclosure and misappropriation of confidential information and trade secrets; tortious interference with contract and prospective contracts; conspiracy claims; Racketeer Influence and Corrupt Organizations Act of 1970 ("RICO") claims; breach of fiduciary duty; and unfair competition under Lanham Act and Texas common and statuary law (Dkt. #1). On November 21, 2018, Defendants filed their first amended counterclaims and answer (Dkt. #132) also alleging various causes of action.

On December 19, 2018, Plaintiffs' filed a Motion for Partial Summary Judgment on their Breach of Contract Claim for Failure to Disclose Patent Applications (Count II) (Dkt. #158). On January 10, 2019, Defendants filed a response (Dkt. #183). On January 18, 2019, Plaintiffs filed a reply (Dkt. #196). On January 25, 2019, Defendants filed a sur-reply (Dkt. #211).

On December 19, 2018, Defendants filed their First Motion for Summary Judgment and/or Summary Adjudication on Plaintiffs' Breach of Contract Claims (Dkt. #159). On January 10, 2019, Plaintiffs filed a response (Dkt. #180). On January 17, 2019, Defendants filed a reply (Dkt. #195). On January 25, 2019, Plaintiffs filed a sur-reply (Dkt. #205).

On December 19, 2018, Defendants filed their Second Motion for Summary Judgment on Counts 13, 14, 15, 16, 17 and 21 of the Second Amended Complaint (Dkt. #161). On January 10, 2019, Plaintiffs filed a response (Dkt. #181). On January 18, 2019, Defendants filed a reply (Dkt. #197). On January 25, 2019, Plaintiffs filed a sur-reply (Dkt. #207).

On December 19, 2018, Plaintiffs filed a Motion for Summary Judgment of no Evidence on Defendants' Counterclaims (Dkt. #160). On January 10, 2019, Defendants filed a response

(Dkt. #184). On January 18, 2019, Plaintiffs filed a reply (Dkt. #198). On January 25, 2019, Defendants filed a sur-reply (Dkt. #212).

On December 19, 2018, Plaintiffs filed a Motion for Summary Judgment on Defendants' Amended Counterclaims (Dkt. #162). On January 1, 2019, Defendants filed a response (Dkt. #182). On January 18, 2019, Plaintiffs filed a reply (Dkt. #199). On January 25, 2019, Defendants filed a sur-reply (Dkt. #210).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or

defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiffs' move for summary judgment (Dkt. #158) on their breach of contract claim, which is set out as Count 2 of their Second Amended Complaint (Dkt. #61). Plaintiffs also move for summary judgment (Dkt. #160 and 162) on all Defendants' claims, which are set out as Counts 1–18 in Defendants' First Amended Counterclaims and Answer (Dkt. #132).

Defendants move for summary judgment (Dkt. #159 and 161) on numerous Plaintiffs claims, which are set out as Counts 1, 2, 4, 13–17, and 21 of Plaintiffs' Second Amended Complaint (Dkt. #61). Defendants also move for summary judgment (Dkt. #159) on their requests

for certain declaratory judgments, which are set out as Counts 15 and 16 of Defendants' First Amended Counterclaims and Answer (Dkt. #132).

The Parties' numerous, competing motions for summary judgment can be placed into two broad, all-encompassing categories: (I) motions for summary judgment on claims premised on or arising directly out of alleged breaches of the Employment Agreement and (II) motions for summary on non-breach of contract causes of actions. The Court discusses each in turn.

## I.     BREACH OF CONTRACT CLAIMS

Defendants move for summary judgment on Count 1 of Plaintiffs' Second Amended Complaint, in which Plaintiffs seek a declaration from the court that: (1) the Patent Applications are a Subject Idea or Invention under the terms of the Agreement; (2) the assignments by Huang of the Patent Applications to CNEX are void; and (3) all intellectual property derived from or related to the Patent Applications is the property of Plaintiff Futurewei. Defendants further move for summary judgment on Count 4 of Plaintiffs' Second Amended Complaint, which alleges that Defendant Huang breached the non-solicitation provision of the Employment Agreement by encouraging Futurewei employees to terminate their employment relationship or consulting relationship with Futurewei within one year of Huang's termination with Futurewei.

