# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., | § | |
| and FUTUREWEI TECHNOLOGIES, | § | |
| INC., | § | |
| | § | Civil Action No.  4:17-CV-00893 |
| v. | § | Judge Mazzant |
| | § | |
| YIREN RONNIE HUANG, and CNEX | § | |
| LABS, INC. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are the following motions: Plaintiffs' Motion to Strike the Expert Reports and Testimony of Keith R. Ugone, PH.D. Regarding Damages (Dkt. #260); Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian A. Berg from Offering Certain Opinions at Trial (Dkt. #261); Plaintiffs' Motion to Strike Ian D. Jestice as Expert Witness, Jestice Opening Expert Report, Jestice Report, and Defendants' Notice of Errata (Dkt. #262); Defendants' Motion to Preclude Plaintiffs' Expert Witness Thomas W. Britven from Offering Certain Opinions at Trial (Dkt. #263); Defendant Huang's Daubert Motion to Exclude the Testimony of Thomas W. Britven (Dkt. #270); and Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian Berg from Offering Certain Opinions at Trial Relating to His Rebuttal Expert Report (Dkt. #296).  The Court, having considered the motions, reports, and briefings, finds that: (1) the Court reserves its ruling on Plaintiffs' Motion to Strike the Expert Reports and Testimony of Keith R. Ugone, PH.D. Regarding Damages (Dkt. #260) until the court reviews the California district court's ruling and rationale concerning Dr. Ugone's report; (2) Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian A. Berg from Offering Certain Opinions at Trial (Dkt. #261) should be denied; (3) Plaintiffs' Motion to Strike Ian D. Jestice as Expert Witness, Jestice Opening Expert Report, Jestice Report, and Defendants' Notice of Errata (Dkt.

#262) should be denied; (4) The Court therefore finds that Defendants' Motion to Preclude Plaintiffs' Expert Witness Thomas W. Britven from Offering Certain Opinions at Trial (Dkt. #263) should be denied; (5) Defendant Huang's Daubert Motion to Exclude the Testimony of Thomas W. Britven (Dkt. #270) should be denied; and (6) Defendants Motion to Preclude Plaintiffs' Expert Witness Brian Berg from Offering Certain Opinions at Trial Relating to His Rebuttal Expert Report (Dkt. #296) should be granted in part.

## BACKGROUND

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") is a multinational networking and telecommunications equipment and services company headquartered in China. Plaintiff Futurewei Technologies, Inc. ("Futurewei") is a subsidiary of Huawei with several offices throughout the United States, including Plano, Texas. In December 2010, Futurewei offered Defendant Yiren "Ronnie" Huang ("Huang") employment as a Principal Engineer for its solid-state drive ("SSD") storage group, to assist in development and implementation of Advance Computing Network ("ACN"), non-volatile memory express ("NVMe"), and SSD technology. Huang accepted the offer in January 2011. The Employment Agreement contained provisions relating to non-disclosure, assignment, and non-solicitation.

Based on Huang's job responsibilities, Plaintiffs contend that Huang had access to confidential, proprietary, and trade secret information. On May 31, 2013, Huang ended his employment with Futurewei. On June 3, 2013, Huang, along with others, incorporated CNEX Labs, Inc. ("CNEX"), a Delaware Corporation with its principal place of business in California. Plaintiffs allege, among other things, that Huang incorporated CNEX to compete directly with Plaintiffs; Huang is using Plaintiffs' confidential, proprietary, and trade secret information to develop and improve SSD technology and NVMe related technology for CNEX; and further that

Huang and CNEX are improperly soliciting employees away from Plaintiffs. Additionally, Plaintiffs allege that Huang started to engage in this behavior informally prior to leaving Futurewei. Plaintiffs further contend that Huang and CNEX began filing patent applications in June 2013, using the information that Huang obtained through his employment with Futurewei.

On March 11, 2019, Plaintiffs filed a Motion to Strike the Expert Reports and Testimony of Keith R. Ugone, PH.D. Regarding Damages (Dkt. #260). On March 26, 2019, Defendants filed a response (Dkt. #276). On April 4, 2019, Plaintiffs filed a reply (Dkt. #288). On April 9, 2019, Defendants filed a sur-reply (Dkt. #304).

On March 11, 2019, Defendants filed a Motion to Preclude Plaintiffs' Expert Witness Brian A. Berg from Offering Certain Opinions at Trial (Dkt. #261). On March 26, 2019, Plaintiffs filed a response (Dkt. #273). On April 4, 2019, Defendants filed a reply (Dkt. #284). On April 9, 2019, Plaintiffs filed a sur-reply (Dkt. #305).

On March 11, 2019, Plaintiffs filed a Motion to Strike Ian D. Jestice as Expert Witness, Jestice Opening Expert Report, Jestice Report, and Defendants' Notice of Errata (Dkt. #262). On March 26, 2019, Defendants filed a response (Dkt. #275). On April 2, 2019, Plaintiffs filed a reply (Dkt. #287). On April 9, 2019, Defendants filed a sur-reply (Dkt. #303).

On March 11, 2019, CNEX filed a Motion to Preclude Plaintiffs' Expert Witness Thomas W. Britven from Offering Certain Opinions at Trial (Dkt. #263). On March 26, 2019, Plaintiffs filed a response (Dkt. #274). On April 2, 2019, CNEX filed a reply (Dkt. #286). On April 9, 2019, Plaintiffs filed a sur-reply (Dkt. #307).

On March 18, 2019, Huang's filed a Daubert Motion to Exclude the Testimony of Thomas W. Britven (Dkt. #270). On March 26, 2019, Plaintiffs filed a response (Dkt. #272). On

April 2, 2019, Huang filed a reply (Dkt. #285).  On April 9, 2019, Plaintiffs filed a sur-reply (Dkt. #306).

On April 8, 2019, Defendants filed a Motion to Preclude Plaintiffs' Expert Witness Brian Berg from Offering Certain Opinions at Trial Relating to His Rebuttal Expert Report (Dkt. #296).  On April 22, 2019, Plaintiffs filed a response (Dkt. #325).  April 29, 2019, Defendants filed a reply (Dkt. #339).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

I.      **Plaintiffs' Motion to Strike the Expert Reports and Testimony of Keith R. Ugone, PH.D. Regarding Damages (Dkt. #260)**

Defendants designated Keith R. Ugone, PH.D. as an economics and damages expert witness. Plaintiffs request that the Court exclude Dr. Ugone's affirmative report (the "Ugone CC Report") and his rebuttal report (the "Ugone's RB Report") in their entirety and prohibit Dr. Ugone from testifying in connection with CNEX's counterclaims against Plaintiff or in rebuttal to the testimony of Plaintiffs' damages expert.

On May 3, 2019, the Court held a pretrial conference to discuss matters pertinent to the upcoming trial. During the pretrial conference, counsel for Plaintiffs indicated that Dr. Ugone's opinion was recently struck by a district court in California. The Court stated that it would allow Plaintiffs to submit the case—with absolutely no narrative—for consideration. The Court therefore reserves its ruling on Plaintiffs' Motion to Strike the Expert Reports and Testimony of Keith R. Ugone, PH.D. Regarding Damages (Dkt. #260) until it reviews the California district court's ruling and rationale.

## II. Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian A. Berg from Offering Certain Opinions at Trial (Dkt. #261)

Plaintiffs designated Brian A. Berg as an independent technical expert witness. Defendants move to preclude Mr. Berg from testifying at trial or offering opinions: (1) that Plaintiffs' trade secrets are, in fact, trade secrets, and that Plaintiffs' Trade Secret 2—relating to Mr. Huang's general knowledge and experience gained at Futurewei—can constitute a trade secret; (2) relating to misappropriation in which he interprets facts, offers argument and/or offers opinions concerning Defendants' thoughts and beliefs, including telling "the story" concerning various allegedly stolen documents; (3) concerning Exhibit 13 to his report in which he purports to quantify the value of Defendants' alleged misappropriation; and (4) that Plaintiffs' Trade Secret 26 was misappropriated.

### A. Mr. Berg's Opinions Concerning Trade Secret 2

Defendants first cite an excerpt of Mr. Berg's report, in which he states that "the technology, information, documents and files referenced here in Futurewei's trade secret materials are confidential and/or proprietary, are not publicly available, and are the subject of reasonable efforts to protect their secrecy and from which Futurewei and Huawei derive an economic benefit not being publically available . . . ." *See* (Dkt. #261, Exhibit 2 at p. 35). Defendants

argue that this is a conclusory statement, which Mr. Berg provides no analysis and, thus, should be stricken. Plaintiffs argue Mr. Berg's report makes clear that his opinion, in this respect, is based on his understanding, interpretation, and analysis of the facts regarding Plaintiffs' trade secrets and therefore proper.

An expert witness must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "A court must exclude an expert witness 'if it finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Engenium Sol., Inc. v. Symphonic Tech., Inc.*, 924 F. Supp. 2d 757, 769 (S.D. Tex. 2013) (quoting Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999)). "However, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

The Court agrees with Plaintiffs. Defendants do not dispute that Mr. Berg is qualified to offer such opinions. Defendants contend only that Mr. Berg's opinions are not sufficiently accompanied by a factual foundation. Mr. Berg report, however, is contrary to this contention. As Plaintiffs point to, Mr. Berg's report states that his analysis is based on his meeting with Huawei employees, his review of discovery, and his review of Plaintiffs' confidential documents. If Defendants believe the above explanations are inadequate, they should demonstrate so on cross-examination of Mr. Berg. *See Daubert*, 509 U.S. at 595.

Defendants next argue that Mr. Berg's opinion with respect to Plaintiffs' alleged Trade Secret 2 cuts against black-letter law and must be stricken. Defendants argue that Mr. Berg opinion attempts to designate as a trade secret Huang's general knowledge and experience gained at Futurewei.

The Court agrees that, as a general matter, a person's general knowledge and experience may not be a trade secret. *See Carson Products Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979) (explaining that "[t]he subject of a trade secret must not be of public knowledge or of a general knowledge in the trade or business.") (internal citations omitted). Defendants, however, oversimplify Mr. Berg's analysis of Trade Secret 2. As Plaintiffs point to, Mr. Berg's report explicitly states that his analysis on Trade Secret 2 "is based on the knowledge and experience gained by Huang as a result of (1) his being the key architect of and contributor to the CAN and SSD projects at Futurewei, and (2) the subsequent testing, validation, and fine-tuning of these respective projects by the CAN and uniSSd projects." *See* (Dkt. #261, Exhibit 2 at p. 46). This does not suggest that Mr. Berg seeks to analyze as a trade secret Huang's general knowledge.

### B. Mr. Berg's Opinions Regarding Defendants' Alleged Misappropriation

Defendants next seek to strike paragraphs 86–113 of Mr. Berg's report, in which, Defendants, argue Mr. Berg interprets facts, offers argument, and opines on issues concerning Defendants' thoughts and beliefs. *Id.* at pp. 35–46. Defendants highlight Mr. Berg's report insistence that former employees improperly copied, downloaded, or printed Huawei materials during their time with Huawei and take specific issue with the reports use of terms such as "stolen," "copied," and "blatantly copied." Plaintiffs argue that Mr. Berg's report, in this respect, does not encroach on the line of opining on the legal issue of Defendants' state of mind.

As a general matter, "[a] trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury." *Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Marlin v. Moody Nat'l Bank, N.A.*, 248 F.App'x 534, 541 (5th Cir. 2007)). "'An expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind.'" *Id.*

(alterations in original) (quoting *Marlin*, 248 F.App'x at 541). As such, any opinions of Mr. Berg's that relate to Defendants' state of mind or intent are undoubtedly inadmissible. *See id.*; accord *Retractable Tech. Inc. v. Abbot Lab., Inc.*, No. 5:05-CV-157, 2010 WL 11531436, at *4– *7 (E.D. Tex. June 18, 2010) (excluding an expert's testimony as it related to a party's knowledge, intent, or belief). Mr. Berg is permitted to offer opinions concerning the purpose, importance, or content of technical documents in order to assist the jury's understanding of such documents. *See Romero v. Wyeth Pharm., Inc.*, No. 1:03-CV-1367, 2012 WL 12905978, at *6 (E.D. Tex. Apr. 26, 2012).

Given the nature of the present suit, the Court does not find that Mr. Berg's report violates the rule that an expert's testimony may not relate to a party's knowledge or intent. The Court finds it difficult to see how an expert report concerning claims of misappropriation of trade secrets—also, generally referred to as theft of trade secrets—can opine without the use of terms such as "copied" or "stolen." Indeed, on May 3, 2019, the Court held a pretrial conference in the present action, during which the Court denied a motion in limine that sought to prohibit counsel and witnesses from using terms such as "stolen," "theft," and "copying" when testifying in regards to the pending misappropriation claims. The Court expressed that such terms are the natural vernacular used in misappropriation of trade secret cases. Thus, the Court cannot find that Mr. Berg's use of these terms amount to him improperly testifying as to Defendants knowledge or intent.

### C. Mr. Berg's Opinions Regarding Exhibit 13

Lastly, Defendants argue that Mr. Berg's improperly opines that the misappropriated Huawei/Futurewei trade secrets and confidential information account for well in excess of 1/3 of the value of CNEX hardware and software from a technology perspective. In support of this

contention, Mr. Berg references Exhibit 13 to his report, which he contends map the misappropriate Futurewei/Huawei trade secrets at issue to the features and functionality included in CNEX's Westlake, and Westlake Plus SSD controller products." *See* (Dkt. #261, Ex. 2 at p. 138). Defendants contend that Mr. Berg's reliance on the information contained in Exhibit 13 of his report is unsupported and improper.

The Court, having reviewed Defendants' arguments and Mr. Berg's report, finds that Defendants' objections fall within the scope of cross-examination. *See Daubert*, 509 U.S. at 596. Therefore, Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian A. Berg from Offering Certain Opinions at Trial (Dkt. #261) is **DENIED.**

### III. Plaintiffs' Motion to Strike Ian D. Jestice as Expert Witness, Jestice Opening Expert Report, Jestice Report, and Defendants' Notice of Errata (Dkt. #262)

Defendants designated Ian D. Jestice as a technical expert witness in the field of storage technologies, testing, software, and drive firmware. Plaintiffs move to strike Mr. Jestice as an expert arguing that: (1) he is unqualified to provide an expert opinion regarding flash memory; (2) he cannot provide reliable testimony; and (3) the Court should strike Notice of Errata as improper and untimely.

#### A. Mr. Jestice's Qualifications as to Flash Memory

Plaintiffs argue that Mr. Jestice lacks sufficient experience with the operation of flash memory and his alleged experience with flash memory does not render him qualified to offer an expert opinion.

An expert witness must be qualified "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. "A court must exclude an expert witness 'if it finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Engenium Sol., Inc. v. Symphonic Tech., Inc.*, 924 F. Supp. 2d 757, 769 (S.D. Tex. 2013) (quoting *Wilson v. Woods*,

163 F.3d 935, 937 (5th Cir. 1999)). "However, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

Mr. Jestice's report sets forth his qualifications, in part, as follows:

> I have over 40 years' experience in the computer and computer storage industry. For example, I worked for IBM, Fujitsu and Itel Corp. I worked in various engineering functions involved with the bring up and debug of the first Winchester disk drive in Mainz, Germany. I was a storage specialist for IBM, Amdahl and the Itel Corp. During that time I debugged disk drives in the USA, Europe, Canada and Asia. While at Itel Corp., I was a storage specialist specifying, evaluating, debugging and testing disk drives, and writing disk firmware. . . . At Amdahl I wrote diagnostic tests, device driver software and drive firmware. I also wrote specifications to purchase storage devices. I worked in Japan managing a group that specified and tested disk drives made by Fujitsu. I was responsible for evaluating technologies such as solid state drives and RAID for possible acquisition by Amdahl. . . . I was responsible for specifying and qualification of ATA and FLASH storage devices for Lightera/Ciena corporations and for writing the device drivers and the FLASH file system running on SSDs. . . . I worked as a consultant writing disk firmware for CDC/Plus Corporation. . . . I was the co-founder of Zadian Technologies, a company that built test equipment and software for the manufacture and debug of storage devices including disk drives and FLASH drives. Zadian test equipment was used by every major ATA/ATAPI disk manufacturer. Zadian Technologies was acquired by Xyratex Corp. While at Zadian, my department ran tests under contract to verify compatibility with the ATA/ATAPI spec. While at Zadian, I gave public seminars on ATA/ATAPI.

*See* (Dkt. #262, Ex. 1 at p. 6–7). Accordingly, the Court finds that Mr. Jestice's experience qualifies him to offer expert opinions about flash memory.

## B. Mr. Jestice's Report's Reliability

Plaintiffs argue that Mr. Jestice's Report relies on incorrect documents, uncertain translations, and the Mr. Jestice's Opening Expert Report is based on unfounded speculation and general misunderstandings. Plaintiffs' objections, however, go to the weight of report and not its

admissibility. Plaintiffs' challenges are best addressed on cross-examination. *See Daubert*, 509

U.S. at 596.

**C. Defendants' Notice of Errata**

Plaintiffs seek to strike as untimely and improper Defendants' Notice of Errata pertaining to

Mr. Jestice's Report. Plaintiffs argue that Defendants' Notice of Errata improperly attempts to

introduce new facts and opinions that have a material impact on the conclusions and opinions

expressed in Mr. Jestice's Opening Expert Report regarding Plaintiffs' alleged misappropriation

of Defendants' information. Plaintiffs point to one example:

> the Notice of Errata (Ex. 3) changes the PowerPoint slide deck that is the basis of
> Jestice's misappropriation analysis in paragraphs 104–109 of his Opening Expert
> Report (Ex.1). It is Jestice's opinion in his Opening Expert Report that the slide
> deck presented at the CEO Forum and which allegedly contains Defendants'
> alleged proprietary information is the same May 2015 slide deck sent to Plaintiffs
> from CNEX employee Nick Zhang. Jestice attempted to change his opinion in the
> Notice of Errata only after Berg's Rebuttal Report pointed out that the May 2015
> slide deck was not the slide deck actually presented at the CEO Forum. This is
> significant because the May 2015 slide deck is substantively different from the
> June 2015 slide deck presented at the CEO Forum. The May 2015 slide deck does
> not contain the information alleged to have been misappropriated by Plaintiffs.

(Dkt. #262, at p. 19). Defendants respond that Mr. Jestice's Errata did not disclose any new

opinions or any new basis; rather, it is a simple clarification and correction of his Opening

Expert Report. Namely, Defendants contend that "Mr. Jestice updated his report to correctly

reflect how and when CNEX's presentation came into Huawei's [possession]. Mr. Jestice's

original opinion that Huawei misappropriated CNEX trade secrets from the presentation did not

change in his errata." (Dkt. #303, at p. 4).

Rule 26(e) provides that:

> [a] party who has made a disclosure under subdivision (a) ... is under a duty to
> supplement or correct the disclosure or response to include information thereafter
> acquired if ordered by the court or in the following circumstances:

> (1) ... if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

FED. R. CIV. P. 26(e)(1). And, Rule 37(c) allows evidence that was not properly or timely disclosed to be excluded if:

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

FED. R. CIV. P. 37(c). In determining the propriety of the exclusion of evidence under Rule 37(c)(1), the Court considers four factors: (1) the party's explanation for its failure to disclose evidence; (2) the prejudice, if any, to the party opposing the admission of the evidence; (3) the possibility of curing any prejudice with a continuance; and (4) the importance of the evidence. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

First, Defendants argue that Mr. Jestice did not realize that the inaccuracy of when and how the slides were presented until after he generated his report. Second, Defendants argue that this does not cause Plaintiffs any prejudice because the substance of Mr. Jestice's opinion did not change. Defendants argue that:

> Mr. Jestice had initially written that Dr. Armstrong presented slides at the CEO Forum, which Huawei later analyzed. Mr. Jestice correct his report only to reflect that Dr. Armstrong presented a first set of slides at the CEO Forum, and later sent a more detailed slide deck (the same deck that Mr. Jestice had originally believed was given at the CEO Form itself), which Huawei later analyzed. Mr. Jestice's opinion about Huawei's analysis of those slides did not change—the only correction in the errata was how those slides came into Huawei's possession."

(Dkt. #303, at p. 3). As to the third factor, the Court finds that, with trial soon approaching, there is no possibility of a continuance. Fourth, Defendants argue that the evidence is material in Mr. Jestice providing the narrative facts of his report.

The Court agrees with Defendants and finds that striking Defendants' Notice of Errata is unwarranted at this time. Indeed, as Defendants note, Mr. Jestice's Errata was served on March 3, 2019, before Mr. Jestice's deposition had been scheduled and approximately three months before trial. Throughout this litigation, the Court has been fairly liberal in granting extensions for discovery, including those regarding experts. Thus, any wish to depose or re-depose any expert in response to Mr. Jestice's Errata could have been brought to the Court's attention by proper motion practice. Further, Defendants can probe details surrounding the Errata on cross-examination of Mr. Jestice. *See Daubert*, 509 U.S. at 595

The Court therefore finds that Plaintiffs' Motion to Strike Ian D. Jestice as Expert Witness, Jestice Opening Expert Report, Jestice Report, and Defendants' Notice of Errata (Dkt. #262) is **DENIED.**

### IV. Defendants' Motion to Preclude Plaintiffs' Expert Witness Thomas W. Britven from Offering Certain Opinions at Trial (Dkt. #263)

Plaintiffs designated Thomas W. Britven as an expert witness on issues related to the quantification of remedies and damages. Defendants request that the Court preclude Mr. Britven from providing any of the opinions he offers: (1) in paragraphs 9–87 (the "Case Background") of his report; (2) regarding CNEX's alleged unjust enrichment based on his "head start" methodology; (3) regarding CNEX's alleged unjust enrichment based on his "portion pf enterprise value" theory; and (4) in paragraphs 159–179 of his report in support of unquantified economic harm to Huawei.

### A. Mr. Britven's Report "Case Background" Section Paragraphs 9–87

Defendants argue the Case Background section of Mr. Britven's report improperly opines on the technology at issue in this case, Huawei's alleged trade secrets, CNEX's alleged misappropriation of an access to Huawei's technology, and the alleged benefits of the technology or trade secrets. Defendants contend that these paragraphs seek to interpret, draw conclusions, and offer opinions that Mr. Britven is not qualified to do. Plaintiffs respond that the Case Background section does not offer opinions. Rather, the section includes background facts that form the basis and reasons for Mr. Britven's report.

A thorough reading of paragraphs 9–87 shows that Mr. Britven's report does not offer opinions on the Huawei's alleged trade secrets, CNEX's alleged misappropriation of an access to Huawei's technology, and the alleged benefits of the technology or trade secrets. Rather, this section sets forth the basis for Mr. Britven's opinion. Rule 26 mandates that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them . . ." FED. R. CIV. P. 26(a)(2)(i). And, an expert can rely on facts established by other witnesses. Thus, there is a fine distinction between an expert improperly drawing inferences or offering conclusions of law, and an expert explaining that these were the facts that form the basis of his expert opinion. Here, Mr. Britven report does not frustrate that fine line. Further, the Case Background section provides ample footnotes that cite the source of the fact which Mr. Britven is relying on. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

**B. Head Start Theory**

Defendants next argue that Mr. Britven should be precluded from offering his opinion on "head start" damages because his methodology is unsound as a matter of law. Specifically, Defendants contend that Mr. Britven's arbitrarily moves the head start theory forward in order to capture projected profit and his application of the discount rate is contrary to law. Defendants do not dispute the appropriateness of the "head start" method as an accepted theory of damages. Rather, Defendants contest the underlying values that Mr. Britven affix.

In scenarios 1 and 2, Mr. Britven opines that the head start theory is either 1.8 years or 2.3 years, respectively. Defendants argue, under either of these situations, Mr. Britven's calculations are unreliable as a matter of law because he begins the head start period at an arbitrary time in the future instead of at the time the alleged misappropriation took place.

Any questions or disagreements about the figures and time periods Mr. Britven used can be challenged on cross examination. Plaintiff's disagreement about the figures, however, does not warrant the preclusion of Mr. Britven's testimony to this point.

**C. Apportioned Business Value Theory**

Third, Defendants argue that Mr. Britven's unjust enrichment opinions based on CNEX's apportioned Business Value (paragraphs 120–141) must be excluded because the methodology is unreliable and finds no support in the financial literature. Again, Defendants do not seem to challenge the appropriateness of an apportioned business theory; rather, they dispute the fashioned in which it is administered. The Court finds that such a challenge, along with Defendants' dispute with the reports analysis of other economic harm to Plaintiffs, is better done on cross-examination.

The Court therefore finds that Defendants' Motion to Preclude Plaintiffs' Expert Witness Thomas W. Britven from Offering Certain Opinions at Trial (Dkt. #263) is **DENIED.**

## V.    Defendant Huang's Daubert Motion to Exclude the Testimony of Thomas W. Britven (Dkt. #270)

Defendant Huang requests that the Court exclude Plaintiffs' Mr. Britven's testimony on the damages Huawei alleges to have suffered from Defendant Huang's alleged breach of the non-solicitation provision in the Employment Agreement.  Specifically, Defendant Huang argues that: (1) Mr. Britven's cost saving damages opinions are unreliable, speculative, and lacking foundation; and (2) Mr. Britven's opinions on head start and enterprise value damages are unsupported and not properly apportioned to Defendant Huang.

### A.  Lost Cost Savings Damages

Defendant Huang takes specific issue with Mr. Britven's report's opinions on lost cost saving damages because: (1) they are unreliable because Mr. Britven fails to connect employee departure to any delayed release of the Hi1812 Controller; (2) he doesn't link delays to "related projects" to delay in the Hi1812 Controller; (3) he cumulates the delays without justification; (4) he speculates from outdated projections rather than actual data; and (6) he unreasonably shifts Huawei's entire stream of cost savings.  Plaintiffs respond that Defendant Huang's arguments as to Mr. Britven's analysis goes to the weight of the report and testimony and not to the admissibility.

At this stage in the proceeding, the Court acts as a gatekeeper of expert testimony. *See Kuhmo*, 526 U.S. at 152. Defendant Huang does not seem to dispute Mr. Britven's qualifications. Accordingly, the Court finds that Mar. Britven possesses the necessary background, training, education, and experience to testify.  Defendant Huang's arguments which contest the facts underlying the Britven Report and the values attributed thereto are better suited for cross-

examination. *See Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013) ("[An expert's] lack of specialization should generally go to the weight of the evidence rather than its admissibility.").

Thus, to the extent that Defendant Huang disputes the figures that Mr. Britven uses and/or is contesting the basis of the Mr. Britven's report, such should be done at trial, on cross-examination

## B. "Head Start" and "Enterprise Value" Calculations

Defendant Huang next argues that Mr. Britven report's calculations of damages under pursuant to the "head start" and "enterprise value" methods should be stricken because the Britven Report fails to apportion which amounts are attributed solely to Defendant Huang versus those attributed to Defendant CNEX. Plaintiffs respond that such an apportionment was unnecessary because their claims for misappropriation of trade secrets are against Defendant Huang and Defendant CNEX jointly and severally.

The Court agrees with Plaintiffs. Defendants should address their dispute with Mr. Britven's values on cross-examination. The Court therefore finds that Defendant Huang's Daubert Motion to Exclude the Testimony of Thomas W. Britven (Dkt. #270) is **DENIED.**

## VI.   Defendants Motion to Preclude Plaintiffs' Expert Witness Brian Berg from Offering Certain Opinions at Trial Relating to His Rebuttal Expert Report (Dkt. #296)

Plaintiffs also designated Mr. Berg as an expert to rebut Defendant's expert Mr. Jestice. Defendants move to preclude Mr. Berg from offering the following opinions set forth in his rebuttal expert report: (1) paragraphs 32, 66–77—arguing that these are legal opinions that Mr.

Jestice is not qualified to testify as an expert witness; (2) paragraphs 9–10—arguing that Mr. Berg is opining that thirteen of CNEX's forty-four trade secrets have not been defined with sufficient particularity; (3) paragraphs 33–34, 82–83—arguing that Mr. Berg improperly opines that Mr. Jestice applied trade secret law incorrectly; (4) paragraph 98—opining that Mr. Huang stole a Futurewei document; and (5) paragraph 127—arguing that Mr. Berg improperly opines that none of Mr. Huang's preexisting Rephisa documents show any of Huawei's twenty-seven trade secrets.

### A. Opinions Contained in Mr. Berg's Rebuttal Report Paragraphs 32, 66–77

Defendants contend that Mr. Berg's Rebuttal Report paragraphs 32, 66–77 offer legal opinions that Mr. Berg is not qualified to opine on.

Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court. *Fisher v. Halliburton, No.* H-05-1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *see also Goodman v. Harris Cnty*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673. In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted). The Court notes that Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable

because it embraces an ultimate issue to be decided by the trier of fact." However, Rule 704 does not open the door to all opinions. *Owen*, 698 F.2d at 240. The rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Id.*

Mr. Berg's Rebuttal Report paragraphs 32, 66–77 opine that, based Mr. Jestice's experience, Mr. Berg does not believe him to be qualified to offer expert opinions on flash memory. *See* (Dkt. #296, Ex. 2 at p. 14, 22). The Court does not take issue with Mr. Berg discussing his technical background against that of Mr. Jestice and opining that, based on his knowledge and experience, he does not believe Mr. Jestice can adequately provide expert opinion on matters concerning flash memory. To be sure, the Court is charged with determining whether, under the framework set out in *Daubert* and Rule 702, a witness is qualified to testify as an expert as a matter of law. It is, however, not improper for Mr. Berg—an expert in flash memory—to rebut an opposing expert and explain why he does not believe the opposing expert possess the requisite knowledge and experience to opine on matters concerning flash memory. This is substantively different from a situation in which Mr. Berg's Rebuttal Report would attempt to analyze *Daubert* and Rule 702 and offer a conclusion therefrom.

### B. Opinions Contained in Mr. Berg's Rebuttal Report Paragraphs 9–10

Defendants next argue that Mr. Berg's Rebuttal Report paragraph 9–10 improperly opine as to whether thirteen of CNEX's forty-four trade secrets have not been defined with sufficient particularity. Paragraph 9 of Mr. Berg's Rebuttal Report provides that "I understand that the courts in the 5th Circuit have held that trade secrets must be defined with sufficient particularity." *See* (Dkt. #296, Ex. 2 at p. 10). The report goes on to cite Fifth Circuit precedent that it believes affirm his contention. Mr. Berg then opines that he does not believe that at least thirteen of CNEX's forty-four trade secrets have not been defined with sufficient particularity.

This nature of legal analysis is improper for a technical expert. It is, however, not improper for Mr. Berg to opine that, based on his experience and knowledge of the industry, he does not believe thirteen of CNEX's forty-four trade secrets have been defined with sufficient particularity. *See Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *5 (E.D. Tex. Jan. 30, 2018) (explaining that a technical expert had sufficient knowledge and experience to opine as to what he believes is both known and valuable in his industry in relation to asserted trade secrets).

The Court finds that Mr. Berg may not engage in a legal analysis of Fifth Circuit case law and opine as to whether asserted trade secrets conform to precedent. Thus, the Court strikes only paragraph 9 from Mr. Berg's Rebuttal Report, and Mr. Berg may not testify at trial as to the caselaw cited therein. The Court finds, however, that Mr. Berg may opine that, based on knowledge and experience in the industry, he believes that at least thirteen of CNEX's forty-four trade secrets have not been defined with sufficient particularity.

### C. Opinions Contained in Mr. Berg's Rebuttal Report Paragraphs 33–34, 82–83

Mr. Berg's Rebuttal Report Paragraphs 33–34, 82–83 improperly offers legal opinions. *See* (Dkt. #296, Ex. 2 at p. 10). After review, the Court finds that these paragraphs do not offer improper "legal conclusions that tell a jury what result to reach." *See United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017). Rather, Mr. Berg rebuts Mr. Jestice's legal standard and the method in which he applied it. The Court therefore finds that Mr. Berg may opinions rebutting the method that Mr. Jestice employed in opining on what is or is not a trade secret.

### D. Opinions Contained in Mr. Berg's Rebuttal Report Paragraph 98

As explained above, the Court does not find that, in this case, an expert's use of the term "stole" improperly opines on Defendants' state of mind or intent.

### E. Opinions Contained in Mr. Berg's Rebuttal Report Paragraph 127

Defendants provide no detailed analysis or explanation on the propriety of paragraph 127 of Mr. Berg's Rebuttal Report. Defendants only state that paragraph 127 "is totally conclusory and unsupported, with no analysis whatsoever." *See* (Dkt. #296, Ex. 2 at p. 6). After reviewing paragraph 127, the Court does not find Defendants' objections convincing.

The Court therefore finds that Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian Berg from Offering Certain Opinions at Trial Relating to His Rebuttal Expert Report (Dkt. #296) is **GRANTED IN PART.** Mr. Berg's opinions are limited only to the extent that he may not engage in a legal analysis of Fifth Circuit case law and opine as to whether asserted trade secrets conform to precedent. Accordingly, the Court **STRIKES** paragraph 9 from Mr. Berg's Rebuttal Report.

## CONCLUSION

It is therefore **ORDERED** that:

- The Court **RESERVES** its ruling on Plaintiffs' Motion to Strike the Expert Reports and Testimony of Keith R. Ugone, PH.D. Regarding Damages (Dkt. #260) until the court reviews the California district court's ruling and rationale concerning Dr. Ugone's report;

- Defendants' Motion to Preclude Plaintiffs' Expert Witness Brian A. Berg from Offering Certain Opinions at Trial (Dkt. #261) is **DENIED;**

- Plaintiffs' Motion to Strike Ian D. Jestice as Expert Witness, Jestice Opening Expert Report, Jestice Report, and Defendants' Notice of Errata (Dkt. #262) is **DENIED;**

- The Court therefore finds that Defendants' Motion to Preclude Plaintiffs' Expert Witness Thomas W. Britven from Offering Certain Opinions at Trial (Dkt. #263) is **DENIED;**

- Defendant Huang's Daubert Motion to Exclude the Testimony of Thomas W. Britven (Dkt. #270) is **DENIED;**

- Defendants Motion to Preclude Plaintiffs' Expert Witness Brian Berg from Offering Certain Opinions at Trial Relating to His Rebuttal Expert Report (Dkt. #296) is **GRANTED IN PART.** The Court finds that Mr. Berg's opinions are limited only to the extent that he may not engage in a legal analysis of Fifth Circuit case law and opine as to whether asserted trade secrets conform to precedent. Accordingly, the Court **STRIKES** paragraph 9 from Mr. Berg's Rebuttal Report.

**IT IS SO ORDERED.**

 **SIGNED this 9th day of May, 2019.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE