**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO., LTD.** and **FUTUREWEI TECHNOLOGIES, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**YIREN RONNIE HUANG** and **CNEX LABS, INC.,**<br><br>Defendants. | **No. 4:17-cv-893 ALM**<br><br><br>Jury Trial Demanded<br><br>**FILED UNDER SEAL** |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR A NEW TRIAL**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59**

## INTRODUCTION

In their Opposition to Plaintiffs' Motion for New Trial, Defendants ignore or mischaracterize the compelling evidence establishing the need for a new trial:

- It is Plaintiffs' ***implementation*** of concepts known in the art that Huawei protected and that squarely constitute trade secrets, not the initial concept itself.

- Plaintiffs' fiduciary duty and unfair competition claims are not redundant.  Plaintiffs' fiduciary duty claims focus on Huang's usurpation of Plaintiffs' businesses opportunities and his endless formation of competing entities, while Plaintiffs' unfair competition claim is based primarily on the Defendants' coordinated corporate raiding scheme.

- The jury ***did*** find that Huang breached his Employment Agreement by not notifying Plaintiffs of his patent filings.  As a matter of black letter law, damages are required.

- Defendants ignore that Huang plagiarized a Huawei confidential document and solicited Futurewei employees within a year of his resignation and thereby breached his Employment Agreement's confidentiality and non-solicitation provisions.

## ARGUMENT

I.    **Defendants' Opposition addresses trade secrets relating to concepts, but fails to acknowledge Huawei's incremental trade secrets on implementation.**

As they did at trial, Defendants misidentify Plaintiffs' trade secrets in order to argue that Plaintiffs had no trade secrets.  (Dkt. 557, pp. 3-10.)  Plaintiffs' trade secrets are not, as Defendants contend, the publicly known concepts found in the NVMe standard and in prior art. Instead, Plaintiffs' trade secrets consist of (1) their specific implementations that meet the NVMe standard or otherwise perform tasks required by it, (2) the combination of features Plaintiffs chose for their SSD controllers, and (3) testing results such as the "negative know-how" that aided CNEX in avoiding the dead-ends that Plaintiffs encountered.  All constitute trade secrets.[1]

Defendants' arguments regarding the namespace controller and submission queue manager clearly demonstrate their attempt to confuse a concept with Plaintiffs' implementation

---

[1] Trade secrets "need not be essentially new, novel, or unique." *Bianco v. Globus Med., Inc.,* No. 2:12-cv-147, 2014 WL 5462388, at *7 n.3 (E.D. Tex. Oct. 27, 2014).  Instead, combinations of known elements and negative information can be trade secrets.  *Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1202 (5th Cir. 1986) (combination may be trade secret if it "affords a competitive advantage" and is protectable); *GlobeRanger Corp. v. Software AG U.S.A., Inc*., 836 F.3d 477, 497 (5th Cir. 2016) (trade secrets can be negative information if it would help competitors "accelerate the development and marketability" of the competitor's products).

thereof.  With respect to the submission queue manager, Huawei's Yixin Wu[2] did not admit that the Huawei's topology was indistinguishable from that in the NVMe standard, as Defendants claim.  (Dkt. 557, p. 5.)  Instead, Wu testified that the NVMe standard disclosed *a* submission queue manager but is silent *on its location*.  Huawei's trade secret is the implementation of the submission queue manager *on the host side*.  (6/11/2019 PM Tr. 40:20-47:14.)  Plaintiffs' expert Brian Berg[3] similarly did not admit that Plaintiffs' misappropriation claim was ██████████████

███████████████████████████████.  ████████████████

████████████████████████████████████████████████████████

██████████████████████████████  (6/17/19 (Sealed) PM Tr. 157:11-22; PX 217.)  ███████████████████████████████████████████

████████████████  (*See* 6/17/19 (Sealed) PM Tr. 11:21-12:3.)  Defendants fixate on the basic concepts of "submission queue manager" and "namespace controller," as well as the specific terms themselves, rather than the trade secret claimed by Plaintiffs: the implementation, including the *location* of each element, which was a trade secret.

████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████  To make this argument, Defendants assert that Plaintiffs' trade secret was NVMe over Ethernet (Dkt. 557, p. 6-7), but as both Wu and Berg testified, Plaintiffs' trade secret is Huawei's *solution* for implementing NVMe over Ethernet, including Huawei's NVMe controller and its architecture.  This architecture includes a *remote* namespace controller *and* a *host side* submission queue manager—a combination found not just unique, but patentable.  (███████

---

[2] Wu was not "discredited" as Defendants claim.  Defendants' citations show that Wu found it difficult to give yes and no answers without elaboration and that Defendants' "impeachments" were often confusing or of limited value.  (*See, e.g.,* 6/11/19 PM Tr. 27:7-21; 60:3-61:10.)

[3] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

(███████████████████████████████; 6/11/2019 PM Tr. 31:8-12; PX 217.)

Defendants' arguments regarding CEE, last page duplication, and dynamic wear leveling also fail to properly identify Huawei's trade secrets.  Converged Enhanced Ethernet is a public standard; Huawei's implementation of it, *i.e.*, ***how*** it accomplished error correction, is the trade secret. (6/11/2019 PM Tr. 76:13-17; ████████████████████████.)  Likewise, with last-page duplication, Defendants arguments do not address its ***implementation***; there is no dispute that Huawei invented ***a way*** to accomplish last-page duplication.  (6/12/2019 Tr. 106:9-17; ████████████████████.)  There is also no dispute that Huang copied Huawei's last-page duplication method verbatim into version 1 of the CNEX specification.  (6/4/19 PM Tr. 50:24-51:21; ███████████████.)  Finally, while the concept of dynamic wear leveling may have been known, Huawei proposed a solution of ***how*** to do this task, which, as with last-page duplication, Huang copied directly into CNEX's specification. (6/12/2019 Tr. 119:8-9; ████████████████████; 6/4/19 PM Tr. 29:11-30:4; 47:7-50:23.)

Defendants also fail to rebut the evidence that Plaintiffs' testing data and other negative information was a trade secret.  First, Defendants attempt to misidentify the secret by citing to Berg's testimony where he failed to recall which testing documents were at issue.  (Dkt. 557, p. 10.)  But Plaintiffs' testing trade secrets are demonstrated by, *e.g.*, the ACN Verification Board Scheme (PX 149), which Huang received by e-mail.  (Dkt. 534, p. 5.)  Defendants do not argue such testing is not a trade secret.  Instead, ████████████████████████ ████████████████████████ Those arguments, however, are irrelevant to whether the testing data is a trade secret. The Court should order a new trial on the issue of whether Plaintiffs had trade secrets, which affected the misappropriation and RICO claims.

## II.   This Court erred in failing to submit Plaintiffs' breach of fiduciary duty and unfair competition claims to the jury.

*Texas law applies.*  Because Futurewei is incorporated in Texas, Texas law determines whether Huang owed Futurewei a fiduciary duty and whether he breached this duty. *See Pilepro, LLC v. Chang*, 152 F. Supp. 3d 659, 674-75 (W.D. Tex. 2016).  Defendants' assertion

3

(Dkt. 557, p. 11) that this Court should apply the "most significant relationship" test to determine the law governing Plaintiffs' claim is incorrect; that test does not apply when a "relevant statute . . . directs the court to apply the laws of a particular state." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-cv-699, 2008 WL 686156, at *3 (E.D. Tex. Mar. 6, 2008); *see also Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) ("a court should only resort to the [Restatement principles] in the absence of either a valid contract[] . . . regarding the applicable law, or a local statutory provision controlling . . . the choice of law question").

Texas has such a statutory provision: "[t]he law of this state governs the formation and internal affairs of an entity" incorporated in Texas.  Tex. Bus. Org. Code § 1.101.  This statute applies to breach of fiduciary duty claims.  *See, e.g., Petras v. Mole*, No. 3:11-cv-1402, 2013 WL 12362098, at *5 (N.D. Tex. Jan. 31, 2013).  Under Texas law, the internal affairs doctrine is ***not*** limited to corporate directors and officers, as Defendants contend (Dkt. 557, p. 17); "internal affairs … include"—but are not necessarily limited to—the duties of "governing persons, officers, owners, and members."  TEX. BUS. ORG. CODE § 1.101; *Hollis v. Hill*, 232 F.3d. 460, 465 (5th Cir. 2000).  Texas courts have drawn no distinction between fiduciary duty suits against officers and other employees.  *See Pilepro*, 152 F. Supp. 3d at 674-75, 677 (applying internal affairs doctrine to fiduciary duty claim against company's former patent attorney).  After all, there is "no plausible reason for distinguishing between an officer or director and an employee" because the doctrine's purpose—fostering "a predictable rule of law" for corporations that do business in many states—applies with equal force to "mid-level employees."  *Automated Concepts Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at *5 (N.D. Ill. Aug. 9, 2000).

**_Neither claim is preempted._**  A tort claim is not preempted by the parties' contract "if the duty breached stands independent from the contractual undertaking, and the alleged damages are not solely the result of a bargained-for contractual benefit."  *Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston 2018, cert. denied).  In other words, "when certain legal relationships exist between contracting parties, the law may impose

affirmative duties that are separate and apart from the contractual promises made between those parties." *SPP SWD Burns Ranch, LLC v. Kent*, No. 5:14–CV–8, 2015 WL 12841097, at *3 (S.D. Tex. Jan. 8, 2015). Here, Huang had a fiduciary duty of loyalty to Futurewei apart from his Employment Agreement. *See Salas v. Total Air Servs., LLC*, 550 S.W.3d 683, 690 (Tex. App.— El Paso 2018, no pet.) (finding employee had fiduciary duty not to compete with employer). Huang's obligations are not lessened because Futurewei had the foresight to also contractually bar him from competing. *See James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A. Inc.*, 403 S.W.3d 360, 366 (Tex. App.—Houston 2013, no pet.).

Similarly, Plaintiffs' unfair competition claim is not preempted by trade secret law because it depends at least in part on facts other than the theft of trade secrets. *Angelica Textile Servs., Inc. v. Park*, 163 Cal. Rptr. 3d 192, 202 (Cal. Ct. App. 2013) (unfair competition claim not preempted where based on violation of noncompetition agreement and duty of loyalty). Defendants misrepresent the nature of Plaintiffs' claim, asserting that it was based on "exactly the same" evidence as the trade secret claim. (Dkt. 557, p. 12.) But that is not the case. Plaintiffs' unfair competition claim was primarily based on corporate raiding and the evidence that Huang and CNEX orchestrated the mass movement of experienced Huawei employees from that company to CNEX. (6/5/19 AM Tr. 75:13-19; 89:23-92:13.) Such heavy solicitation can constitute unfair competition even without the theft of trade secrets. *See Bancroft-Whitney Co. v. Glen,* 411 P.2d 921, 940 (Cal. 1966) (solicitation of twenty employees constituted unfair competition). Regardless, the theft of trade secrets does not negate a separate tort claim if there are other facts on which that claim can be predicated. *See Trueblue, Inc. v. DeRuby*, No. 3:18-cv-0192-M, 2018 WL 1784523, at *2 (N.D. Tex. Apr. 13, 2018) (fiduciary duty claim not preempted where based partially on trade secret theft and partially on competing with employer).

***Evidence supports both claims.*** As to the merits of the breach of fiduciary duty claim, Defendants' sole point is that Huang owed no such duty because he was not an officer or director of Futurewei. (Dkt. 557, p. 15-16.) But "[i]t is well established in Texas that an employee may be in a fiduciary relationship with his or her employer." *Orbison v. Ma-Tex Rope Co., Inc.*, 553

S.W.3d 17, 30 (Tex. App.—Texarkana 2018, cert. denied).  As a result of that fiduciary

relationship, an employee may not compete with his employer in matters relating to his

employment.  *Speedemissions, Inc. v. Capital C Enter., Ltd.*, No. 01-07-400, 2008 WL 4006748,

at \*7 (Tex. App.—Houston 2008, no pet.).  Huang did exactly that at Futurewei, repeatedly

seeking to establish a competing business and lure away co-workers.  (*E.g.*, 6/4/19 PM Tr. 86:3-

10; 120:9-129:6.)  Thus, Plaintiffs' fiduciary duty claim should have been submitted to the jury.

Defendants argue Plaintiffs had no unfair competition claim under California statute

(Dkt. 557, pp. 13-15), but "California recognizes claims for both common law unfair competition

and statutory unfair competition."  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations,*

*Inc.*, 90 Cal. Rptr. 3d 247, 263 (Cal. Ct. App. 2009).  California does not limit common law

unfair competition to trademark infringement, as Defendants assert.  *See Angelica,* 163 Cal. Rptr.

3d at 204 ("the conduct needed to maintain a statutory or common law unfair competition cause

of action may consist of a tortious interference with business relations").  Mass solicitation may

constitute unfair competition,[4] *Bancroft-Whitney Co.,* 411 P.2d at 940, as proven by the evidence

here.  (6/4/19 PM Tr. 120:9-129:6; 6/5/19 AM Tr. 64:10-67:14; 70:24-71:13; 6/12/19 Tr. 38:15-

18.)  There was thus sufficient evidence for Plaintiffs' unfair competition claim to reach the jury

under either California or Texas Law.

### III.    No jury could have reasonably failed to award damages for Huang's breach of the notice of patent applications provision in his employment agreement.

The jury concluded that Futurewei "proved by a preponderance of the evidence that Mr.

Huang failed to comply with the Employment Agreement's Patent Application Disclosure

Provision."  (Dkt. 476, p. 3.)  Defendants misinterpret this as finding Huang "did not breach the

patent disclosure provision."  (Dkt. 557, p. 17.)  Defendants' position confuses "a breach of

---

[4] Defendants incorrectly claim that mass solicitation of employees is protected by Cal. Bus. & Prof. Code. § 16600.  (Dkt. 557, pp. 13-14.)  But that statute merely protects *employees'* ability to "engage in a lawful profession," it does not give employers unlimited leeway in recruiting. *See Loral Corp. v. Moyes,* 219 Cal. Rptr. 836, 843-844 (Cal. Ct. App. 1985) (provision restricting ability of former employee to recruit employees valid under § 16600).

contract **claim** with the breach of contract **element** of such a claim." *Huddleston v. Am. Airlines, Inc.*, No. 16-CV-09100, 2018 WL 4742097, at *6 (N.D. Ill. Oct. 2, 2018) (emphasis in original). The jury's finding of non-compliance showed that Futurewei established the **element** of breach; the jury simply did not find **harm** from that breach and thus did not award damages.  (Dkt. 476, pp. 3-4.)  This latter finding was against the great weight of the evidence.  Huang's Agreement acknowledges that breaches cause harm, (PX 107, p. 1) and the non-disclosure of patent filings in fact harmed Futurewei's ability to vindicate its rights, (6/6/19 Tr. 37:3-13).[5]

Defendants complain that Plaintiffs' expert did not specifically address the harm to Futurewei from the breach of the notice provision (Dkt. 557, p. 18) and accuse Plaintiffs of "arguing a new damages theory after the jury's verdict" (Dkt. 557, p. 20).  That is not correct. Plaintiffs are simply pointing out record evidence that compels a conclusion opposite from the one the jury reached on harm and damages, which is one of the express purposes of a motion for new trial.  *Duff v. Werner Enter., Inc.*, 489 F.3d 727, 730 (5th Cir. 2007) (motion for new trial argues absence of evidence to support jury's verdict).

Finally, even if the record were devoid of proof of actual damages, Futurewei is "entitled to recover at least nominal damages, regardless of whether actual damages are proved." *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-cv-157, 2010 WL 11531433, at *2 (E.D. Tex. June 15, 2010).  Nominal damages are appropriate where the defendant's breach results in "a type of harm that can have consequences that are not readily measurable in the form of monetary loss."  *Versata Software, Inc. v. Internet Brands, Inc*., 902 F. Supp. 2d 841, 860 (E.D. Tex. 2012).  Here, the harm to Futurewei from the delay in knowing about and being able to seek redress of Huang's uses of confidential information (6/6/19 AM Tr. 37:3-13) is just such a harm. Defendants' argument that Plaintiffs waived nominal damages by failing to object to the verdict form (Dkt. 557, p. 23) also is mistaken.  There was no reason for Plaintiffs to object since the

---

[5] Defendants assert that Plaintiffs were not harmed because they "did nothing for more than a year" after learning of the applications (Dkt. 557, p. 19), but the testimony they cite addresses Yong Chen's unauthorized downloads of Futurewei files and the contents of Huang's patent applications, not Futurewei's response to those applications.

jury was separately instructed about the availability of nominal damages "when a technical violation of rights has occurred but the Claimant has suffered no actual loss or injury."  (Dkt. 474, p. 31.)  The jury's failure to award damages on this acknowledged breach of the employment agreement necessitates a new trial.

## IV.   The jury's finding that Huang did not breach the confidentiality provision of the Agreement was against the great weight of the evidence.

The jury's finding that Huang did not breach the confidentiality provision of the Agreement—despite Huang's admission that he copied portions of an admittedly confidential Futurewei document *verbatim* into CNEX's architecture—was against the great weight of the evidence.  Defendants' arguments to the contrary mischaracterize the evidence elicited at trial.

Huang did not testify that the information he copied into his first CNEX architecture came from a local file that predated his work at Futurewei, as Defendants suggest.  (Dkt. 557, p. 25.)  Huang testified that his only possible explanation for the copying of those portions of the Futurewei architecture was that "maybe" he had a local working copy, but that he did not know, even as of the time of trial, how those copied paragraphs made it into the CNEX architecture. (6/10/2019 PM Tr. 110:4-15.)  Critically, Huang *never* testified that the alleged working file, even if it existed, predated his time at Futurewei, as Defendants now claim.  (*Id.*)

Defendants' other arguments are just as misleading.  Defendants claim that Plaintiffs' witnesses could not identify any document corroborating their testimony that the Futurewei architecture was a team effort, rather than just the work of Huang.  (Dkt. 557, p. 26.)  But the very testimony Defendants cite proves otherwise; there, Plaintiffs' witnesses pointed out that the Futurewei architecture states, on its face, that other team members made contributions to the project.  (6/11/2019 PM Tr. 97:23-98:25.)  Further, Berg and Guangyuan Liu did not state that dynamic wear leveling was not confidential information.  (Dkt. 557, p. 26.)  Rather, in the testimony that *Defendants themselves* cite, ███████ explained that it was Plaintiffs' unique implementation of dynamic wear leveling, █████████████████████ that was confidential and trade secret.  (*See, e.g.*, 06/12/19 PM Tr. 113:14-114:4.)

Defendants offer no explanation for the overwhelming evidence that Huang copied Futurewei's confidential information—in and of itself a violation of the Agreement—and implemented it into his very first CNEX architecture.  Defendants' claim that the information was not economically valuable confuses contractually-defined confidential information with a trade secret.  The jury's failure to find that Huang breached the Agreement's confidentiality provision was against the great weight of the evidence, and a new trial on that issue is warranted.

## V.     The jury's finding that Huang did not breach the non-solicitation provision of the Agreement was against the great weight of the evidence.

Defendants' claim that there is "no evidence" Huang participated in soliciting his former Futurewei colleagues is absurd.  Huang admitted all offer letters for new engineers went through him because he was ultimately responsible for whether they should be hired, including Charlie Dong and Yong Chen. (6/5/19 AM Tr. 59:13-20.)  Huang assisted Chen in obtaining a job at CNEX by asking CNEX CEO Alan Armstrong to sign and approve Chen's offer letter.  (PX 46; 6/5/19 AM Tr. 65:3-67:14.)  Defendants simply ignore that evidence.

Defendants' argument that Chen did not leave Futurewei until June 2014 (after the expiration of Huang's non-solicitation restriction) is disingenuous: the email that *Huang himself* sent asking Armstrong to sign off on Chen's offer letter was sent on May 16, 2014—within the period of the restriction.  (PX 46.)  Huang's Agreement prohibited him from "directly or indirectly…*assist[ing] or in any way encourag[ing]* any current employee…to terminate his or her employment relationship with Futurewei" in the year after his termination.  (PX 107-005 (emphasis added).)  The one-year time limit addresses the date of the solicitation, not the date of its success.  Huang sent an email to Armstrong within that year, assisting Chen with obtaining a position at CNEX so that Chen could quit his job at Futurewei.  (PX 46.)  There is no reasonable way to construe these admitted facts as anything other than a breach of the Agreement.  The jury's finding to the contrary was against the great weight of the evidence, and merits a new trial.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' New Trial Motion.

Dated: August 19, 2019

RESPECTFULLY SUBMITTED

By:      */s/  Clyde Siebman*
_____

**SIEBMAN, FORREST, BURG & SMITH, LLP**

**Clyde M. Siebman**
Texas Bar No. 18341600
clydesiebman@siebman.com
**Elizabeth S. Forrest**
Texas Bar No. 24086207
elizabethforrest@siebman.com
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090
(903) 870-0070 (office)
(903) 819-3076 (cell)

**SEYFARTH SHAW LLP**

**Michael D. Wexler** (*Pro Hac Vice*)
**Lead Attorney**
Illinois Bar No. 6207847
mwexler@seyfarth.com
**Andrew S. Boutros** (*Pro Hac Vice*)
Illinois Bar Number: 6322276
ABoutros@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606
Telephone 312-460-5536
Facsimile 312-460-753

**Jesse M. Coleman**
Texas Bar No. 24072044
jmcoleman@seyfarth.com
700 Milam Street, Suite 1400
Houston, Texas  77002-2812
Telephone:  (713) 225-2300
Telecopier:  (713) 225-2340

***Attorneys for Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc***.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 19, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By:   */s/ Clyde Siebman*

**Counsel for Huawei Technologies Co., Ltd.**
**and Futurewei Technologies, Inc**.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This Motion is filed under seal pursuant to Local Rule CV-5(a)(7) and the Protective Order entered in this case on October 2, 2018 (Dkt. #118).  The Motion refers to and incorporates documents identified as "Restricted Information" pursuant to the Protective Order.  (Dkt. #118).

*/s/Clyde Siebman*
Clyde M. Siebman