**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., a Chinese corporation, and FUTUREWEI TECHNOLOGIES, INC., a Texas corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>YIREN "RONNIE" HUANG, an individual, and CNEX LABS, INC., a Delaware corporation,<br><br>Defendants. | The Honorable Amos L. Mazzant, III<br><br>Civil Action No. 4:17-cv-00893 ALM |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)**

Huawei's Reply (Dkt. 562) invites the Court to err by asking it to discredit testimony and documents showing that Huawei misappropriated CNEX's trade secrets. In deciding a motion for JMOL, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Instead, the Court should "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable" to CNEX, and deny Huawei's motion for JMOL "unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498-99 (5th Cir. 2012) (internal quotation omitted). Because substantial evidence supports the jury's finding that Huawei misappropriated CNEX's trade secrets, Huawei's JMOL motion should be denied.

## I. HUAWEI MISAPPROPRIATED TRADE SECRETS IN CNEX'S MAY 2015 POWERPOINT.

### A. CNEX took reasonable measures to protect trade secrets in its PowerPoint.

Substantial evidence demonstrates that CNEX took reasonable measures to protect its trade secrets in general, and those found in the May 2015 CNEX PowerPoint it sent to Huawei (DX 316, "May 2015 PPT"). For example, CNEX labeled each page "Proprietary and Confidential" and informed the Huawei recipients of that PPT that it was confidential and not to be shared with Huawei's HiSilicon division. *See* Dkt. 547 ("Opp.") at 2-6. Huawei contends that despite this evidence, CNEX failed to take reasonable measures to protect the May 2015 PPT because (1) CNEX sent the PPT to Huawei and another company (MacroSAN) without a written NDA; and (2) CNEX publicly disclosed portions of the May 2015 PPT.[1] Reply at 1-2.

---

[1] Huawei falsely contends that CNEX provided the May 2015 PPT to "several" companies in addition to Huawei, "all without obtaining an NDA." Reply at 2. The only other such company is MacroSAN. Opp. at 5. There is no reason to believe that Nick Zhang abandoned his usual practice of requesting confidentiality prior to providing the PPT to MacroSAN. *Id.* at 3-5.

1

None of the evidence Huawei relies upon demonstrates that CNEX failed to take reasonable measures to protect the May 2015 PPT. Reasonable measures to preserve secrecy is a classic question of fact for a jury to decide, and everything Huawei raises in its briefs was considered as part of the jury's verdict. *See Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC (RNBx), 2011 WL 3420571, at *2 (C.D. Cal. Aug. 4, 2011). The existence of an NDA is just one of many factors—including whether documents containing trade secrets were marked with confidentiality labels—the jury could have considered in deciding whether CNEX took reasonable measures. 6/25/2019 Tr. at 224:2-225:2 (jury instructions on reasonable measures). And, none of the trade secrets CNEX asserted at trial were shown at either the 2015 Cadence Forum or the Linux Software Foundation Vault 2016 presentation.[2]

Huawei also invites error by asking the Court to question the credibility of CNEX's Nick Zhang, who testified that it was his practice to ask recipients of the May 2015 PPT to keep it confidential, and that he specifically told the Huawei recipients to keep the PPT confidential and to not share it with HiSilicon, as well as the testimony of Dr. Armstrong and Joe DeFranco. Reply at 1-2. Both Dr. Armstrong and Mr. DeFranco testified to the industry expectation that documents labeled "confidential and proprietary" would be kept secret and not used for competitive purposes. 6/19/2019 PM Tr. at 27:13-20, 88:7-89:6. It is for the jury, not the Court, to weigh the credibility of this testimony. *Reeves*, 530 U.S. at 150; *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 813 (E.D. Tex. 2012). Substantial evidence shows that CNEX took reasonable measures to protect the trade secrets in its May 2015 PPT.

**B.     Huawei misappropriated the trade secrets in the May 2015 PPT.**

Huawei argues in its Reply that it did not misappropriate any trade secrets in CNEX's May 2015 PPT. Reply at 2-3. Because this argument was not included in Huawei's Renewed Motion for JMOL, Huawei has waived it, and for this reason alone the Court should reject it.

---

[2] *Compare* 6/18/2019 PM Sealed Portion No. 7 Tr. at 27:3-33:13, 33:24-36:15; 6/22/2019 AM Sealed Portion No. 14 Tr. at 17:7-18:14, 19:25-23:6, 28:21-30:23 (discussing CNEX trade secrets in May 2015 PPT) *with* DX 283 (Linux Software Foundation Vault 2016 PPT) and DX 234 (2015 Cadence Forum PPT); *see also* Opp. at 5 n.4.

2

*See* Dkt. 533; *Loyolty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late."). Moreover, substantial evidence shows that Huawei misappropriated trade secrets in the May 2015 PPT by giving them to its HiSilicon division. HiSilicon competes with CNEX in the SSD controller market. 6/19/2019 AM Tr. at 56:19-23; 6/19/2019 PM Tr. at 125:10-126:3; 6/20/2019 PM Tr. at 13:14-25. Aware of this competition, Nick Zhang specifically instructed the Huawei recipients of the May 2015 PPT not to share the PPT with HiSilicon. Opp. at 4. Yet after meeting with CNEX's Ronnie Huang, Huawei's Keji Huang circulated a new PPT he created (DX 139, "Keji PPT") to Huawei's HiSilicon group, combining CNEX's May 2015 PPT with additional information Keji learned on his visit to CNEX. DX 139; 6/22/2019 AM Sealed Portion No. 14 Tr. at 12:11-13:21. As HiSilicon develops SSD controllers that compete with CNEX's, the jury's misappropriation verdict was reasonable where Keji provided CNEX trade secrets to HiSilicon for use in developing its next-generation SSD controller. Even using CNEX's trade secrets as part of research and development constitutes misappropriation under CUTSA. *See Think Village-Kiwi, LLC v. Adobe Sys., Inc.*, No. C 08-04166 SI, 2009 WL 3837270, at *3 (N.D. Cal. Nov. 16, 2009). Huawei's argument that it did not "knowingly" misappropriate merely seeks to confuse the issue by injecting inapposite elements from a "willful and malicious misappropriation" cause of action.

**II.    HUAWEI MISAPPROPRIATED THE CNEX TRADE SECRETS RONNIE HUANG SHARED WITH KEJI HUANG DURING THEIR 2016 MEETING.**

CNEX presented substantial evidence at trial showing that Huawei misappropriated CNEX trade secrets via the meeting Huawei's CEO, Eric Xu, orchestrated between Keji Huang and Ronnie Huang in 2016. Opp. at 6-8. Huawei raises two issues with CNEX's evidence. First, Huawei wrongly contends there was "no evidence" that the information from that meeting was confidential or that CNEX used reasonable measures to protect it. Reply at 3-4. The record shows otherwise. Before he met with Ronnie, Keji himself knew that CNEX was in "stealth mode." DX 61 at p. 6; DX 139 at p. 33; 6/21/2019 AM Tr. at 26:7-9. In addition, CNEX's May

3

2015 PPT, which Keji received prior to his 2016 visit, was stamped "proprietary and confidential" on every page. Defendants' expert also testified that the commentary Keji added in the Keji PPT—information not in CNEX's May 2015 PPT—contained *further* CNEX trade secrets. 6/22/2019 AM Sealed Portion No. 14 Tr. at 28:23-33:19. Based on this evidence, the jury could have concluded that Keji knew the information he received from Ronnie during the 2016 meeting was confidential. *See Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, Case No. 4:15-cv-307, 2018 WL 460227, at *3-4 (E.D. Tex. Jan. 18, 2018) (reasonable measures can be implied where disclosures made without an NDA were "in the context of exploring potential business opportunities" and where receiving party understood the information to be confidential). Huawei cites the testimony of Julie Biagini to argue that Keji received public, not trade secret, information. Reply at 3. But as CNEX has explained, Ms. Biagini testified about information CNEX provided to Keji when *both* Ronnie *and* Javier Gonzales were present—*not* information Ronnie provided to Keji before Javier joined the meeting. Opp. at 7. The fact that Huawei's CEO, Eric Xu, instructed Keji Huang to analyze what he described as "innovative" CNEX technology further reinforces that Keji came to CNEX to seek and obtain its trade secrets.

Second, Huawei contends that they did not misappropriate any of the information Ronnie shared with Keji because they did not share it with anyone outside Huawei. Reply at 4. But CNEX's misappropriation claim based on Keji's acts includes misappropriation under false pretenses—Keji misrepresented that Huawei was interested in purchasing CNEX's products when in reality Huawei had no intention of doing so. 6/10/2019 AM Tr. at 52:4-16; 6/19/2019 PM Tr. at 56:2-19; 6/20/2019 PM Tr. at 133:10-12. Instead, Huawei actually distributed Keji's report to HiSilicon on several occasions for development of its own SSD controllers. DX 139, DX 258. Huawei's attempts to spin the testimony of its own witnesses to argue that Keji did not lie or deceive CNEX should be rejected as another improper request for the Court to weigh and determine the credibility of Keji's testimony—a job which is reserved solely for the jury.

### III. HUAWEI MISAPPROPRIATED TRADE SECRETS ABOUT CNEX'S SDK BOARD THROUGH XIAMEN UNIVERSITY.

CNEX introduced substantial evidence at trial showing that Huawei misappropriated CNEX trade secrets about CNEX's Westlake SDK board through Xiamen University. Opp. at 8-11. For example, Defendants' expert explained that two PowerPoints Huawei received from Xiamen University contained CNEX trade secrets about the Westlake SDK, including test results obtained from the Westlake SDK itself. Opp. at § III.C.1. CNEX also showed that Huawei should have known that such information about the Westlake SDK was confidential and not to be shared with Huawei. 6/6/2019 AM Tr. at 50:11-51:9.

Huawei argues that the testing information CNEX alleges is its trade secrets came from a simulator and not the Westlake SDK board. Reply at 5. But the evidence Huawei relies upon cannot support overturning the jury's verdict. First, Huawei argues that the testing information from Xiamen came from a simulator because Huawei's witness Jiancen Hou said so. *Id.* But a Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. The jury was certainly not obligated to believe Jiancen Hou's self-serving testimony that Xiamen's test results came from a simulator instead of CNEX's Westlake SDK, especially when a disinterested witness testified to the contrary. Huawei also argues that the test results came from a simulator because the earliest PowerPoint Huawei received from Xiamen University containing CNEX trade secrets was dated June 29, 2017, two months after the Westlake SDK was broken by Xiamen University. Reply at 5. But this does not necessarily mean that the "results sent from Xiamen to Huawei could not be board test data." *Id.* Xiamen could simply have taken two months to put together their presentations to Huawei. Nothing in the record favors Huawei's theory over others. And even if the test results did come from a simulator, it simulated the environment of the CNEX Westlake SDK Board, thereby still enabling Huawei to learn and take CNEX's trade secrets.

5

Finally, Huawei argues that it was Professor Mao[3] and Xiamen University, not Huawei, that acted wrongfully in sharing CNEX information with Huawei, because Huawei did not know that the CNEX information was acquired through improper means. This argument should be disregarded because it was not previously raised in any of Huawei's previous JMOL briefs. *In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) ("Since a Rule 50(b) motion is technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law] . . . it cannot assert a ground that was not included in the [original] motion.") (internal quotation omitted; edits in original). In any event, substantial evidence also shows that Huawei should have known that information about CNEX's board was confidential. Huawei's corporate representative Frank Effenberger admitted that universities have confidentiality obligations to partner companies who expect they will be honored. 6/6/2019 AM Tr. at 50:11-51:9. The jury could have inferred from this testimony that Huawei knew the testing information it obtained from Xiamen University was covered by an NDA between CNEX and Xiamen University, and that Huawei should not be in possession of it. Also, Huawei's own contemporaneous documents showed that CNEX's Westlake SDK Board was available to research universities (DX 160), and Huawei's repeated attempts to secure a Westlake SDK Board on its own were rebuffed (DX 5, DX 241, DX 1346, 6/22/2019 PM Tr. at 7:3-18); thus, the jury had substantial evidence to conclude that Huawei knew during the time of the study that it was procuring CNEX trade secrets from Xiamen. Indeed, the project specifications between Huawei and Xiamen specify the use of a Westlake SDK Board to achieve Huawei's competitive transformation objectives. The jury could have reasonably concluded that Huawei's intent all along was to steal trade secrets from CNEX's Westlake Board through its conspiracy with Xiamen University.

---

[3] Huawei's arguments about opportunities to take discovery from Professor Mao are disingenuous. During the discovery period, Professor Mao remained in China, outside the subpoena of this Court. As represented during trial, CNEX contacted Professor Mao during discovery to see if he would voluntarily provide discovery, and he declined. 6/20/2019 AM Tr. at 22:17-24.

Dated: August 23, 2019

TYZ LAW GROUP PC

*/s/ Ryan Tyz*
Ryan Tyz
Erin Jones
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: (415) 849-3578
Email: rtyz@tyzlaw.com
Email: ejones@tyzlaw.com

Attorneys for Defendant-Counterclaimant
Yiren Ronnie Huang

Respectfully submitted,

FARELLA BRAUN + MARTEL LLP

*/s/ Jeffrey M. Fisher*
Stephanie P. Skaff (*admitted pro hac vice*)
Jeffrey M. Fisher (*admitted pro hac vice*)
Eugene Y. Mar (*admitted pro hac vice*)
Nadia Arid (*admitted pro hac vice*)
Jeffrey G. Lau
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
Email: sskaff@fbm.com
Email: jfisher@fbm.com
Email: emar@fbm.com
Email: narid@fbm.com
Email: jlau@fbm.com

Deron Dacus, Texas Bar No. 790553
THE DACUS FIRM, P.C.
821 Ese 323 Loop Ste 430
Tyler, TX 75701-0518
Telephone: 903.705.1117
Facsimile: 903.581.2543
Email: ddacus@dacusfirm.com

Attorneys for Defendant-Counterclaimant
CNEX LABS, INC.

```
```

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF system on August 23, 2019

                        /s/ *Jeffrey M. Fisher*
                        Jeffrey M. Fisher