Defendants also seek summary judgment on Counts 15 and 16 of their First Amended Counterclaims and Answer (Dkt. #132). Count 15 seeks a judicial declaration that the assignment provision under Mr. Huang's Employment Agreement with Futurewei is unenforceable. Count 16 seeks a judicial declaration that Section 6(d) of the employment Agreement between Defendant Huang and Futurewei is void and unenforceable.

Plaintiffs move for summary judgment on Count 1 of Defendants' First Amended Counterclaims and Answer, which alleges breach of contract against Defendants for attempting to steal Huang's intellectual property in violation Employment Agreement.

Plaintiffs and Defendants each move for summary judgment on Count 2 of Plaintiffs' Second Amended Complaint, which Plaintiffs alleges that Defendant Huang breached the Employment Agreement by failing to disclose patent applications for one year after the termination of his employment with Plaintiffs, in violation of Section 4 of the Employment Agreement. Defendants

Each of these claims and counterclaims center on and challenges the validity of four sections of the Employment Agreement: (1) Section 3. Assignment of Inventions (the "Assignment of Inventions" provision); (2) Section 4. Obligation to Keep Company Informed (the "Disclosure" provision); (3) Section. 5 Prior Inventions (the "Prior Inventions" provision); and (4) Section 6. Other Activities; Non-Competition; Non-Solicitation (the "Non-Solicitation" provision).

The parties agree that contract interpretation is a matter of law; however, they disagree as to whether California or Texas law should govern the Court's inquiry. The Employment Agreement contains a choice-of-law provision which provides that "[t]his Agreement will be governed by and construed according to the laws of the State of Texas without regard to conflicts of law principles." The agreement also contains a forum selection clause, by which the parties agree that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Texas, and I agree to the exclusive personal jurisdiction and venue of any court on Collin County Texas." The Court necessarily turns first to this legal issue of whether Texas or California law governs the enforcement of the contract provisions.

### A. Governing Law

A federal court is required to follow the choice of law rules of the state in which it sits. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). Thus, the Court must look to the forum state—Texas—for the law that govern its choice-of-law analysis. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas courts consistently recognize the "party autonomy rule" by which "parties can agree to be governed by the law of another state." *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014). The Fifth Circuit, however, has "distinguished forum selection clauses, which dictate where a dispute will be heard, choice-of-law provisions dictate the law that will decide the dispute, and thus create more tension with a state's power to regulate conduct within its borders." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990)). Therefore, "although Texas courts permit choice-of-law agreements and the default position is that they are enforceable, it is not uncommon for a party to overcome them." *Id.* (citing *DeSantis*, 793 S.W.2d at 681 (holding parties' choice of Florida law unenforceable and applying Texas law to enforcement of noncompetition agreement); *CMA–CGM (Am.), Inc. v. Empire Truck Lines, Inc.*, 416 S.W.3d 495, 516–17 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding parties' choice of Maryland law unenforceable and applying Texas law to resident motor carrier being required to indemnify for third-party's negligence); *Panatrol Corp. v. Emerson Elec. Co.*, 163 S.W.3d 182, 186–89 (Tex. App.—San Antonio 2005, pet. denied) (holding parties' choice of Missouri law unenforceable and applying Texas law to manufacturer's indemnification of innocent seller); *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 534–36 (Tex.App.—Dallas 2014, no pet.) (reversing summary judgment on grounds that genuine issue of material fact

remained on whether parties' contractual choice of Texas law or another state's law should apply to question of enforceability of noncompetition provision)).

To show that the choice-of-law provision is unenforceable, Defendants must satisfy the standard set out in Section 187(2) of the Restatement (Second) of Conflicts of Laws, which provides:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2); *see DeSantis*, 793 S.W.2d at 677–78.

Subsection (a) weighs in Plaintiffs' favor. Futurewei is a Texas corporation so there is, at the very least, a reasonable basis for the Parties' choice. *See Cardoni*, 805 F.3d at 581–582 (explaining that the fact that the defendants were headquartered in Texas gave a reasonable basis for the parties to agree that Texas law would govern any dispute); *Drennen*, 452 S.W.3d at 325 (explaining that, in regards to Section 187(2)(a), "parties will be held to their choice when 'the state of the chosen law [has] a sufficiently close relationship to the parties and the contract to make the parties' choice reasonable.'" (quoting Restatement § 187 cmt. f)).

The following subsection is more intricate. The Fifth Circuit explained that "even when a reasonable basis exists for selecting a state as the source of law governing a transaction, the parties' selection does not control if another state: (1) has a more significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188; (2) has a materially

greater interest than the chosen state does in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of the chosen state's law." *Cardoni*, 805 F.3d at 582 (citing *Drennen*, 452 S.W.3d at 325–27).

Texas courts consider the Section 187(2)(b) factors in reverse order. *Cardoni*, 805 F.3d at 582. The Court will therefore conduct its inquiry as follows: first, whether California has a "more significant relationship" with the Parties and the transaction at issue; second, whether California has a "materially greater interest" than Texas in the question of whether the covenants are enforceable; and, last, whether the application of Texas law would be contrary to a fundamental policy of California. *See Cardoni*, 805 F.3d at 582–585.

The "'more significant relationship' determination is made by examining various contacts" of the Parties. *Id.* at 582. These contacts include: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* (citing Restatement § 188(2)). Of these, only one factor weighs in favor of Texas, while the others, in number and quality, weigh in favor of California. *See generally Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 n. 6 (Tex. 1996) (explaining that the contacts are weighed "not by their number, but by their quality"). The parties negotiated and executed the contract in California. Huang was employed in California and performed most of his duties under the Employment Agreement in California, although he occasioned China. The only factor weighing in favor of Texas is that Futurewei is a Texas corporation. This factor is insufficient and even further mitigated by the fact that Futurewei's headquarters is in California. The Court, therefore, finds that California has a more significant relationship with the parties and the transaction at issue.

Defendants must now show that California has a materially greater interest than Texas does in the question of whether the covenants are enforceable. *Cardoni*, 805 F.3d at 584. Defendants argue that California's interest is materially greater because the provisions, if enforced, has an impact on an employee located in its state, a company operating and headquartered in its state, and implicating Huawei—a company also headquartered in its state. Defendants further cite *ECL v. Mass* for the proposition that California has a materially greater interest in promoting the uniformity of employment contracts regarding covenants not to compete. *ECL v. Mass*, No. 3:17-CV-2399-D, 2018 WL 949235, at *7-8 (N.D. Tex. Feb, 20, 2018). Plaintiffs respond that California does not have a greater material interest in whether the covenants are enforceable because Texas, also, has a strong interest in "the ability of a company to maintain uniformity in its employment contracts across all employees, whether the individual reside in Texas or New York." *Drennen*, 452 S.W.3d at 330. The Court does agree generally with Plaintiffs' contention; however, the Court finds *Cardoni* is directly instructive on this issue. *Cardoni*, 805 F.3d at 584 In *Cardoni*, the Fifth Circuit weighed the competing interest of Texas and Oklahoma in a situation where an employee was located in Oklahoma and the employer was based in Texas. *Id*. The Fifth Circuit found that Oklahoma had a greater interest because of the covenant's "impact on employees residing in its borders, a company (Prosperity) operating in the state, a competing bank (CrossFirst) headquartered in the state that wants the services of the employees, and the Oklahoma customers of the competing bank." *Id*. Here, for the same reasons provided under the "more significant relationship" determination, the Court finds that California's interest is, like Oklahoma's in *Cardoni*, materially greater than that of Texas. The Court therefore finds that California has a materially greater interest than Texas does in the question of whether the covenants are enforceable.

Finally, "[e]ven though [California] has the more significant relationship with the parties as well as a greater interest in whether the covenants are enforced, the parties' choice of law should stand unless application of the chosen Texas law would contravene a fundamental policy of [California]." *Id*. at 585. There is no clear standard as to what constitutes a state's "fundamental policy." The Fifth Circuit, however, explain that:

> neither the Supreme Court of Texas nor the Restatement has articulated a clear standard for determining when a policy is "fundamental." *Drennen*, 452 S.W.3d at 327; *see also* Restatement § 187 cmt. g ("No detailed statement can be made of the situations where a 'fundamental' policy of the state of the otherwise applicable law will be found to exist."). Nevertheless, these sources offer some guidance in their statement that the "application of the law of another state is not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law." *DeSantis*, 793 S.W.2d at 680 (invoking Restatement § 187 cmt. g). And *DeSantis* explains that the general "focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." Id.; see also Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., 94 S.W.3d 163, 178 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("The test is whether the chosen law contravenes a state policy, not the outcome in a particular case." (italics in original)).

*Id*. In light of the Employment Agreement's Severability provision[1], the Court will apply these guiding principles to determine whether Defendants have shown that the application of Texas law would contravene a fundamental California hold concerning the four challenged provisions.

### B. The Assignment of Inventions Provision

Defendants first argue that the choice-of-law provision should not govern the Employment Agreement's Assignment because California has a fundamental policy against covenants not to

---

[1] Section 12(c) of the Employment Agreement is a severability provision, which provides that "I acknowledge and agree that each agreement and covenant set forth herein constitutes a separate agreement independently supported by good and adequate consideration and that each such agreement shall be severable from the other provisions of this Agreement and shall survive this Agreement."

compete, and the application of Texas law—which is more permissive as to such covenants—would contravene California's fundamental public policy. The Court is of no doubt, and the Parties do not dispute, that California has a fundamental policy against enforcing covenants not to compete. Indeed, California Business and Professions Code Section 16600 provides that "[e]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600; *See also Drennen*, 452 S.W.3d at 330 n. 7 ("[O]ther jurisdictions have held, as we did in DeSantis, that the application of another state's law which results in the enforcement of a non-competition agreement contravenes the forum state's fundamental public policy." (collecting cases from multiple jurisdictions, including California)). The Court further agrees with Defendants that Texas takes a more permissive view of covenants not to compete. *Cardoni* is also instructive on this point. The Oklahoma statute in *Cardoni* mirrors California's regarding covenants not to compete. *Cardoni* 805 F.3d at 586 ("Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title . . . is to that extent void.") (quoting Okla. Stat. tit. 15, § 217). The Fifth Circuit held that "[w]e thus agree with the district court that applying Texas law, which takes a more permissive attitude of both noncompetition agreements and the ability to reform them, would contravene Oklahoma's statutory aversion to noncompetition agreements. *See* Restatement § 187 cmt. g ("[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power."). *Id.*

Plaintiffs, however, contend that inventor assignment provisions are distinct form covenants not to compete, and the application of Texas law would not run afoul to any fundamental policy of California because both states permit such agreements. The Court need not reach the

merits of this argument, because the Court agrees with Defendants' contention that the Assignment provision, as written, is so broad that that it functions as a covenant not to compete and should be regarded as one. Under subsection (b) of the Assignment of Inventions provision, Futurewei purports to own:

> All right, title, and interest in and to all Subject Ideas and Inventions, including but not limited to all registrable and patent rights which may subsist therein, shall be held and owned solely by the Company, and where applicable, all Subject Ideas and Inventions shall be considered works made for hire. I shall mark all Subject Ideas and Inventions with the Company's copyright or other proprietary notice as directed by the Company and shall take all actions deemed necessary by the Company to project the Company's rights therein. In the event that the Subject Ideas and Inventions shall be deemed no to constitute works made for hire, or in the event that I should otherwise, by operation of law, be deemed to retain any rights (whether moral rights or otherwise) to any Subject Ideas and Inventions, I agree to assign to the Company, without further consideration, my entire right, title and interest in and to each and every such Subject Idea and Invention.

Subsection (a) defines "Subject Ideas or Inventions" as:

> any and all ideas, processes, trademarks, service marks, inventions, designs, technologies, computer hardware or software, original works of authorship, formulas, discoveries, patents, copyrights, copyrightable works, products, marketing, and business ideas, and all improvements, know-how, date, rights, and claims related to the foregoing that, whether or not patentable, are conceived, developed or created which: (1) relate to the Company's current or contemplated business or activities; (2) relate to the Company's actual or demonstrably anticipated research or developments; (3) result from any work performed by me for the Company; (4) involve the use of the Company's equipment, supplies, facilities or trade secrets; (5) result from or are suggested by any work done by the Company or at the Company's request, or any projects specifically assigned to me; or (6) result from my access to any of the Company's memoranda, notes, records, drawings. sketches, models, maps, customer lists, research results, data, formulae, specifications, inventions, processes, equipment or other materials (collectively, Company Materials-).

The Court notes that the designations for what may constitute a Subject Idea or Invention is listed in the disjunctive—separated by "or." Thus, each designation individually, or any combination thereof, may satisfy the definition. That is, the enumerated do not depend on the applicability of the other. Thus, under these, Huang, for example, may be obligated to assign "[a]ll

right, title, and interest in and to all [ideas . . . that, whether or not patentable, are conceive, developed, or created which . . . relate to the Company's current or contemplated business or activities]." Or, even more dismaying, the assignment provision provides that "in the event that Huang should otherwise, by operation of law, be deemed to retain any rights (whether moral rights or otherwise) to any [ideas . . . that, whether or not patentable, are conceived, developed, or created which . . . relate to the Company's current or contemplated business or activities], Huang agree[s] to assign to the Company, without further consideration, [Huang's] entire right, title and interest in and to each and every such [ideas . . . that, whether or not patentable, are conceived, developed, or created which . . . relate to the Company's current or contemplated business or activities]"

Plaintiffs argue that subsection (d) and (e) limit the assignment provision in subject matter and time because the show that the assignment provision obligates Huang to assign Futurewei only inventions that were "made, used, sold, exploited or reduced to practice, or an application for patent . . . by me or with my significant aid, within one (1) year after [my] sic termination from employment if they "grew out of or result[ed] from my work with the Company or [were] related to the business of the Company." This interpretation, however, is cannily selective and contrary to the plain language of the assignment provision.

Subsection (d)—titled "Determination of Subject Ideas and Inventions"— provides that:

> I further agree that all information and records pertaining to any idea, process, service mark, invention, technology, computer hardware or software, original work of authorship, design formula, discovery, patent, copyright, product, and all improvements, know-how, rights, and claims related to the foregoing ("Intellectual Property"), that I do not believe to be a Subject Idea or Invention, but that is conceived, developed, or reduced to practice by the Company (alone by me or with others) during the period of my employment and for one (1) year after the termination of such employment, shall be disclosed promptly by me to the Company (such disclosure to be received in confidence). The Company shall examine such information to determine if in fact the Intellectual Property is a Subject Idea or Invention subject to this Agreement.

The subsequent subsection (e)—titled "Access"—provides that:

> Because of the difficulty of establishing when any Subject Ideas or Inventions are first conceived by me, or whether they result from my access to Confidential Information or Company Materials, I agree that any Subject Idea and Invention shall, among other circumstances, be deemed to have resulted from my access to Company Materials if: (1) it grew out of or result from my work with the Company or is related to the business of the Company, and (2) it is made, used, sold, exploited or reduced to practice, or an application for patent, trademark, copyright or other proprietary protection is filed thereon, by me or with my significant aid, within one (1) year after my termination from employment.

Subsection (d) limits the assignment provision in neither subject matter nor time. Rather, subsection (d) is a clause that assists, mainly, Futurewei in determining whether Intellectual Property is, in fact, Subject Ideas and Inventions governed by the Employment Agreement. It contemplates only the circumstance in which Huang is uncertain whether certain Intellectual Property is subject to the assignment provision. In that situation, if the uncertain Intellectual Property was conceived, developed, or reduced to practice by Futurewei—alone by Huang or with others—during the time of Huang's employment and for one year subsequent, Huang must disclose the information to Huawei for the examination. This clause is logical—that is, Intellectual Property that was conceived during an employers' tenure or soon after, which relate to that employees work with the employer is likely uniquely suspicious and thus an employer would have a heightened interest in reviewing such Intellectual Property. This is, however, very different from construing this subsection as limiting the entire assignment clause.

Further, the explicit language of Subsection (e) undermines Plaintiffs' contention that the assignment provision is limited in subject matter and time. The subsection provides that "I agree that any Subject Idea and Invention shall, *among other circumstances*, be deemed to have resulted from my access to Company Materials if: (1) it grew out of or result from my work with the Company or is related to the business of the Company, and (2) it is made, used, sold, exploited or

reduced to practice, or an application for patent, trademark, copyright or other proprietary protection is filed thereon, by me or with my significant aid, within one (1) year after my termination from employment." The explicit language of the subsection anticipates circumstances outside of the two enumerated in which Subject Ideas or Inventions will be deemed to result from access to Company Materials. Thus, the Court cannot find logical Plaintiffs argument that a subsection sets limits when it explicitly does the opposite. Further, and more important, under subsection (a), Intellectual Property that results from access to Company Materials is only one definition of Subject Ideas and Inventions, which Futurewei purports to take ownership of. As the Court previously explained, the definition provided is expressed in the disjunctive. Thus, the Court struggles to see how subsection (e) functions to limit those.

Further, the Court finds Defendants' cited authority persuasive. Defendants contend that *Applied Materials* demonstrates that, under California law, assignment provisions can function as non-compete clauses and be accordingly rendered void and unenforceable. *Applied Materials, Inc. v. Adv. Micro–Fabrication Equip. Co.*, 630 F.Supp.2d 1084, 1088–91 (N.D. Cal. 2009). The court in *Applied Materials* considered the validity of an assignment provision in an employment contract. The assignment clause provided that:

> In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries.

*Id.* at 1086. The court ultimately found that the clause was overly broad as to the subject matter and temporal scope and therefore functioned as an unlawful non-compete clause void under California Business & Professions Code Section 16600. The court explained found "the Assignment Clause of the Employment Agreements requires that former Applied employees

17

assign any invention disclosed within one year of terminating employment at Applied, provided the invention relates to work the employee performed for Applied." *Id*. The court further reasoned that "the Assignment Clause broadly targets any inventions "relate[d] to" former employees' "work" with Plaintiff. Such a sweeping provision conceivably encompasses both inventions based on confidential employer information and inventions relating to former Applied employees' work in the broad field of semiconductor research and manufacturing." *Id*.

Finally, the employer in *Applied Materials*, like here, requested that the court narrowly construe the assignment clause in a manner that limited it in scope as to comport with California law. The court decline to do so reasoning that '[e]mployers could insert broad, facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court, thus directly undermining the statutory policy favoring competition. Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation.' Thus, the court invalidated the provision rather than reconstructing it reasoning that 'narrowing construction, on the ground that' the policy of Business and Professions Code section 16600 would be undermined by doing so." *Id*.

The Court finds that the Assignment of Inventions provision functions as a covenant not to compete. The application Texas law—which is more permissive to such covenants—would contravene a fundamental public policy of California that refuses to enforce them. Therefore, California law, rather than the Employment Agreement's choice-of-law provision, governs the Assignment provision. Therefore, the Assignment of Inventions provision is void and unenforceable as an unlawful restraint on trade in violation of California Business and Professions Code Section 16600.

### C. The Non-Solicitation Provision

Section 6(b) of the Employment Agreement provides:

> During the term of my employment and for a period of one (1) year after my employment with Company, I will not directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit, assist or in any way encourage any current employee or consultant of the Company or any subsidiary of the Company to terminate his or her employment relationship or consulting relationship with the Company or subsidiary.

Defendants contend that this provision should be excluded from the choice-of-law provision and rendered unenforceable under California law. Or, in the alternative, the Court should deem it unenforceable under Texas law.

First, the Court finds that Defendants fail to show how the application of Texas law would contravene a fundamental public policy regarding non-solicitation agreements. In fact, Defendants fail to identify a California public policy concerning non-solicitation agreements. Rather, Defendants reiterate California prohibition on covenants not to compete and argues that the Non-Solicitation provision in the Employment Agreement is so broad that it functions as a covenant not to compete. However, Defendants' cited authority is, this time, unconvincing. Defendants rely on *VL Systems* for the proposition that an overly broad non-solicitation agreement can function as a covenant not to compete and thus in violation of California law. *See VL Systems, Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 718 (2009). While this may be accurate, the present Non-Solicitation Provision does not rise to such a level. Indeed, California courts consistently uphold non-solicitation provisions that prohibit terminated employees from soliciting the employer's current employees. *See Hendrickson v. Octagon, Inc.*, Nos. 14-cv-01416 CRB, 225 F. Supp. 3d 1013, 1032 (N.D. Cal. Dec. 2, 2016) (explaining that "[a]lthough employers may not prohibit former employees from hiring their current employees, California courts allow them to prohibit active solicitation of their current employees); *See, also, e.g., Arthur J. Gallagher & Co. v. Lang*, 2014

WL 2195062 at *4 (N.D. Cal. May 23, 2014); *Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 546497, at *5 (N.D. Cal. Feb. 10, 2010).  The present Non-Solicitation agreement is limited in such a way. Therefore, even if California law did govern, the provision would nevertheless be valid.

Likewise, Defendants' arguments that Non-Solicitation provision is unenforceable under Texas law is also unconvincing as Texas law takes a more permissive view towards restrict covenants.

### D.  Disclosure Provision

The Disclosure provision of the Employment Agreement provides "[d]uring the first one (1) year after termination of my employment with the Company, I will provide the Company with a complete copy of each patent application filed by me or that names me as an inventor or co-inventor."  As to this provision, a fact question exists as to whether the patents filed were made prior to the commencement of Huang's employment with the Company are excluded from the scope of the Agreement.  Plaintiffs claim that it is undisputed that Huang filed at least one patent within a year of leaving Futurewei and failed to disclose it.  The Court, however, agrees with Defendants that whether California or Texas law applies, a fact issue exists as to whether the patents filed by Huang or naming him as an inventor were his prior inventions which are expressly exempt from the scope of the Employment Agreement.

### E.  Prior Inventions Provision

Section 5 of the Employment Agreement is a prior inventions provision provides:

Inventions, if any, patented or unpatented, that I made prior to the commencement of my employment with the Company are excluded from the scope of the Agreement. To preclude any possible uncertainty, I have set forth on Exhibit A attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed, or reduced to practice prior to commencement of my employment with

the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement. If disclosure of any such Invention on Exhibit A would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Inventions in Exhibit A but am to inform the Company that all Inventions have not been listed for that reason.

Plaintiffs argue that they are entitled to summary judgment on this cause of action because Defendants have neither identified nor provided evidence of an obligation that Plaintiffs breached. Defendants contend that Prior Inventions provision contains an implied covenant by which Futurewei promised to not attempt to obtain and claim as its own Defendants' proprietary technology and information. Defendants argue that Plaintiffs breached this obligation by improperly misappropriating Defendants' technology.

In Texas, to prevail on a breach of contract claim, Defendants must be able to prove "(1) the existence of a valid, enforceable contract between the parties; (2) that [Huang] performed or tendered performance on that contract; (3) that [Futurewei] breached the contract; and (4) that [Huang] sustained damages as a result of the breach." *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). As a general matter, a covenant is an agreement to act or refrain from acting in a certain way. *Solar Applications Eng'g v. T.A. Oper. Corp.*, 327 S.W.3d 104, 108 (Tex.2010). And, a covenant may be implied if it appears from the terms of the contract that (1) inferring a covenant is necessary to effectuate the full purpose of the contract or (2) the parties so clearly intended a covenant that they deemed it unnecessary to express it in the contract. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 888 (Tex.1998).

Defendants argue that by excluding Huang's preexisting intellectual property from the scope of the Employment Agreement, Futurewei acknowledge that Huang had rights to such pre-existing intellectual property, that Futurewei would respect those rights, and thereby undertook an obligation not to attempt to steal Huang's intellectual property or otherwise impinge on Huang's

rights with respect to such intellectual property. While this interpretation of the Prior Inventions provision seems equitable, the Court does not find such an interpretation reasonable or sound in law. First, inferring such an implied covenant is not necessary to effectuate the full purpose of the contract. *Id*. The Parties executed the Employment Agreement so that Huang would provide his services and expertise in a certain field in exchange for an amount set as compensation. Every section pertaining to protection of ownership refers only to that of Futurewei. That is, the Employment Agreement is replete with provisions aimed at protecting Futurewei's proprietary information. Indeed, the Prior Inventions provision obligates Huang to list any pre-existing intellectual property for the purpose of protecting Futurewei from Huang later claiming that information that was developed during his tenure was actually his prior invention. This is also evidence that the Parties did not so clearly intended the implied covenant that they deemed it unnecessary to express in the contract. If the agreement clearly contemplated the protection of both parties' intellectual property, it does not follow that only one party's protection is belabored throughout.

The only reasonable interpretation is that this provision was included and executed for the protection of Futurewei's proprietary and confidential information and property. Although it may prove a good moral staple, a contract provision in an employment agreement, under these circumstances, that recognizes that certain intellectual property belongs to an employee, is not also a promise on the employer's behalf to not attempt to take adverse actions towards such property.

The Court therefore finds that that Plaintiffs are entitled to summary judgment on Defendants claim for breach of contract premised on an implied promise in the Prior Inventions provision that Plaintiffs would not attempt to obtain and claim as its own Defendants' proprietary technology and information.

## NON-BREACH OF CONTRACT CAUSES OF ACTION

### A. Plaintiffs' Claim Against Defendants for Unfair Competition Under Lanham Act

Defendants move for summary judgment on Count 21 of Plaintiffs Second Amended Complaint, which raises violations of the Lanham Act premised on allegations that Defendants have used in commercial advertisements or promotions in interstate commerce false designations of origin, and/or false or misleading representations of fact—namely, branding products as CNEX when they depend upon the use of Huawei trade secrets—which are likely to cause confusion, or to cause mistake, or to deceive in a material way as to the affiliation, connection, or association of Defendants to the origin, sponsorship, or approval of technology the subject of this lawsuit, the fruits thereof, and the commercial activities associated therewith. Defendants maintain that Plaintiffs do not allege that Defendants are holding out Plaintiffs' tangible goods; instead, Plaintiffs are alleging that Defendants are using Plaintiffs' ideas in making their own CNEX-branded products. Defendants argue that these allegations are not of the nature contemplated by the Lanham Act and contrary to the Supreme Court's interpretation of the statute. The Court agrees.

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in ... commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 123 S. Ct. 2041 (2003) (quoting 15 U.S.C. § 1127). The Fifth Circuit has held that the Supreme Court's interpretation in *Dastar* precludes Lanham Act claims premised on allegations that a party copied the ideas, concepts, structures, and sequences embodied in its copyrighted work." *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 148–49 (5th Cir. 2004). Plaintiffs respond that their claims fall outside the holding in *Dastar* because Defendants stole their actual source code. This, however, has not been a contention of Plaintiffs

through the prosecution of this case, and Plaintiffs fail to provide appropriate summary judgment evidence of such.

The Court, therefore, finds that Defendants are entitled to summary judgment as a matter of law on Plaintiffs claims of Lanham Act violations, as set out as Count 21 of Plaintiffs' Second Amended Complaint.

**B. Defendants Motion for Summary Judgment on Counts 13, 14, 15, 16, and 17 of Plaintiffs Second Amended Complaint (Dkt. #161)**

After reviewing the motion, the Court is not convinced that there are no genuine issues of material facts remaining on the causes of actions, subject to the Court's rulings herein. Summary judgment should therefore be denied as to these claims.

**C. Plaintiffs' Motion for Summary Judgment as to Counts * of Defendants First Amended Counterclaims and Answer**

After reviewing the motion, the Court is not convinced that there are no genuine issues of material facts remaining, subject to the Court's rulings. Summary judgment should therefore be denied as to these claims. The case should proceed to trial.

## CONCLUSION

It is therefore **ORDERED** that:

(1) Defendants' First Motion for Summary Judgment and/or Summary Adjudication on Plaintiffs' Breach of Contract Claims (Dkt. #159) is **GRANTED IN PART.** This is limited to only Count 15 of Defendants' Amended Counterclaims and Answer to the extent that the Court declares that the Inventions Assignment Provision in the Employment Agreement is unenforceable;

(2) Defendants' Second Motion for Summary Judgment on Counts 13, 14, 15, 16, 17 and 21 of the Second Amended Complaint (Dkt. #161) is **GRANTED IN PART**. This motion is granted

as to only Count 21 of Plaintiffs' Second Amended Complaint alleging violations of the Lanham Act;

(3) Plaintiffs' Motion for Partial Summary Judgment on their Breach of Contract Claim for Failure to Disclose Patent Applications (Count II) (Dkt. #158) is **DENIED**;

(4) Plaintiffs' Motion for Summary Judgment of no Evidence on Defendants' Counterclaims (Dkt. #160) is **DENIED;** and

(5) Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaims (Dkt. #162) is **GRANTED IN PART**.  Plaintiffs are granted summary judgment on only Count 1 of Defendants Amended Counterclaims and Answer.

     **IT IS SO ORDERED.**

     **SIGNED this 2nd day of May, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE